IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| GIGI JORDAN, | : | |
| | : | |
| Plaintiff, | : | C.A. No. 14-1485-SLR-SRF |
| | : | |
| v. | : | |
| | : | |
| RAYMOND A. MIRRA, JR., et al., | : | |
| | : | |
| Defendants. | : | |

**PLAINTIFF'S ANSWERING MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANTS' MOTIONS
TO DISMISS AMENDED COMPLAINT**

David J. Ferry, Jr. (#2149)
Rick S. Miller (#3418)
FERRY JOSEPH, P.A.
824 Market Street, Suite 1000
Wilmington DE 19801
(302) 575-1555
dferry@ferryjoseph.com
rmiller@ferryjoseph.com

-and-

Max Gershenoff, Esquire
RIVKIN RADLER
926 RXR Plaza
Uniondale, New York  11556
Tel. (516) 357-3000
Fax (516) 357-3333
max.gershenoff@rivkin.com

Dated: July 1, 2015                    Attorneys for Plaintiff

# TABLE OF CONTENTS

RELEVANT FACTS ...................................................................................................... 1

ARGUMENT ................................................................................................................... 3

  I.   Plaintiff's Claims are Not Barred by the Putative General Release ............................ 3

  II.  Plaintiff's Claims are Not Barred by the Statutes of Limitation ................................... 8

    A.   Defendants' Misstate Many of the Pertinent Statutes of Limitation ....................... 8

      1.   The Statute of Limitations for Plaintiff's Third Cause of Action for Common Law Fraud is the Later of Six Years or Two Years After Discovery, Not Three Years .............................................................................................. 8

      2.   The Statute of Limitations for Plaintiff's Sixth Cause of Action for Breach of Fiduciary Duty is Six Years, Not Three Years .................................... 11

      3.   The Statute of Limitations for Plaintiff's Eighth Cause of Action for Unjust Enrichment is Six Years, Not Three Years................................................. 12

    B.   Plaintiff's First Cause of Action for Breach of Contract on Promissory Notes is Not Barred by the Statute of Limitation........................................................ 12

    C.   The Applicable Statutes of Limitation on Plaintiff's Claims are Subject to Equitable Tolling.............................................................................................. 16

  III.   Plaintiff's Claim for Declaratory Relief is "Valid" ................................................... 21

  IV.   Plaintiff's Fraud-Based Claims Against Defendant Walsh are Pleaded With the Requisite Specificity ........................................................................................... 22

  V.   Plaintiff's Claims Against Defendant Walsh are Not Subject to Arbitration ............. 25

  VI.   Plaintiff's Claims Against Defendant Eizen are Sufficiently Pleaded ....................... 28

CONCLUSION ............................................................................................................. 30

# TABLE OF AUTHORITIES

## CASES

Abert v. RehabCare Group Inc.
2013 U.S. Dist. LEXIS 51450 (W.D. Pa. 2013) ............................................................... 17

AIU Ins. Co. v. Olmecs Med. Supply, Inc.
2005 U.S. Dist. LEXIS 29666 (E.D.N.Y. 2005) ............................................................... 29

Allen v. WestPoint-Pepperell, Inc.
945 F.2d 40 (2d Cir. 1991) .............................................................................................. 4

Black v. Chittenden
69 N.Y.2d 665 (N.Y. 1986) ............................................................................................. 7

Bloss v. Va'ad Harabonim of Riverdale
203 A.D.2d 36 (1st Dept. 1994) ...................................................................................... 7

Brennan v. Bally Total Fitness
198 F. Supp. 2d 377 (S.D.N.Y. 2002) ............................................................................ 27

Bucher v. Am. Health & Life Ins. Co.
2014 U.S. Dist. LEXIS 119775 (W.D. Pa. 2014) ........................................................... 26

Burlington Indus., Inc. v. Ellerth
524 U.S. 742 (1998) ....................................................................................................... 26

Butto v. Collecto Inc.
845 F. Supp. 2d 491 (E.D.N.Y. 2012) ............................................................................ 25

C3 Media & Mktg. Group, LLC v. Firstgate Internet, Inc.
419 F. Supp. 2d 419 (S.D.N.Y. 2005) .............................................................................. 4

Centro Empresarial Cempresa S.A. v. America Movil, S.A.B. de C.V.Eyeglasses
17 N.Y.3d 269 (N.Y. 2011) ......................................................................................... 5, 6

Chevron Corp. v. Donziger
871 F.Supp.2d 229 (S.D.N.Y 2012) ............................................................................... 10

Corporate Trade, Inc. v. Channel
563 Fed. Appx. 841 (2d Cir. 2014) ................................................................................ 16

Cunningham v. M&T Bank Corp.
2013 U.S. Dist. LEXIS 155478  (M.D. Pa. 2013) .......................................................... 17

DDJ Mgt., LLC v. Rhone Group L.L.C.
15 N.Y.3d 147 (2010) ........................................................................................ 7

Donau Furnier, GmbH v. M&T Veneer Corp.
715 F. Supp. 2d 604 (M.D. Pa. 2010) .............................................................. 15

Drake v. Lab. Corp. of Am. Holdings
2007 U.S. Dist. LEXIS 17430 (E.D.N.Y. 2007) .............................................. 16

Drennan v. PNC Bank, NA
622 F.3d 275 (3d Cir. 2010) ............................................................................ 17

Dun Shipping Ltd. v. Amerada Hess Shipping Corp.
234 F. Supp. 2d 291 (S.D.N.Y. 2002) .............................................................. 26

Emcore Corp. v. PricewaterhouseCoopers LLP
102 F. Supp. 2d 237 (D.N.J. 2000) ................................................................... 24

First Nat'l Bank v. Gay
694 So. 2d 784 (Fla. Dist. Ct. App. 4th Dist. 1997) ........................................ 15

Gill v. World Inspection Network Int'l, Inc
2006 U.S. Dist. LEXIS 52426 (E.D.N.Y. 2006) .............................................. 27

Gleason v. Spota
194 A.D.2d 764 (N.Y. App. Div. 1993) ........................................................... 16

Global Mins. & Metals Corp. v. Holme
35 A.D.3d 93 (N.Y App. Div. 2006) ................................................................. 7

Grant v. Turner
505 Fed. Appx. 107 (3d Cir. 2012) ............................................................ 23, 24

Guidotti v. Legal Helpers Debt Resolution, L.L.C.
716 F.3d 764 (3d Cir. ) .................................................................................... 26

Hawk Mountain LLC et al. v. RAM Capital Group LLC et al.
D. Del. Case No. 1:13-cv-02083-SLR-SRF ...................................................... 5

In re Processed Egg Prods. Antitrust Litig.
851 F.Supp.2d 867 (E.D. Pa. 2012) ................................................................. 23

Johnson v. Lebanese Am. Univ.
84 A.D.3d 427; 922 N.Y.S.2d 57 (N.Y. App. Div. 2011) ................................. 4

Kaufman v. Cohen
307 A.D.2d 113 (N.Y. App. Div. 2003)........................................................ 12

Killian v. McCulloch
850 F. Supp. 1239 (E.D. Pa. 1994) ............................................................... 24

Klein v. Gutman
12 A.D.3d 417 (N.Y. App. Div. 2004)........................................................... 12

Ladenburg Thalman & Co., Inc. v. Imaging Diagnostic Systems, Inc.
176 F. Supp. 2d 199 (S.D.N.Y. 2001)............................................................. 4

Lawrence v. Miller
48 A.D.3d 1 (1st Dep't 2007) ....................................................................... 27

Levin v Epshteyn
990 N.Y.S.2d 438 (N.Y. Sup. Ct. 2014)....................................................... 21

Liberty Life Assurance Co. v. Bahan
2010 WL 3431147, (S.D.N.Y. 2010); aff'd 441 Fed. Appx. 21; 2011 WL 4552424 (2d Cir. 2011). 10

Mangini v. McClurg
24 N.Y.2d 556 (N.Y. 1969) ........................................................................... 4

Mazzoccoli v. Merit Mountainside LLC
2012 U.S. Dist. LEXIS 180721 (D.N.J. 2012) .............................................. 22

MBIA Ins. Corp. v. Royal Indem. Co.
2004 U.S. Dist. LEXIS 6609 (D. Del. 2004).................................................. 23

Moore v. Democratic County Exec. Comm. of Phila.
2014 U.S. Dist. LEXIS 157182 .................................................................... 22

N.B. Garments (PVT.), Ltd. v. Kids Int'l Corp.
2004 U.S. Dist. LEXIS 3774 (S.D.N.Y. 2004)............................................... 10

N.Y. Cent. Mut. Fire Ins. Co. v. Edwards
2009 U.S. App. LEXIS 1783 (2d Cir. 2009) .................................................. 16

Newin Corp. v. Hartford Acc. & Indent. Co.
37 N.Y.2d 211 (N.Y. 1975)............................................................................ 4

Nino v. Jewelry Exchange, Inc.
609 F.3d 191 (3d Cir. 2010) ......................................................................... 26

