UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

-------------------------------------------------------------------X
GIGI JORDAN,

                Plaintiff,                          **C.A. No. 14-01485-SLR-SRF**

       -against

RAYMOND A. MIRRA, JR.,
RAM CAPITAL GROUP, LLC, D/B/A
RAM CONSULTING GROUP, LLC,
RAM CAPITAL II, LLC,
RAM REALTY HOLDINGS, LLC,
JOSEPH A. TROILO, JR.,
JOSEPH T. MOLIERI,
BRUCE KOLLEDA,
MARK A. KOVINSKY,
JOSEPH J. TROPIANO, JR.,
BERNARD EIZEN,
PATRICK J. WALSH,
DANIELLE STEWART,
RENEE M. SIGLOCH,
FREDERICK FORTE,
VIRGINIA L. HALL,
BARI KUO, AND
SHELLY DEMORA,

                Defendants.
-------------------------------------------------------------------X

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT PATRICK WALSH'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT, <u>OR, IN THE ALTERNATIVE, TO COMPEL ARBITRATION</u>**

Dated: July 22, 2015

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

      A.      PLAINTIFF CANNOT JUSTIFY HER FAILURE TO FILE A
TIMELY COMPLAINT .......................................................................................2

            1.      Plaintiff Was On Inquiry Notice Of Her Claims ..........................................2

            2.      Even Accepting Plaintiff's 2010 Discovery Date, Plaintiff's Claims
Are Still Barred By The Statute Of Limitations ...........................................4

            3.      Plaintiff Cannot Toll The Statutes Of Limitations On Her Claims .............5

      B.      PLAINTIFF CANNOT BE EXCUSED FROM HER FAILURE TO
SUFFICIENTLY ALLEGE HER CLAIMS UNDER RULE 9(b) ..........................7

      C.      PLAINTIFF'S CLAIMS AGAINST WALSH MUST BE ARBITRATED............8

            1.      All Claims Against Walsh Are Subject To The Arbitration Clauses
In The CRAs ................................................................................................8

            2.      The Arbitration Clauses In The CRAs Are Not Unconscionable ................9

CONCLUSION..............................................................................................................................11

# **TABLE OF AUTHORITIES**

**Page(s)**

Cases

*BAE Sys. Aircraft Controls, Inc. v. Eclipse Aviation Corp.*
   224 F.R.D. 581 (D. Del. 2004) ...............................................................................................8

*In re Bayou Hedge Funds Investment Litig.*
   472 F. Supp. 2d 528 (S.D.N.Y. 2007)......................................................................................8

*Bissell v. Merrill Lynch & Co., Inc.*
   937 F. Supp. 237 (S.D.N.Y. 1996)...........................................................................................5

*DeBruyne v. Equitable Life Assur. Soc. of U.S.*
   920 F.2d 457 (7th Cir. 1990) ...................................................................................................3

*DiMare v. MetLife Ins. Co.*
   369 Fed. Appx. 324 (3d Cir. 2010) ..........................................................................................7

*Emcore Corp. v PricewaterhouseCoopers LLP*
   102 F. Supp. 2d 237 (D.N.J. 2000) ......................................................................................7, 8

*Gillman v. Chase Manhattan Bank, N.A.*
   73 N.Y. 2d 1 (1988) .................................................................................................................9

*Grant v. Turner*
   505 Fed. Appx. 107 (3d Cir. 2012)...........................................................................................7

*Isaacs v. OCE Bus. Servs., Inc.*
   968 F. Supp. 2d 564 (S.D.N.Y. 2013).....................................................................................10

*Jones v. Bombeck*
   375 F.2d 737 (3d Cir. 1967).....................................................................................................6

*Mathews v. Kidder, Peabody & Co., Inc.*
   260 F.3d 239 (3d Cir. 2001).....................................................................................................3

*MBIA Insurance Corp v. Royal Indemnity Co.*
   2004 U.S. Dist. LEXIS 6609 (D. Del. April 6, 2004)..............................................................7

