**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| GIGI JORDAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 14-1485-GAM |
| ) | |
| RAYMOND A. MIRRA, JR., RAM ) | |
| CAPITAL GROUP, LLC D/B/A RAM ) | |
| CONSULTING GROUP, LLC, RAM ) | |
| CAPITAL II, LLC, RAM REALTY ) | |
| HOLDINGS, LLC, JOSEPH A. TROLIO, ) | |
| JR., BRUCE KOLLEDA, MARK A. ) | |
| KOVINSKY, JOSEPH J. TROPIANO, JR., ) | |
| DANIELLE STEWART, RENEE M. ) | |
| SIGLOCH, FREDERICK FORTE, ) | |
| VIRGINIA L. HALL, BARI KUO, and ) | |
| SHELLY DEMORA, ) | |
| ) | |
| Defendants. ) | |

## REPORT AND RECOMMENDATION

### I.     INTRODUCTION

Presently before the court in this diversity action is the motion to dismiss for failure to

state a claim filed by defendants Raymond A. Mirra, Jr. ("Mirra"), RAM Capital Group LLC,

RAM Capital II, LLC, RAM Realty Holdings LLC, Joseph A. Troilo, Jr. ("Troilo"), Bruce

Kolleda ("Kolleda"), Mark A. Kovinsky ("Kovinsky"), Joseph J. Tropiano, Jr. ("Tropiano"),

Danielle Stewart ("Stewart"), Frederick Forte ("Forte"), Renee M. Sigloch ("Sigloch"), Virginia

L. Hall ("Hall"), Bari Kuo ("Kuo"), and Shelly Demora ("Demora") (collectively, "defendants").

(D.I. 112) For the following reasons, I recommend that the court grant the motion to dismiss as

to Counts 1 to 6 and 8 to 10 of the second amended complaint, and deny the motion to dismiss

with respect to Count 7 of the second amended complaint.

## II.    BACKGROUND[1]

In 1991, plaintiff Gigi Jordan ("Jordan") founded Ambulatory Pharmaceutical Services, Inc. ("APS"), a healthcare company specializing in providing individualized home infusion services. (D.I. 176 at ¶ 28)  Following the success of APS, Jordan entered into a business relationship with Mirra,[2] in which Jordan ran a subsidiary of Mirra's home infusion company. (*Id.*)  On August 1, 1995, Jordan exercised an option to buy out Mirra's interests in APS, leaving her as the sole shareholder of APS.  (*Id.* at ¶ 31)  On August 29, 1997, Jordan sold APS to Integrated Health Services, Inc. ("IHS").  (*Id.* at ¶ 32)

During this time, Mirra represented to Jordan that defendants Troilo and Kolleda[3] managed, controlled, and implemented Jordan and Mirra's respective business and financial affairs and acted co-equally for Jordan and Mirra as fiduciaries in the execution of their duties. (*Id.* at ¶¶ 33-34)  In 1997, Mirra, Troilo, and Kolleda organized RAM Capital to serve as a holding company for Jordan and Mirra's joint assets and business ventures.  (*Id.* at ¶¶ 35-36)  In 2002 and thereafter, Mirra, Troilo, Kolleda, Tropiano, and Kovinsky[4] organized various holding companies and trusts to allegedly disguise the actual ownership interests of Jordan's business holdings.  (*Id.* at ¶¶ 37-38)

---

[1] Evaluating a motion to dismiss under Rule 12(b)(6) requires the court to accept as true all material allegations of the complaint.  *Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004). Consequently, the court's recitation of the facts takes as true the well-pleaded factual allegations of the second amended complaint in accordance with the Rule 12(b)(6) standard.

[2] Jordan and Mirra were also involved in a personal relationship beginning in 1990 or 1991. (D.I. 84 at ¶ 29)

[3] The second amended complaint also identifies Joseph T. Molieri ("Molieri") as a defendant in the cited paragraphs.  However, Molieri was voluntarily dismissed from this action on January 13, 2016.  (D.I. 156)

[4] Bernard Eizen ("Eizen") is identified as a defendant in the cited paragraphs of the second amended complaint.  However, Eizen was voluntarily dismissed from this action on January 13, 2016.  (D.I. 156)

2

In March and December of 2003, Troilo, Mirra, and Kolleda sent Jordan two estate planning memoranda falsely representing that Jordan and Mirra remained equal owners of their joint assets and business ventures. (*Id.* at ¶¶ 39-42) In 2005, defendants gave Jordan a business prospectus falsely reporting the status of Jordan and Mirra's joint business holdings and assets. (*Id.* at ¶ 43) In 2007, Tropiano, Kolleda, and Mirra sent Jordan a schedule falsely stating that Jordan and Mirra held equal interests in companies, real estate, and other investments worth more than $241 million. (*Id.* at ¶ 44) Between 1997 and 2009, Tropiano, Kolleda, Mirra, Troilo, and Kovinsky sent Jordan various reports and schedules which falsely represented that her business interests, real estate holdings, and assets were co-equally owned with Mirra. (*Id.* at ¶ 45)

Jordan filed the instant action in the Southern District of New York on March 9, 2012. (D.I. 1) The parties filed a joint stipulation to transfer venue to the District of Delaware on December 8, 2014. (D.I. 68) A related action was pending in the District of Delaware at the time of the transfer, asserting a RICO claim against Mirra and others ("the RICO action"). (C.A. No. 13-2083-SLR-SRF)

On June 3, the court issued its Report and Recommendations in the RICO action, recommending that the district judge grant the pending motions to dismiss. (C.A. No. 13-2083-SLR-SRF, D.I. 457) The district judge adopted the recommendations on August 31, 2016 and dismissed the RICO action. (C.A. No. 13-2083-SLR-SRF, D.I. 472) The Third Circuit Court of Appeals affirmed the dismissal of the RICO action on May 12, 2017. (C.A. No. 13-2083-SLR-SRF, D.I. 475)

The court issued its Report and Recommendations in the present matter on June 7, 2016, denying the pending motions to dismiss and granting the motion to amend the complaint. (D.I.

158) On August 31, 2016, the district judge accepted in part and rejected in part the recommendations, recommitting the motions to dismiss to the magistrate judge for consideration on the merits. (D.I. 175) On September 1, 2016, Jordan filed her second amended complaint in the present action. (D.I. 176) The second amended complaint asserts the following causes of action: (1) Count 1: Breach of Contract on Promissory Notes against Mirra; (2) Count 2: Accounting against Mirra, Troilo, Molieri, and Kolleda; (3) Count 3: Common Law Fraud against Mirra, Troilo, Molieri, Kolleda, Eizen, Kovinsky, Tropiano, and Walsh; (4) Count 4: Aiding and Abetting Fraud against Stewart, Sigloch, Forte, Hall, Demora, and Kuo; (5) Count 5: Fraudulent Inducement against Mirra, Troilo, Tropiano, and Kolleda; (6) Count 6: Breach of Fiduciary Duty against Mirra, Troilo, Molieri, and Kolleda; (7) Count 7: Breach of Warranties against Mirra; (8) Count 8: Unjust Enrichment against all defendants; (9) Count 9: Conversion against all defendants; and (10) Count 10: Declaratory Relief under 28 U.S.C. §§ 2201 and 2202 against Mirra, Troilo, Kolleda, and Eizen. (D.I. 176 at ¶¶ 298-351)

### A. Conversion and Misappropriation of Jordan's Bank Accounts

#### 1. Merrill Lynch Transactions

Jordan opened a Merrill Lynch account based on Mirra's recommendation in 1992. (*Id.* at ¶ 49) Patrick J. Walsh ("Walsh")[5] became Jordan's broker and private banker at Merrill Lynch. (*Id.* at ¶ 50) In 1997, Walsh advised Jordan to open two additional Merrill Lynch accounts to participate in a covered writing account program intended to eliminate losses below the principal amounts invested. (*Id.* at ¶¶ 52-55)

---

[5] Patrick Walsh was previously named as a defendant to the present action, but was voluntarily dismissed by Jordan on January 27, 2017. (D.I. 188)

In April 2002, Mirra, Troilo, Kolleda, Kovinsky, and Tropiano conspired with Walsh to open a new Merrill Lynch account jointly held by Jordan and Mirra. (*Id.* at ¶¶ 56-59) They deposited more than $14 million of Jordan's money into the joint account without Jordan's knowledge or consent. (*Id.* at ¶¶ 60-62) Four months later, in September 2002, Mirra, Troilo, Kolleda, Kovinsky, and Tropiano allegedly forged Jordan's signature on account opening documents for the joint account. (*Id.* at ¶ 63)

In January 2003, Mirra, Troilo, Kolleda, Kovinsky, and Tropiano conspired to convert Jordan's three individual Merrill Lynch accounts into joint accounts held with Mirra. (*Id.* at ¶¶ 65-70) Thereafter, Mirra, Troilo, Kolleda, Kovinsky, and Tropiano opened additional Merrill Lynch accounts jointly held by Jordan and Mirra by forging Jordan's signature on account application forms. (*Id.* at ¶¶ 71-77) Between 2003 and 2006, Mirra, Troilo, Kolleda, Kovinsky, and Tropiano forged Jordan's signature on wire transfer authorizations purporting to authorize Merrill Lynch to transfer Jordan's money to Mirra and various entities owned or controlled by defendants. (*Id.* at ¶¶ 78-80) Between 2003 and 2008, Mirra, Troilo, Kolleda, Kovinsky, and Tropiano forged Jordan's signature on loan applications and wire transfer authorizations, causing Merrill Lynch to loan millions of additional dollars to Mirra, RAM Capital, and other entities owned and controlled by defendants, using Jordan's assets as collateral for the loans. (*Id.* at ¶¶ 81-87)

### 2. Other Transactions

On August 29, 1997, Jordan sold APS to Integrated Health Services, Inc. ("IHS") in exchange for more than $34 million in cash and stock options. (*Id.* at ¶ 89) Mirra subsequently urged Jordan to open a Smith Barney brokerage account in March 1998 with the proceeds from the sale. (*Id.* at ¶¶ 90-91) In June 1998, Mirra encouraged Jordan to execute a Smith Barney

trading agreement, which was faxed to the account broker. (*Id.* at ¶ 92) Mirra, Troilo, Kolleda, and Tropiano then coordinated the liquidation of Jordan's stock in the Smith Barney brokerage account and fraudulently transferred the funds out of the account without Jordan's knowledge or consent. (*Id.* at ¶ 93)

