# MORRIS, NICHOLS, ARSHT & TUNNELL LLP

1201 NORTH MARKET STREET
P.O. BOX 1347
WILMINGTON, DELAWARE 19899-1347
_____
(302) 658-9200
(302) 658-3989 FAX

KENNETH J. NACHBAR
(302) 351-9294
(302) 425-3013 FAX
knachbar@mnat.com

April 11, 2018

**VIA E-FILING**

The Honorable Gerald A. McHugh
United States District Court
Eastern District of Pennsylvania
601 Market Street
Philadelphia, PA 19106

Re:     *Gigi Jordan v. Raymond A. Mirra, Jr.*, No. 1:14-cv-01485

Dear Judge McHugh:

I write pursuant to Your Honor's Guidelines for Counsel, on behalf of Defendant Raymond A. Mirra, Jr., to request the resolution of a discovery dispute that has arisen between the parties.  Specifically, Defendant Raymond A. Mirra, Jr. requests that the Court issue an order confirming the scope of Plaintiff Gigi Jordan's Privilege Waiver over communications relating to the Separation and Distribution Agreement ("SDA") under which Ms. Jordan's remaining claim arises.

## 1. There is No Dispute that Ms. Jordan Waived Privilege Over Privileged Communications Regarding the Separation and Distribution Agreement

### a. *Ms. Jordan Placed Her Attorneys' Knowledge and Advice at Issue, Thereby Waiving Privilege*

In the SDA, which is dated March 13, 2008, Ms. Jordan severed her longtime and highly lucrative business relationship with Mr. Mirra, walking away with nearly $50 million in cash and other assets.  The San Francisco law firm Farella Braun + Martel LLP ("Farella Braun") represented Ms. Jordan in the negotiation, drafting, and execution of the SDA.

Years later, while incarcerated for the murder of her own son, for which she was convicted and is now serving an 18-year prison sentence, Ms. Jordan commenced a series of lawsuits against Mr. Mirra in an effort to rewrite the terms of the SDA, seeking an additional *$225 million*.  On March 9, 2012, Ms. Jordan filed the present lawsuit (*see* D.I. 1), and on December 23, 2013, Ms. Jordan filed a related lawsuit under the federal RICO statute predicated

April 11, 2018
Page 2

on near-identical allegations, captioned *The Hawk Mountain LLC, et al. v. Raymond A. Mirra, Jr., et al.*, C.A. No. 1:13-cv-02083-SLR-SRF (the "RICO Action") (*see* RICO Action, D.I. 1.)  In each case, Ms. Jordan falsely alleged essentially the same thing: that Mr. Mirra cheated Ms. Jordan out of her share of joint assets in the SDA by omitting certain joint assets from the schedule of assets appended to the agreement.

It is undisputed that Ms. Jordan intentionally placed Farella Braun's knowledge and advice at issue in this Action (and the RICO Action) by "plead[ing] advice given to Ms. Jordan by Mark Peterson and Brian Donn[e]lly [of Farella Braun]," and making this advice a "central component of the [] complaint."  (Ex. 1 (RICO Action, Feb. 16, 2016 Hearing Transcript) at 27:16-20.)  By intentionally placing Farella Braun's knowledge and advice at issue, Plaintiff waived privilege over all otherwise privileged Farella Braun communications concerning the SDA (Plaintiff's "Privilege Waiver").   From March 2015 through the February 1, 2018 scheduling conference in this Action, there did not appear to be any dispute between Plaintiff and Defendant as to the scope of the Privilege Waiver, and Plaintiffs freely produced documents pursuant to the Privilege Waiver.  But recently, Ms. Jordan has sought to drastically reduce the scope of the Privilege Waiver.

