# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| GIGI JORDAN, | : | |
|     Plaintiff/Counterclaim-Defendant, | : | |
| | : | |
|                v. | : | Civil Action |
| | : | No. 14-1485 |
| | : | |
| RAYMOND A. MIRRA, JR., | : | |
|     Defendant/Counterclaim-Plaintiff. | : | |

**McHUGH, J.**                                                    **July 17, 2018**

**<u>MEMORANDUM</u>**

      This is a counterclaim for breach of contract brought by Raymond Mirra. Having succeeded in winning dismissal of most of Plaintiff Gigi Jordan's claims against him because they were barred by a release, Mirra now seeks attorneys' incurred fees from having to defend against those claims, as well as claims in another action, on the grounds that the release also functions as a covenant not to sue giving rise to a separate cause of action for damages. Plaintiff Jordan moves to dismiss the counterclaims, arguing that the release does not qualify as a covenant not to sue that gives rise to a separate, cognizable claim, but rather may only serve as an affirmative defense. Upon close analysis of the controlling documents, I am persuaded that Ms. Jordan agreed to more than a simple release of claims, with the result that her motion to dismiss the counterclaims will be denied.

I.  **Factual Background**

The parties entered into a number of agreements around March of 2008 in order to sever their years-long business partnership.[1] Among them were a Mutual General Release Agreement [hereinafter "Release"], and a Separation and Distribution Agreement (SDA).  I am persuaded that the documents must be considered together, *see  Santomenno ex rel. John Hancock Tr. v. John Hancock Life Ins. Co. (U.S.A)*, 768 F.3d 284, 290–91 (3d Cir. 2014), because the Release details the parties' "desire to enter into, concurrently with this Release Agreement, [the SDA]," and that the Release was made "in consideration of the [SDA]" in its introductory recitals.  Conversely, the SDA makes reference to the Release by stating in Article 7, entitled "Mutual Releases," that the parties "agree to execute [a]waiver and release of rights agreement" with an exemplar attached.[2]  This cross-referencing is sufficient to bring into play the rule established by *E.I. du Pont de Nemours & Co. v. Shell Oil Co.,* 498 A.2d 1108, 1115 (Del. 1985):  "Where two agreements are executed on the same day and are [sufficiently coordinated], in essence, they form one contract and must be examined as such."

> The Release broadly releases claims by Jordan against Mirra:
>
> Jordan, for and on behalf of (x) herself, her heirs and beneficiaries, (y) her affiliates and each of their limited and general partners, officers, directors, stockholders, members, managers, employees, attorneys, advisors and agents, and (z) each such foregoing person's or entity's predecessors, successors and assigns (collectively, the "Jordan Releasing Parties"), agrees to and hereby does irrevocably release and forever discharge (a) Raymond A. Mirra, Jr., (b) his heirs and beneficiaries, his affiliates and the officers, directors, stockholders, employees, agents, insurers and attorneys of each such affiliate, and (c) each such foregoing person's or entity's predecessors, successors and assigns (collectively the "Mirra Released Parties") from any and all manner of actions, causes of

---

[1] The underlying facts are set forth in their entirety in the Report and Recommendation ("R & R") issued by Judge Fallon on the Motion to Dismiss jointly filed by Mirra and former Defendants.  *See* Mem. 2–14, ECF No. 199.  I recount only the facts essential to Mirra's counterclaim here.

[2] The agreement was to be signed "substantially in the form attached."  SDA Article 7, Raskopf Decl. Ex. A, ECF No. 234.

action, claims, offsets, demands, judgments, complaints, executions, regulatory challenges, losses, damages, expenses, fees, debts, representations, warranties or liabilities of any kind whatsoever, whether arising out of state, federal or foreign law, rule, regulation or equity, whether *known or unknown*, *accrued or not accrued*, *asserted or not asserted*, *matured or not matured*, *suspected or not suspected*, *fixed or contingent*, *foreseeable or unforeseeable*, direct or indirect (each, a "Claim", and collectively, "Claims"), which the Jordan Releasing Parties *ever had, now have or hereafter can, shall or may have or acquire* against the Mirra Released Parties, or any of them, by reason of any and all facts, circumstances, transactions, events, statements, representations, warranties, occurrences, acts, or omissions (whether or not knowingly, intentional, reckless or negligent; whether or not based on, due to or resulting from solely the conduct, action, activity, omission or fault of the Jordan Releasing Parties), which occurred, arose or existed at any time on or before the date of this Release Agreement.