O'Brien v. Argo Partners, Inc.
736 F.Supp.2d 528 (E.D.N.Y. 2010), aff'd 426 Fed. Appx. 36; 2011 WL 3805744 (2d Cir. 2011) .. 10

Philan Ins. v. Frank B. Hall & Co.
215 A.D.2d 112 (N.Y. App. Div. 1995) ........................................................................ 17

Porwick v. Fortis Benefits Ins. Co.
2004 U.S. Dist. LEXIS 24432 (S.D.N.Y. 2004) ............................................................ 17

Prestige Builder & Mgmt. LLC v. Safeco Ins. Co. of Am.
896 F. Supp. 2d 198 (E.D.N.Y. 2012) ........................................................................... 9

Proceeding v. Kreuger
203 A.D.2d 133 (N.Y. App. Div. 1994) ........................................................................ 17

Ross v. Thomas
2010 U.S. Dist. LEXIS 107748 (S.D.N.Y. 2010) ......................................................... 12

Ruffing v. Union Carbide Corp.
308 A.D.2d 526; 764 N.Y.S.2d 462 (N.Y. App. Div. 2003) ......................................... 10

Sargiss v. Magarelli
12 N.Y.3d 527 (2009) ............................................................................................ 11, 29

Shema Kolainu-Hear Our Voices v. ProviderSoft, LLC
832 F. Supp. 2d 194 (E.D.N.Y. 2010) .......................................................................... 27

Simcuski v. Saeli
377 N.E.2d 713 (N.Y. 1978) .............................................................................. 16, 19, 20

St. John's Univ. v. Bolton
757 F. Supp. 2d 144 (E.D.N.Y. 2010) .......................................................................... 17

Steen v. Bump
233 A.D.2d 583; 649 N.Y.S.2d 731 (N.Y. App. Div. 1996) ........................................... 4

Sunset Fin. Res., Inc. v. Redevelopment Group V, LLC
417 F. Supp. 2d 632 (D.N.J. 2006) .............................................................................. 23

Topps Co. v. Cadbury Stani S.A.I.C.
380 F. Supp. 2d 250 (S.D.N.Y. 2005) .......................................................................... 11

Torrance Constr., Inc. v Jaques
127 A.D.3d 1261 (N.Y. App. Div. 2015) ....................................................................... 30

Trepuk v. Frank
44 N.Y.2d 723 (1978) ................................................................................................. 11

**AUTHORITIES**

F.R.C.P. § 9(b) ........................................................................................................... 23

F.R.C.P. § 12(b)(6) ................................................................................................. 4, 17

N.Y. C.P.L.R. § 204(a) ............................................................................................... 20

Plaintiff Gigi Jordan ("Jordan" or "Plaintiff") respectfully submits this memorandum of law in opposition to the motions to dismiss the Amended Complaint by: (i) Defendants Raymond A. Mirra, Jr. ("Mirra"), RAM Capital Group, LLC ("RAM Capital"), RAM Capital II, LLC ("RAM Capital II"), RAM Realty Holdings LLC ("RAM Realty"), Joseph A. Troilo, Jr. ("Troilo"), Joseph T. Molieri ("Molieri"), Bruce Kolleda ("Kolleda"), Mark A. Kovinsky ("Kovinsky"), Joseph J. Tropiano, Jr. ("Tropiano"), Danielle Stewart ("Stewart"), Renee M. Sigloch ("Sigloch"), Bari Kuo ("Kuo"), Frederick Forte ("Forte"), Virginia L. Hall ("Hall"), and Shelly Demora ("Demora")(collectively the "RAM Defendants"); (ii) Bernard Eizen ("Eizen"); and (iii) Patrick Walsh ("Walsh").

## RELEVANT FACTS

Plaintiff respectfully refers the Court to the Amended Complaint for a complete recitation of the facts supporting her claims in this action. Briefly, however, the Amended Complaint alleges – in substance – that:

(i)  During the 1990s, Jordan accumulated millions of dollars of wealth through her entrepreneurial endeavors. Amended Complaint, ¶¶ 28-32.

(ii)  During the same period, Jordan was involved in a personal and business relationship with Defendant Mirra. At Mirra's direction, Defendants Troilo, Molieri, Kolleda, Kovinsky, Eizen, Tropiano, and Walsh managed, controlled, and implemented both Jordan and Mirra's respective business and financial affairs, acting co-equally for Jordan and Mirra as fiduciaries in the execution of their respective duties. Thus, Jordan was caused and induced to trust and rely upon the Defendants in their capacity as her fiduciaries.  Amended Complaint, ¶¶ 28-48, and passim.

(iii)  In 1999, Defendants Mirra, Troilo, Molieri, Kolleda, and Tropiano forged Jordan's signature, or caused it to be forged, on a wire transfer authorization whereby millions of dollars of Jordan's money was wired from a Smith Barney account into an account for a Nevis-based limited liability company called West-Highland LLC ("West Highland"), which at the time was solely owned by Jordan. Then, in 2001, Mirra fraudulently induced Jordan to assign him a 50 percent interest in West Highland, by falsely representing that he had contributed half of the funds on deposit in the West Highland account. Amended Complaint, ¶¶ 89-105.

1

(iv)    Subsequently, beginning in 2002, Defendants Mirra, Troilo, Molieri, Kolleda, Kovinsky, Tropiano, and Walsh – through misrepresentations and forgeries of Jordan's signature – created Merrill Lynch accounts purporting that such accounts were jointly owned and controlled by Jordan and Mirra, and then caused millions of dollars of Jordan's funds to be deposited into those accounts, without Jordan's knowledge or consent. Amended Complaint, ¶¶ 49-77.

(v)     Between 2003 and 2006, Defendants Mirra, Troilo, Molieri, Kolleda, Kovinsky, Tropiano, and Walsh forged Jordan's signature, or caused it to be forged, on wire transfer authorizations that purported to authorize Merrill Lynch to transfer millions of dollars of Jordan's money to or for the benefit of Mirra and various entities owned or controlled by the Defendants. Amended Complaint, ¶¶ 78-80.

(vi)    In addition, between 2005 and 2007, Defendants Mirra, Troilo, Molieri, Kolleda, Kovinsky, Tropiano, and Walsh forged Jordan's signature, or caused it to be forged, on loan applications and wire transfer authorizations through which they caused Merrill Lynch to loan millions of additional dollars to Mirra, RAM Capital, and other entities owned and controlled by the Defendants, and caused the loans to be collateralized with Jordan's assets. Amended Complaint, ¶¶ 81-88.

(vii)   Between 1996 and 2006, Defendants Mirra, Troilo, Molieri, Kolleda, Kovinsky, and Tropiano forged Jordan's signature, or caused it to be forged, on various deeds, mortgage loan applications and sales contracts through which they encumbered and sold various properties owned by Jordan, depriving her of her rightful interest in the proceeds without her knowledge or consent. Amended Complaint, ¶¶ 106-168.

(viii)  In 2008, Defendants Mirra, Troilo, Molieri, Kolleda, and Tropiano fraudulently induced Jordan to enter into a Separation and Distribution Agreement ("SDA") with Mirra depriving her of millions of dollars and assets that were rightfully hers by misrepresenting and fraudulently concealing the value of Jordan's respective assets and causing her to assume liabilities for which she was not responsible. Amended Complaint, ¶¶ 169-263.

(ix)    In connection with the SDA, Mirra, Troilo, Kolleda, and Tropiano fraudulently induced Jordan to execute a putative general release (the "General Release"), which purported to release the Defendants with respect to any claims arising from their fraudulent conduct. Amended Complaint, ¶¶ 264-279.

(x)     In late 2002, Defendants Mirra and Troilo fraudulently divested Jordan of her role as protector of a trust called the Conundrum Trust, thereby preventing her from obtaining an accounting of the assets of the Conundrum Trust. Amended Complaint, ¶¶ 280-297.

Based on the allegations in the Amended Complaint, Plaintiff has asserted: (i) a claim against

Defendant Mirra for breach of contract with respect to promissory notes that falsely were represented

to have been satisfied at the time of the SDA; (ii) a claim against Mirra, Troilo, Molieri, and Kolleda for an accounting; (iii) a claim against Mirra, Troilo, Molieri, Kolleda, Eizen, Kovinsky, Tropiano, and Walsh for common law fraud; (iv) a claim against Stewart, Sigloch, Forte, Hall, Demora, and Kuo for aiding and abetting fraud; (v) a claim against Mirra, Troilo, Tropiano, and Kolleda for fraudulent inducement; (vi) a claim against Mirra, Troilo, Molieri, and Kolleda for breach of fiduciary duty; (vii) a claim against Mirra for breach of warranties; (viii) a claim against all Defendants for unjust enrichment; (ix) a claim against all Defendants for conversion; and (x) a claim against Mirra, Troilo, Kolleda, and Eizen for declaratory relief with respect to the Conundrum Trust.