*McGann v. Collingswood Police Dep't*
   2011 WL 2600725 (D.N.J. June 28, 2011) ..............................................................................6

*Nayal v. HIP Network Servs. IPA, Inc.*
   620 F. Supp. 2d 566 (S.D.N.Y. 2009)................................................................................9, 10

*Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*
  7 F.3d 1110 (3d Cir. 1993)..................................................................................8, 9

*Simcusci v. Saeli*
  44 N.Y.2d 442 (1978) ..............................................................................................6

*Sunset Financial Resources, Inc. v. Redevelopment Group V, LLC*
  417 F. Supp. 2d 632 (D.N.J. 2006) .........................................................................8

*In re Supreme Specialties, Inc. Sec. Litig.*
  438 F.3d 256 (3d Cir. 2006).....................................................................................7

*Travis v. The Vanguard Grp., Inc.*
  2008 WL 2073372 (E.D. Pa. May 15, 2008)...........................................................3

*United Artists Theatre Co. v. Walton*
  315 F.3d 217 (3d Cir. 2003).....................................................................................5

Statutes

CPLR § 213(8)..................................................................................................................4

Other Authorities

Federal Rule of Civil Procedure 9(b).......................................................................2, 7, 8

Federal Rule of Civil Procedure 12(b)(6) ................................................................1, 11

Defendant Patrick Walsh ("Walsh") respectfully submits this reply memorandum of law in further support of his motion for an order dismissing the March 9, 2015 Amended Complaint (the "Amended Complaint") of plaintiff Gigi Jordan ("Plaintiff") pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, or, in the alternative, compelling arbitration of Plaintiff's claims, and for such other and further relief as the Court deems just and proper.

## PRELIMINARY STATEMENT

Plaintiff's July 1, 2015 Answering Memorandum of Law in Opposition to Defendants' Motions to Dismiss the Amended Complaint (the "Opposition") fails to provide any basis to sustain her untimely claims for fraud, conversion and unjust enrichment against Patrick Walsh. Even accepting Plaintiff's argument that she did not discover the Defendants' allegedly fraudulent scheme until early 2010, Plaintiff failed to bring her fraud claim within two years of that discovery as required by New York law. Plaintiff's claim that she belatedly discovered the alleged scheme is irrelevant to her conversion and unjust enrichment claims. As a matter of law, the statute of limitations on those claims began to accrue when the alleged conversion or unjust enrichment occurred. As the last allegation in the Amended Complaint related to Walsh occurred on April 10, 2007, even applying the lengthier six-year statutes of limitation that Plaintiff urges, those claims became untimely in 2013.

Plaintiff's argument that the statutes of limitation should be tolled because she was incarcerated for killing her son and the New York District Court imposed discovery stay with respect to her claims against Mirra[1] while her murder case was pending must also be rejected. Plaintiff is not entitled to toll the statute of limitations due to the consequences of her own

---

[1] This and other defined terms shall have the same meaning as set forth in Walsh's June 5, 2015 Memorandum of Law in Support of his Motion to Dismiss the Amended Complaint, or, in the Alternative, to Compel Arbitration (the "Opening Memorandum").

criminal conduct. Additionally, the stay, which precluded Plaintiff from obtaining discovery regarding her claims against Mirra, did not preclude Plaintiff from bringing any claims she may have had against Walsh in this or a separate action. In fact, Plaintiff did file claims against certain of the Defendants in the *Hawk Mtn.* Action while the stay was in place.

Plaintiff also fails to address the substantive deficiencies with her claims. Plaintiff cannot avoid the specificity requirements of Rule 9(b) by simply lumping Walsh in with the RAM Defendants. Plaintiff also ignores that fact that she failed to plead justifiable reliance, a necessary element of her fraud claim, or that Walsh received a direct benefit at the expense of Plaintiff, a necessary element of her unjust enrichment claim.

Finally, Plaintiff's Opposition fails to adequately address the unambiguous arbitration provisions in the CRAs that govern the brokerage accounts that she maintained at Merrill Lynch. Plaintiff attempts to sidestep these binding agreements through a series of unavailing arguments that fail to recognize the well-established precedent upholding the validity of such arbitration clauses. There can be no question as to the validity and applicability of the arbitration clauses to Plaintiff's claims, and the parties' agreed-upon forum should be upheld.