In 1998, Mirra conferred with Jordan regarding an "offshore asset protection" plan involving multiple offshore trusts, LLC's, and bank accounts. (*Id.* at ¶¶ 94-97) Pursuant to Mirra's proposal, both he and Jordan would transfer $7 million to a bank account in Geneva, Switzerland (the "BJB account"), and a Nevis-based LLC named West-Highland Company LLC ("West Highland"), solely owned by Jordan, would be established as the account holder of the offshore account. (*Id.* at ¶¶ 98-99) Jordan signed an agreement in accordance with Mirra's proposal. (*Id.* at ¶ 100) In July 1999, Mirra, Troilo, Kolleda, and Tropiano forged Jordan's authorization to transfer the funds in Jordan's Smith Barney account to the BJB account, comprising the total initial funding for West Highland's BJB account. (*Id.* at ¶ 103) In 2001, Mirra fraudulently induced Jordan to assign him a fifty percent interest in West Highland by falsely representing that he had contributed half of the funds deposited into the account. (*Id.* at ¶¶ 102, 105)

### B.    Fraudulent Property Transactions

Defendants also engaged in a scheme to divest Jordan of her equity in several real properties. (*Id.* at ¶ 106) On June 30, 1995, Jordan purchased a property located at 2932 North Atlantic Boulevard in Fort Lauderdale, Florida, for $1.65 million. (*Id.* at ¶ 107) On July 12, 1996, Mirra and Troilo forged Jordan's signature on a warranty deed purporting to add Mirra as a co-owner of the property and recorded the deed. (*Id.* at ¶¶ 109-111) On April 10, 2002, Mirra, Troilo, Kolleda, and Tropiano forged Jordan's signatures on mortgage loan application

6

documents and obtained a $375,000 mortgage on the property. (*Id.* at ¶¶ 112-115) On August 16, 2006, Mirra, Troilo, Kolleda, and Tropiano sold the property for $4.8 million and retained the proceeds. (*Id.* at ¶¶ 116-119)

On June 23, 2000, Mirra, Troilo, Kolleda, and Tropiano caused APS, which was jointly owned by Jordan and Mirra, to purchase a property located at 2937 North Atlantic Boulevard, Fort Lauderdale, Florida, for $660,000. (*Id.* at ¶ 121) On December 27, 2001, Mirra, Troilo, Kolleda, and Tropiano caused the property to be sold for $10.00 to West Highland. (*Id.* at ¶ 123) On April 12, 2004, Mirra, Troilo, Kolleda, and Tropiano sold the property for $1.00 to "Gigi Jordan and her Husband Raymond Mirra." (*Id.* at ¶ 125) Jordan was not advised of the purchase or the sales. (*Id.* at ¶¶ 122, 124, 126) On the same date, Mirra, Troilo, Kolleda, and Tropiano forged Jordan's signature and authorized Merrill Lynch to wire $345,631.96 to a West Highland account to pay off the mortgage on the property. (*Id.* at ¶¶ 127-128) On April 28, 2004, Mirra, Troilo, Kolleda, Kovinsky, and Tropiano forged Jordan's signature on a warranty deed selling the property for $850,000 without Jordan's knowledge. (*Id.* at ¶¶ 129-131)

In 2000, Mirra, Troilo, Kolleda, Kovinsky, and Tropiano incorporated RAM Developers to engage in real estate investments, and falsely represented to Jordan that she was a fifty percent owner of RAM Developers. (*Id.* at ¶¶ 133-135) On April 4, 2001, Jordan provided $4.1 million to RAM Developers to be used to purchase a property located at 352 West End Avenue, New York, New York. (*Id.* at ¶ 136) On April 5, 2001, Jordan permitted the property to be titled in the name of RAM Developers, rather than in Jordan's name individually. (*Id.* at ¶ 139) On July 8, 2002, Mirra, Troilo, Kolleda, Kovinsky, and Tropiano sold the property for $4.35 million. (*Id.* at ¶ 140)

7

On April 5, 2002, a deed was recorded conveying a property in Concord, Virginia to Jordan and Mirra for $3.265 million. (*Id.* at ¶ 143) On August 27, 2002, Mirra took out a $2 million mortgage from Merrill Lynch on the property without Jordan's knowledge. (*Id.* at ¶ 147) Between February 2003 and June 2004, Mirra, Troilo, Kolleda, and Tropiano bought additional lots to add to the existing acreage of the property without Jordan's knowledge. (*Id.* at ¶ 148) On June 3, 2004, Mirra and Jordan borrowed $3 million from JPMorgan Chase for payment on the purchase of the property. (*Id.* at ¶ 149) On March 31, 2005, the $3 million JPMorgan mortgage was increased by $1 million and converted to a home equity line of credit. (*Id.* at ¶ 151) On June 3, 2005, a loan was obtained on the property from Merrill Lynch in the amount of $2 million. (*Id.* at 160)

On May 31, 2002, Jordan and Mirra purchased a property in North Garden, Virginia for $1.8 million. (*Id.* at ¶ 163) On December 4, 2003, Mirra, Troilo, Kolleda, and Tropiano forged Jordan's signature on a deed conveying the property from Jordan and Mirra to RAM Realty. (*Id.* at ¶ 164) RAM Realty subsequently subdivided and sold off the Taylors Gap Road Property for $2.151 million. (*Id.* at ¶ 166)

## C.    The Separation and Distribution Agreement

On March 12, 2008, Jordan and Mirra executed a Separation and Distribution Agreement ("SDA"). (*Id.* at ¶ 169) In connection with a merger between Biomed America, Inc. ("Biomed") and Allion Healthcare, Inc. ("Allion"), on March 4, 2008, Mirra, Troilo, Kolleda, and Tropiano falsely represented that Jordan's half of the Biomed stock was valued at $4.9 million, when it was actually worth much more than that. (*Id.* at ¶¶ 176-179) Pursuant to the terms of the SDA, Jordan transferred her fifteen percent ownership interest in Biomed to an LLC owned by Mirra

8

for \$4.9 million. (*Id.* at ¶ 180) Through this transaction, Mirra received \$78 million, \$39 million of which was rightfully Jordan's. (*Id.* at ¶¶ 181-182)

Mirra subsequently orchestrated two transactions resulting in the sale of Jordan's ownership interests in APS and Specialty Pharmacy, Inc. to AmerisourceBergen Corporation ("ABC") in 2002 for \$30 million. (*Id.* at ¶¶ 185-188) On April 29, 2002, a fraudulent Merrill Lynch account received nearly \$15 million in connection with the first transaction. (*Id.* at ¶ 189) In December 2002, Bioservices was acquired by ABC for \$159 million, yielding \$75 million more than Mirra had reported. (*Id.* at ¶ 191) The actual profits of the sale were routed by Mirra to another unknown account. (*Id.* at ¶ 195)

On March 4, 2008, Mirra, Troilo, Kolleda, and Tropiano falsely represented to Jordan that she had a fifty percent interest in four companies, including VasGene, PrideCare, ARC, and Cancer Innovations, which had no value. (*Id.* at ¶ 197) Defendants falsely represented that the companies had no value to induce Jordan to surrender her rightful interests in the companies and execute the SDA. (*Id.* at ¶¶ 198-199) In February 2008, Mirra, Troilo, Kolleda, and Tropiano falsely represented that RAM Capital had no assets or value, causing Jordan to forfeit her fifty percent interest in the company. (*Id.* at ¶¶ 202-205)

On February 29, 2008, Mirra, Troilo, Kolleda, and Tropiano sent a purportedly complete schedule of the private companies in which Jordan and Mirra held joint interests, but did not disclose the assets of subsidiaries, holding companies, or companies related to RAM Capital. (*Id.* at ¶¶ 206-211) The schedule also failed to disclose other companies in which Jordan and Mirra had joint interests that were active and in good standing at the time the SDA was executed. (*Id.* at ¶ 213)

9

The SDA also misrepresented the total value of the real estate properties jointly held by Jordan and Mirra. (*Id.* at ¶ 216) Specifically, Mirra, Troilo, Kolleda, and Tropiano represented that a Tahoe property bought in 1999 exclusively by Jordan was jointly held, and they bought two properties in Santa Barbara, California titled in the name of RAM Realty, using money stolen from Jordan and Mirra's joint bank account in the spring of 2004. (*Id.* at ¶¶ 220-221, 224-227, 231-235) The SDA also represented that Jordan was responsible for fifty percent of the fraudulent encumbrances on the Concord, Virginia property, and underestimated the value of the property by at least $6 million. (*Id.* at ¶¶ 237-242)

Moreover, the SDA contained misrepresentations and concealments regarding the contributions to West Highland LLC and the liabilities of the Merrill Lynch accounts, indicating that the assets were jointly held and Mirra had contributed half of the funds, and Jordan and Mirra were jointly and severally liable for any liabilities, when in fact the contributions were made solely by Jordan and the liabilities were incurred solely by Mirra. (*Id.* at ¶¶ 245-252) Mirra succeeded in inducing Jordan to surrender fifty percent of the value of the Merrill Lynch asset accounts by falsely assuming fifty percent of the joint liabilities, and Jordan paid Mirra $3.4 million as consideration for his assumption of the liabilities. (*Id.* at ¶¶ 254-255) Mirra, Troilo, Kolleda, and Tropiano also falsely represented that all of Mirra's financial obligations to Jordan prior to January 31, 2003 had been satisfied. (*Id.* at ¶¶ 257-262)

Contemporaneous with the execution of the SDA, Mirra and Jordan entered into a Mutual General Release Document ("Release"), which purported to release defendants from liability arising from their fraudulent conduct. (*Id.* at ¶¶ 264-267) According to Jordan, she reviewed the

10

terms and conditions of the Release in March 2008 and informed her counsel that she wanted the

following portion from paragraph 3 of the Release[6] stricken:

> Jordan, for and on behalf of (x) herself, her heirs and beneficiaries, (y) her
> affiliates and each of their limited and general partners, officers, directors,
> stockholders, members, managers, employees, attorneys, advisors and agents, and
> (z) each such foregoing person's or entity's predecessors, successors and assigns
> (collectively, the "Jordan Releasing Parties"), agrees to and hereby does
> irrevocably release and forever discharge (a) Raymond A. Mirra, Jr., (b) his heirs
> and beneficiaries, his affiliates and the officers, directors, stockholders,
> employees, agents, insurers and attorneys of each such affiliate, and (c) each such
> foregoing person's or entity's predecessors, successors and assigns (collectively
> the "Mirra Released Parties") from any and all manner of actions, causes of
> action, claims, offsets, demands, judgments, complaints, executions, regulatory
> challenges, losses, damages, expenses, fees, debts, representations, warranties or
> liabilities of any kind whatsoever, whether arising out of state, federal or foreign
> law, rule, regulation or equity, whether known or unknown, accrued or not
> accrued, asserted or not asserted, matured or not matured, suspected or not
> suspected, fixed or contingent, foreseeable or unforeseeable, direct or indirect
> (each, a "Claim", and collectively, "Claims"), which the Jordan Releasing Parties
> ever had, now have or hereafter can, shall or may have or acquire against the
> Mirra Released Parties, or any of them, by reason of any and all facts,
> circumstances, transactions, events, statements, representations, warranties,
> occurrences, acts, or omissions (whether or not knowingly, intentional, reckless or

---

[6] The identification of paragraph 3 as the disputed portion of the Release was the subject of the motion for leave to file a second amended complaint. (D.I. 123 at 3-5) Previously, the first amended complaint identified paragraph 5 as the portion of the Release Jordan sought to change. (D.I. 84 at ¶¶ 267-68) Paragraph 5 of the Release included the following language:

> Each of Mirra, with respect to the Jordan Settled Claims, and Jordan, with respect
> to the Mirra Settled Claims, believes after due inquiry that he or she is fully
> familiar with the facts and circumstances which are sufficient to enable him or her
> to enter into this Release Agreement, and further acknowledges hereby that he or
> she is aware that he or she may hereafter discover facts or circumstances in
> addition to or different from those which he or she now knows or believes to be
> true with respect to the subject matters of this Release Agreement, but that it is
> such Party's intention to, and such Party hereby does, fully, finally, completely
> and forever release, discharge, compromise, settle, satisfy and extinguish any and
> all such Claims, without regard to the subsequent discovery or existence of such
> different or additional facts or circumstances. Each of the Parties further
> expressly acknowledges that the releases set forth herein extend to Claims which
> are presently unknown, as well as known Claims.

negligent; whether or not based on, due to or resulting from solely the conduct, action, activity, omission or fault of one or more of the Jordan Released Parties; and with or without any conduct, action, activity, omission or fault of the Jordan Releasing Parties), which occurred, arose or existed at any time on or before the date of this Release Agreement.

(*Id.* at ¶¶ 267-68) Mirra, Troilo, Kolleda, and Tropiano allegedly agreed to strike the language and sent signature pages to Jordan's counsel. (*Id.* at ¶ 270) Troilo resent the signature page of the Release for execution without removing the disputed language from the Release, and neither Jordan nor her counsel reviewed the full version of the Release prior to its execution. (*Id.* at ¶¶ 271-277)

### D.     The Conundrum Trust

In December 2002, Mirra and Troilo approached Jordan regarding the establishment of two grantor retained annuity trusts ("GRATs"), the Hawk Mountain Trust ("HM Trust") and the Conundrum Trust, for the benefit of Mirra and Jordan's children. (*Id.* at ¶ 280) Mirra and Troilo represented that Jordan would be the settlor of the HM Trust and Mirra would be the settlor of the Conundrum Trust. (*Id.* at ¶ 281) The trusts were allegedly intended to receive the proceeds expected from the ABC acquisition of U.S. Bioservices, and Jordan was led to believe that she would still control the assets of the Hawk Mountain LLC and that over $3.5 million would be saved in capital gains tax. (*Id.* at ¶¶ 282-283) Mirra and Troilo falsely represented to Jordan that she could not act as a protector of her own trust, and she acquiesced to the appointment of Mirra as protector of the HM Trust. (*Id.* at ¶¶ 284-285)

In April 2010, Eizen contacted Jordan's attorneys in his capacity as attorney for Troilo and Kolleda, as trustees of the HM Trust, and Mirra, as protector, taking a position directly adverse to Jordan's interests. (*Id.* at ¶¶ 286-287) On May 24, 2010, Eizen sent a letter to Jordan's attorney, falsely stating that Jordan had resigned as protector of the Conundrum Trust

12

and attaching a fraudulent document regarding the resignation. (*Id.* at ¶ 288) On March 9, 2011, Eizen produced a disclaimer document dated June 30, 2009, which falsely purported that Jordan agreed to disclaim any right her son may have had to benefit from the Conundrum Trust as the adopted child of Mirra. (*Id.* at ¶ 289) Another fraudulent disclaimer of Jude Mirra's interests in the Conundrum Trust was dated November 19, 2009. (*Id.* at ¶¶ 291-292)

## III. LEGAL STANDARD

Rule 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations in the complaint and view them in the light most favorable to the plaintiff. *Umland v. Planco Fin. Servs.*, 542 F.3d 59, 64 (3d Cir. 2008).

To state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required, the complaint must set forth sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A claim is facially plausible when the factual allegations allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 663; *Twombly*, 550 U.S. at 555-56.

When determining whether dismissal is appropriate, the court must take three steps.[7] *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court must identify

---

[7] Although *Iqbal* describes the analysis as a "two-pronged approach," the Supreme Court observed that it is often necessary to "begin by taking note of the elements a plaintiff must plead

13

the elements of the claim. *Iqbal*, 556 U.S. at 675. Second, the court must identify and reject

conclusory allegations. *Id.* at 678. Third, the court should assume the veracity of the well-

pleaded factual allegations identified under the first prong of the analysis, and determine whether

they are sufficiently alleged to state a claim for relief. *Id.*; *see also Malleus v. George*, 641 F.3d

560, 563 (3d Cir. 2011). The third prong presents a context-specific inquiry that "draw[s] on

[the court's] experience and common sense." *Id.* at 663-64; *see also Fowler v. UPMC*

*Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). As the Supreme Court instructed in *Iqbal*, "where

the well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to

relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## IV.  DISCUSSION

### A.  Release

In support of their motion to dismiss,[8] defendants contend that the Release bars all of

Jordan's claims arising on or before the date of its execution, except the breach of warranties

claim asserted against defendant Mirra in Count VII of the second amended complaint.[9] (D.I.

179 at 12-18) According to defendants, Jordan's allegations that her signature was fraudulently

procured are themselves barred by the language of the Release, and also fail independently for

lack of justifiable reliance. (*Id.* at 14) In response, Jordan alleges that the Release was procured

---

to state a claim." 556 U.S. at 675, 679. For this reason, the Third Circuit has adopted a three-
pronged approach. *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130 n.7 (3d Cir. 2010);
*Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

[8] The court may consider the SDA and the Release without converting the motion to dismiss to a
motion for summary judgment because these documents are "integral to or explicitly relied upon
in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir.
1997).

[9] The claim for declaratory relief at Count X of the second amended complaint arose after the
execution of the Release and is therefore not barred by its terms.

by fraud and is therefore invalid. (D.I. 122 at 3-8; D.I. 194 at 2) Jordan contends that determining whether a plaintiff asserting fraud-based claims could justifiably rely on a false representation raises a question of fact, and her claims that she was not provided with a copy of the Release before she signed it are fact-sensitive. (D.I. 122 at 7)

As a preliminary matter, the court must determine which state's law applies to the analysis. Defendants indicate that Delaware law governs construction of the Release pursuant to the terms of paragraph 7 of the Release, which states that "[t]his Release Agreement shall be governed by the substantive laws of the State of Delaware." (D.I. 179 at 14-15; D.I. 114, Ex. D at ¶ 7) Defendants claim that New York law governs Jordan's fraud-based claims incident to the execution of the Release, citing *Krock v. Lipsay*, 97 F.3d 640, 645 (2d Cir. 1996) for the proposition that the choice of law provision in the Release applies only to breach of contract claims, and does not extend to tort claims arising from the contract. (D.I. 179 at 14-15) Jordan does not dispute defendants' assertion that New York law controls with respect to the fraud-based claims. (D.I. 122 at 3-4) Therefore, the court will apply Delaware law to the construction of the Release, and New York law to the substantive claims in the pleading.

The court next addresses the substantive issue of whether the Release bars all of Jordan's claims in the present action, with the exception of the causes of action for breach of warranties against Mirra and for declaratory relief. To determine whether a release covers a claim, "the intent of the parties as to its scope and effect are controlling, and the court will attempt to ascertain their intent from the overall language of the document." *Corporate Prop. Assocs. 6 v. Hallwood Grp. Inc.*, 817 A.2d 777, 779 (Del. 2003). The Release in the present action falls into the category of a general release which mutually discharges Mirra and Jordan, as well as their heirs and beneficiaries, their affiliates and the officers, directors, stockholders, employees,

15

agents, insurers and attorneys of each such affiliate, and each such foregoing person's or entity's predecessors, successors and assigns:

> from any and all manner of actions, causes of action, claims, offsets, demands, judgments, complaints, executions, regulatory challenges, losses, damages, expenses, fees, debts, representations, warranties or liabilities of any kind whatsoever, whether arising out of state, federal or foreign law, rule, regulation or equity, whether known or unknown, accrued or not accrued, asserted or not asserted, matured or not matured, suspected or not suspected, fixed or contingent, foreseeable or unforeseeable, direct or indirect . . . which occurred, arose or existed at any time on or before the date of this Release Agreement.

(D.I. 114, Ex. D at ¶¶ 2, 3) This language demonstrates the parties' intent to enter into a broad, mutual release of all claims. Under Delaware law, a general release such as the one at issue in the present case covers all claims, whether or not they were anticipated. *See Hob Tea Room v. Miller*, 89 A.2d 851, 856 (Del. 1952) ("[T]he concept of a general release . . . is intended to cover everything—what the parties presently have in mind, as well as what they do not have in mind, but what may, nevertheless, arise."); *Conley v. Dan-Webforming Int'l A/S (Ltd.)*, 1992 WL 401628, at *9, 12 (D. Del. Dec. 29, 1992) (holding that a fraud-based claim relating to "acts and deeds . . . unknown at the time of settlement" were barred by a general release). Consequently, the Release bars all of Jordan's claims except for the causes of action for breach of warranties and declaratory relief.