> b. *Ms. Jordan Agreed To Review and Produce Farella Braun's Documents In Accordance with the Scope of the Privilege Waiver*

Defendant served a document subpoena on Farella Braun in March 2015.[1]  In an April 1, 2015 letter to the Court, Ms. Jordan's prior counsel represented that Plaintiffs "do not dispute that most of the documents sought from Farella Braun through the Subpoena are relevant to the claims and defenses in this action, and ***therefore are discoverable notwithstanding any claim of privilege***."  (Ex. 3 at 2 (emphasis added).)  Accordingly, Ms. Jordan's counsel conceded that, as to Defendants' request for "[a]ll documents and communications that refer, relate, or pertain to [Farella Braun's] representation of Jordan in her business and financial separation with Mirra[,]" Plaintiff did "not dispute that ***these documents are relevant, notwithstanding any claim of privilege, to the extent that they pertain to Jordan's business and financial separation with Mirra***."  (*Id*. at 3 (emphasis added).)  Thus, privileged documents were produced.

Because documents pertaining to the SDA may also "touch on issues *other than* Jordan's business and financial separation with Mirra, *including matters pertaining to Jordan's criminal case in New York*[,]" Ms. Jordan's counsel proposed—and Defendants agreed—to allow Ms. Jordan's counsel, rather than Farella Braun, to review and redact the documents for privileged information that was ***not*** at all related to the SDA.  (*Id.*)

## 2.  Years Later, Ms. Jordan Reneges on the Parties' Agreement Regarding Privilege Waiver

As counsel for Plaintiff was winding down the production of Farella Braun documents in

---

[1]  The subpoena is attached as Exhibit 2 to this letter.

2016,[2] Magistrate Judge Fallon issued her Report and Recommendation to dismiss the RICO Action, which the District Court later adopted and the Third Circuit affirmed. (*See* RICO Action, D.I. 457, 472, 475.) Soon after, Magistrate Judge Fallon stayed discovery in this Action, before Plaintiff could complete her production of Farella Braun documents. Magistrate Judge Fallon subsequently issued a Report and Recommendation to dismiss all but one claim in the present Action, and this Court later adopted Judge Fallon's Recommendation. (D.I. 199, 202.) Ms. Jordan's remaining claim for Breach of Warranties alleges that she has been damaged as a result of her reliance on certain "represent[ations] and warrant[ies]" made by Mr. Mirra in the SDA, concerning the "scheduled assets and liabilities within the SDA." (*See* Second Amended Complaint ¶¶ 331-335.)

When discovery resumed in this Action, the Court ordered Ms. Jordan to "complete the production to Defendant of documents received in 2016 from [Farella Braun]," and "provide privilege logs" by February 9, 2018. (D.I. 209.) After receiving Ms. Jordan's complete Farella Braun document production and privilege log, Mr. Mirra sent correspondence to Ms. Jordan's new counsel requesting that Ms. Jordan (1) produce certain documents which appeared based on Ms. Jordan's log entries to contain content within the scope of the Privilege Waiver, and (2) revise certain sample entries to include "sufficient detail to enable Mr. Mirra to determine whether the underlying documents are subject to Plaintiff's subject matter waiver over SDA-related communications (or whether these communications are privileged in the first instance)," (Ex. 4 at 4), as Ms. Jordan's counsel represented to the Court that she would do when this issue first arose in April 2015 (*see* Ex. 3 at 3.)

Ms. Jordan responded to this request by claiming, *for the first time in three years*, that the Privilege Waiver was "limited in time and pertained only to documents exchanged between Jordan and her attorneys that are directly implicated by the allegations in the SAC regarding the negotiation, execution and enforcement of the SDA." (Ex. 5 at 1.)