> The above Claims are referred to herein as the "Mirra Settled Claims". Notwithstanding anything herein to the contrary, Jordan is not releasing hereby Mirra from Claims that arise under the express terms and conditions of, and specified in, the Distribution Agreement, the Indemnification Agreement and the Purchase Agreement.

Release ¶ 3, Raskopf Decl. Ex. B, ECF No. 234 (emphasis added).

Paragraph 5 explicitly released claims not yet known: "Each of the Parties further expressly acknowledges that the releases set forth herein extend to Claims which are presently unknown, as well as known Claims." *Id.* ¶ 5. The Release goes on to state in particularly striking language, that each party

> "acknowledges hereby that he or she is aware that he or she may hereafter discover facts or circumstances in addition to or different from those which he or she now knows or believes to be true with respect to the subject matter of this Release Agreement, but that it is such Party's intention to, and such Parties hereby does, fully, finally, completely and forever release, discharge, compromise, settle, satisfy and extinguish any and all such Claims, without regard to the subsequent discovery or existence of such different or additional facts or circumstances."

*Id.*

In a separate paragraph, the following language appears:

3

> Neither Mirra nor Jordan will *assert* any Claims against the other Party arising from or relating to Mirra's or Jordan's negotiation, execution and delivery of this Release Agreement . . . except with respect to Claims that arise under the express terms and conditions of, and specified in, this Release Agreement.

*Id.* ¶ 6 (emphasis added).

Years after signing this document, Jordan brought this action in the Southern District of New York. It was later transferred here, to the District of Delaware, as a related case to another action Jordan brought in this court, in which she alleged civil RICO claims arising from the same transaction. In both, Jordan raised claims that were well within the broad scope of the Release, but argued that the Release was invalid due to fraud in its execution. In November, I adopted the entirety of Judge Fallon's R & R and dismissed all of Jordan's claims in this action except for one: a breach of warranties claim against Mirra.

Mirra then filed two counterclaims for breach of the Release, seeking actual damages equal to the attorneys' fees and costs he incurred in defending the released claims in both actions, and Jordan has responded with the pending Motion to Dismiss.

## II. Discussion

At the outset, it should be noted that Delaware provides the governing law. *See id.* ¶ 7. Construction of a contract is purely a question of law in Delaware. *Aetna Cas. and Sur. Co. v. Kenner*, 570 A.2d 1172, 1174 (Del. 1990). Delaware adheres to the 'objective' theory that a contract is construed in accordance with what would be understood by an objective, reasonable third party. *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010) (citing *NBC Universal v. Paxson Commc'ns*, 2005 WL 1038997, at *5 (Del. Ch. 2005)). If the plain-meaning of the terms and provisions of a contract is clear and unambiguous, the terms must be given effect. *Osborn*, 991 A.2d at 1160.

4

Here, the crux of the parties' disagreement is (i) whether, in the absence of the specific phrase "covenant not to sue," the Release still doubles as an agreement not to bring suit, and (ii) given the importance of the American Rule,[3] whether the Release may properly be considered to allow recovery of attorney's fees as a remedy for breach. As to the first issue, the language providing that "Neither Mirra nor Jordan will assert any Claims against the other Party" is to my mind clear and unambiguous.

That conclusion is reinforced by other provisions in the agreement, because, as the Delaware Supreme Court has made clear, "[c]ontract terms themselves will be controlling when they establish the parties' common meaning so that a reasonable person in the position of either party would have no expectations inconsistent with the contract language." *Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.*, 702 A.2d 1228, 1232 (Del. 1997). Those provisions include paragraph 3, the language of which is extraordinarily broad, extending to past and future claims, and paragraph 5 which explicitly addresses the circumstance where a party later learns facts of which they were unaware at the time an agreement was signed, and explicitly rejects such later-acquired knowledge as a basis for setting aside the Release. The promise not to assert any claims is set forth in paragraph 6, separate from the paragraph in which claims are first released, paragraph 3. It simply defies belief to suggest that Ms. Jordan could not have comprehended by reading the Release that she was surrendering the right to sue in every respect regarding negotiation and execution of the settlement, except for enforcement of the terms of the Release and related documents.