## ARGUMENT

## I.      Plaintiff's Claims are Not Barred by the Putative General Release

Defendants appear to contend that the General Release is valid and effective – notwithstanding Plaintiff's contention that it was procured through fraud – because Plaintiff's fraudulent inducement allegations supposedly do not plead any fraud that is separate from the release. See RAM Def. Mem., pp. 16-17. For this proposition, Defendants observe that: (i) Plaintiff alleges that Defendants induced her to sign the General Release by falsely representing that certain objectionable language had been deleted, when in fact it had not; yet (ii) the putative General Release itself purports to release Defendants from any claims arising from the "negotiation, execution and delivery of this Release Agreement". Id.

Though Defendants cite to various cases which stand for the general proposition that a plaintiff claiming a release was procured through fraud must plead a fraud separate from the release itself, their argument omits many controlling principles of New York law. See RAM Def. Mem., pp. 16-17.  New York courts have generally held that a general release may be voided based on, inter alia, fraud in the procurement of the release. See, Mangini v. McClurg, 24 N.Y.2d 556, 562 (N.Y.

1969). Moreover, and as in the present case, "for a release to extend to claims both known and unknown, it must have been both fairly and knowingly made ... [t]he requirement of an 'agreement fairly and knowingly made' has been extended... to cover other situations where because the releasor has had little time for investigation or deliberation, or because of the existence of overreaching or unfair circumstances, it was deemed inequitable to allow the release to serve as a bar to the claim of the injured party." Johnson v. Lebanese Am. Univ., 84 A.D.3d 427, 430, 922 N.Y.S.2d 57, 60 (N.Y. App. Div. 2011)(internal quotations and citations omitted).

As a consequence, where the plaintiff pleads that a release was the product of fraud or duress in sufficiently detailed manner, a motion to dismiss is an inappropriate vehicle for resolution of that claim. See, e.g., Newin Corp. v. Hartford Acc. & Indent. Co., 37 N.Y.2d 211, 217 (N.Y. 1975)(where a complaint alleges that the execution of a release was "improperly obtained", that allegation, in and of itself, is sufficient to support a denial of a motion to dismiss a complaint on the basis of such a release.); Ladenburg Thalman & Co., Inc. v. Imaging Diagnostic Systems, Inc., 176 F. Supp. 2d 199, 205 (S.D.N.Y. 2001) ("[u]nder relevant New York case law, mere allegations of fraud in the inducement of a release warrant denial of a motion to dismiss that is grounded on a release"); Steen v. Bump, 233 A.D.2d 583, 584; 649 N.Y.S.2d 731, 732 (N.Y. App. Div. 1996) ("[p]laintiff's factual allegations of fraud in the procurement of the release were sufficient to defeat defendant's ... motion to dismiss the complaint").[1]

---

[1] The Second Circuit has similarly found that where a plaintiff alleges with particularity that it was "induced by fraud into signing [] releases" a motion to dismiss is not the device with which to resolve questions regarding its applicability. Allen v. WestPoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991) (reversing district court's Rule 12(b)(6) dismissal of claims based upon releases that plaintiffs alleged were obtained by fraud). See also C3 Media & Mktg. Group, LLC v. Firstgate Internet, Inc., 419 F. Supp. 2d 419, 429 (S.D.N.Y. 2005) (even where a release is enforceable, "it does not preclude claims for . . . fraudulent inducement, which cannot be released").

In the instant case, Plaintiff has expressly pleaded sufficient facts to make dismissal on the basis of the General Release unwarranted. For instance, and as alleged in the Amended Complaint: (i) Plaintiff objected to certain overbroad language in the General Release; (ii) Plaintiff's counsel communicated those objections to Defendant Troilo, as well as Plaintiff's demand that the objectionable language be stricken; (iii) Defendants Mirra, Troilo, Tropiano, and Kolleda agreed to strike the objectionable language from the General Release, and communicated that agreement to Plaintiff's counsel, who conveyed it to Plaintiff; (iv) even so, Mirra, Troilo, Tropiano, and Kolleda did not strike the objectionable language from the General Release, and instead sent only the signature pages to Plaintiff's counsel; (v) at the same time, Troilo pressed for the executed signature pages to be returned immediately, because a major, time-sensitive transaction depended on it; and (vi) in reliance on Defendants' misrepresentations – and on the fact that Troilo actually was Plaintiff's fiduciary at the time, Plaintiff signed the signature pages. See Amended Complaint,¶¶ 264-279.[2]  Surely, pursuant to the extensive decisional law set forth above, these are facts sufficient to undermine any claim for dispositive relief, and warrant an ultimate determination by a trier of fact.

However, the defendants posit that in addition to the clear mandate of the stare decisis discussed above, the Court's decision in Centro Empresarial Cempresa S.A. v. America Movil, S.A.B. de C.V.Eyeglasses, 17 N.Y.3d 269, 276 (N.Y. 2011), grafts an additional  requirement on the pleading releasor:

---

[2] As set forth in Plaintiff's motion for leave to further amend the Amended Complaint, which is being filed contemporaneously with this memorandum  of law, in the Amended Complaint Plaintiff mistakenly identified  the objectionable language in the General Release that was at issue. The proposed Second Amended Complaint in the present case specifies the objectionable language that actually was at issue, which Plaintiff previously identified in the Second Amended Complaint in the related case entitled Hawk Mountain LLC et al. v. RAM Capital Group LLC et al., D. Del. Case No. 1:13-cv-02083-SLR-SRF.

As the Appellate Division majority explained below (Centro, 76 A.D.3d at 318, 901 N.Y.S.2d 618), a party that releases a fraud claim may later challenge that release as fraudulently induced *only if it can identify a separate fraud from the subject of the release*

In other words, Defendants claim that if a party intentionally misstates the value of assets or liabilities during a settlement, and the parties execute an otherwise proper and legally intact release, the underlying settlement fraud will not alone invalidate the release. In Centro, the plaintiffs challenged the release, whose terms they agreed to with "eyes wide open," on the ground that the defendant "failed to provide them with accurate tax and financial statements for Conecel and were unwilling to negotiate in good faith for a share exchange." 17 N.Y.3d 269, 274-75. This is entirely distinct from the grounds set forth by Plaintiff in the instant Amended Complaint.

Here, Plaintiff pleads a significant number of misstatements and nondisclosures that ultimately induced her to execute the corpus of the SDA.  The complaint *does not* allege that it was any one or more of those frauds that proximately caused here to execute the General Release, and any effort to suggest the contrary is simply misleading. Instead, she has precisely pleaded the "separate fraud" of misrepresentations, nondisclosures, and duplicity regarding the very substance of the General Release, as opposed to the financial misconduct the General Release was designed to cover. Plaintiff objected to the overly broad language included by Defendants, and was assured, by Defendants through her counsel, that it had been removed. Acting in reliance on that discrete misrepresentation, unrelated to the financial fraud, she executed the General Release by signing the signature page forwarded to her. This would appear to be the very model of the "separate fraud" requirement delineated by the court in Centro.  Indeed, any objective assessment leads to the query that if this was not precisely what was contemplated by the Court in Centro, then what else could possibly comprise the requisite "separate fraud"?

Defendants additionally posit that even if this was a misrepresentation separate from the financial fraud, they are entitled to dismissal because there was no justifiable reliance by Plaintiff.

To make out the basic elements of a fraudulent inducement claim, a plaintiff must establish that the reliance on the false representation was justified. Global Mins. & Metals Corp. v. Holme, 35 A.D.3d 93, 98, (N.Y App. Div. 2006). Whether a plaintiff could justifiably rely on a false representation is an issue of fact. Black v. Chittenden, 69 N.Y.2d 665, 669 (N.Y. 1986).

As the New York Court of Appeals held in DDJ Mgt., LLC v. Rhone Group L.L.C., 15 N.Y.3d 147, 155  (2010) "[t]he question of what constitutes reasonable reliance is always nettlesome because it is so fact-intensive." Moreover, "[w]here fraud ... in the procurement of a release is alleged, a motion to dismiss should be denied". Bloss v. Va'ad Harabonim of Riverdale, 203 A.D.2d 36, 37 (1st Dept. 1994).

Despite this clear line of precedent, Defendants assert that Plaintiff's reliance was not justifiable because she did not read the final document, which she has pleaded was not provided to her by Defendants.  As the Court indicated in DDJ Mgt, supra, the circumstances at issue here are "fact-sensitive," and the facts as pleaded foreclose any entitlement to summary relief.