## A. PLAINTIFF CANNOT JUSTIFY HER FAILURE TO FILE A TIMELY COMPLAINT

### 1. Plaintiff Was On Inquiry Notice Of Her Claims

Confronted with the untimeliness of her claims, Plaintiff argues that she did not discover the allegedly fraudulent scheme until early 2010. (Opposition at 19 & 21.) However, even accepting Plaintiff's claim that she did not know about the allegedly fraudulent acts when they occurred, she was placed on inquiry notice by her account statements at or about the time that the allegedly fraudulent wires occurred or, at the very latest, in March 12, 2008, when she executed the Separation and Distribution Agreement (the "SDA") with Mirra. The SDA contains detailed

information regarding the accounts whose existence Plaintiff now claims were concealed from her. (*Compare* Amended Complaint at ¶¶ 71-73 *with* SDA § 2.1.1 and Schedule 2.1.1.)[2] Such "storm warnings" were more than sufficient to place Plaintiff on inquiry notice of her claims. *See Mathews v. Kidder, Peabody & Co., Inc.,* 260 F.3d 239, 252 (3d Cir. 2001) (plaintiff may be placed on inquiry notice by "any financial, legal or other data that would alert a reasonable person to the probability that misleading statements or significant omissions have been made").

Courts in this Circuit and other jurisdictions have routinely held that investors are presumed to "have read prospectuses, quarterly reports, and other information relating to their investments." *Id.*; *see also*, *e.g.*, *DeBruyne v. Equitable Life Assur. Soc. of U.S.*, 920 F.2d 457, 466 n.18 (7th Cir. 1990) ("[P]laintiffs cannot avoid the statute of limitations by possessing, but failing to read, the documents that would put them on inquiry notice."). In addition, "a reasonable investor is not free to ignore information contained in account statements." *Travis v. The Vanguard Grp., Inc.*, 2008 WL 2073372, at *3 (E.D. Pa. May 15, 2008). In *Travis,* the court held that if the plaintiff had "exercised reasonable diligence and reviewed her account statements, she would have learned far sooner that her account was not being managed in a manner consistent with her conservative financial goal," and ruled that the plaintiff's claim began to accrue on the date when her account statements first reflected the allegedly unauthorized trades. *See id.* at *4.

In the Amended Complaint, Plaintiff does not deny or dispute that from 2002 until April 2007, when the allegedly fraudulent account openings and wire requests underlying Plaintiff's claims took place, Merrill Lynch, like the defendant investment firm in *Travis,* provided Plaintiff

---

[2] The SDA is attached to the June 5, 2015 Declaration of Robert L. Raskopf (Dkt. No. 114) as Exhibit C (Dkt. No. 114-3).

with monthly account statements as well as new account forms and transaction confirmations that apprised her that accounts had been opened in her name at Merrill Lynch and that funds had been moved out of these and other accounts pursuant to wire requests. Plaintiff's failure to plead that she did not receive these notifications or to even address the issue at all is tantamount to an admission of their receipt.[3] These notifications placed Plaintiff on inquiry notice of her claims no later than May 2007[4] and along with Plaintiff's execution of the SDA in March 2008, undercut any claim by Plaintiff that she could not have discovered her alleged injuries prior to 2010.

       **2.     Even Accepting Plaintiff's 2010 Discovery Date, Plaintiff's Claims Are Still Barred By The Statute Of Limitations**

While Plaintiff's claim that she did not discover the alleged fraudulent scheme until early 2010 should be rejected, even if the statutes of limitation on Plaintiff's claims did not begin accruing until that time, they would remain untimely. Either the six-year statute of limitation on Plaintiff's fraud claim began to run on April 10, 2007, and expired in 2013 or, under New York's discovery rule, the statute of limitation on Plaintiff's fraud claim began to run in early 2010 and expired in early 2012. *See* CPLR § 213(8). In either case, the statute of limitations on Plaintiff's fraud claim against Walsh had long expired when she first asserted that claim against him on March 9, 2015. Thus, even accepting Plaintiff's belated discovery of the alleged fraud, her fraud claim against Walsh is untimely.