Jordan's claim against Mirra for breach of warranties is not barred by the terms of the Release due to the express carve-out in paragraph 3 of the Release: "Notwithstanding anything herein to the contrary, Jordan is not releasing hereby Mirra from Claims that arise under the express terms and conditions of, and specified in, the Distribution Agreement, the Indemnification Agreement and the Purchase Agreement." (D.I. 114, Ex. D at ¶ 3; D.I. 179 at 16-17) Pursuant to the SDA, "Mirra represents and warrants that . . . the Recognized Joint

16

Assets listed on Schedule 2.1.1 represent all of the assets in which the parties have a joint interest [and] . . . the Recognized Joint Liabilities listed on Schedule 2.2.2 represent all of the liabilities to which the parties are jointly and/or severally liable." (D.I. 114, Ex. C at ¶¶ 5.3.1, 5.3.2; 11/10/15 Tr. at 39:13-41:3) Thus, Jordan's breach of warranties claim against Mirra arising under the express terms of Article 5.3 of the SDA is preserved under paragraph 3 of the Release.

The parties disagree as to the proper scope of discovery for Jordan's cause of action for breach of warranties against Mirra at Count VII of the second amended complaint. (D.I. 194 at 1-2) ("Jordan therefore is entitled to discovery to prove her allegations" that Mirra omitted or misrepresented various assets in the schedules to the SDA). Specifically, Jordan alleges that she may, "on a breach of warranty theory, seek damages for most of the wrongs committed by Mirra even if all her other claims are dismissed." (*Id.* at 3) Defendants advocate a narrower construction of the breach of warranties claim, limited to the listing of joint assets and joint liabilities in certain SDA schedules. (D.I. 195 at 1)

This dispute is not appropriately resolved on a Rule 12(b)(6) motion to dismiss. *See U.S. ex rel. Spay v. CVS Caremark Corp.*, 2013 WL 4525226, at *1 (E.D. Pa. Aug. 27, 2013) (addressing the permissible scope of discovery on a motion to compel after the court previously deemed the claims sufficient to survive Rule 12(b)(6) scrutiny). Defendants concede that the cause of action for breach of warranties against Mirra is not barred by the terms of the Release or the statute of limitations, and raise no objections to the sufficiency of the pleading with respect to the breach of warranties claim. (D.I. 179; D.I. 195) Defendants rely on *Seven Investments, LLC v. AD Capital, LLC*, 32 A.3d 391, 398-99 (Del. Ch. 2011) in support of their argument that the carve-out provision does not impact any other claims in this action. (D.I. 179 at 17-18) This proposition is consistent with the court's recommendation that only the breach of warranties

claim is preserved under the carve-out in the Release. However, *Seven Investments* is otherwise inapplicable to the facts presently before the court, as the complaint in that case did not assert any claims based in contract, and the plaintiff "chose instead to sue for fraud based on wrongs allegedly committed prior to or in connection with the execution of the Termination Agreement," which were barred by the General Release. *Seven Investments*, 32 A.3d at 398-99.

Jordan alleges that the Release may be voided in the present case because it was procured by fraud. (D.I. 122 at 3-4) Under New York law, "a release is treated just as any other contract . . . and may be set aside on the traditional bases of fraudulent inducement, misrepresentation, mutual mistake or duress." *C3 Media & Marketing Group, LLC v. Firstgate Internet, Inc.*, 419 F. Supp. 2d 419, 429 (S.D.N.Y. 2005) (internal citations omitted). As such, a party may avoid the application of a signed release by showing that the release was procured by fraud. *See Morefun Co. v. Mario Badescu Skin Care Inc.*, 588 F. App'x 54, 55-56 (2d Cir. 2014); *Pappas v. Tzolis*, 982 N.E.2d 576, 579-80 (N.Y. 2012). However, "if the release is broad enough to encompass fraud claims, the plaintiff cannot rely on fraudulent inducement unless it can identify a separate fraud from the subject of the release." *See Morefun*, 588 F. App'x at 55-56 (internal quotation marks omitted).

In the present case, the Release contemplates claims "which occurred, arose, or existed at any time on or before the date of this Release Agreement," (D.I. 114, Ex. D at ¶¶ 2, 3), and also bars claims "arising from or relating to Mirra's or Jordan's negotiation, execution and delivery of this Release Agreement," (*Id.* at ¶ 6). The fraudulent procurement claim alleged by Jordan regarding the execution of the Release itself is expressly barred by the terms of the Release, and therefore cannot be treated as a "separate fraud" apart from the claims contemplated by the Release. *See Interpharm v. Wells Fargo Bank, Nat'l Ass'n*, 655 F.3d 136, 142 (2d Cir. 2011)

("Under New York law . . . a valid release constitutes a complete bar to an action on a claim which is the subject of the release."). The court cannot properly invalidate the Release "by its own effectiveness." *Centro Empresarial Cempresa S.A. v. Am. Movil, S.A.B. de C.V.*, 76 A.D.3d 310, 317 (N.Y. App. Div. 2010), *aff'd*, 952 N.E.2d 995 (N.Y. 2011). Jordan does not claim that she challenged the inclusion of this language in paragraph 6 of the Release, and paragraph 6 appears plainly on the signature page executed by her. (D.I. 114, Ex. D at ¶ 6) Consequently, there is no indication that her execution of the Release, and the resultant waiver of claims arising from the execution and negotiation of the Release, was not "fairly and knowingly made." *See Mangini v. McClurg,* 249 N.E.2d 386, 392 (N.Y. 1969) (internal citations and quotation marks omitted).

Jordan relies on a number of case authorities in support of the proposition that a general release may be voided based on fraud in the procurement, and a motion to dismiss is an inappropriate method for resolving claims when a plaintiff pleads that a release was the product of fraud or duress. (D.I. 122 at 3-4) However, Jordan's reliance on these cases does not alter the court's conclusion. In *Newin Corp. v. Hartford Accident & Indem. Co.*, 333 N.E.2d 163 (N.Y. 1975), the New York Court of Appeals determined that the claims fell outside the scope of the release because the release only covered claims belonging to the bankrupt estate, and stated in dicta that the release could not bar the claims because its execution was improperly obtained. In connection with this alternative basis for reaching its conclusion, the court stated that "[s]uch a claim is well-recognized and, in and of itself would be sufficient to support a denial of this branch of the motion," without further analysis or application of the principle to the facts of the case. *Id.* Other cases cited by Jordan rely on *Newin* in support of their reasoning, despite the absence of an analysis. *See Ladenburg Thalmann & Co. v. Imaging Diagnostic Sys., Inc.*, 176 F.

19

Supp. 2d 199, 205 (S.D.N.Y. 2001); *Steen v. Bump*, 233 A.D.2d 583, 584 (N.Y. App. Div. 1996).

Jordan's reliance on *Johnson v. Lebanese Am. Univ.* is also misplaced because it involves a release's interpretation under New York law, whereas the parties in the present action agree that Delaware law governs the interpretation of the Release. 84 A.D.3d 427, 429-30 (N.Y. App. Div. 2011).

More recent case law confirms that a motion to dismiss may properly be granted based on the terms of a release that was not induced by a separate fraud. *See Morefun Co. v. Mario Badescu Skin Care Inc.*, 2014 WL 2560608, at *5 (S.D.N.Y. June 6, 2014), *aff'd*, 588 F. App'x 54 (2d Cir. 2014) (granting a Rule 12(b)(6) motion because the disputed settlement agreement contained a valid release of claims); *Pappas v. Tzolis*, 982 N.E.2d 576, 579-80 (N.Y. 2012) (dismissing claims for fraud and misrepresentation where no separate action was alleged regarding the release's fraudulent inducement); *Centro Empresarial*, 952 N.E.2d 995 (N.Y. 2011) (affirming lower court's decision to bar an action by a release on a motion to dismiss); *Arfa v. Zamir*, 952 N.E.2d 1003, 1003-04 (N.Y. 2011) (holding that a general release executed by the parties barred the fraud claim after concluding that plaintiffs failed to allege the release was induced by a separate fraud). In the present action, there is no fraud separate from the subject of the Release because Jordan's allegations regarding fraudulent execution are contemplated by paragraph 6 of the Release, which states that "[n]either Mirra nor Jordan will assert any Claims against the other Party arising from or relating to Mirra's or Jordan's negotiation, execution and delivery of this Release Agreement." (D.I. 114, Ex. D at ¶ 6)

Even if Jordan did not release her claims, she has failed to establish the requisite justifiable reliance because she made no efforts to confirm that the requested changes had been made to the Release before she signed it. To invalidate a release based on fraudulent

20

inducement, a plaintiff must establish the basic elements of fraud, including "a representation of material fact, the falsity of that representation, knowledge by the party who made the representation that it was false when made, justifiable reliance by the plaintiff, and resulting injury." *Centro Empresarial Cempresa S.A. v. Am. Movil, S.A.B. de C.V.*, 17 N.Y.3d 269, 276 (N.Y. 2011) (internal citations and quotation marks omitted). Although Jordan claims that a determination on the issue of justifiable reliance requires a factual inquiry that would be inappropriate at this stage of the proceedings, the facts relevant to the inquiry in the present case are not in dispute. Specifically, Jordan admits that she did not read the final version of the Release before signing it. (D.I. 122 at 7; D.I. 84 at ¶ 274) Under New York law, "a party will not be excused from his failure to read and understand the contents of a release." *Sofio v. Hughes*, 162 A.D.2d 518, 519 (N.Y. App. Div. 1990) (internal citations and quotation marks omitted). This well-established principle extends to the issue of justifiable reliance. *See Morby v. DiSiena Assocs. LPA*, 291 A.D.2d 604, 606 (N.Y. App. Div. 2002) ("Having failed to read the release before signing it, plaintiff simply cannot establish the essential element of justifiable reliance . . . [T]he allegedly fraudulent misrepresentation by Di Siena could have been readily discovered upon the reading of the document . . ."). Jordan's review of a preliminary draft of the Release does not excuse her failure to request and review the full and final executed version, despite her allegations of duplicitous conduct by the RAM Defendants. *See Sorenson v. Bridge Capital Corp.*, 52 A.D.3d 265, 266 (N.Y. App. Div. 2008) (barring plaintiff's fraud claims for failure to establish justifiable reliance after defendant reinserted disputed language into the agreement because plaintiff failed to review the agreement in its entirety).