Plaintiff's new claim is untenable on the fact. In the three years since Mr. Mirra served the subpoena on Farella Braun, Ms. Jordan *never* placed any temporal limitation on this Waiver. To the contrary, in describing the scope of the Privilege Waiver, Ms. Jordan's former counsel told the Court that Plaintiff "waived privilege for every word that [Farella Braun] ever said to Ms. Jordan with regard to the [SDA] or anything that followed it or proceeded it." (Ex. 1 at 27:21-24.) And Ms. Jordan produced documents consistently with this non-temporally limited Privilege Waiver, including numerous Farella Braun documents from 2010, (*see, e.g.*, Ex. 6 (FB-014443)), including documents redacting *only* non-SDA related information, (*see, e.g.*, Ex. 7 (FB-013400).) Recently, however, Ms. Jordan has sought to drastically reduce the scope of the

---

[2]  Plaintiff originally "completed" production of Farella Braun documents in summer of 2015. However, Mr. Mirra later learned that Farella Braun had (with Ms. Jordan's counsel's knowledge) withheld thousands of relevant documents, without logging those documents or even alerting Mr. Mirra as to their existence. In 2016, Farella Braun provided roughly 17,000 additional documents to Ms. Jordan's counsel for review, logging, and production in line with the scope of the Privilege Waiver. This fiasco is detailed in Defendants' June 2, 2016 Letter Motion in the RICO Action. (*See* RICO Action, D.I. 451.)

April 11, 2018
Page 4

Privilege Waiver, just as her Deposition and the litigation's conclusion is finally approaching.

In light of this, Mr. Mirra's counsel emailed Ms. Jordan' new counsel on March 9, 2018, providing additional history and advising Ms. Jordan's counsel that no such limitation existed; in this email, Mr. Mirra's counsel included an example of a 2010 Farella Braun document that (1) Ms. Jordan had produced in unredacted form, and (2) was introduced as an exhibit during the deposition of Farella Braun witness Brian Donnelly, without objection.  (*See* Ex. 8.)  Ms. Jordan's counsel responded by improperly attempting to claw back this document and several other documents that are clearly within the scope of the waiver   (the "Clawed Back Documents").  (*See*  Exs. 9 & 10.)

Nearly all of the Clawed Back Documents on their face evidence that they were intentionally produced with *partial* redactions only as to purportedly privileged material *not relating to the SDA, and therefore not within the scope of the Privilege Waiver*.  The unredacted portions of the Clawed Back Documents clearly fall within the scope of the Privilege Waiver, and Ms. Jordan's attempt to claw these documents back is thus improper.  Additionally, even if the documents were not within the scope of the Privilege Waiver, given the years-long delay (and use of at least one of the documents at the Donnelly deposition), Ms. Jordan cannot satisfy Federal Rule of Evidence 502(b)'s requirement to "promptly t[ake] reasonable steps to rectify the error" of any alleged inadvertent production.  Ms. Jordan's delay alone would operate as a waiver of privilege as to the Clawed Back Documents, had she not already intentionally waived the privilege.  *See, e.g.*, *Murray v. Gemplus Int'l, S.A.*, 217 F.R.D. 362, 366 (E.D. Pa. 2003).

In addition to the Clawed Back Documents, Mr. Mirra believes, based on a review of Ms. Jordan's Farella Braun privilege log, that at least 70 more documents have been improperly withheld or redacted despite falling within the scope of the Privilege Waiver.  As the scope of Privilege Waiver must now be re-confirmed, Mr. Mirra does not wish to burden the Court with *in camera* review of all such documents at this time, if a threshold order as to the scope of the Privilege Waiver can resolve Ms. Jordan's improper, inconsistent approach to redaction and logging.

### 3.   Defendant's Request for Relief

Based on the foregoing, Mr. Mirra respectfully requests that the Court issue an Order confirming that the scope of Ms. Jordan's Privilege Waiver remains in effect, and encompasses all Farella Braun communications regarding the SDA without respect to time period.  Mr. Mirra further requests that the Court Order that Ms. Jordan's attempt to claw back the Clawed Back Documents is impermissible, and thus without effect.  Finally, Mr. Mirra requests that the Court order Ms. Jordan to produce all presently withheld or redacted document within the scope of Privilege Waiver within seven days.

Respectfully submitted,

*/s/ Kenneth J. Nachbar*

Kenneth J. Nachbar (#2067)