As to the importance of the American Rule, although the Release does not explicitly address recovery of counsel fees, the SDA does, and as noted above, the Release cites the SDA

---

[3] In general, in the absence of a contract, Delaware follows the "American Rule," whereby a prevailing party is expected to pay its own attorney's fees and costs, with limited equitable exceptions. *Johnston v. Arbitrium (Cayman Is.) Handels AG*, 720 A.2d 542, 546 (Del. 1998).

5

as part of the "consideration" for which the Release is being signed. Specifically, Section 5.6.5 of the SDA states that: "The prevailing party in any Dispute that is resolved by arbitration or by a court shall recover his, hers or its actual attorneys fees incurred with regard to such Dispute." SDA § 5.6.5, Raskopf Decl. Ex. A, ECF No. 234. "Dispute" is defined broadly to include "a dispute, controversy or claim," *id.* § 5.6.1, and Jordan agreed not to assert any "Claims" in the Release. And, as noted above, the SDA required the parties to execute the Release. SDA, Article 7. Although it is true that the SDA contemplated arbitration as the forum for disputes, I find it significant that the counsel fee provision explicitly extends to court actions.

Jordan is correct that the majority rule is that a release does not create a right of action,[4] *see, e.g., Bukuras v. Mueller Group, LLC*, 592 F.3d 255 (1st. Cir. 2010), and that the "American Rule," which prohibits fee shifting to prevailing parties, serves an important purpose in facilitating access to the courts. Jordan is also correct that the Delaware cases on which Mirra relies are equivocal at best, because of a lack of precision and depth in the way that the various courts have addressed the issue. I therefore decline to hold that Delaware allows a claim for attorneys' fees predicated solely on the basis of a release.

The result I reach here is based upon the language of the controlling documents, and my conclusion that a promise not to "assert any Claims" is functionally equivalent to a promise "not to sue."[5] In that regard, Delaware courts have made clear that the meaning of a contract does not

---

[4] The distinction between "releases" and "covenants not to sue" has a complex history dating back to English common law. *See* Samuel Williston, *Releases and Covenants Not to Sue Joint, or Joint and Several Debtors*, 25 Harv. L. Rev. 203, 210 (1912). Many cases addressing the issue were concerned with how to address the liability of joint tortfeasors, a question that was resolved in most states by adoption of the Uniform Contribution among Tortfeasors Act. *Raughley v. Delaware Coach Co.*, 91 A.2d 245, 247 (Del. Super. Ct. 1952). There is no need to explore those differences in detail given my conclusion that this Release explicitly incorporates a promise not to sue and is covered by a provision in the SDA that effectively sets aside the American Rule.

[5] I do not view the result here as inconsistent with the American Rule, as my decision is based on the specific provisions of the agreements at issue.

6

depend upon "magic words." *Prairie Capital III, L.P. v. Double E Holding Corp.*, 132 A.3d 35, 51 (Del. Ch. 2015) ("Language is sufficiently powerful to reach the same end by multiple means . . . . Transaction planners can limit their risk by using tested formulations, but they need not employ magic words."); *Gatz Props., LLC v. Auriga Capital Corp.,* 59 A.3d 1206, 1213 (Del. 2012) (explaining that "there is no requirement in Delaware that an agreement use magic words" to impose contractual fiduciary duties, and language must be "[v]iewed functionally" by courts construing contracts). I have considered the fact that in other agreements executed by the parties later that same month, also drafted by Mirra's counsel, the exact phrase "agree not to sue" appears, but still do not see that as meaningfully different from an agreement not to "assert any Claims."

Jordan argues that the Release contains carve-out provisions that authorize her claims, but those two provisions, set forth in paragraphs 3 and 6 of the Release, extend only to claims that arise "under the express terms and conditions" of the controlling documents. These carve-outs are the reason that her claim for breach of warranty survives.

Jordan further objects that Mirra's fees incurred in defense of the dismissed claims cannot be distinguished from those necessary to defend against the remaining warranty claim. This problem can adequately be addressed through close scrutiny by both counsel and the court.

For the reasons set forth above, the motion to dismiss the counterclaims will be denied.

    /s/ Gerald Austin McHugh
United States District Judge