Indeed, and as alleged in the Amended Complaint, Plaintiff did read the draft of the General Release that Defendants actually forwarded to her, and identified and objected to what she perceived as unacceptable language.  See Amended Complaint, ¶ 268. She so advised her attorney, who was negotiating directly with Defendants with respect to her objections. Id. As pleaded, Defendants were exerting incredible time pressure to finalize the SDA, since release of her interests was linked to the closure the next day of another of their business deals.[3] Id., ¶ 272. As a consequence, only the

---

[3] Another fraud pleaded in the Amended Complaint, ¶¶ 176- 184, whereby Allion Healthcare, Inc. acquired Biomed America, Inc., and its subsidiaries, companies which Jordan and Mirra jointly held substantial interests.

signature pages for *all* the components of the SDA were forwarded to her by Defendants, having already been endorsed by Defendant Mirra. There was indeed, at that juncture, nothing to read, since Defendants did not send full copies of the respective agreements to Plaintiff's attorneys *before* the execution of the signature pages. It is this specific factual pyramid which distinguishes the instant case from those "didn't-read-the-document" cases cited by Defendants. The plaintiff had done precisely what the law appears to require - read and review the General Release as propounded to her by the Defendants. In the total absence of any fact that would have alerted her to Defendants' fraudulent scheme, she was assured by her own counsel that the challenged language had been removed by Defendants, several of whom themselves had been and would continue to be Plaintiff's fiduciaries. To interpret the law to conclusively require Plaintiff to disregard the assurances of her fiduciaries and attorneys, and supplant their advice by reviewing a document unavailable to her, would be to define justifiable reliance beyond all cognizable bounds.

Accordingly, Defendants' motions should be denied.

## II.     Plaintiff's Claims are Not Barred by the Statutes of Limitation

The Defendants go on to argue that all of Plaintiff's claims except for her declaratory judgment claim are barred by the applicable statutes of limitation. For several reasons, Defendants are wrong.

### A.     Defendants' Misstate Many of the Pertinent Statutes of Limitation

Initially, Defendants misstate many of the pertinent statutes of limitation in their motion papers.

### 1.     The Statute of Limitations for Plaintiff's Third Cause of Action for Common Law Fraud is the Later of Six Years or Two Years After Discovery, Not Three Years

Defendants argue that Plaintiff's Third Cause of Action for common law fraud essentially is a dressed-up claim for conversion and therefore should be subject to New York's three-year statute of

limitations for conversion, rather than New York's statute of limitation for fraud, which is the later of six years or two years following discovery. See RAM Def. Mem., pp. 30-31. The central premise behind Defendants' argument is that Plaintiff has not alleged that she individually relied upon misrepresentations regarding the transfer or encumbrance of her assets, which were accomplished through the forgery of her signature. Id.

Defendants are wrong, inasmuch as they omit to mention that Plaintiff has alleged third-party reliance on Defendants' misrepresentations. For instance, Plaintiff has alleged facts indicating that: (i) Merrill Lynch relied upon Defendants' forgeries to create accounts in Plaintiff's name, without her knowledge or consent (see Amended Complaint, ¶¶ 56-59, 70-77); (ii) Merrill Lynch and  Smith Barney relied upon Defendants' forgeries to wire large sums of Plaintiff's money from her accounts to or for the benefit of Defendants, without Plaintiff's knowledge or consent (see id., ¶¶ 70-80, 103-104); (iii) Merrill Lynch relied upon Defendants' forgeries to extend loans to or for the benefit of Defendants that were collateralized with Plaintiff's assets, without her knowledge or consent (see id., ¶¶ 81-88); (iv) various banks, purchasers, and municipal property recording offices relied upon Defendants' forgeries to permit the encumbrance and transfer of Plaintiff's real property, without Plaintiff's knowledge or consent (see id., ¶¶ 106-168).

Defendants make much of the fact that New York law governs Plaintiff's claims in this case, including her fraud claims. See RAM Def. Mem., p. 10, 13, and passim. It therefore is important to emphasize that – in New York – fraud claims may be predicated on third-party reliance, where such reliance causes injury to a plaintiff. For instance, in Prestige Builder & Mgmt. LLC v. Safeco Ins. Co. of Am., 896 F. Supp. 2d 198, 203 (E.D.N.Y. 2012), the District Court – interpreting New York law – observed that:

The doctrine of third-party reliance operates as an exception to the normal justifiable reliance element of common law fraud. While the plaintiff alleging fraud must normally show that it reasonably relied upon a misrepresentation made by the defendant to its detriment, the doctrine of third-party reliance permits the plaintiff to show that a third-party relied upon a misrepresentation by the defendant, which resulted in injury to the plaintiff.

There is ample additional authority on this point; both the Federal courts in this Circuit and the New York state courts have repeatedly held that "[u]nder New York law, 'fraud... may... exist where a false representation is made to a third-party, resulting in injury to the plaintiff.'" O'Brien v. Argo Partners, Inc., 736 F.Supp.2d 528, 537 (E.D.N.Y. 2010), aff'd 426 Fed. Appx. 36, 2011 WL 3805744 (2d Cir. 2011), quoting Ruffing v. Union Carbide Corp., 308 A.D.2d 526, 764 N.Y.S.2d 462, 465 (N.Y. App. Div. 2003)); see also Liberty Life Assurance Co. v. Bahan, 2010 WL 3431147, *2 n.4 (S.D.N.Y. 2010), aff'd 441 Fed. Appx. 21, 2011 WL 4552424 (2d Cir. 2011)("New York law has recognized that a fraud claim may lie where the false misrepresentation was made to a third party, which results in injury to the plaintiff.")(Internal citations omitted).

For instance, in N.B. Garments (PVT.), Ltd. v. Kids Int'l Corp., 2004 U.S. Dist. LEXIS 3774 at  * 1 (S.D.N.Y. 2004), the defendants drafted a fraudulent bill of lading, with the intent to induce a third party to deliver goods to them rather than the plaintiff. As a result, the defendants acquired the goods belonging to the plaintiff without paying for them. Id. The defendants argued that the fraud claim should be dismissed because a third party rather than the plaintiff had relied upon their misrepresentations. Id. at * 3. The court found that this argument was without merit, because "New York law has, since the 1800's, allowed for fraud claims based on third-party reliance." Id. at *3 n.5; see also Chevron Corp. v. Donziger, 871 F.Supp.2d 229, 256 (S.D.N.Y 2012)(rejecting application of authority to the contrary, and holding that  "the New York Court of Appeals' previous decisions allowing recovery for common law fraud based on third party reliance remain authoritative and, in any case, that that Court, were it faced with the question anew, would adhere to that position.")

10

Accordingly, since the "third-party reliance" doctrine remains the controlling law in New York, Plaintiff's claims are facially sustainable principally as common law fraud. The fact that they are alternately pleaded as conversion is of no dispositive significance. In any case, Plaintiff not only has alleged facts indicating third-party reliance on Defendants' fraudulent misrepresentations, but also has alleged facts demonstrating that she individually relied on Defendants' misrepresentations. For instance, Plaintiff alleges: (i) that she relied on false statements by the Defendants regarding the nature and extent of her interests in various assets; (ii) that she relied on statements by Walsh regarding the fraudulent creation of joint Merrill Lynch asset and loan accounts. See Amended Complaint, ¶¶ 45-46, 69, 134, 171, 205, 211, 214, 217, 230, 236, 240-241, 243, 252, and 262.[4]

**2.      The Statute of Limitations for Plaintiff's Sixth Cause of Action for Breach of Fiduciary Duty is Six Years, Not Three Years**

Defendants note that, in New York, a claim for breach of fiduciary duty that seeks only money damages is ordinarily three years. See RAM Def. Mem., pp. 32-33. Defendants, however, omit to mention that a six-year limitations period applies where – as in the present case – the breach

---

[4] In this context, it is worthwhile to note that Defendants appear to contend – in the alternative – that Plaintiff "discovered" her fraud claims on March 13, 2008, the date when Plaintiff executed the SDA, and that the claims therefore are untimely. See RAM Def. Mem., p. 20, and passim. However, Plaintiff has alleged that Defendants were her fiduciaries, that they went to considerable lengths to conceal their fraud – including in the SDA, itself – and that, as a result, she did not begin to discovery Defendants' fraudulent conduct until early 2010. See Amended Complaint, passim. In this context, there is no question but that the inquiry into the time a plaintiff actually discovered or could have discovered the fraud is a "mixed question of law and fact, "and the "reasonable diligence" inquiry is fact-intensive and case-specific. "[E]ach case presents a universe of unique facts which must be evaluated in order to determine whether the alleged fraud should have been discovered." Topps Co. v. Cadbury Stani S.A.I.C., 380 F. Supp. 2d 250, 258 (S.D.N.Y. 2005)(applying New York law); Trepuk v. Frank, 44 N.Y.2d 723, (1978); Azoy v. Fowler, 57 A.D.2d 541,393 N.Y.S.2d 173 (2d Dept. 1977). Accordingly, the complaint in a fraud action should not be dismissed on motion "[w]here it does not conclusively appear that a plaintiff had knowledge of facts from which the fraud could reasonably be inferred". Instead such determinations should "be left to the trier of fact." Sargiss v. Magarelli, 12 N.Y.3d 527, 532 (N.Y. 2009)(internal quotations and citations omitted).

of fiduciary duty is predicated on allegations of actual fraud. See, e.g., Klein v. Gutman, 12 A.D.3d 417, 419 (N.Y. App. Div. 2004) ("while suits alleging breach of fiduciary duty which seek only money damages have been viewed as alleging 'injury to property' to which a three-year statute of limitations applies … it has been held that where, as here, a cause of action alleging breach of fiduciary duty is based on allegations of actual fraud, it is subject to a six-year limitations period"); Kaufman v. Cohen, 307 A.D.2d 113, 119 (N.Y. App. Div. 2003)(same).