---

[3] The regular course of business provision of new account forms, transaction confirmations, and monthly statements to customers is so standard in the retail brokerage industry that Plaintiff cannot plausibly argue that she was not on inquiry notice of the subject accounts and wire transfers. For this reason, Plaintiff's failure to even mention her receipt of these notifications in the Amended Complaint is inherently suspect and provides ample basis for equating this failure with an affirmative admission of receipt.

[4] By May 2007, Plaintiff would have received her monthly account statement showing the execution of the wire transfer sent on April 10, 2007, which is the last action described in the Amended Complaint that allegedly involved Walsh. (Amended Complaint at ¶ 87(xxi).)

Plaintiff's conversion and unjust enrichment claims are similarly untimely. As discussed in the Opening Memorandum (at 8-9), the statutes of limitation on those claims began to run from the date of the alleged conversion or unjust enrichment, the last of which allegedly occurred on April 10, 2007 (*see* Amended Complaint at ¶ 87(xxi)). Thus, even applying the six-year statutes of limitations that Plaintiff claims are applicable, those claims became untimely as of April 2013—nearly two years before Plaintiff first asserted them against Walsh.

### 3. Plaintiff Cannot Toll The Statutes Of Limitations On Her Claims

Plaintiff has also failed, for numerous reasons, to establish any meritorious grounds for tolling the statutes of limitation that govern her claims. As an initial matter, Walsh did not act in a fiduciary capacity with respect to Plaintiff, and therefore, Plaintiff is not entitled to tolling on that basis. While Plaintiff argues in her Opposition (at 18) that Walsh maintained a fiduciary relationship with her, the breach of fiduciary duty claim in the Amended Complaint does not name Walsh. The failure to name Walsh makes good sense, because he is not a fiduciary to Plaintiff as a matter of law. In the Third Circuit, as in most other jurisdictions, absent special circumstances, financial advisors are not fiduciaries. *United Artists Theatre Co. v. Walton*, 315 F.3d 217, 231 n. 14 (3d Cir. 2003) ("[W]e do not hold financial advisors . . . to be fiduciaries."); *see also*, *e.g.*, *Bissell v. Merrill Lynch & Co., Inc.* 937 F. Supp. 237, 246 (S.D.N.Y. 1996) ("In the absence of discretionary trading authority delegated by the customer to the broker—and none is alleged at the case at bar—a broker does not owe a general fiduciary duty to his client."). Plaintiff does not allege that Walsh possessed discretionary authority over any of the accounts she maintained at Merrill Lynch and cannot now claim Walsh was her fiduciary solely because he was her financial advisor.

Plaintiff then goes on to argue that the statutes of limitations for her claims should be tolled because she has been incarcerated for killing her son since 2010. This macabre argument

fails. Plaintiff's incarceration cannot act to toll the statutes of limitation on her claims. *Jones v. Bombeck*, 375 F.2d 737, 739 (3d Cir. 1967); *McGann v. Collingswood Police Dep't*, 2011 WL 2600725, at *4 (D.N.J. June 28, 2011) ("the fact that Plaintiff was incarcerated or on probation does not constitute exceptional circumstances that would excuse Plaintiff from exercising due diligence in pursuing his claims"). As this Court is well aware, prisoners frequently file civil actions.