Jordan's claim that "several of [the defendants] themselves had been and would continue to be Plaintiff's fiduciaries" does not excuse her failure to review the terms of the Release before

executing it because defendants appeared on the opposite side of the transaction, and both Jordan and defendants were represented by their respective counsel. (D.I. 122 at 8) "That defendants arguably are fiduciaries of plaintiffs does not invalidate the release, since they negotiated across the table from plaintiffs, who are sophisticated parties represented by counsel." *Kafa Investments, LLC v. 2170-2178 Broadway LLC*, 114 A.D.3d 433, 433-34 (N.Y. App. Div. 2014); *see also M&T Bank v. HR Staffing Solutions, Inc.*, 106 A.D.3d 1498, 1500 (N.Y. App. Div. 2013) (holding that defendant had a duty to "make inquiry and to read and understand" the agreement, and this duty was not "diminished merely because [he] was provided with only a signature page before executing the agreement."). Because Jordan has failed to plead justifiable reliance, which is a required element to invalidate the Release, the court concludes that the Release is valid and bars Jordan's claims, with the exception of the claim for breach of warranties against Mirra and the claim for declaratory relief.

## B. Statute of Limitations

The parties do not dispute that New York statutes of limitations apply to the claims at issue in this case. Jordan initiated the present action against Mirra on March 9, 2012. (D.I. 1) The amended complaint was filed on March 9, 2015, adding the remaining defendants. (D.I. 84)

Defendants contend that the claims against Mirra for breach of contract on promissory notes, breach of fiduciary duty, unjust enrichment, and conversion are barred by the applicable statute of limitations. (D.I. 179 at 12; 25-36) Defendants concede that the claims against Mirra for an accounting and common law fraud are only partially barred by the statute of limitations, and the claims against Mirra for fraudulent inducement and breach of warranties are not barred by the statute of limitations. (D.I. 179 at 12) With respect to the claims against the remaining defendants, defendants argue that the claims for an accounting, common law fraud, aiding and

22

abetting fraud, fraudulent inducement, breach of fiduciary duty, unjust enrichment, and conversion are each barred by the applicable statute of limitations. (*Id.*) In her responsive submission, Jordan specifically addresses only the claims for common law fraud, breach of fiduciary duty, unjust enrichment, and breach of contract on promissory notes, and relies on her equitable tolling arguments as an exception to the statute of limitations with respect to the remaining claims for an accounting, aiding and abetting fraud, fraudulent inducement, breach of warranties, and conversion. (D.I. 122 at 8-15)

## 1. Count 1: Breach of contract on promissory notes

In support of the motion to dismiss, defendants allege that Jordan's first cause of action against Mirra for breach of contract on promissory notes is subject to a six-year statute of limitations, which accrues at the time of execution. (D.I. 179 at 30) Defendants observe that the notes were executed between October 15, 1997 and October 1, 1998 and, as a result, the statute of limitations on the latest-accruing claim expired on October 1, 2004. (*Id.*)

In response, Jordan alleges that the promissory notes were unilaterally executed by Mirra, and Jordan was not aware of the notes' existence until 2011. (D.I. 122 at 13) According to Jordan, defendants represented that all of Mirra's financial obligations prior to January 31, 2003 had been fully satisfied, thus warranting application of the equitable tolling doctrine. (*Id.*) Jordan further contends that the language in the notes, which indicates that Mirra waived his right to be timely sued for nonperformance and nonpayment, precludes application of the statute of limitations bar. (*Id.* at 13-14)

The statute of limitations bars Jordan's claim against Mirra for breach of contract on promissory notes. The parties agree that the claims accrued in 1997 and 1998, and are subject to a six year statute of limitations. (D.I. 179 at 30; D.I. 122 at 13-14); *see Morrison v. Zaglool*, 88

A.D.3d 856, 858 (N.Y. App. Div. 2011). Jordan cannot prevail on her allegation that Mirra waived the statute of limitations defense in the language of the promissory notes, because an agreement to waive or extend the statute of limitations before the accrual of the cause of action is void under New York law. *See John J. Kassner & Co. v. City of New York*, 46 N.Y.2d 544, 551 (N.Y. 1979) ("If the agreement to 'waive' or extend the Statute of Limitations is made at the inception of liability it is unenforceable because a party cannot 'in advance, make a valid promise that a statute founded in public policy shall be inoperative.'"); *Yeshiva Univ. v. Fidelity & Deposit Co. of Md.*, 116 A.D.2d 49, 51-52 (N.Y. App. Div. 1986) ("An agreement to waive or even extend the Statute of Limitations, adopted at the inception of the contract and not after the cause of action has accrued, is against public policy and void.").

Therefore, the court recommends dismissal of Count 1 against Mirra for breach of contract on promissory notes as time barred. The court addresses Jordan's arguments with respect to the equitable tolling doctrine at § IV.C, *infra*. In the event that the district court reverses this decision and concludes that the equitable tolling doctrine applies as an exception to the statute of limitations with respect to this claim, the undersigned's recommendation that the Release bars this cause of action would still result in dismissal.

### 2. Count 2: Accounting

Defendants next contend that Jordan's second cause of action for an accounting against Mirra, Troilo, and Kolleda[10] is barred by the six-year statute of limitations because the claim, which accrued each time a wrongful transaction occurred, is based on transactions occurring through March 11, 2009. (D.I. 179 at 31-32) Defendants allege that the only transactions falling

---

[10] The second amended complaint also identifies Molieri as a defendant against whom the cause of action for an accounting is brought. (D.I. 176) However, Molieri was voluntarily dismissed from this action on January 13, 2016. (D.I. 156)

outside of this range are Mirra's "Allion/Biomed/Parallex transaction" and certain small loans made from the Merrill Lynch loan management accounts. (*Id.*) In response, Jordan alleges that her cause of action for an accounting was timely raised in accordance with the doctrine of equitable estoppel. (D.I. 122 at 21)

Under New York law, a cause of action for an accounting is governed by a six-year statute of limitations, which accrues at the time each wrongful transaction occurs. *See* N.Y. C.P.L.R. 213(1) (McKinney 2004); *Glynwill Invs., N.V. v. Prudential Sec., Inc.*, 1995 WL 362500, at *3 (S.D.N.Y. June 16, 1995). As it pertains to defendants Troilo and Kolleda, the six-year statute of limitations bars Jordan's second cause of action for an accounting because the allegations in the second amended complaint occurred on or before the cutoff date of March 9, 2009,[11] with the latest transaction closing on March 13, 2008. (D.I. 176 at ¶¶ 79, 83, 87, 102-03, 183, 189-91, 304) With respect to defendant Mirra, most of the transactions associated with the accounting claim closed on or before the cutoff date of March 9, 2006[12] and are therefore barred by the six-year statute of limitations. Defendants concede that the accounting claim against Mirra is not barred by the statute of limitations to the extent that it pertains to the Allion/Biomed/Parallex transaction, which closed on March 13, 2008, and a small number of loans made out of the Merrill Lynch loan management accounts after March 9, 2006. (D.I. 176 at ¶¶ 87, 183; D.I. 179 at 31-32) However, the portions of Jordan's accounting claim in Count 2 against Mirra which survive the statute of limitations analysis are barred by the terms of the Release for the reasons stated at § IV.A, *supra*.

---

[11] The amended complaint adding defendants Troilo and Kolleda was filed on March 9, 2015. (D.I. 84)
[12] Jordan filed the accounting claim against Mirra on March 9, 2012. (D.I. 1)

### 3. Count 3: Common law fraud

Defendants allege that the statute of limitations for Jordan's third cause of action for common law fraud is three years under New York law because Jordan has brought claims for both fraud and conversion. (D.I. 179 at 32) Because none of the common law fraud claims accrued later than April 10, 2007, defendants contend that the most recent claim expired on April 10, 2010. (*Id.* at 31-32) According to defendants, Jordan's common law fraud claim based on alleged misrepresentations made to Jordan in connection with the SDA accrued no later than March 13, 2008 and are thus timely filed against Mirra, but fail for lack of justifiable reliance. (*Id.* at 33-34)

In response, Jordan contends that the applicable statute of limitations for common law fraud is the later of six years or two years after discovery, and the three-year statute of limitations does not apply in this case because Jordan has alleged third-party reliance on defendants' misrepresentations. (D.I. 122 at 8-9) Jordan alleges that third-party reliance on defendants' misrepresentations operates as an exception to the justifiable reliance element of common law fraud, without explaining how third-party reliance impacts the statute of limitations analysis.[13] (*Id.* at 9-11) According to Jordan, the fact that the fraud claim is alternately pleaded as conversion is of no dispositive significance. (*Id.* at 11)

The fraud claims pleaded in paragraph 307(i) to (iv) of Jordan's third cause of action accrued no later than April 10, 2007. (D.I. 176 at ¶ 87(xxi)) New York's limitations period for fraud claims is ordinarily "the greater of six years from the date the cause of action accrued or two years from the time the plaintiff . . . discovered the fraud, or could with reasonable diligence

---

[13] Jordan's contentions regarding third-party reliance are addressed at length in the court's discussion of justifiable reliance at § IV.D.1, *infra*.

26

have discovered it." N.Y. C.P.L.R. 213(8). However, Jordan has failed to establish that her fraud claims are not merely incidental to her conversion claims. "[A] fraud-based claim will be barred by a shorter statute of limitations if the fraud allegation is 'merely incidental' to a claim with a shorter limitations period." *Marketxt Holdings Corp. v. Engel & Reiman, P.C.*, 693 F. Supp. 2d 387, 394 (S.D.N.Y. 2010); *see also Midwest Mem. Group, LLC v. Int'l Fund Servs. Ltd.*, 2011 WL 4916407, at *5 (S.D.N.Y. Oct. 17, 2011) (concluding that the three-year statute of limitations for conversion applies to a fraud claim when the "claims center on allegations of theft rather than deception."). A claim for conversion is subject to a three-year statute of limitations under New York law. *See Marketxt*, 693 F. Supp. 2d at 395.

The second amended complaint pleads common law fraud arising out of misrepresentations and fraudulent concealment involving transfers or encumbrances of Jordan's assets. (D.I. 176 at ¶ 307) Jordan concedes that her common law fraud claim is alternately pleaded as a conversion claim, and acknowledges that the gravamen of the cause of action is the theft itself, and not the deception, by emphasizing that the transfers and encumbrances occurred "without Plaintiff's knowledge or consent." (D.I. 122 at 11; D.I. 176 at ¶ 307) Consequently, Jordan has failed to show that: "(1) the fraud occurred separately from and subsequent to the injury forming the basis of the alternate claim; and (2) the injuries caused by the fraud are distinct from the injuries caused by the alternate claim." *Corcoran v. N.Y. Power Auth.*, 202 F.3d 530, 545 (2d Cir. 1999). The shorter three-year statute of limitations period applies to Jordan's common law fraud claim because Jordan has failed to show that her fraud claims are not merely incidental to her conversion claims. *Marketxt*, 693 F. Supp. 2d at 394. The latest of Jordan's common law fraud claims therefore expired on April 10, 2010. As a result, Jordan's

cause of action for common law fraud is untimely as to all defendants with respect to paragraph 307(i) to (iv) of the second amended complaint.