3.    **The Statute of Limitations for Plaintiff's Eighth Cause of Action for Unjust Enrichment is Six Years, Not Three Years**

Defendants go on to contend that Plaintiff's Eighth Cause of Action for unjust enrichment supposedly is subject to a three-year statute of limitations, because it seeks only money damages. See RAM Def. Mem, p. 33. Defendants are incorrect. Plaintiff's unjust enrichment claim does not only seek money damages. Rather, it also seeks appropriate equitable relief. See Amended Complaint, p. 83 (seeking not only money damages via the unjust enrichment claim, but also "such other and further relief" as the Court deems just and proper). In any case, "[w]hile New York courts have occasionally applied a three-year statute of limitations to unjust enrichment claim, they more commonly apply a six-year statute of limitations." Ross v. Thomas, 2010 U.S. Dist. LEXIS 107748 at * 20 (S.D.N.Y. 2010)(collecting cases).

Accordingly, Defendants' motions should be denied.

B.    **Plaintiff's First Cause of Action for Breach of Contract on Promissory Notes is Not Barred by the Statute of Limitation**

Defendants contend that Plaintiff's First Cause of Action, interposed exclusively against Defendant Mirra, is entirely barred by New York's statute of limitations. See RAM Def. Mem., p. 28. This argument ignores several key facts and legal principles.

In the first instance, each of the eight promissory notes was executed unilaterally by defendant Mirra. Plaintiff was not a signatory to any one of the eight, nor do any of the notes bear any written acknowledgement by her.[5] See Raskopf Decl., Exhibit "E", Docket No. 114. In fact, Plaintiff was not aware of their existence until sometime in 2011.

Moreover, as the Amended Complaint specifically sets forth, "Defendants Mirra, Troilo, Kolleda, and Tropiano represented that all of Mirra's financial obligations to Jordan prior to January 31, 2003 had been fully satisfied and resolved." See Amended Complaint, ¶ 258. Mirra did not disclose the existence of these unilateral promissory notes, nor did he or his agents provide Plaintiff with copies of them, either to reveal their existence or document that they had been satisfied. The Amended Complaint additionally alleges that Mirra and his associates did send documents and statements which purported to confirm that all of Mirra's liabilities to Jordan had been satisfied. As set forth at para. 260, "[e]ach and all such statements and financial schedules were false and fraudulent because Mirra had not satisfied his obligations to pay Jordan substantial amounts due to her under several promissory notes that remained outstanding as of the SDA Agreements."

In addition, the Amended Complaint consistently alleges that defendant Mirra, Plaintiff's business partner and co-principal in many of the RAM-related companies, was her fiduciary. See, e.g., Amended Complaint, ¶¶ 3, 48, 278-279, 303, 327.

These facts warrant the application of equitable tolling/equitable estoppel with respect to the six-year statute of limitations. See Section III.C, infra.

In addition, the very language contained in the notes precludes summary application of any statute of limitations bar. The following language is contained in the October 15, 1997 note:

---

[5] As the Court may note, two of the eight notes purport to bear widely disparate versions of Plaintiff's signature. See Raskopf Decl., Exhibit "E", pp. 22, 39. Plaintiff expects to demonstrate, at trial or on any motion for summary judgment, that her purported "signatures" on these two notes were forged.

> WAIVERS. I give up my right to require that the Lender do the following: a) to demand payment; b) to notify me of nonpayment, dishonor, or protest; and c) *be diligent in collecting or in bringing suit against Borrower, and I agree to any and all extensions with or without notice*, before or after maturity. If this Note is placed in the hands of an atomic for collection, I agree to pay Lender's reasonable attorney's fees not in excess of 15% of the paid principal and interest balance due under the terms of this Note.

<u>See</u> Raskopf Decl., Exhibit "E-1" (emphasis added).

Similarly, in the March 3, 1998, notes, Mirra stated that:

> I give up my right to require that the Lender do the following: a) to demand payment; b) to notify me of nonpayment, dishonor, or protest; c) *be diligent in collecting or in bringing suit against Borrower; and I agree to any and all extensions with or without notice, before or after maturity*.

<u>See</u> Raskopf Decl., Exhibit "E-2" and "E-3" (emphasis added).

The notes dated March 25, 1998, May 14, 2008, and September 11, 1998, contains this language:

> Lender shall be entitled to pursue any and all rights and remedies provided by applicable law and/or under the terms of this Note, all of which, shall be cumulative and may be exercised successively or concurrently. *Lender's delay in exercising or failure to exercise any rights or remedies to which Lender may be entitled if any Event of Default occurs shall not constitute a waiver of any of Lender's rights or remedies with respect to that or any subsequent event of Default, whether of the same or a different nature* …

<u>See</u> Raskopf Decl., Exhibit "E-4", "E-6", and "E-7" (emphasis added).

Similar language appears in the May 4, 1998 and October [undated] 1998 notes:

> If any sum of money herein referred to be not promptly paid within thirty (30) days next after the same becomes due, or if each and every the agreements, stipulations, conditions and covenants of said Note and this Mortgage, or either, are not fully performed, complied with and abided by, then the entire sum mentioned in said Note and said Mortgage, or the entire balance unpaid thereon, shall forthwith or thereafter, at the option of the Mortgagee, become due and payable, anything in said Note or herein to the contrary notwithstanding. Failure by the *Mortgagee to exercise any of the rights or options herein provided shall not constitute a waiver of any rights or options under said Note or this Mortgage accrued or thereafter accruing.*

<u>See</u> Raskopf Decl., Exhibit "E-8" and "E-8" (emphasis added).

It appears that there is language in each of these notes in which Mirra waives his right to be timely sued for nonperformance and nonpayment. Since there is no requirement to be "diligent" in

bringing a suit beyond the requirements in the statute of limitations, Mirra's waivers in the notes are consonant with a waiver of the statute of limitations.  So too is the language forgiving "Lender's delay in exercising or failure to exercise any rights or remedies to which Lender may be entitled" in the event of a default, and the language allowing that the "failure to exercise any of [Plaintiff's] rights" will not constitute a waiver of some future exercise of the same rights or remedies.

Each of the notes includes either an express choice of law provision, or a reference to state's law governing a particular provision. The October 15, 1997 note ("E-1") invokes the law of the state of Pennsylvania, while the remainder submit to adjudication under the laws of Florida. While it is clear that the New York statute of limitations applies to the notes, the construction and interpretation of the notes' content falls within the legal ambit of the jurisdiction referenced in the note itself.

Plaintiff submits that at the very least, there is ambiguity is the meaning of the terms "diligent" in "bringing suit" and "delay in exercising or failure to exercise rights" to recover the monies owed.  Under both Florida and Pennsylvania law, questions as to the meaning of critical terms in a contract must be reserved for the jury's consideration. See, e.g., First Nat'l Bank v. Gay, 694 So. 2d 784, 788 (Fla. Dist. Ct. App. 4th Dist. 1997)(where the interpretation of an ambiguous contractual term is in dispute, the question is for the jury); Donau Furnier, GmbH v. M&T Veneer Corp., 715 F. Supp. 2d 604, 608 (M.D. Pa. 2010)(ambiguous contract presents a question for the jury).

Put another way, this Court should not grant summary relief on the basis of a statute of limitations where there is a cognizable question of fact as to Mirra's intention to waive any such defense on the face of the notes.

**C.    The Applicable Statutes of Limitation on Plaintiff's Claims are Subject to Equitable Tolling**

What is more, the applicable statutes of limitation on <u>all</u> of Plaintiff's claims are subject to equitable tolling, and the Defendants should be equitably estopped from asserting them as a defense to Plaintiff's claims.

Under New York law, the doctrines of equitable tolling or equitable estoppel may be invoked to defeat a statute of limitations defense where the plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action. <u>See</u>, <u>e.g.</u>, <u>Simcuski v. Saeli</u>, 377 N.E.2d 713, 716 (N.Y. 1978); <u>Gleason v. Spota</u>, 194 A.D.2d 764, 765 (N.Y. App. Div. 1993). New York does not distinguish between the doctrines of equitable estoppel and equitable tolling, and applies the same analysis to both doctrines. <u>See</u>, <u>e.g.</u>, <u>Corporate Trade, Inc. v. Channel</u>, 563 Fed. Appx. 841, 841 (2d Cir. 2014). Specifically, in determining whether the doctrines apply in a given case, courts consider whether a plaintiff has shown "reliance … on the alleged misrepresentations as the cause of [the] failure sooner to institute the action … and … justification for such reliance." <u>N.Y. Cent. Mut. Fire Ins. Co. v. Edwards</u>, 2009 U.S. App. LEXIS 1783 (2d Cir. 2009), <u>quoting</u> <u>Saeli</u>, <u>supra</u>. In this context, "[d]ue diligence on the part of the plaintiff in bringing his action is an essential element for the applicability of the doctrine of equitable estoppel, to be demonstrated by the plaintiff when he seeks the shelter of the doctrine." <u>Drake v. Lab. Corp. of Am. Holdings</u>, 2007 U.S. Dist. LEXIS 17430 at * 20 (E.D.N.Y. 2007), quoting <u>Saeli</u>, <u>supra</u>.