Finally, Plaintiff argues that the stay of discovery established by the May 17, 2011 Order (Dkt. No 23) (the "Stay Order"), which was issued while this action was pending before the United States District Court for the Southern District of New York, somehow precluded her from pursuing her claims against Walsh. This is contrary to the very terms of the Stay Order, which related only to the New York County District Attorney's intervention "for the limited purpose of seeking a stay of discovery." (Stay Order at 2.) This is also contrary to Plaintiff's own actions, as Plaintiff and three others initiated the *Hawk Mtn.* Action asserting RICO claims against many of the same Defendants in this action after the Stay Order was issued. Plaintiff's argument that the Stay Order precluded her from bringing the claims asserted in this action against Walsh sooner is entirely disingenuous. Accordingly, Plaintiff has articulated no viable basis to toll the statutes of limitations on her claims.[5]

---

[5] Plaintiff primarily relies upon *Simcusci v. Saeli*, 44 N.Y.2d 442 (1978), to argue that the statutes of limitation on her claims should be tolled; however, that case cannot apply here. In *Simcuski*, the New York Court of Appeals was confronted with medical malpractice claims that had been fraudulently concealed from the plaintiff such that the plaintiff did not discover those claims until after the applicable statutes of limitation had expired. *Id.* at 450. The opposite is true here. The latest Plaintiff discovered the alleged fraud was in 2010, which provided her with ample time to assert her claims against Walsh.

### B. PLAINTIFF CANNOT BE EXCUSED FROM HER FAILURE TO SUFFICIENTLY ALLEGE HER CLAIMS UNDER RULE 9(b)

Plaintiff does not and cannot dispute that her claims must be pled with particularity in order to survive a motion to dismiss. *See* Rule 9(b). Instead, Plaintiff argues (Opposition at 22-25) that she should be excused from identifying who specifically committed the fraudulent acts alleged in the Amended Complaint. Such group pleading runs afoul of Rule 9(b), and Plaintiff has provided no basis why she should not have to attribute allegedly fraudulent acts to specific individuals, rather than some amorphous combination of the RAM Defendants and/or Walsh as Plaintiff has done in the Amended Complaint. *See DiMare v. MetLife Ins. Co.*, 369 Fed. Appx. 324, 330 (3d Cir. 2010); *In re Supreme Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 282 (3d Cir. 2006); *see also* Opening Memorandum at 9-12.

Plaintiff relies substantially on *Grant v. Turner*, 505 Fed. Appx. 107 (3d Cir. 2012), for the proposition that her fraud allegations can lump the Defendants together as a group and still satisfy Rule 9(b). This is contrary to the actual holding in *Grant*, where the court found that the plaintiff's general fraud allegations against all defendants were *not* sufficiently specific to satisfy the heightened pleading standard of Rule 9(b) with respect to the two defendants who sought dismissal on that basis. *Id.* at 112. Plaintiff's citation to *MBIA Insurance Corp v. Royal Indemnity Co.*, 2004 U.S. Dist. LEXIS 6609 (D. Del. April 6, 2004), is also unpersuasive. In *MBIA Insurance*, the court acknowledged that "[c]ollective allegations of fraud against a group of defendants generally do not satisfy Rule 9(b)" but found that they were adequate in that instance because the defendants subject to those group pleadings were a family of closely related entities together with the lone individual who controlled them. *Id.* at *7-10.

The balance of the authority that Plaintiff cites also cannot excuse her failure to comply with Rule 9(b). In *Emcore Corp. v PricewaterhouseCoopers LLP*, 102 F. Supp. 2d 237 (D.N.J.

-7-

2000), unlike here, the court actually found that the plaintiff properly pled "the date, place, speakers and content of the alleged misrepresentations" that gave rise to the fraud claims at issue. *Id.* at 250.  Similarly, in *Sunset Financial Resources, Inc. v. Redevelopment Group V, LLC*, 417 F. Supp. 2d 632 (D.N.J. 2006), which was a mortgage lender liability case, the court found that it was "possible that multiple defendants could make the same misrepresentation." *Id.* at 645. That is not the case here where the alleged forgeries and the allegedly fraudulent wire transfers must necessarily be attributed to the individual who actually committed those alleged acts.  The authority cited by Plaintiff simply does not make Plaintiff's tired refrain that "Defendants Mirra, Troilo, Molieri, Kolleda, Kovinsky, Tropiano, and Walsh forged Jordan's signature, or caused it to be forged," on account documents and wire transfer authorizations sufficient under Rule 9(b). (*See*, *e.g.*, Amended Complaint at ¶¶ 91, 98, 163.)