Paragraph 307(v) of the second amended complaint alleges misrepresentations and fraudulent concealment regarding "the value of Jordan's business interests and assets made in connection with the SDA," independent from Jordan's conversion claim. (D.I. 176 at ¶ 307(v)) According to the allegations in the second amended complaint, this subpart of Jordan's claim for common law fraud accrued no later than the execution of the SDA on March 13, 2008, and expired on March 13, 2014 under the standard six-year statute of limitations applicable to claims for common law fraud. (D.I. 176 at ¶¶ 269-77) Therefore, the claim asserted in Count 3 of the second amended complaint is barred by the statute of limitations to the extent that it pertains to Troilo, Kolleda, Kovinsky, and Tropiano. Although the claim alleged in paragraph 307(v) is not barred by the statute of limitations to the extent that it applies to Mirra, the claim fails for lack of justifiable reliance as discussed at § IV.A, *supra*, and § IV.D.1, *infra*.

### 4. Count 4: Aiding and abetting fraud

Jordan's fourth cause of action for aiding and abetting fraud is time-barred regardless of whether the three-year or six-year statute of limitations applies. The allegations against Stewart, Sigloch, Forte, Hall, Demora, and Kuo accrued between April 10, 2002 and August 16, 2006. (D.I. 176 at ¶¶ 112, 117) Consequently, the cause of action was first brought more than eight years after it accrued. (D.I. 84)

### 5. Count 5: Fraudulent inducement

The statute of limitations for fraudulent inducement is six years and accrues "when the document is executed and when the party alleging fraud has given consideration and thus suffered damage." *Triangle Underwriters, Inc. v. Honeywell, Inc.*, 604 F.2d 737, 748 (2d Cir.

28

1979) (internal citations and quotation marks omitted). The basis for Jordan's fraudulent

inducement claim, asserted in Count 5 of the second amended complaint, is the execution of the

SDA, which occurred on March 13, 2008. (D.I. 176 at ¶ 271) The six-year statute of limitations

therefore expired on March 13, 2014, one year before Jordan first raised the claim against

defendants Troilo, Tropiano, and Kolleda. (D.I. 84) Defendants concede that Jordan's claim

against Mirra for fraudulent inducement is not barred by the applicable six-year statute of

limitations. (D.I. 179 at 34) Although the claim is not barred by the statute of limitations to the

extent that it applies to Mirra, the claim fails for lack of justifiable reliance as discussed at §

IV.A, *supra*, and § IV.D.1, *infra*.

### 6. Count 6: Breach of fiduciary duty

Defendants contend that Jordan's sixth cause of action for breach of fiduciary duty is

subject to a three-year statute of limitations because Jordan seeks only monetary damages. (D.I.

179 at 34-35) According to defendants, the underlying injury was caused by the same pattern of

forgery and fraud comprised of acts committed between July 12, 1996 and April 10, 2007. (*Id.*)

As a result, defendants contend that Jordan's most recent claim for breach of fiduciary duty

expired on April 10, 2010. (*Id.*) In response, Jordan alleges that a six-year statute of limitations

should apply to the breach of fiduciary duty claim because the claim is predicated on allegations

of actual fraud. (D.I. 122 at 111-12)

Under New York law, the statute of limitations for breach of fiduciary duty varies

depending on the substantive remedy sought. *See Marketxt*, 693 F. Supp. 2d at 398. The statute

of limitations for claims for breach of fiduciary duty sounding in fraud is typically six years,

whereas suits alleging a breach of fiduciary duty seeking only monetary damages are subject to a

three-year statute of limitations. N.Y. C.P.L.R. 213(1); *Balta v. Ayco Company, LP*, 626 F.

Supp. 2d 347, 356 (W.D.N.Y. 2009). "[A]n exception to this general rule is that claims for breach of fiduciary duty that sound in fraud are subject to a six-year statute of limitations, even when the relief sought is money damages." *Balta*, 626 F. Supp. 2d at 356 (citing *Kaufman v. Cohen*, 307 A.D.2d 113, 119 (N.Y. App. Div. 2003)). However, the three-year statute of limitations for conversion applies to a fraud-based breach of fiduciary duty claim incidental to a conversion claim. *See Marketxt*, 693 F. Supp. 2d at 398 ("Because the plaintiff's breach of fiduciary duty claims are grounded in conversion rather than fraud, they are subject to the shorter three-year statute of limitations and are time-barred.").

Although Jordan's claim for breach of fiduciary duty in Count 6 is predicated on allegations of fraud in the present case, Jordan's fraud allegations are incidental to her conversion claims for the reasons previously discussed at § IV.B.3, *supra*. Under New York law, when a plaintiff's breach of fiduciary duty claims seek only monetary damages and are grounded in conversion rather than fraud, they are subject to the shorter three-year statute of limitations period. *Marketxt*, 693 F. Supp. 2d at 398 ("Because the plaintiff's breach of fiduciary duty claims are grounded in conversion rather than fraud, they are subject to the shorter three-year statute of limitations and are time-barred."). Jordan's cause of action for breach of fiduciary duty is based on a "pattern of forgery, fraud, conversion, and self-dealing" which also serves as the basis for Jordan's fraud and conversion claims. (D.I. 176 at ¶¶ 306-08, 328, 342) Therefore, Jordan's cause of action for breach of fiduciary duty is subject to the three-year statute of limitations.

Applying the three-year statute of limitations to Jordan's cause of action for breach of fiduciary duty, the court concludes that the claim is time-barred with respect to Mirra, Troilo, and Kolleda. Jordan does not dispute defendants' assertion that the cause of action is based on

allegedly wrongful acts committed between July 12, 1996 and April 10, 2007. (D.I. 176 at ¶¶ 87(xxi), 109) Consequently, the three-year statute of limitations expired on April 10, 2010, two years before the original complaint was filed against Mirra, and nearly five years before the amended complaint was filed against Troilo and Kolleda. (D.I. 1; D.I. 84)

### 7. Count 7: Breach of warranties

There is no dispute that Jordan's seventh cause of action for breach of warranties against Mirra is not barred by the statute of limitations.

### 8. Count 8: Unjust enrichment

Defendants allege that the statute of limitations for unjust enrichment in the present case is three years because Jordan seeks a remedy of monetary damages. (D.I. 179 at 35) Because the most recent wrongful act giving rise to a duty of restitution was the execution of the SDA in March 2008, defendants contend that the statute of limitations pertaining to Jordan's unjust enrichment claim expired no later than March 13, 2011. (*Id.*) In response, Jordan alleges that her claim for unjust enrichment seeks appropriate equitable relief in addition to monetary damages and, as such, a six-year statute of limitations should apply. (D.I. 122 at 12)

The statute of limitations for a claim of unjust enrichment under New York law depends on the nature of the remedy sought. *Matana v. Merkin*, 957 F. Supp. 2d 473, 494 (S.D.N.Y. 2013). The limitations period is six years for equitable relief and three years for monetary relief, and the time begins to run "upon the occurrence of the wrongful act giving rise to a duty of restitution and not from the time the facts constituting the fraud are discovered." *Id.* (internal quotation marks and citations omitted); *United Teamster Fund v. MagnaCare Admin. Servs., LLC*, 39 F. Supp. 3d 461, 478 (S.D.N.Y. 2014).

31

Jordan's second amended complaint specifically identifies the relief sought in connection with her unjust enrichment claim as follows: "On the Eighth Cause of Action a judgment in Plaintiff's favor and against all Defendants, for more than $225,000,000.00 in compensatory damages, together with costs, interest and such other and further relief as this Court deems just and proper." (D.I. 176 at 83, ¶ H) Contrary to Jordan's contentions, inclusion of the language "and such other and further relief as this Court deems just and proper" does not constitute a claim for equitable relief. *See Murphy v. Am. Home Prods. Corp.*, 136 A.D.2d 229, 233-34 (N.Y. App. Div. 1988); *Assoun v. Assoun*, 2015 WL 110106, at *6 n.3 (S.D.N.Y. Jan. 7, 2015) ("A plaintiff's 'ritualistic use in the prayer for relief of [this language] . . . does not change the legal character of the relief demanded . . . [and] in no way changes the exclusively monetary nature of the relief actually sought[.]"). Consequently, the three-year statute of limitations expired in March 2011, barring Jordan's claim for unjust enrichment in Count 8 of the second amended complaint as to all defendants.

### 9. Count 9: Conversion

As previously discussed in connection with Jordan's third and sixth causes of action for common law fraud and breach of fiduciary duty, respectively, *see* § IV.B.3 & 6, *supra*, the applicable statute of limitations for a conversion claim under New York law is three years. Accrual of the statute of limitations runs from the date the alleged conversion takes place, and not from the discovery of the injury. *Vigilant Ins. Co. of Am. v. Housing Auth. of City of El Paso, Tex.*, 660 N.E.2d 1121, 1123 (N.Y. 1995). Jordan's conversion claim is based on allegations that defendants transferred and encumbered Jordan's assets for their own benefit, and the last of these acts took place on April 10, 2007. (D.I. 176 at ¶¶ 87(xxi), 342) The statute of

32

limitations for Jordan's conversion claim at Count 9 of the second amended complaint therefore expired on April 10, 2010, and the claim is untimely as to all defendants.

## C. Equitable Tolling

Equitable tolling is "a doctrine to be invoked sparingly and only under exceptional circumstances." *Abercrombie v. Andrew Coll.*, 438 F. Supp. 2d 243, 265 (S.D.N.Y. 2006). To invoke the doctrine of equitable tolling or equitable estoppel under New York law,[14] a plaintiff must show that she "was unable, despite due diligence, to discover facts that would allow [her] to bring [her] claim in a timely manner, or that defendant's actions induced plaintiff to refrain from commencing a timely action." *De Sole v. Knoedler Gallery, LLC*, 974 F. Supp. 2d 274, 318 (S.D.N.Y. 2013). "[D]ue diligence on the part of the plaintiff in bringing [her] action is an essential element for the applicability of the doctrine of equitable estoppel, to be demonstrated by the plaintiff when [s]he seeks the shelter of the doctrine." *Drake v. Lab. Corp. of Am. Holdings*, 2007 WL 776818, at *7 (E.D.N.Y. Mar. 13, 2007) (quoting *Simcuski v. Saeli*, 377 N.E.2d 713, 717 (N.Y. 1978)). If the plaintiff possesses "timely knowledge sufficient to place him or her under a duty to make inquiry and ascertain all the relevant facts prior to the expiration of the applicable Statute of Limitations," there can be no justifiable reliance, and the doctrine of equitable estoppel does not apply. *Abercrombie*, 438 F. Supp. 2d at 266 (quoting *Gleason v. Spota*, 194 A.D.2d 764, 764 (N.Y. App. Div. 1993)).