Importantly, where a plaintiff and a defendant are in a fiduciary relationship, the plaintiff need not show any affirmative act of misrepresentation or concealment in order to make out an estoppel. Rather, "[w]here concealment without actual misrepresentation is claimed to have prevented a plaintiff from commencing a timely action, the plaintiff must demonstrate a fiduciary relationship … which gave the defendant an obligation to inform him or her of facts underlying the

claim." St. John's Univ. v. Bolton, 757 F. Supp. 2d 144, 186-187 (E.D.N.Y. 2010)(internal quotations and citation omitted); see also Porwick v. Fortis Benefits Ins. Co., 2004 U.S. Dist. LEXIS 24432 at * 19 (S.D.N.Y. 2004)("Equitable estoppel requires a showing that defendant made an actual misrepresentation unless the parties have a fiduciary relationship, in which case, concealment without actual misrepresentation will suffice.")

Considering that such tolling/estoppel issues present questions of fact, they generally should not be resolved at the pleading stage. See, e.g., Philan Ins. v. Frank B. Hall & Co., 215 A.D.2d 112, 112, (N.Y. App. Div. 1995)("The fourth and fifth causes of action … should not have been dismissed as time-barred, since there was a factual question, not ripe for resolution at the pleading stage, as to whether the doctrine of equitable estoppel should apply … ."); Proceeding v. Kreuger, 203 A.D.2d 133, 134 (N.Y. App. Div. 1994) (reversing dismissal of conversion claim on limitations grounds where plaintiff asserted an estoppel , and ruling that "[w]hether respondent should be equitably estopped from pleading the statute of limitations in these circumstances is a question of fact to be determined on the trial of the proceeding"); see also Drennan v. PNC Bank, NA, 622 F.3d 275, 301-302 (3d Cir. 2010)(since "the question [of] whether a particular party is eligible for equitable tolling generally requires consideration of evidence beyond the pleadings, such tolling is not generally amenable to resolution on a Rule 12(b)(6) motion."); Cunningham v. M&T Bank Corp., 2013 U.S. Dist. LEXIS 155478 at * 12 (M.D. Pa. 2013)("Because questions of tolling inherently involve reasonableness inquiries, tolling is not generally amenable to resolution on a Rule 12(b)(6) motion.")(Internal quotations and citation omitted); Abert v. RehabCare Group Inc., 2013 U.S. Dist. LEXIS 51450 at * 15 (W.D. Pa. 2013)("application of equitable tolling doctrines is rarely to be resolved" on a motion to dismiss).

In the present case, the allegations in the Amended Complaint are more than sufficient to establish the elements of equitable estoppel/equitable tolling. First, it is clear from the Amended Complaint that the Defendants were in a fiduciary relationship with Plaintiff. See, e.g., Amended Complaint, ¶¶ 3 (alleging that Defendants Mirra, Troilo, Molieri, Kolleda, Eizen, Kovinsky, Tropiano, RAM Capital, RAM Realty, and Walsh abused their positions of trust to enact their fraudulent scheme), 48, 278-279 (alleging that the Defendants managed Plaintiff's business and financial affairs), 303, 327 (alleging that Mirra, Troilo, Molieri, and Kolleda were in a fiduciary relationship with Plaintiff. Thus, Defendants' failure to disclose their scheme obviates the need for Plaintiff to show any affirmative act of misrepresentation or concealment in order to make out her entitlement to equitable estoppel/equitable tolling.

Even so, the Amended Complaint also contains numerous allegations regarding Defendants' affirmative acts of misrepresentation and concealment that go far beyond mere nondisclosure. For instance, Plaintiff alleges with particularity that Defendants: (i) forged Jordan's signature on dozens of documents in order to siphon off Plaintiff's assets for their own benefit, without Jordan's knowledge (Amended Complaint, ¶¶ 49-169 and passim); (ii) caused Jordan's assets to be invested in various entities that they falsely claimed were jointly owned by Jordan and Mirra, when in fact they were not (id., ¶¶ 33-48, and passim); (iii) falsely represented that RAM Capital and various other entities in which Jordan supposedly had a 50 percent interest had no value, or less value than they actually had (id., ¶¶ 169-256, and passim); (iv) falsely represented that Mirra's financial obligations to Jordan for the period prior to January 31, 2003 had been satisfied (id., ¶¶ 257-263); and (v) falsely represented that the General Release language had been stricken from the SDA, when in fact it had not been stricken (id., ¶¶ 264-279).  Plaintiff has set forth the dates on which Defendants

forged Jordan's signature on the various documents, as well as the dates on which the Defendants made the various misrepresentations to Jordan. <u>See</u> Amended Complaint, <u>passim</u>.

In this respect, Plaintiff has pleaded the circumstances of Defendants' acts of fraudulent concealment with granular specificity. In any case, Plaintiff has alleged that the Defendants were her fiduciaries, and so their failure to disclose their fraudulent scheme would be sufficient to meet the estoppel/tolling requirements even in the absence of an affirmative act of misrepresentation or concealment.

Plaintiff also has alleged facts demonstrating that – under the circumstances – she exercised due diligence in bringing this action. In this context, the diligence inquiry focuses on whether a plaintiff establishes that "the action was brought within a reasonable time after the facts giving rise to the estoppel have ceased to be operational." <u>Saeli</u>, <u>supra</u>, 44 N.Y.2d at 450. Whether a plaintiff has acted with due diligence "must necessarily depend on all the relevant circumstances," <u>id</u>.; in general, the length of the statute of limitations — measured from the time the basis for the estoppel ends – "sets an outside limit on what will be regarded as due diligence." <u>Id</u>. at 451.

Against this backdrop, Plaintiff alleges facts indicating that the Defendants remained her fiduciaries through late 2009, and that she did not begin to discover Defendants' fraudulent scheme until early 2010. <u>See</u> Amended Complaint, ¶¶ 45-48, 251, 279, 285, and <u>passim</u>. Thus, the facts giving rise to the equitable estoppel/tolling did not cease to be operational until early 2010, at the earliest.

In this context, the circumstances surrounding the commencement of this action, and the amendment of Plaintiff's Complaint, demonstrate that Plaintiff acted with the requisite due diligence. For instance, and as set forth above, Plaintiff did not begin to discover Defendants' fraudulent scheme until early 2010. As Defendants are at pains to emphasize – despite the broader irrelevance of

the point – Plaintiff was arrested in early 2010 in connection with the tragic death of her son. See RAM Def. Mem., pp. 1, 2, 3. Since that time, Plaintiff has been incarcerated – a fact subject to judicial notice and consideration in the context of Defendants' motions to dismiss.

Though Plaintiff's discovery of Defendants' fraudulent scheme in early 2010 coincided with her arrest and incarceration, and though Plaintiff has been incarcerated since that time, she nonetheless moved as quickly as possible to investigate the facts, commence this action, and amend her Complaint. For example, Plaintiff commenced this litigation against Defendant Mirra, only, on March 9, 2012 in the Southern District of New York. See Docket No. 1. Almost immediately thereafter, in late April 2012, the New York District Attorney moved to stay this action, arguing – in substance – that continued proceedings could prejudice his criminal case against Plaintiff. See Docket Nos. 15-16. On May 17, 2012, the S.D.N.Y. District Court granted District Attorney's motion and stayed this case, and the stay remained in effect until February 19, 2015, when it was vacated by this Court. See Docket No. 82. Plaintiff filed her Amended Complaint on March 9, 2015, within one month after the stay was lifted. See Docket No. 84.

Plaintiff respectfully submits that she could not have amended her Complaint in this case to assert the claims Defendants now contend to be time barred while the stay of this case remained in effect. Considering that the question of whether a plaintiff has acted with due diligence "must necessarily depend on all the relevant circumstances", Saeli, supra, the circumstances regarding Plaintiff's incarceration and the subsequent long-term stay of this case certainly militate in favor of a determination that Plaintiff acted with due diligence. This is especially so given that Plaintiff moved so expeditiously to amend her Complaint once the stay finally was lifted. Of course, in New York, where the commencement of an action has been stayed by a court order, the statutes of limitation do not run during the pendency of the stay. See, e.g., N.Y. C.P.L.R. § 204(a)("Where the

commencement of an action has been stayed by a court or by statutory prohibition, the duration of the stay is not a part of the time within which the action must be commenced."); Levin v Epshteyn, 990 N.Y.S.2d 438, fn. 5 (N.Y. Sup. Ct. 2014)(rejecting contention that claims in amended complaint against newly-added defendant were untimely, where automatic bankruptcy stay had tolled the pertinent statute of limitations),

Furthermore, even if Plaintiff had not had to investigate Defendants' fraud while limited by her incarceration, and even if this case had not been stayed for almost three years, Plaintiff nonetheless asserted the bulk of her claims within the applicable statutes of limitation, measured from the time the basis for the estoppel ended. Specifically, and as set forth above, Plaintiff did not begin to discover Defendants' scheme until early 2010. She filed her Amended Complaint on March 9, 2015. See Docket No. 84. Thus, her claims for breach of contract, for an accounting, and for common law fraud, aiding and abetting fraud, breach of fiduciary duty, breach of warranties, unjust enrichment, and declaratory relief plainly were brought with the requisite due diligence, inasmuch as all of these claims have a six-year statute of limitations, and all of these claims were brought within six years after the basis for the estoppel ended. Indeed, these claims would have been brought even sooner, except that the stay of this action prevented Plaintiff from amending her Complaint earlier.