Finally, Plaintiff does not dispute that she failed to allege that Walsh actually received a specific and direct benefit at the expense of Plaintiff.  Because that is a required element of Plaintiff's unjust enrichment claim, that claim must be dismissed as to Walsh.  *See In re Bayou Hedge Funds Investment Litig.*, 472 F. Supp. 2d 528, 531-32 (S.D.N.Y. 2007).

C.    **PLAINTIFF'S CLAIMS AGAINST WALSH MUST BE ARBITRATED**

   1.   **All Claims Against Walsh Are Subject To The Arbitration Clauses In The CRAs**

Plaintiff attempts to sidestep the arbitration clauses contained in the CRAs by arguing that Walsh acted outside the scope of his employment at Merrill Lynch.[6]  This argument, however, is directly at odds with established law in the Third Circuit.  *See*, *e.g.*, *Pritzker v.*

---

[6] In seeking to avoid arbitration, Plaintiff entirely ignores the fact that the Court here must operate under a "presumption of arbitrability" and "may not deny arbitration, unless it can state with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *See BAE Sys. Aircraft Controls, Inc. v. Eclipse Aviation Corp.*, 224 F.R.D. 581, 585 (D. Del. 2004).

*Merrill Lynch, Pierce, Fenner & Smith, Inc*., 7 F.3d 1110, 1114, 1121 (3d Cir. 1993). *Pritzker* involved a Merrill Lynch arbitration agreement similar to the one at issue in this case in that it contained broad language that made the agreement applicable to "all controversies" between the parties. Based on this language, the court rejected the plaintiffs' efforts to evade the application of the arbitration clause, observing, "[i]n our view, the Trustees' contention that they are free to litigate their claims in federal court because the defendants allegedly acted outside the scope of their authority under the agreement flatly contradicts the inclusive language contained in the clauses in question." *Id.* at 1114-15. In the face of this authority, Plaintiff cites no decisions that support her argument that the claims here fall outside of the scope of the arbitration provisions in the CRAs. Instead Plaintiff argues that she should be entitled to engage in discovery as to the "question of arbitrability" and whether Walsh was acting within the scope of his employment with respect to the allegations in the Amended Complaint. (*See* Opposition at 25-26.) There is no basis for discovery here. As *Pritzker* made clear, where a party has agreed to submit "all controversies" to arbitration, whether an employee was acting within the scope of his employment is irrelevant to the question of arbitrability.

      **2.**      **The Arbitration Clauses In The CRAs Are Not Unconscionable**

Under New York law, in order to evade the enforcement of a contract on the basis of unconscionability, a party must establish that a contract is both procedurally and substantively unconscionable. *Gillman v. Chase Manhattan Bank, N.A.*, 73 N.Y. 2d 1, 10 (1988); *see also Nayal v. HIP Network Servs. IPA, Inc.*, 620 F. Supp. 2d 566, 571-73 (S.D.N.Y. 2009). Procedural unconscionability concerns the contract formation process and the alleged lack of meaningful choice while substantive unconscionability focuses on the terms of the contract. *Nayal,* 620 F. Supp. 2d at 571 (citation omitted). Plaintiff, a sophisticated businesswoman, has established neither basis.

While Plaintiff's Opposition correctly notes (at 27-28) that a procedural unconscionability determination rests on whether a party lacked meaningful choice, Plaintiff does not deny that she freely agreed to the arbitration provisions in the CRAs. Plaintiff's failure in this regard is a *de facto* concession that she cannot establish that, as an experienced and savvy businesswoman, she was somehow coerced into agreeing to arbitrate her Merrill Lynch-related claims. Instead of addressing this point, Plaintiff posits absurd hypothetical claims, such as Plaintiff being stuck by an air conditioner falling from a Merrill Lynch window, that have nothing to do with the formation of the parties' contract to arbitrate.