---

[14] New York courts do not typically distinguish between the doctrines of equitable estoppel and equitable tolling, and the same analysis is applied to both doctrines. *Corporate Trade, Inc. v. Channel*, 563 F. App'x 841, 841 (2d Cir. 2014). The parties agree that New York courts do not distinguish between the doctrines of equitable estoppel and equitable tolling (D.I. 122 at 16; D.I. 130 at 16 n.10), although the Second Circuit has noted that "the reported decisions of the federal and state courts do not always mean the same thing by their use of these phrases, and phrases to which some judges ascribe different meanings are used interchangeably by other judges," *Pearl v. City of Long Beach*, 296 F.3d 76, 81 (2d Cir. 2002).

To invoke the equitable tolling doctrine, a plaintiff must also establish that the defendants took subsequent and specific actions, separate from those that provide the factual basis for the underlying causes of action, to prevent the plaintiff from timely bringing suit. *Corsello v. Verizon New York, Inc.*, 18 N.Y.3d 777, 789; 967 N.E.2d 1177 (N.Y. 2012) (citing *Zumpano v. Quinn*, 6 N.Y.3d 666, 674; 849 N.E.2d 926 (N.Y. 2006)). "[W]here the alleged concealment consisted of nothing but defendants' failure to disclose the wrongs they had committed, [New York courts] have held that the defendants were not estopped from pleading a statute of limitations defense." *Corsello*, 18 N.Y.3d at 789; *see also Abercrombie*, 438 F. Supp. 2d at 265 ("[E]quitable estoppel does not apply where the misrepresentation or act of concealment underlying the estoppel claim is the same act which forms the basis of plaintiff's underlying cause of action."). However, concealment without an actual misrepresentation may suffice to toll the running of the statute of limitations if the plaintiff has a fiduciary relationship with the defendants. *See St. John's Univ. v. Bolton*, 757 F. Supp. 2d 144, 186-87 (E.D.N.Y. 2010); *see also Porwick v. Fortis Benefits Ins. Co.*, 2004 WL 2793186, at \*6 (S.D.N.Y. Dec. 6, 2004) ("Equitable estoppel requires a showing that defendant made an actual misrepresentation unless the parties have a fiduciary relationship, in which case, concealment without actual misrepresentation will suffice."). This does not mean that the doctrine of equitable estoppel is "applied with more vigor against one who owes a fiduciary duty to the plaintiff." *Abercrombie*, 438 F. Supp. 2d at 265 n.23.

Jordan alleges that the doctrine of equitable estoppel should toll the running of the statute of limitations because defendants were in a fiduciary relationship with Jordan, and the amended complaint contains numerous allegations regarding defendants' affirmative acts of misrepresentation and concealment. (D.I. 122 at 18) Jordan contends that she did not begin to

34

discover defendants' fraud until early 2010, and the commencement of this action in 2012 and the amendment of the complaint once the stay was lifted in 2015 demonstrate that Jordan acted with the requisite due diligence in light of her incarceration in 2010. (*Id.* at 19-20)

In response, defendants contend that Jordan's equitable estoppel argument fails because it is premised on the very same allegations of misrepresentation and concealment on which Jordan's second through eighth causes of action depend. (D.I. 130 at 16-17) Moreover, defendants argue that Jordan's own allegations compel the conclusion that she knew or should have known of her alleged injury no later than March 13, 2008, when she executed the SDA, because the alleged fraud was obvious from a cursory review of the SDA and the accompanying schedules. (*Id.* at 17) According to defendants, it is irrelevant whether defendants were Jordan's fiduciaries or whether Jordan was incarcerated in 2010, because Jordan failed to plead that she undertook a diligent inquiry in March 2008. (*Id.* at 18)

Even if the court were to credit Jordan's assertion that defendants were her fiduciaries,[15] the doctrine of equitable tolling does not apply to the second through eighth causes of action in the present case because Jordan relies on the same allegations of misrepresentation and concealment on which her causes of action depend, with the exception of the claim for breach of contract on promissory notes. *See St. John's Univ.*, 757 F. Supp. 2d at 187 (concluding that, even though plaintiff sufficiently alleged the existence of a fiduciary relationship, equitable tolling did not apply to toll the limitations period because the claims were based on the same acts of fraudulent concealment that formed the basis for plaintiff's invocation of the equitable tolling

---

[15] At § IV.A, *supra*, the court considered Jordan's argument that defendants acted as Jordan's fiduciaries, and concluded that Jordan and defendants appeared on opposite sides of the transaction and were represented by separate counsel. The court recommended that defendants' alleged role as fiduciaries did not excuse Jordan's failure to review the terms of the Release before executing it under the circumstances of this case.

35

doctrine).  Specifically, Jordan supports her equitable tolling argument by pointing to allegations in the second amended complaint that defendants:

> (i) forged Jordan's signature on dozens of documents in order to siphon off Plaintiff's assets for their own benefit, without Jordan's knowledge (Amended Complaint, ¶¶ 49-169, and *passim*); (ii) caused Jordan's assets to be invested in various entities that they falsely claimed were jointly owned by Jordan and Mirra, when in fact they were not (*id.*, ¶¶ 33-48, and *passim*); (iii) falsely represented that RAM Capital and various other entities in which Jordan supposedly had a 50 percent interest had no value, or less value than they actually had (*id.*, ¶¶ 169-256, and *passim*); (iv) falsely represented that Mirra's financial obligations to Jordan for the period prior to January 31, 2003 had been satisfied (*id.*, ¶¶ 257-263); and (v) falsely represented that the General Release language had been stricken from the SDA, when in fact it had not been stricken (*id.*, ¶¶ 264-279).

(D.I. 122 at 18)  A review of the cited paragraphs of the second amended complaint reveals that these allegations also form the basis for Jordan's causes of action for an accounting, common law fraud, aiding and abetting fraud, fraudulent inducement, breach of fiduciary duty, breach of warranties, and unjust enrichment.  (D.I. 176)

Moreover, the doctrine of equitable tolling does not apply in the instant case because Jordan failed to establish that she justifiably relied on the alleged misrepresentations or concealment.  Jordan's review and execution of the SDA should have put her on inquiry notice of her alleged injuries no later than March 13, 2008, when the SDA was executed.  "[T]he allegations of the complaint, itself, actually establish that plaintiff[] could have uncovered defendants' alleged misrepresentations and omissions if [she] had exercised due diligence."  *Phoenix Light SF Ltd. v. Goldman Sachs Group, Inc.*, 43 Misc. 3d 1233(A), at *6 (N.Y. Sup. Ct. 2014).  Bank accounts that Jordan alleges she owned solely, and which were later secretly converted by defendants into joint accounts with Mirra, are listed in the SDA as joint accounts.  (D.I. 176 at ¶¶ 54-55, 70; D.I. 114, Ex. C at Schedule 2.1.1)  Four bank accounts that Jordan alleges she never opened and had no knowledge of are listed in the SDA as joint accounts.  (D.I.

176 at ¶¶ 62, 75; D.I. 114, Ex. C at Schedule 2.1.1) Real properties that Jordan alleges she owned are absent from the SDA schedules, including the Taylors Gap Road property. (D.I. 176 at ¶¶ 163-67) Jordan also alleges that the SDA schedules fail to include more than twelve companies "active and in good standing at the time of the execution of the SDA, in which Jordan and Mirra had joint interests." (D.I. 176 at ¶ 213) Where, as here, a plaintiff has failed to conduct any inquiry at all, it is appropriate to consider equitable estoppel at the motion to dismiss stage. *See Arthur Andersen*, 747 F. Supp. at 944; *Abercrombie*, 438 F. Supp. 2d at 267; *Whitney Holdings, Ltd. v. Givotovsky*, 988 F. Supp. 732, 747-48 (S.D.N.Y. 1997).

To the extent that Jordan should have been aware of her claims as of March 13, 2008, Jordan's subsequent incarceration in 2010 has no bearing on the analysis. *See Tellier v. Krimmer*, 1996 WL 518108, at *2 (E.D.N.Y. Sept. 4, 1996) ("Under New York law, a plaintiff's imprisonment does not act to toll the statute of limitations."); *Daniels v. Doe*, 1999 WL 1211824, at *2 (S.D.N.Y. Dec. 17, 1999) ("It has repeatedly been held that neither plaintiff's pro se nor incarcerated status is a basis for tolling the statute of limitations."). For the foregoing reasons, the doctrine of equitable estoppel does not toll the statute of limitations for Jordan's second through eighth causes of action.

### D. Sufficiency of Claims

#### 1. Fraud-based claims

In support of the motion to dismiss, defendants allege that Jordan's fraud-based claims for common law fraud, aiding and abetting fraud, and fraudulent inducement at Counts 3 through 5 of the second amended complaint fail as a matter of law for lack of justifiable reliance. (D.I. 179 at 21-22) Specifically, defendants contend that the claims for common law fraud and aiding and abetting fraud are predicated on the alleged forgeries of Jordan's signature, but only third

37

parties, and not Jordan, are alleged to have relied on the purported forgeries. (*Id.* at 22-23) Moreover, defendants allege that Jordan fails to plead that she justifiably relied on any alleged misrepresentation or omission in executing the SDA and the Release to establish a viable cause of action for fraudulent inducement. (*Id.* at 23) In response, Jordan contends that fraud claims may be predicated on third-party reliance if such reliance results in injury to the plaintiff. (D.I. 122 at 9-11)

Federal and state courts in New York are divided as to whether a fraud-based claim may be predicated on third-party reliance. *See Chevron Corp. v. Donziger*, 871 F. Supp. 2d 229, 256 (S.D.N.Y. 2012); *Pasternack v. Lab. Corp. of Am.*, 59 N.E.3d 485, 491-93 (S.D.N.Y. 2014). The Second Circuit has twice held that "a plaintiff does not establish the reliance element of fraud for purposes of . . . New York law by showing only that a third party relied on a defendant's false statements." *Cement & Concrete Workers Dist. Council Welfare Fund, Pension Fund, Legal Servs. Fund & Annuity Fund v. Lollo*, 148 F.3d 194, 196 (2d Cir. 1998); *see also City of New York v. Smokes-Spirits.com, Inc.*, 541 F.3d 425, 454 (2d Cir. 2008), *rev'd on other grounds and remanded sub nom. Hemi Group, LLC v. City of New York, N.Y.*, 559 U.S. 1 (2012) ("[A]llegations of third-party reliance . . . are insufficient to make out a common law fraud claim under New York law."). However, federal district and state courts within New York have also reached the opposite conclusion, holding that "the doctrine of third-party reliance permits the plaintiff to show that a third-party relied upon a misrepresentation by the defendant, which resulted in injury to the plaintiff." *Prestige Builder & Mgmt. LLC v. Safeco Ins. Co. of Am.*, 896 F. Supp. 2d 198, 203 (E.D.N.Y. 2012).