Accordingly, Defendants' motions should be denied.

### III.    Plaintiff's Claim for Declaratory Relief is "Valid"

Defendants go on to posit that Plaintiff has not stated a claim for declaratory relief. See RAM Def. Mem., pp. 34-36. Defendants advance two arguments for this proposition. First, they contend that there is no independent cause of action for a declaratory judgment. Second, they argue that Plaintiff lacks standing to assert the claim. Neither argument has any merit.

Decisions declaratory judgment claims typically are predicated on the fact that the Declaratory Judgment Act does not create an independent basis for subject matter jurisdiction, yet the claims for declaratory judgments were the only claims in the underlying cases. See, e.g., Moore v. Democratic County Exec. Comm. of Phila., 2014 U.S. Dist. LEXIS 157182 at * 19 - * 20 (E.D. Pa. 2014)("[T]he federal Declaratory Judgment Act is procedural and is not an independent basis for federal jurisdiction, so this action cannot proceed as a declaratory judgment action alone,"); Mazzoccoli v. Merit Mountainside LLC, 2012 U.S. Dist. LEXIS 180721 at * 9 (D.N.J. 2012) (dismissing case where the only remaining cause of action was under the Declaratory Judgment Act). Of course, in the present case, Plaintiff does not rest her claim of subject matter jurisdiction on the Declaratory Judgment Act, nor is Plaintiff's declaratory judgment claim the only claim in this case.

In addition, Plaintiff has alleged facts that give her standing to assert the declaratory judgment claim. As the Court may note, Plaintiff seeks a declaration to the effect that – among other things – she was improperly removed as the protector of the Conundrum Trust, and she therefore presently remains the protector of the Conundrum Trust, with all of the rights and responsibilities attendant thereto. See Amended Complaint, ¶¶ 344-351. In this context, Defendants do not point to any cases which stand for the proposition that a trust protector lacks standing to challenge her fraudulent removal from such an office.

Accordingly, Defendants' motions should be denied.

## IV.   Plaintiff's Fraud-Based Claims Against Defendant Walsh are Pleaded With the Requisite Specificity

Defendant Walsh independently contends that Plaintiff's fraud-based claims against him are not pleaded with the requisite specificity. See Walsh Mem., pp. 9-12. At bottom, Walsh posits that Plaintiff improperly has engaged in "group pleading", because Plaintiff has not alleged which individual Defendant actually put pen to paper to forge Jordan's signature on a given document, or

performed the ministerial act of pressing the "send" button on a wire transmission or dropping a fraudulent letter into the mailbox. Walsh is wrong.

It is clear that the fact that a plaintiff "has not differentiated among defendants in some instances does not warrant dismissal of the pleading where plaintiff alleges that all of the defendants … acted to facilitate a general scheme." Sunset Fin. Res., Inc. v. Redevelopment Group V, LLC, 417 F. Supp. 2d 632, 645, fn. 19 (D.N.J. 2006), quoting Shulton, Inc. v. Optel Corp., 1986 U.S. Dist. LEXIS 19775 at * 53 (D.N.J. 1986). Indeed, "provided a plaintiff alleges sufficiently particularized allegations, there is no per se rule that group pleading cannot satisfy Rule 9(b)." MBIA Ins. Corp. v. Royal Indem. Co., 2004 U.S. Dist. LEXIS 6609 at * 8 (D. Del. 2004).  To the contrary, "[w]hile the purpose of Rule 9(b) is to provide notice of the precise misconduct, courts should … apply the rule with some flexibility and should not require plaintiffs to plead issues that may have been concealed by the defendants. … Accordingly, the particularity rule is somewhat relaxed when factual information remains within the defendant's control." In re Processed Egg Prods. Antitrust Litig., 851 F.Supp.2d 867, 880 (E.D. Pa. 2012) (internal quotations and citation omitted).

The Third Circuit's decision in Grant v. Turner, 505 Fed. Appx. 107 (3d Cir. 2012) is a case in point. In Grant, plaintiff travel club members asserted civil RICO claims against defendant travel club operators and a credit card company, alleging that the operators and credit card company committed predicate acts of mail and wire fraud. Id., 505 Fed. Appx. at 109-110. The District Court dismissed the RICO claims, finding that "by lumping all [the Travel Club Defendants] together and naming them as a group, each defendant has not been properly or sufficiently placed on notice of the exact nature of the claims asserted, as these claims apply to each defendant." Id., 505 Fed. Appx. at 112.  The Third Circuit affirmed the District Court with respect to one of the operators and the credit card company, determining that the plaintiffs had "not specifically alleged how either party played a

role in committing the predicate acts of fraud . . . .” Id.  However, the Third Circuit vacated and

remanded with respect to the other operator-defendants, because:

> Although Plaintiffs do not allege who, specifically, made misrepresentations to whom in all
> cases, they include many other details to inject precision or some measure of substantiation
> into [their allegations of fraud]. … Examining the allegations set forth in the SAC, it is clear
> that the Travel Club Defendants were on notice of the precise misconduct with which they
> [were] charged. … Furthermore, particularly in a case like this, where Plaintiffs allege that
> Defendants deliberately concealed the identities of salespeople and agents, Plaintiffs simply
> cannot allege who, in particular, made the misrepresentation absent discovery.

Id. (Internal quotations and citations omitted)(emphasis in original).

Other cases are in accord. See, e.g., Emcore Corp. v. PricewaterhouseCoopers LLP, 102 F.

Supp. 2d 237, 249-250 (D.N.J. 2000)(rejecting “defendants’ argument that plaintiff has

impermissibly grouped them together in violation of Fed. R. Civ. P. 9(b)”, where plaintiff alleged

“the date, place, speakers and content of the alleged misrepresentations; such is sufficient at this stage

to allow the defendants to prepare their strategy.”); Killian v. McCulloch, 850 F. Supp. 1239, 1254

(E.D. Pa. 1994)(denying motion to dismiss where plaintiffs alleged details of 11 specific

misrepresentations, but did not indicate which defendant made each).

More generally, Walsh posits that the Amended Complaint somehow is defective because

Plaintiff supposedly has not sufficiently alleged “(1) how Walsh became aware that Jordan would

soon receive more than $14 million in connection with the sale of one of her companies; (2) how,

when and to whom Walsh misrepresented that he had authority to open the First and Second Jordan-

Mirra Joint Accounts; (3) how the funds were allegedly converted; and (4) most significantly, how

Jordan failed to notice that the proceeds from that $14 million sale was deposited into an the [sic]

First Jordan-Mirra Joint Account.” See Walsh Mem., p. 11. However, and as the Court may note,

Plaintiff has alleged to whom, and approximately when, Walsh misrepresented that he had the

authority to open the First and Second Jordan-Mirra Joint Accounts – namely, he made the

misrepresentations to Merrill Lynch on or about April 26, 2002. <u>See</u> Amended Complaint, ¶¶ 56-59. Moreover, Plaintiff <u>has</u> alleged how the funds were stolen from her accounts – namely, through the Defendants' forged and fraudulent wire transfer authorizations. <u>Id.</u>, ¶¶ 78, <u>et</u> <u>seq</u>. What is more, Plaintiff <u>has</u> alleged facts demonstrating why she did not notice that the proceeds from the $14,650,000.00 sale had been deposited into the First Jordan-Mirra Joint Account. Namely, she has alleged that the Defendants were purporting to act as her fiduciaries and were responsible for handling every aspect of her business and financial affairs. <u>Id.</u>, ¶¶ 40, 278-279, 303, 327, and <u>passim</u>.

Accordingly, Walsh's motion should be denied.

## V.   Plaintiff's Claims Against Defendant Walsh are Not Subject to Arbitration

In addition, Defendant Walsh contends that Plaintiffs' claims are arbitrable, to the extent that they are asserted against him based on arbitration provisions set forth in certain bank opening documents entered into by Gigi Jordan. <u>See</u> Walsh Mem., pp. 13-18.  Walsh improperly seeks to invoke arbitration provisions in certain asset management account agreements purportedly agreed to by Plaintiff when she first commenced her relationship with Merrill Lynch.  Even if Plaintiff entered into such agreements, Walsh cannot compel arbitration on the basis of those agreements with regard to: (i) the forgeries and fraudulent transfers that involved entirely separate accounts, created without Plaintiff's knowledge, based on forged or fraudulent account opening documents; or (ii) the forged and fraudulent loan management accounts and mortgages established by Defendants to encumber Plaintiff's assets without her knowledge, authorization or consent.