Plaintiff also fails to establish substantive unconscionability. While Plaintiff argues that the arbitration clauses in the CRAs favor Merrill Lynch, arbitration agreements, like those here, that equally bind both parties to arbitration do not unreasonably favor one party and are not substantively unconscionable. *Nayal*, 620 F. Supp. 2d at 573. Nor is an agreement whose terms are equally applicable to both parties substantively unconscionable. *See Isaacs v. OCE Bus. Servs., Inc.*, 968 F. Supp. 2d 564, 569 (S.D.N.Y. 2013). The arbitration clauses in the CRAs treat each party exactly the same with respect to the finality of the decision, waiver of access to the courts, and discovery limitations.

In short, the arbitration clauses in the CRAs are neither procedurally nor substantively unconscionable. "While the Court need only find an absence of either procedural or substantive unconscionability in order to compel arbitration, the absence of *both* forms in this action leaves no doubt that the Arbitration Provision is not unconscionable." *Nayal*, 620 F. Supp. 2d at 573 (citations omitted).

## **CONCLUSION**

For the foregoing reasons, as well as those set forth in the Opening Memorandum, defendant Patrick Walsh respectfully requests that the Court grant his motion and issue an order dismissing Plaintiff's Amended Complaint in its entirety against Mr. Walsh pursuant to Rule 12(b)(6) for failure to state a claim, or, in the alternative, compelling arbitration of Plaintiff's claims, together with such other and further relief as this Court deems just and proper.

| | |
|---|---|
| Dated: July 22, 2015 | REED SMITH LLP |
| | */s/ John C. Cordrey*<br>John C. Cordrey (No. 5324)<br>1201 Market Street, Suite 1500<br>Wilmington, Delaware 19801<br>Telephone: (302) 778-7500 |
| OF COUNSEL: | Fax: (302) 778-7575<br>jcordrey@reedsmith.com |
| SHEPPARD, MULLIN, RICHTER<br>  & HAMPTON LLP<br>Robert S. Friedman (*pro hac vice* to be filed)<br>Jeff Kern (*pro hac vice* to be filed)<br>Thomas M. Monahan (*pro hac vice* to be filed)<br>30 Rockefeller Plaza<br>New York, New York 10112<br>Telephone: (212) 653-8700<br>Facsimile: (212) 653-8701<br>rfriedman@sheppardmullin.com<br>jkern@sheppardmullin.com | |
| | *Counsel for Defendant Patrick Walsh* |

## **CERTIFICATE OF SERVICE**

I, John C. Cordrey, Esquire, hereby certify that on the 22nd day of July, 2015, I caused a true and correct copy of the **REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT PATRICK WALSH'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT, OR, IN THE ALTERNATIVE, TO COMPEL ARBITRATION** to be served upon the below-listed Delaware counsel of record via CM-ECF in this matter.

| | |
|---|---|
| Kenneth J. Nachbar, Esq.<br>Leslie A. Polizoti, Esq.<br>Morris, Nichols, Arsht & Tunnell LLP<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, DE 19899 | David J. Ferry, Jr., Esq.<br>Rick S. Miller, Esq.<br>Ferry Joseph & Pearce, P.A.<br>824 N. Market Street, Suite 1000<br>Wilmington, DE 19801 |
| Joseph James Bellew, Esq.<br>Cozen & O'Connor<br>Chase Manhattan Centre<br>1201 North Market St., Suite 1001<br>Wilmington, DE 19801 | |

Dated:  July 22, 2015

OF COUNSEL:

SHEPPARD, MULLIN, RICHTER
  & HAMPTON LLP
Robert S. Friedman (*pro hac vice* to be filed)
Jeff Kern (admitted *pro hac vice* to be filed)
30 Rockefeller Plaza
New York, New York 10112
Telephone:  (212) 653-8700
Facsimile:  (212) 653-8701
rfriedman@sheppardmullin.com

REED SMITH LLP

*/s/ John C. Cordrey*
John C. Cordrey (No. 5324)
1201 Market Street, Suite 1500
Wilmington, Delaware 19801
Telephone: (302) 778-7500
Fax: (302) 778-7575
jcordrey@reedsmith.com

*Counsel for Defendant Patrick Walsh*