More recently, the Southern District of New York conducted a comprehensive analysis of the source of the split in *Pasternack v. Lab. Corp. See Pasternack*, 2014 WL 4832299, at *15-

18; *see also Ahluwalia v. St. George's Univ., LLC*, 63 F. Supp. 3d 251, 270 (E.D.N.Y. 2014)

("The Court finds persuasive the thorough reasoning of *Pasternack*."). Ultimately holding that

the Second Circuit decisions should control, the court observed that the cases upholding third-

party reliance as a basis for fraud claims could be traced back to three decisions from the 1800's.

*Id.* at *17. Upon close examination, the *Pasternack* court concluded that none of the three cases

actually addressed the issue of third-party reliance,[16] and noted that the requirements for stating a

fraud claim under New York law have changed substantially over the past century. *Id.* at *17-

18. Having analyzed an extensive body of cases on the issue of third-party reliance, the

*Pasternack* court concluded:

> Given that the New York Court of Appeals has not directly addressed this issue,
> that the Appellate Division courts are divided, and that many of the Appellate
> Division cases that have endorsed third-party reliance have mistakenly relied on
> *Eaton, Bruff,* and *Rice*, this Court will adopt the interpretation of New York law
> that is set forth in *Lollo* and *Smokes-Spirits.com*. That interpretation holds that "a
> plaintiff does not establish the reliance element of fraud for purposes of . . . New
> York law by showing only that a third party relied on a defendant's false
> statements." *Lollo*, 148 F.3d at 196. Because the SAC alleges that only the FAA
> and not Pasternack relied on LabCorp's alleged misrepresentations, Pasternack's
> fraud claim will be dismissed.

*Id.* at *18. The parties in the present action do not dispute that the basis for Jordan's fraud

claims are the forgeries that were relied upon by third parties. Because the second amended

complaint in the instant case alleges that only third parties, and not Jordan herself, relied on the

forgeries, I recommend that Jordan's fraud-based claims be dismissed without prejudice.

---

[16] Specifically, the *Pasternack* court observed that in *Eaton, Cole & Burnham Co. v. Avery*, 83
N.Y. 31 (1880), and *Bruff v. Mali*, 36 N.Y. 200 (1867), the plaintiff relied on the
misrepresentations, and the court therefore did not reach a determination on third-party reliance
because the third parties acted as mere conduits. In *Rice v. Manley*, 66 N.Y. 82 (1876), the issue
before the court was whether the plaintiff suffered a legally cognizable injury, not whether a
fraud claim could be premised on misrepresentations made to a third party.

In addition, Jordan's fraud allegations fail as a matter of law because Jordan cannot establish that she justifiably relied on the alleged misrepresentations. The alleged misrepresentations were obvious from the face of the SDA and the Release, and could have been uncovered in the exercise of reasonable diligence. *See Phoenix Light SF Ltd. v. Goldman Sachs Group, Inc.*, 43 Misc. 3d 1233(A), at *6 (N.Y. 2014) (granting motion to dismiss where allegations of complaint itself established that plaintiff could have uncovered defendants' alleged misrepresentations in the exercise of due diligence). Specifically, bank accounts that were opened solely in Jordan's name appeared in the SDA as accounts jointly held with Mirra. (D.I. 176 at ¶¶ 54-55, 70; D.I. 114, Ex. C at Schedule 2.1.1) The pleading identifies at least four accounts of which Jordan was unaware and did not open. (D.I. 176 at ¶¶ 62, 75; D.I. 114, Ex. C at Schedule 2.1.1) A number of real properties owned by Jordan were absent from the SDA schedules. (*Id.* at ¶¶ 163-167) Jordan's own records and a review of the SDA would have revealed the alleged fraud, and Jordan's failure to inquire about these issues demonstrates a lack of justifiable reliance. *See DynCorp v. GTE Corp.*, 215 F. Supp. 2d 308, 322-23 (S.D.N.Y. 2002) ("This is not a case where . . . [defendant's] alleged fraud was hidden in its accounting records, requiring extraordinary effort and sophisticated consultants to unmask."); *see also Arfa*, 76 A.D.3d at 59-60. Consequently, I recommend that Jordan's fraud-based claims be dismissed for failure to adequately state a claim for relief under Rule 12(b)(6).

### 2. Declaratory relief

Defendants allege that Jordan's claim for declaratory relief at Count 10 of the second amended complaint fails because it does not state and independent cause of action. (D.I. 179 at 36) In addition, defendants contend that Jordan lacks standing to bring a claim for declaratory relief because Jordan was not a beneficiary of the Conundrum Trust at the time of her son's

death. (*Id.* at 37) In response, Jordan alleges that she does not rest her claim of subject matter jurisdiction on the Declaratory Judgment Act. (D.I. 122 at 22) Moreover, Jordan contends that she has standing to assert the declaratory judgment claim because she seeks a declaration stating that she was improperly removed as the protector of the Conundrum Trust. (*Id.*)

I recommend that the court dismiss Jordan's tenth cause of action for declaratory relief in light of the foregoing recommendations that the court dismiss Jordan's fraud-based claims and her second cause of action for an accounting. (D.I. 176 at ¶¶ 296-97; 344-51) The Declaratory Judgment Act[17] provides an equitable remedy, and is not an independent cause of action. *See Doe v. Wilmington Housing Authority*, 880 F. Supp. 2d 513, 540 n.24 (D. Del. 2012), *rev'd in part on other grounds*, 568 F. App'x 128 (3d Cir. 2014). "Like a preliminary injunction, a declaratory judgment relies on a valid legal predicate. The DJA is procedural only, and does not create an independent cause of action." *Chevron Corp. v. Naranjo*, 667 F.3d 232, 244-45 (2d Cir. 2012) (internal citations and quotation marks omitted).

Jordan's tenth cause of action seeking a declaratory judgment is based on her allegations that she was wrongfully removed as the protector of the Conundrum Trust through forged and fraudulent documents. (D.I. 176 at ¶¶ 344-51) In contrast, Jordan's only surviving claim for breach of warranties against Mirra is based on Mirra's representations and warranties that the scheduled assets and liabilities identified in the SDA were accurate. (*Id.* at ¶¶ 331-35) The second amended complaint does not seek declaratory relief for the continuing dispute regarding the breach of warranties claim. *See Norton v. Town of Islip*, 678 F. App'x 17, 22-23 (2d Cir.

---

[17] Although Jordan alleges that she "does not rest her claim of subject matter jurisdiction on the Declaratory Judgment Act," (D.I. 122 at 22), the second amended complaint expressly states that "Plaintiff is entitled to a judgment pursuant to the Declaratory Judgment Act," (D.I. 176 at ¶ 348).

2017) (dismissing claims brought under the Declaratory Judgment Act because no other federal claims survived the pleading stage); *see also Long v. Wells Fargo Bank, N.A.*, 670 F. App'x 670, 671 (10th Cir. 2016) (concluding that request for declaratory relief was not viable because it was based on an invalid cause of action). Consequently, Jordan's cause of action for breach of warranties cannot serve as a legal predicate for her declaratory judgment claim.

The cases cited by Jordan support the court's conclusion that a cause of action for declaratory judgment cannot proceed absent other related causes of action. *See Moore v. Democratic Cty. Exec. Comm. of Phila.*, 2014 WL 5780879, at * (E.D. Pa. Nov. 6, 2014) ("[T]he federal Declaratory Judgment Act is procedural and is not an independent basis for federal jurisdiction, so this action cannot proceed as a declaratory judgment action alone."); *Mazzoccoli v. Merit Mountainside LLC*, 2012 WL 6697439, at *9 (D.N.J. Dec. 20, 2012) (holding that a claim brought pursuant to the Declaratory Judgment Act does not provide an independent ground for federal subject matter jurisdiction). In view of the foregoing analysis, I recommend that the court dismiss Jordan's cause of action for declaratory relief.

Defendants alternatively allege that Jordan has failed to establish standing to bring any cause of action based on her allegations regarding the Conundrum Trust. (D.I. 179 at 37) However, defendants' motion to dismiss was brought only under Rule 12(b)(6). (D.I. 112) "Generally speaking, motions to dismiss on the grounds of a failure to allege an 'injury in fact' implicate constitutional standing principles and thus are predicated on Rule 12(b)(1) rather than Rule 12(b)(6)." *Maio v. Aetna, Inc.*, 221 F.3d 472, 481 n.7 (3d Cir. 2000). Defendants' contentions regarding Jordan's standing are based on Jordan's alleged failure to plead a "concrete" injury in fact suffered by Jordan herself in accordance with the requirements of Article III. (D.I. 179 at 37) Consequently, issues pertaining to the adequacy of Jordan's

42

standing to bring her claim for declaratory relief are not properly before the court at this time. However, for the reasons stated in the preceding paragraph, it is recommended that Jordan's tenth cause of action for a declaratory judgment be dismissed.

## V.    CONCLUSION

For the reasons discussed above, I recommend that the court grant-in-part defendants' motion to dismiss. (D.I. 112) Specifically, I recommend that the court deny the motion to dismiss with respect to Jordan's claim for breach of warranties against Mirra at Count 7 of the second amended complaint, and grant the motion to dismiss Counts 1 through 6 and Counts 8 through 10 against all remaining defendants.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b). The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the district court. *See Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987); *Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006). The parties are directed to the court's Standing Order for Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: September 14, 2017

Sherry R. Fallon
UNITED STATES MAGISTRATE JUDGE

43