While ordinary contract principles, including agency, may entitle a non-signatory to an arbitration agreement to enforce the agreement (<u>see</u>, <u>e.g.</u>, <u>Butto v. Collecto Inc.</u>, 845 F. Supp. 2d 491, 495 (E.D.N.Y. 2012)), Walsh cannot legitimately contend that he was acting within the scope of his agency for Merrill Lynch when he conspired with his co-Defendants to siphon away Plaintiff's assets

through a pattern of forgery and fraud. Rather, "[a]n employee's act is not within the scope of employment when it occurs within an independent course of conduct not intended by the employee to serve any purpose of the employer." Restatement (Third) of Agency § 7.07(2); see also Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 756-57 (1998)(noting that an intentional tort is generally outside the scope of an employee's employment unless motivated by a desire to serve the employer's purposes).

Given the facts alleged in the Amended Complaint, accepted as true for purposes of this motion, Plaintiff respectfully submits that the Court must determine, in the first instance, following discovery, whether Walsh was acting as Merrill Lynch's agent when he conspired to steal Plaintiff's money. See, e.g., Dun Shipping Ltd. v. Amerada Hess Shipping Corp., 234 F. Supp. 2d 291, 294 (S.D.N.Y. 2002)("Discovery warranted as to "the question of arbitrability itself."); see also Guidotti v. Legal Helpers Debt Resolution, L.L.C., 716 F.3d 764, 776 (3d Cir. )("[I]f the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on [the] question.")(Internal quotations and citation omitted).

Moreover, it is well-settled under the Federal Arbitration Act that arbitration agreements are enforceable to the same extent as other contracts. See, e.g., Nino v. Jewelry Exchange, Inc., 609 F.3d 191, 200 (3d Cir. 2010).  As a result, "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening" the FAA. Bucher v. Am. Health & Life Ins. Co., 2014 U.S. Dist. LEXIS 119775 at * 8 (W.D. Pa. 2014).

The Court should apply the pertinent state law rules in determining whether contract defenses apply to invalidate an arbitration agreement. Id.

Though the putative arbitration agreements that Walsh proffers are difficult to read, they appear to recite that New York law governs. See Walsh Mem., Ex. A.  In this respect, under New York law, an arbitration agreement is unconscionable if it contains both procedural and substantive unconscionability.  See, e.g. Gill v. World Inspection Network Int'l, Inc., 2006 U.S. Dist. LEXIS 52426 at *5 (E.D.N.Y. 2006). To determine whether there is procedural unconscionability, courts look at whether a party lacked meaningful choice. Id.  The Court must focus on evidence of high pressure or deceptive tactics, as well as disparity in bargaining power between the parties. See Brennan v. Bally Total Fitness, 198 F. Supp. 2d 377, 382 (S.D.N.Y. 2002). "Substantive elements of unconscionability appear in the context of the contract per se …." Brennan, 198 F. Supp. 2d at 382. A contract is substantively unconscionable where its terms are unreasonably favorable to the party against whom unconscionability is claimed. See Brennan, supra.

In this regard, it is important to emphasize that procedural and substantive unconscionability operate on a "sliding scale, meaning that the more questionable the meaningfulness of choice, the less imbalance in a contract's terms should be tolerated and vice versa." Shema Kolainu-Hear Our Voices v. ProviderSoft, LLC, 832 F. Supp. 2d 194, 201 (E.D.N.Y. 2010)(internal quotations and citation omitted).  In addition, "[g]enerally, before a determination of unconscionability can be made, a full trial of the issues is required." Lawrence v. Miller, 48 A.D.3d 1, 6 (1st Dep't 2007), aff'd, 11 N.Y.3d 588 (2008).

In the present case, the proffered arbitration agreements are both procedurally and substantively unconscionable.  For instance, it is difficult to characterize an arbitration agreement that purports to mandate arbitration of "all controversies that may arise between us," extending well

beyond controversies relating to the discrete account at issue, as anything but unconscionable. Such broad terms would include any dispute, potentially having no bearing whatsoever on the discrete account at issue or on brokerage services at all. Presumably, if Walsh's interpretation is to be credited at all, Jordan would be obligated to arbitrate if she was struck by an air conditioner falling from a Merrill Lynch window, or if she slipped on a puddle in a Merrill Lynch corridor, or if she was struck by Walsh's car as he drove to work. Accordingly, the arbitration agreements were procedurally unconscionable.

Moreover, the arbitration agreements were so unreasonably favorable to Merrill Lynch (and, by extension, to its employees) as to be substantively unconscionable. Again, if Walsh's position is to be credited, the agreements purported to require disputes with no conceivable relationship to the brokerage account at issue – indeed, disputes with no relationship to brokerage services at all – to be arbitrated. By Walsh's reckoning, the arbitration agreements cut off Jordan's recourse to the Courts for any abuses committed at any future point in time by any Merrill Lynch employee, no matter how wild, no matter how unforeseeable, and no matter the extent to which the abuses were or were not carried out within the scope of the wrongdoer's employment with Merrill Lynch. This cannot be the law.

Accordingly, Walsh's motion should be denied; a t a minimum, the question of unconscionability is not properly resolved via a motion to dismiss, and instead should await resolution at the close of discovery.

## VI.     Plaintiff's Claims Against Defendant Eizen are Sufficiently Pleaded

Defendant Eizen separately contends that Plaintiff's claims, to the extent that they are asserted against him, are not sufficiently pleaded. As discussed below, Eizen is incorrect.

First, Eizen advances the same "group pleading" arguments as Defendant Walsh. See Eizen Mem., p. 6. For the reasons discussed above, those arguments lack merit.

Second, Eizen contends that Plaintiff's fraud based claims are insufficient, because: (i) Eizen supposedly is alleged to have been involved only in the portion of Defendants' scheme regarding the Conundrum Trust; yet (ii) Plaintiff has not alleged reliance or damages in connection with the misrepresentations attendant to the Conundrum Trust. See Eizen Mem., pp. 6-7. However, and as the Court may note, Plaintiff's fraud-based claims are not predicated on her allegations regarding the Conundrum Trust. See Amended Complaint, ¶¶ 305, et seq. Furthermore, and contrary to Eizen's contentions, Eizen is not only alleged to have been involved in the portion of Defendants' scheme regarding the Conundrum Trust, but also is alleged to have colluded with his co-Defendants to prepare false reports regarding Plaintiff's assets. See Amended Complaint, ¶ 46. Plaintiff has alleged that she relied on these reports to her detriment. See id.

Third, Eizen contends that Plaintiff's unjust enrichment claim against him is insufficient because Plaintiff has not specifically alleged that Eizen, personally, improperly received any of her cash or assets. See Eizen Mem., p. 7. However, it is well-settled that the unjust benefit necessary to support an unjust enrichment claim can be indirect as well as direct. See, e.g., Sargiss v. Magarelli, 12 N.Y.3d 527 (2009); AIU Ins. Co. v. Olmecs Med. Supply, Inc., 2005 U.S. Dist. LEXIS 29666 at * 47 - * 49 (E.D.N.Y. 2005)(rejecting "no direct benefit" argument and denying motion to dismiss where it could be inferred that the moving defendants shared in the benefit directly conferred upon other defendants). In the present case, Plaintiff has alleged that Eizen colluded with his co-Defendants to defraud her, and it can be inferred from the allegations that Eizen shared in his co-Defendants' ill-gotten gains.

Fourth, and along similar lines, Eizen contends that Plaintiff's conversion claim against him is insufficient because Plaintiff supposedly has not alleged that Eizen assumed or exercised control over Plaintiff's property. See Eizen Mem., p. 7. However, Plaintiff alleges that Eizen – together with his co-Defendants – knowingly organized the complex scheme of holding companies that the Defendants used to siphon away Plaintiff's assets. See Amended Complaint, ¶¶ 37-38. Thus, at a minimum, Eizen is alleged to have aided and abetted the conversion of Plaintiff's assets. See, e.g., Torrance Constr., Inc. v Jaques, 127 A.D.3d 1261, 1263 (N.Y. App. Div. 2015)("A claim can exist for aiding and abetting conversion if the aider-abettor has actual knowledge that the person who directly converted the plaintiff's property did not own that property … .")(Collecting cases).

## CONCLUSION

For the reasons stated herein, the Defendants' motions to dismiss should be denied in its entirety.

FERRY JOSEPH, P.A.

/s/David J. Ferry, Jr.
David J. Ferry, Jr. (#2149)
Rick S. Miller (#3418)
824 Market Street, Suite 1000
Wilmington DE 19801
(302) 575-1555
dferry@ferryjoseph.com
rmiller@ferryjoseph.com

-and-

Max Gershenoff, Esquire
RIVKIN RADLER
926 RXR Plaza
Uniondale, New York  11556
Tel. (516) 357-3000
Fax (516) 357-3333
max.gershenoff@rivkin.com

Attorneys for Plaintiff
