**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| GIGI JORDAN, | : | 1:14-CV-01485-GAM |
| Plaintiff/Counterclaim-Defendant, | : | |
| | : | |
| v. | : | |
| | : | |
| RAYMOND A. MIRRA, JR., | : | |
| Defendant/Counterclaim-Plaintiff. | : | |

<u>**REPORT AND RECOMMENDATION**</u>

## I.    INTRODUCTION.

Presently before this Special Master in this diversity action is a myriad of discovery

disputes brought by Plaintiff/Counterclaim-Defendant Gigi Jordan and Defendant/Counterclaim-

Plaintiff Raymond A. Mirra, Jr.  For the reasons contained herein, I recommend that the Court

enter the attached order, requiring the production of responses to Ms. Jordan's supplemental

requests for the production of documents served on 5/8/18 and 9/12/18, Mr. Mirra's 8/22/18

interrogatories that explicitly identify the entities, assets, liabilities, and any other value

Ms. Jordan claims was omitted from the SDA, and all of the documents identified in Appendix A

of Ms. Jordan's 9/19/18 Letter (ECF No. 288) except for No. 65.  I also recommend that the

Court permit a deposition of Ms. Jordan, the scope of which should be limited to the process she

undertook to respond to the 8/1/18 requests for the production of documents but not the efforts

she made to preserve her personal email accounts.  Lastly, I recommend the Court lift the

discovery stay for 60 days to facilitate these activities (including the deposition of Ms. Jordan),

preclude all parties from serving additional discovery responses, except for those mandated

herein, absent order of court, and preclude all parties from serving additional discovery requests

absent order of court.

1

## II.    BACKGROUND.[1]

On or about 3/12/08, Ms. Jordan and Mr. Mirra entered into a Separation and Distribution Agreement (SDA) that purportedly identified and separated their joint assets and liabilities.  On that date, they also executed a Mutual General Release Agreement that attempted to release any and all claims that existed between them (and their affiliates and employees).  Ultimately, this suit and counterclaim, both arising out of the SDA, were brought by the parties.

Due to the breadth of the parties' discovery disputes, the Court stayed all discovery in this matter on 9/27/18 so that a special discovery master could be appointed.  ECF No. 297.  This Special Master was appointed on 10/3/18 to resolve the parties' outstanding and remaining discovery disputes.  ECF No. 299.  Following an initial conference call with the parties, the Special Master accepted and reviewed the letter-briefs detailing the parties' positions on the posture of discovery.[2]

On 11/28/18, Mr. Mirra was ordered to produce to the Special Master for *in camera* review unredacted versions of the contested emails identified in Appendix A to Ms. Jordan's 9/19/18 Letter.  ECF No. 304.  Mr. Mirra provided its production to this Special Master on 12/7/18.

---

[1]    The background of this matter is well-known to the Court and parties and will not be reiterated except to the extent necessary for the disposition of the parties' pending discovery issues.

[2]    The letter briefs reviewed by this Special Master included, but were not limited to, the following:  Ms. Jordan's 9/19/18 Letter outlining the parties' discovery disputes (ECF No. 288); Mr. Mirra's 11/6/18 Letter response; Mr. Mirra's 11/6/18 Letter outlining the parties' discovery disputes; Ms. Jordan's 11/8/18 request to strike Mr. Mirra's 11/6/18 Letter regarding the parties' discovery disputes; Mr. Mirra's 11/9/18 Letter response to the request to strike; Ms. Jordan's 11/10/18 Letter reply reaffirming her request to strike; Ms. Jordan's 11/20/18 Letter response to Mr. Mirra's issues; Ms. Jordan's supplemental 1/7/19 Letter outlining new discovery disputes; Mr. Mirra's 1/9/19 Letter response; Mr. Mirra's 1/16/19 Letter response; Ms. Jordan's 1/18/19 and 1/23/19 Letter responses; and Mr. Mirra's 1/25/19 Letter response.

On 1/11/19, a discovery conference was held before the Special Master.  At that time, the Special Master heard argument and conducted a discussion of the discovery issues about which there has been disagreement between the parties.  Upon review of the parties' extensive letter-briefing, impressive oral argument, and the docket to date, this Special Master respectfully provides this Report and Recommendation.

## III.   LEGAL STANDARD.

Federal Rule of Civil Procedure 26(b)(1) provides for the discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).  Discoverable information need not be admissible at trial, only relevant to the parties' claims and defenses.  *Id.* Relevance is liberally construed to "encompass any mater that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case."  *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340 (1978).

"Although the scope of discovery under the Federal Rules is unquestionably broad, this right is not unlimited and may be circumscribed."  *Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999) (*citing Hickman v. Taylor*, 329 U.S. 495, 507 (1947)) (other citations omitted).  Indeed, discovery must be limited by the Court if the information "sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive."  Fed. R. Civ. P. 26(b)(2)(C)(i); *see also Bayer*, 173 F.3d at 191.  Further, discovery, particularly requests for the production of documents,

should not be used as a fishing expedition. *Fort Wayne Corrugated Paper Co. v. Anchor Hocking Glass Corp.*, 4 F.R.D. 328, 329 (W.D.Pa. June 18, 1940).

## IV.   DISCUSSION.

### A.   MS. JORDAN'S DISCOVERY ISSUES.

#### 1.   Mr. Mirra's objection to producing the asset and liability documents of the parties' pre-merger BioMed companies is overruled.

On 5/8/18, Ms. Jordan requested documents from 12 pre-merger Biomed companies.[3] ECF No. 288 at 2-5.  None of these companies was explicitly listed in the SDA.[4]  Ms. Jordan claims she is entitled to this documentation due to her ownership of these companies from their formation until 3/12/08.  ECF No. 288 at 2.  She notes Mr. Mirra has produced some of the business records of these 12 companies but no records for the pertinent timeframe, to wit, 2004 to 2008.  *Id.* at 3.

Mr. Mirra objects to the disclosure of this documentation because the 12 companies were either merged with or made subsidiaries of Biomed America, Inc., prior to the SDA's execution. 11/6/18 Letter at 5-6.  He argues Ms. Jordan's classification of these companies as "Biomed Subs" within her 5/8/18 requests constitutes an admission that these companies were merged into or made wholly-owned subsidiaries of Biomed prior to the execution of the SDA.  *Id.* at 5.  Also, he claims he effectively listed all of these companies in the SDA by placing Biomed America, Inc., on the joint asset list.  *Id.*

---

[3]     These companies include:  Atlas Respiratory Services, Inc.; Versatile Care Solutions, Inc.; Access Healthcare Services, LLC; Apogenics Healthcare, Inc.; BioMed Pharmaceuticals, Inc.; Access Therapeutics, Inc.; Alliance Ambulatory Infusion Center, LP; BioMed California, Inc.; BioMed Kansas, Inc.; BioMed Florida, Inc.; BioMed PA, Inc.; and BioMed Texas, Inc.

[4]     Biomed America, Inc. was the only Biomed-related company explicitly listed in the SDA.  *See* ECF No. 288 at Ex. B.

4

Both parties claim that the Court's 6/13/18 order supports their position.[5]  On 6/13/18, the Court compelled the production of documents "pertaining to the assets and liabilities that were omitted from the SDA Schedules, **regardless of whether the companies with which these assets and liabilities were at one point associated with were listed on the SDA Schedules, or otherwise dissolved**."  ECF No. 257 at 1 (emphasis added).  Ms. Jordan points to this ruling in support of the disclosure of the requested documents.

However, the Court denied the production of "documents pertaining to the assets and liabilities that were listed in the SDA Schedules, including documents as to the value of those assets and liabilities."  *Id.* at 1-2.  The Court extended this denial to include Ms. Jordan's "requests pertaining to BioMed America, as such requests are not relevant to the warranties that are the focus of [her] remaining claim."  *Id.* at 2.  Mr. Mirra contends this portion of the Order supports his objection.

In accordance with the Court's 6/13/18 Order, Mr. Mirra should produce documentation regarding the 12 pre-merger Biomed companies.  The Court ordered the production of documents regarding all assets and liabilities that were omitted from the SDA "regardless of whether the companies with which these assets and liabilities were at one point associated with were listed on the SDA Schedules, or otherwise dissolved."  ECF No. 257 at 1.  Here, Ms. Jordan requested documentation for 12 companies that are not explicitly contained within the SDA. Mr. Mirra's argument that these companies were merged or consolidated with Biomed America (or even dissolved) at the time of the SDA does not prohibit the production in light of the Court's 6/13/18 Order.

---

[5]    The Special Master has reviewed the pertinent letter briefs related to the 6/13/18 order, including but not limited to those dated 5/23/18, 5/31/18, and 6/4/18.

Regardless of any purported ownership interest that Biomed America had in these companies prior to or at the time of the SDA, these companies arguably had their own separate assets, liabilities, and equity that Ms. Jordan is entitled to discover. These 12 companies should have produced their own financial documentation, balance sheets, and income statements. While Ms. Jordan cannot discover financial information concerning these companies from Biomed America itself, since this asset was included on the SDA, she can obtain documentation directly from the 12 companies. Therefore, Mr. Mirra's objections are overruled, and Ms. Jordan's request is granted. Mr. Mirra should produce this documentation within 60 days of the accompanying Order.

### 2. Ms. Jordan's request for responses to her 9/12/18 supplemental requests for the production of documents is granted upon agreement of the parties.

Ms. Jordan served supplemental requests for the production of documents on 9/12/18, seeking information from Mr. Mirra regarding 12 companies.[6] None of these companies was listed in the SDA. *See* ECF No. 288 at Ex. B. Mr. Mirra has agreed to provide documentation responsive to these requests. 11/6/18 Letter at 8-9. To the extent Mr. Mirra has not produced these documents to date, he should produce them within 60 days of the accompanying Order.

---

[6] These companies include: Access Pharmaceutical Services, LLC; Bio-Medical Innovations, Inc.; Delta Laboratories, Inc.; Indago Healthcare of South Florida, Inc.; Integrated BioPharm Corporation, Inc.; LBC Credit Partners Parallel, LP; LMS America, Inc.; My Case LLC; New England Hemophilia and Thrombosis Network, Inc.; RAM Capital Group 2004 Trust; RAM Capital Holdings, LLC; and World Wide Health, Inc.

### 3. Mr. Mirra's attorney-client privilege/attorney work product objections to emails generated or received by Attorney Troilo are sustained in part and overruled in part.

The privilege associated with Attorney Troilo's communications and documents has been the subject of numerous letter briefs and prior orders by the Court.  On 5/31/18, the Court determined that both Mr. Mirra and Ms. Jordan had an attorney-client relationship with Attorney Troilo prior to and during the course of the SDA negotiations, reasoning "[w]hen former co-clients sue one another, the default rule is that all communications made in the course of the joint representation are discoverable." ECF No. 250 at 1 (*citing* Del. R. Evid. § 502(d)(6); RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 75(2)).  The Court explained its ruling "should result in the production of documents to [Ms. Jordan] pertinent to the evaluation of the value of Biomed, RAM Capital and VasGene."  *Id.* at 2.  Following requests for clarification of its 5/31/18 Order, the Court advised the parties:

1. Neither party may assert a privilege where Mr. Troilo represented them jointly.
2. Either party may assert a privilege where Mr. Troilo represented him or her, and *only* him or her, individually, in connection with a specific matter.
3. [Mr.] Mirra may not assert a privilege as to communications from Mr. Troilo concerning any matter where [Attorney] Troilo jointly represented [Mr.] Mirra and an entity in which [Ms.] Jordan had an ownership interest.

ECF No. 257 at 1-2.

Initially, Mr. Mirra objected to the production of approximately 68 categories of emails and attachments generated by or sent to Attorney Troilo, asserting the protections of the attorney-client privilege and work product doctrines.  ECF No. 288 at Appx. A.  To date, only 33 categories of emails are still at issue.

Upon direction of the Special Master, Mr. Mirra submitted these documents for *in camera* review.  Upon review of Mr. Mirra's *in camera* production, his objections are overruled in part and sustained in part as follows.

### a.    Attorney Troilo's joint representation of the parties.

No. 2[7] relates to a 11/7/08 letter of intent (LOI) from United BioSource Corporation (UBC) to purchase 100% of the outstanding capital stock of Advance Research Corporation (ARC).  In the SDA, Ms. Jordan relinquished all of her right, title, and interest in ARC.  As such, Ms. Jordan had some interest in ARC at the time of the LOI between UBC and ARC.  In accordance with the Court's 5/31/18 and 6/13/18 Orders, the entries identified as No. 2 should be produced.

Nos. 11, 15, 67, and 68 contain schedules of partnership and net assets of Mr. Mirra and Ms. Jordan, along with various proposed distributions of the same.  In accordance with the Court's 5/31/18 and 6/13/18 Orders, the entries identified as Nos. 11, 15, 67, and 68 should be produced.

Nos. 12 and 13 contain pages of Attorney Troilo's file folder regarding the parties' SDA, including draft plans of distribution and evaluations of the parties' assets and liabilities.  The entirety of this file pertains to the process under which Mr. Mirra and Ms. Jordan's joint assets and liabilities will be distributed.  In accordance with the Court's 5/31/18 and 6/13/18 Orders, the entries identified as Nos. 12 and 13 should be produced.

No. 16 contains notes regarding Hawk Mountain LLC.  In accordance with the Court's 5/31/18 and 6/13/18 Orders, the entry identified as No. 16 should be produced.

---

[7]    The No. designations contained in this Report and Recommendation correlate with the first column of ECF No. 288 Appendix A, which is attached hereto as Exhibit B.

No. 20 includes a series of two emails regarding a spreadsheet that details the parties' joint assets.  The initial email is between Attorneys Troilo and August and is discoverable because it does not contain legal advice.  The secondary email is between Attorneys Troilo and August and Messrs. Bonventure and Tropiano.  Initially, the secondary email is also discoverable because it contains information regarding the parties' joint assets relayed to Attorney Troilo.  Moreover, it is a communication between Attorneys Troilo and August with non-clients, such as Mr. Bonventure.  Accordingly, the entry identified as No. 20 should be produced.

The spreadsheet attachment in No. 20 was not included in the *in camera* production to the Court.  Upon review of all of the entries, the Special Master believes the attachment is likely the spreadsheets identified in Nos. 22 and 23.  However, since Mr. Mirra did not include this attachment in the No. 20 production to this Special Master, I conclude that it is not within his possession.  In the event Mr. Mirra discovers the spreadsheet identified within entry No. 20, he should immediately supplement his production to include it, regardless of the stage of the proceedings.

No. 21 is a series of emails relating to No. 20 that continue to discuss the parties' net asset spreadsheet, which this Special Master believes is included in Nos. 22 and 23.  As these emails contain discussions by Attorney Troilo regarding the parties' joint assets, the entry identified as No. 20 should be produced in accordance with the Court's 5/31/18 and 6/13/18 Orders.

The spreadsheet attachment identified in No. 21 was not included in the *in camera* production to the Court.  Again, the Special Master believes the attachment is likely the spreadsheets identified in Nos. 22 and 23.  However, since Mr. Mirra did not include this attachment in the No. 21 production to this Special Master, it can be deduced that it is not within

his possession.  To the extent Mr. Mirra discovers the spreadsheet identified within entry No. 21, Mr. Mirra should supplement his production to include it, regardless of the stage of the proceedings.

Nos. 22 and 23 contain a series of spreadsheets that outline the parties' joint assets and the proposed separation of the same.  These entries are discoverable in accordance with the Court's 5/31/18 and 6/13/18 Orders and should be produced.

No. 24 is a document prepared by Mr. Tropiano for Attorneys Troilo and Morris that outlines the tax implications to the parties regarding a proposed distribution of their assets.  In accordance with the Court's 5/31/18 and 6/13/18 Orders, the entries identified as No. 24 should be produced.

No. 40 contains notes by Attorney Troilo regarding a proposed distribution of the parties' assets.  In accordance with the Court's 5/31/18 and 6/13/18 Orders, the entry identified as No. 40 should be produced.

No. 41 contains a draft SDA prepared by Attorney Troilo.  In accordance with the Court's 5/31/18 and 6/13/18 Orders, the entry identified as No. 41 should be produced.

No. 42 is a 3/9/08 correspondence from Attorney Troilo to Attorney August and Messrs. Bonventure and Tropiano identifying a proposal by Ms. Jordan regarding RAM Capital and the Hawk Mountain loan and requesting the tax implications of the same.  The email also contains written statements purportedly in response to this request.  The author of these handwritten statements is not disclosed, but purportedly is Attorney Troilo.  In accordance with the Court's 5/31/18 and 6/13/18 Orders, the email identified as No. 42 should be produced.

No. 48 is a 3/11/08 correspondence between Attorneys August, Troilo, and Rodos and another individual at Attorneys August and Rodos' law firm regarding the process that should be

undertaken by Mr. Mirra in purchasing Ms. Jordan's interest in Biomed to avoid the realization of a short-term capital gain. As this correspondence includes details regarding the transfer of Ms. Jordan's Biomed stock to Mr. Mirra, it is discoverable and should be produced in accordance with the Court's 5/31/18 and 6/13/18 Orders.

No. 50 is a series of two emails, one from Attorney Troilo to undisclosed recipients asking to a conference call and the second from Mr. Tropiano to Attorney Troilo regarding a loan from Mr. Mirra to Ms. Jordan. The first email does not contain privileged information and is discoverable. Moreover, the second email detailing a purported loan between the parties is discoverable in accordance with the Court's 5/31/18 and 6/13/18 Orders.

No. 51 contains two 3/12/08 emails: (1) an 8:30 a.m. email from Mr. Bonventure to Attorneys Troilo and August and Mr. Tropiano and (2) an 8:52 a.m. email from Attorney August to Messrs. Bonventure and Tropiano and Attorney Troilo, both outlining the tax implications when distributing assets from the RAM Realty partnership. In accordance with the Court's 5/31/18 and 6/13/18 Orders, the entry identified as No. 51 should be produced.

No. 64 contains a draft RAM Capital Group, LLC Member Withdrawal and Liquidation Agreement prepared by Attorney Troilo. In accordance with the Court's 5/31/18 and 6/13/18 Orders, the entry identified as No. 64 should be produced.

No 66 contains Attorney Troilo's handwritten notes regarding the assignment of a lease between Hometech Therapies, Inc. (Hometech) and ARC. Although Ms. Jordan had no interest in ARC at the time of this correspondence, Hometech was a joint asset of the parties. In accordance with the Court's 5/31/18 and 6/13/18 Orders, the entry identified as No. 66 should be produced.

11

### b.      Non-legal advice.

No. 17 contains a handwritten note from Attorney Troilo to Mr. Mirra indicating that he should "call if you have any questions or thoughts."  This communication is not legal advice, is not protected, and is discoverable.  The entry identified as No. 17 should be produced.

Similarly, No. 32 contains a handwritten note from Attorney Troilo to Mr. Mirra saying "let's talk" to discuss if Ms. Jordan can be on a call regarding the draft plan of distribution, an extraneous "12/02" reference, and some underlining.  Again, these communications are not legal advice, are not protected, and are discoverable.  The entry identified as No. 32 should be produced.

No. 18 contains an email chain between Attorneys Troilo and Morris and Messrs. Bonventure and Tropiano setting up a call to discuss a preliminary tax proposal.  The entry identified as No. 18 does not constitute legal advice.  Moreover, it is a communication between Attorneys Troilo and Morris with non-clients, such as Mr. Bonventure.  The entry identified as No. 18 should be produced.

The pdf attachment identified as the preliminary tax proposal in No. 18 was not included in the *in camera* production to the Court.  Since Mr. Mirra did not include this attachment in the production to this Special Master, it can be deduced that it is not within his possession, not that he is hiding it for a nefarious purpose.  To the extent Mr. Mirra discovers the proposal identified within entry No. 18, which seems unlikely to this Special Master at this stage of discovery, Mr. Mirra should supplement his production to include it, regardless of the stage of the proceedings.

No. 49 contains a series of 4 emails between Attorneys Troilo and Rodos from 3/12/08. The first three emails in the series (sent at 9:03 p.m., 9:05 p.m., and 9:08 p.m.) do not contain

any legal discussions but are merely a request from Attorney Troilo to Rodos to review agreements relating to the SDA.  As such, these emails are not privileged and should be produced.

Nos. 59-63 is a series of innocuous emails between Attorneys August and Troilo and who this Special Master believes to be various individuals at Attorney August's office identifying that Attorney August revised documents.  These emails do not contain privileged matter and should be produced.

### c.      Michael Bonventure's tax advice.

No. 14 contains Mr. Bonventure's analysis of the tax implications arising out of a proposed like-kind exchange of real property between the parties.  Mr. Bonventure is not an attorney and the attorney-client privilege does not attach to his communications.  Moreover, Mr. Bonventure is disclosing to Attorney Troilo the tax implications of the parties exchanging jointly held properties during the SDA.  In accordance with the Court's 5/31/18 and 6/13/18 Orders, the email identified as No. 14 should be produced.

No. 45 is a 3/11/08 correspondence from Mr. Bonventure to Attorney Troilo and Mr. Tropiano calculating the basis of the properties held by RAM Realty.  Similar to No. 14, the email identified as No. 45 should be produced.

### d.      Non-relevant entries.

No. 65 contains a series of emails from 3/18/08-5/29/08 and a 3/19/08 Stockholder Information Statement regarding the merger of Biomed America with Biomed Healthcare and its acquisition by Allion.  The Statement details the record date of the merger and acquisition as 3/13/08, and indicates its mailing to all holders of common stock as of the close of business on 3/13/08.  Ms. Jordan and Mr. Mirra entered the SDA on 3/12/18.  As such, Ms. Jordan was not a

stockholder of Biomed America on 3/13/18 and has no interest in the Statement.  Further, the Court has previously ruled that information pertaining to Biomed America is not discoverable as it was an asset disclosed on the SDA.  *See* ECF No. 257 at 1-2.  Accordingly, the emails and Statement attached at No. 65 are not relevant and need not be produced in accordance with the Court's 6/13/18 Order.

Accordingly, Mr. Mirra's objections to the production of the 33-still-contested entries identified on Appendix A of Ms. Jordan's 9/19/18 Letter (ECF No. 288) are overruled, except for his objection to entry No. 65.  Mr. Mirra's objection to the production of entry No. 65 is sustained.

4. **Ms. Jordan's request for a third-party vendor to forensically analyze Attorney Troilo and Mr. Tropiano's personal email accounts and electronic devices is denied.**

Ms. Jordan requests a neutral, third-party vendor be employed to forensically analyze third-parties Attorney Troilo and Mr. Tropiano's[8] personal email accounts and electronic devices for documents created, revised, or deleted from January-April 2008.  Ms. Jordan claims that such an independent analysis is necessary in light of the purported dearth of information provided by Mr. Mirra with respect to these non-parties during the period immediately prior to the SDA.  In support of her request, she cites *Good Kaisha IP Bridge I v. TCL Commc'n Tech. Holdings Ltd.*, Civil Action No. 15-634-JFB-SRF (D. Del. July 27, 2018) (ECF No. 439), and *W. Pa. Elec. Employees Pension Fund v. Alter*, Civil Action No. 2:09-cv-04730-CMR, 2013 U.S. Dist. LEXIS 130815 (E.D.Pa. June 26, 2013), where the forensic analysis of a SAP database and hard drive, respectively, were permitted.

---

[8]    During the 1/11/19 hearing, Ms. Jordan requested a similar review of Mr. Tropiano's email account and devices.  This request is not contained in Ms. Jordan's 9/19/18 Letter. ECF No. 288.

In response, Mr. Mirra argues no basis exists for an inspection of Attorney Troilo or Mr. Tropiano's email and electronic devices.  11/6/18 Letter at 10-12.  Mr. Mirra reiterates that both Attorney Troilo and Mr. Tropiano are non-parties and asserts he has produced all of their responsive documents within his possession.  *Id.* at 11.  Further, he references Attorney Troilo's deposition testimony, where he testifies he did not destroy his 3/1/08-4/1/08 emails.  *Id.* at 11 (*citing* J. A. Troilo, Jr. Dep., Nov. 18, 2015).[9]  He also argues no evidence of his own misconduct exists to warrant such an intrusion into Attorney Troilo and Mr. Tropiano's email accounts and electronic devices, citing *Bianco v. GMAC Mort. Corp.*, Civil Action No. 07-4650, 2008 U.S. Dist. LEXIS 84950 (E.D.Pa. Oct. 22, 2008), and *Kickapoo Tribe of Indians v. Nemaha Brown Watershed Joint Dist. No. 7*, 294 F.R.D. 610 (D. Kan. 2013).

---

[9]    Attorney Troilo's deposition transcript reads:

> Q.    Well, do you have your e-mails from the period of March 1, 2008 'til April 1, 2008?
> A.    Whatever e-mails existed I had.
> Q.    Well, did there come a time where e-mails from that period of time were destroyed?
> A.    No.
> A.    Sorry.  No.

*Id.* 200:7-20 (objections to the form of the question omitted).

Ms. Jordan's argument that she was thwarted in her attempts to question Attorney Troilo on this topic are not supported by the portion of the transcript provided to this Special Master. Attorney Troilo was instructed not to answer Ms. Jordan's inquiry as to whether "anyone at some point represent[ed] to [him] that it appeared that the e-mails for the period of the negotiation and execution of the SDA, [his] emails, didn't seem to be present?" *Id.* 202:20-203:19.  This question does not pertain to Attorney Troilo's alleged destruction of his pre-SDA emails. Rather, it seeks information regarding discussions had during the discovery process of the parties' related RICO action.  As cited above, Attorney Troilo definitively testified that he did not destroy his 3/1/08-4/1/08 emails.  The veracity of this testimony will be decided by the ultimate trier of fact, not this Special Master.

Federal Rule of Civil Procedure 34 outlines the procedure through which a party may request the inspection of documents or things, such as an email account or information system, possessed by another party.

> **RULE 34.      PRODUCING DOCUMENTS, ELECTRONICALLY STORED INFORMATION, AND TANGIBLE THINGS, OR ENTERING ONTO LAND, FOR INSPECTION AND OTHER PURPOSES**
>
> **(a)      In General.**  A party may serve on any other party a request within the scope of Rule 26(b):
>
>> **(1)**      to produce and permit the requesting arty or its representative to inspect, copy, test, or sample the following items in the responding party's possession, custody, or control:
>>
>>> **(A)**      any designated documents or electronically stored information—including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations—stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form….

Fed. R. Civ. P. 34(a)(1)(A).

This Court's Electronic Discovery Default Standard Rules also detail:

> 5.      **Specific E-Discovery Issues.**
>
>> a.      **On-site inspection of electronic media.**  Such an inspection shall not be permitted absent a demonstration by the requesting party of specific need and good cause.

Electronic Discovery Default Standard Rules at 5.

Rule 34's 2006 advisory committee notes explain a requesting party does not have "a routine right of direct access to [the responding] party's electronic information system, although such access might be justified in some circumstances," because "[i]nspection or testing … of a responding party's electronic information system may raise issues of confidentiality or privacy."

16

*Id.*, 2006 advisory committee note (*cited by Bianco*, 2008 U.S. Dist. LEXIS 94950 at *5).  When considering a request to inspect another party's information system, the Court considers:

- evidence that the defendant is withholding requested information;
- evidence that the defendant is unable or unwilling to search for the requested information on its own; and
- the extent to which the defendant has complied with discovery requests.

*Bianco*, 2008 U.S. Dist. LEXIS 94950 at *5 (citations omitted).

Upon consideration of these factors, coupled with the Court's default rule to withhold onsite inspection of electronic media unless a specific need and good cause is established, the forensic inspection of Attorney Troilo and Mr. Tropiano's email accounts and electronic devices by Ms. Jordan is not warranted.  No evidence exists to establish Mr. Mirra is withholding the information requested by Ms. Jordan regarding Attorney Troilo and Mr. Tropiano.  Further, no evidence exists that he is unwilling or unable to search for the requested information on his own.

Initially, Attorney Troilo and Mr. Tropiano are third-parties to this action.  This matter involves a dispute between Ms. Jordan and Mr. Mirra, not Ms. Jordan and Mr. Mirra's plentiful corporate entities.  Mr. Mirra has asserted both through his written submissions and oral argument that he personally does not have access to the personal email accounts and devices of these third-parties beyond what has been reviewed, redacted, and disclosed to Ms. Jordan.  This Special Master accepts these representations by Mr. Mirra.

### a.   Attorney Troilo's personal email account and electronic devices.

Although Attorney Troilo and Mr. Tropiano's personal email accounts and devices do not belong to Mr. Mirra, he arranged for the forensic review of the email account Attorney Troilo used while acting as counsel for the parties.  Mr. Mirra engaged the forensic legal consulting

17

services of DTI Data Recovery (DTI) to analyze Attorney Troilo's email account during the relevant time period.   DTI reviewed and recalled all emails generated and deleted during the early months of 2008.   Thereafter, these emails were reviewed for privilege and produced by Mr. Mirra or included within his privilege log.   This process was described by Mr. Mirra within his submissions and during the 1/11/19 hearing.   This Special Master accepts these representations.

Further, no evidence has been presented to challenge these representations.   To the extent Attorney Troilo deleted emails from early 2008, they would have been recovered by DTI, reviewed for privilege, and produced by Mr. Mirra.   No independent examination by a third-party vendor of Ms. Jordan's choosing will unearth emails or documents that were not reconstructed by DTI.

Moreover, the case law cited by Ms. Jordan is distinguishable from this matter.[10]

As no need or good cause exists to for an independent review of Attorney Troilo's email account and electronic devices by Ms. Jordan, Ms. Jordan's request is denied.

### b.   Mr. Tropiano's personal email account and electronic devices.

Similarly, a forensic review of Mr. Tropiano's personal email account and electronic devices by Ms. Jordan is also not warranted.   Mr. Mirra does not possess Mr. Tropiano's personal email account or devices as Mr. Tropiano is a third-party to this lawsuit.   To the extent

---

[10]   In *Alter*, the Court gave the plaintiff the opportunity to review a hard drive in the defendant's possession in light of the defendant's baseless "assumptions" that the hard drive was duplicative of information previously produced and the defendant's previously-repeated contentions that the hard drive did not exist.  2013 U.S. Dist. LEXIS 130815 at *7-19.  Here, Mr. Mirra has provided a detailed account of the process undertaken to recover emails and documents from Attorney Troilo's email account.

In *IP Bridge*, the Court granted the plaintiff's request to inspect the defendants' SAP database due to data discrepancies found on attorney-generated spreadsheets.  Civil Action No. 15-634-JFB-SRF at 5.  Here, no attorney-generated documents are at issue.

Mr. Mirra had possession of Mr. Tropiano's emails and documents that were relevant to this lawsuit, Mr. Mirra has produced them.  Accordingly, any request by Ms. Jordan to independently review Mr. Tropiano's personal email account and electronic devices as a result of Mr. Mirra's failure to produce them is not justified.  Therefore, Ms. Jordan's request is denied.

### 5.   Mr. Mirra's objection to producing accounting records in Peachtree/Sage 50 format are sustained.

Ms. Jordan claims Mr. Mirra failed to produce his accounting records in "their native electronic file format" and requests the production of these records in Peachtree/Sage 50 format. ECF No. 288 at 13.  As explained by Ms. Jordan,

> "Peachtree" is a commonly used brand of accounting software that is designed to maintain company general ledgers, subsidiary ledgers, budgets, accounts receivable, accounts payable, inventory, payroll, and other business records in a searchable database.  Once financial data is entered into Peachtree, that accounting information can be exported to other software programs (such as Excel) to refine data (or generate other selective reports or financial analyses).

*Id.*  She argues Mr. Mirra's accounting record production is deficient because he either "printed them out, then scanned paper copies into TIFF format, or else exported them from their native Peachtree form to Microsoft Excel files…."  *Id.*  Again, Ms. Jordan requests a forensic examination by a neutral third-party vendor to identify information regarding purged and backed up files.  *Id.* at 15.  In support of her arguments, she references the Federal Rules of Civil Procedure, the Sedona Principles, *Classicstar Mare Lease Litig.*, MDL No. 1877, Civil Action No. 5:07-cv-353-JMH, 2009 U.S. Dist. LEXIS 9750 (E.D.Ky. Feb. 2, 2009), and *Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, MD 05-1720, 2007 U.S. Dist. LEXIS 2650 (E.D.N.Y. Jan. 12, 2007).

Mr. Mirra objects to this requested second production because he is not required and it is not feasible to produce raw accounting data in Peachtree/Sage 50 file format. 11/6/18 Letter at 6. Initially, he identifies he provided all relevant and responsive Peachtree data in Microsoft Excel or Tagged Image File Format (TIFF) format. *Id.* Additionally, he relays his companies routinely purge data from their Peachtree database every 20 months. *Id.* In support of the appropriateness of his production, he cites the Sedona Principles, the Court's Electronic Discovery Default Standard Rules, *Ezfauxdecor, LLC v. Smith*, Case No. 15-9140-CM-KGG, 2017 U.S. Dist. LEXIS 96989 (D. Kan. June 23, 2017), *Prusin v. Canton's Pearls, LLC*, Civil No. JKB-16-605, 2017 U.S. Dist. LEXIS 45384 (D. Md. Mar. 28, 2017), and *M3Girl Designs, LLC v. Blue Brownies, LLC*, Case No. 3:09-cv-2390-F, 2011 U.S. Dist. LEXIS 159909 (N.D.Tex. Aug. 31, 2011).

Federal Rule of Civil Procedure 34 outlines the production of electronically-stored information (ESI) as follows:

> **RULE 34.     PRODUCING DOCUMENTS, ELECTRONICALLY STORED INFORMATION, AND TANGIBLE THINGS…**
>
> **(b)     Procedure.**
> **(2)     *Responses and Objections.***
> **(E)**     *Producing the Documents or Electronically Stored Information.*   Unless otherwise stipulated or ordered by the court, these procedures apply to producing documents or electronically stored information:
>> **(i)**     A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond with the categories of the request;
>> **(ii)**     If a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily

maintained or in a reasonably usable form or
forms; and
**(iii)**     A party need not produce the same
electronically stored information in more
than one form.

Fed. R. Civ. P. 34(b)(2)(E).

This Court's Electronic Discovery Default Standard Rules specifically address the

production of ESI in native format and requests for on-site inspection of electronic media.

5.     **Specific E-Discovery Issues.**

c.     **Format.**  ESI and non-ESI shall be produced to the
requesting party as text[-]searchable image files (e.g., PDF
or TIFF).  When a text-searchable image file is produced,
the producing party must preserve the integrity of the
underlying ESI, i.e., the original formatting, the metadata
(as noted below) and, where applicable, the revision
history.  The parties shall produce their information in the
following format:  single page TIFF images and associated
multi-page text files containing extracted data or OCR with
Concordance and Opitcon load files containing all requisite
information including relevant metadata.

d.     **Native files.**  The only files that should be produced
in native format are files not easily converted to image
format, such as Excel and Access files.

e.     **Metadata fields.**  The parties are only obligated to
provide the following metadata for all ESI produced, to the
extent such metadata exists:  Custodian, File Path, Email
Subject, Conversation Index, From, To, CC, BCC, Date
Sent, Time Sent, Date Received, Time Received, Filename,
Author, Date Created, Date Modified, MD5 Hash, File
Size, File Extension, Control Number Begin, Control
Number End, Attachment Range, Attachment Begin, and
Attachment End (or the equivalent thereof).

Electronic Discovery Default Standard Rules at 5.

The Court also endorses the principles of the Sedona Conference. *The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles or Addressing Electronic Document Production*, 19 SEDONA CONF. J. 1 (2018). Principle 12 details:

> **12.    The production of electronically stored information should be made in the form or forms in which it is ordinarily maintained or that is reasonably usable given the nature of the electronically stored information and the proportional needs of the case.**

*Id.* at 169. Comments b. and b.i. to Principle 12 clarify:

> **Comment 12.b.        *… Absent agreement, ESI must be produced as ordinarily maintained or in a form or forms reasonably usable to the requesting party.***
>
> **Comment 12.b.i.       *To be "reasonably usable," the form of ESI need not necessarily be in its native format or the form in which it is "ordinarily maintained."***

*Id.* at 171-72, 174. Provided that ESI is produced in its "ordinarily maintained" or a "reasonably usable" form, it is well-settled a party need not produce ESI in an electronic format, such as TIFF+, and its native format. *Id.* at 184. Indeed:

> [t]ypically, a requesting party does not need ESI produced in its native format in order to access, cull, analyze, search, and display the ESI. Indeed, the most common way to produce ESI for more than a decade has been to create static electronic image in Tagged Image File Format (TIFF) or Adobe Portable Document (PDF) format, to place the extracted text from the document into a text file, and to place the selected metadata and other non-apparent tata into one or more separate load files. This form is frequently referred to as the production of "TIFF, Text and Load Files" or "TIFF+".

*Id.* at 172. "Accordingly, requesting parties should avoid demanding a form of production, such as all ESI to be produced in a native format, unless they have a demonstrably reasonable need for

that form of production and the necessary technology, skills, and resources available to make reasonable use of and to protect the ESI."  *Id.* at 173.

At issue before this Special Master is whether Mr. Mirra's prior Microsoft Excel and TIFF production of his accounting records are appropriate within the scope of these rules and principles.

Within Ms. Jordan's 9/19/18 Letter, she cites the Sedona Principles for the proposition that Mr. Mirra's ESI production should "enable [her as] the receiving party to have the *same ability* to access, search, and display the information as the producing party where appropriate or necessary in light of the nature of the information and the needs of the case."  ECF No. 288 at 13 (emphasis added).  This "same ability" concept was contained within the Second Edition of the Sedona Principles but has since been eliminated in the controlling Third Edition:

> Principle 12 of the Second Edition of *The Sedona Principles* moved beyond restating the then-current Rule 34(b) by asserting that parties should also take into account "the need to produce reasonably accessible metadata that will enable the receiving party to have <u>the same</u> ability to access, search, and display the information as the producing party where appropriate or necessary in light of the nature of the information and the needs of the case."  **It was understood by the drafters at the time, however, that the standard was not for the requesting party to literally have the *same ability* to "access, search and display" the information in the ordinary course** (which may have required a significant investment in time, money, and proprietary resources), **but the *same ability* to "access, search and display" the information in the context of prosecuting and defending the claims and defenses at issue in the litigation**.  Since the publication of the Second Edition, there have been significant developments in technology and the case law which may require a further nuanced approach to the formats for the production of ESI in certain cases, and which also underscore that **it may not be practical or even possible to provide a requesting party with "the same" ability as the responding party to access, search, and display information**.  Indeed, parties' desire or ability to use the various tools that have been and will be developed can vary as much as the evolving technologies themselves.

The touchstone remains, under Rule 34(b)(2)(E), that a requesting party is entitled to production of ESI as it is ordinarily maintained or in a form that is reasonably usable for purposes of efficiently prosecuting or defending the claims and defenses involved in the matter.  Consequently, **the Third Edition of Principle 12 eliminates the phrase "the same ability,"** and instead emphasizes that the parties should follow the Federal Rules and seek to reach agreement for the production of ESI as "ordinarily maintained or in a reasonably usable form or forms" that provide the requesting party a functionally adequate ability to access, cull, analyze, search, and display the ESI, as may be appropriate given its nature and the proportional needs of the case. In some cases, this will mean that the production format provides the requesting party with the same ability to access, cull, analyze, search, and display the ESI as the responding party has in prosecuting or defending the matter (which may differ from how a responding party can access or search its own data in the ordinary course of conducting its business), but that is not a requirement.

*The Sedona Principles, Third Edition*, 19 SEDONA CONF. J. at 174-175 (bold text added; citations and footnotes omitted).  Accordingly, Ms. Jordan's "same ability" argument is inconsistent with the Third Edition and does not persuade this Special Master to compel production of the ESI in any other format or manner than it has already been produced.

Putting Ms. Jordan's "same ability" argument aside, this Special Master must consider if Mr. Mirra produced his general ledgers in the form they were "ordinarily maintained" or that is "reasonably usable" by Ms. Jordan.

The Sedona Principles state "[t]he form in which ESI is "ordinarily maintained" [] is not necessarily synonymous with the form in which it was created" because [t]here are situations where legitimate business considerations involve the migration or transfer of ESI to other applications or systems" including the conversion of documents "to a neutral format as part of the record acquisition or archive process."  *Id.* at 177.  Moreover, "[t]he form in which ESI is 'ordinarily maintained' may not be conducive to efficient production[,] … reasonably feasible,

and the cost and effort required to produce them in their native format may not be proportional to the needs of the case." *Id.* at 176.

Further, "in the majority of instances, TIFF+ is a "reasonably usable" form of production for most purposes and types of ESI under Rule 34(b)(2)(E)(ii). *Id.* at 173.

Based upon these considerations and Mr. Mirra's representations, which this Special Master accepts, Mr. Mirra has complied with the requirements of F Fed. R. Civ. P. 34(b)(2)(E) with his general ledger production in Microsoft Excel and TIFF formats. Initially, Ms. Jordan admits that Mr. Mirra produced the general ledgers in either Microsoft Excel or TIFF formats. ECF No. 288 at 13 ("[Mr. Mirra] printed out [his Peachtree records], then scanned paper copies into TIFF format, or else exported them from their native Peachtree form to Microsoft Excel files.").

Further, Mr. Mirra explained this mixed Microsoft Excel and TIFF production is consistent with his document retention policy.

> As a result of the mass data input into [the Peachtree] database, coupled with the lack of need to re-run dormant functions from years prior, Mr. Mirra's business[es] have long routinely "purged" data from the Peachtree database every twenty-months. As a result, older data is not readily accessible from the Peachtree database. These facts were relayed to Ms. Jordan when she first raised this issue three years ago…. Mr. Mirra has produced all relevant, responsive Peachtree data in his possession in native Microsoft Excel format….

11/6/18 Letter at 6.

> Over the long stretch of time for which Ms. Jordan seeks accounting records, individual employees of Mr. Mirra created, sent, and printed out a number of accounting records; where such documents exist, they were collected and, if responsive, produced in an electronic format, or in a proper text-searchable TIFF image format. There was no "attempt to deliberately downgrade the capabilities or characteristics" of the records. Mr. Mirra produced

all electronic and paper accounting records in the format in which
they were ordinarily maintained.

*Id.* at 8.

Ms. Jordan's arguments that Mr. Mirra's document retention policy and Microsoft Excel

and TIFF production are nefarious and sanctionable simply hold no weight in the light of the

credible representations of Mr. Mirra regarding the search and production of the ESI.  Thus,

Mr. Mirra's objection to the additional production is sustained.

> **6.**    **Mr. Mirra's objection to the completion of a checklist contained
> within Ms. Jordan's 5/8/18 and 9/12/18 requests for the production of
> documents is sustained.**

Mr. Mirra objects to the completion of a checklist included within Ms. Jordan's requests

for the production of documents dated 5/8/18 and 9/12/18 for 47 companies.[11]  This checklist

would require Mr. Mirra to provide details regarding the entity, asset, or liability that is the

subject of the request and the character of documents that have been produced.  Specifically, the

checklists accompanying Ms. Jordan's 5/8/18 requests contain 27 separate line items for the

entities described therein.  Similarly, the 9/12/18 requests include 27 (and in one instance 37)

separate line items for entities described therein.  Mr. Mirra argues the burden and expense of

completing this checklist "far exceeds the proportionality requirements of Rule 26(b)(1)."

11/6/18 Letter at 13 (*citing* Fed. R. Civ. P. 26(b)(1)).

The Special Master agrees the burden and expense imposed by the checklist far

outweighs any likely benefit.  The effort and time required to complete the checklist would be

---

[11]    These companies include: AAA Equipment Rentals, LLC; AAA Grading Paving, LLC;
Access Healthcare Services, LLC; Apogenics, Inc.; Ashland Pharmacy, Inc.; Atlanta ID Group,
P.C.; Atlas Medical Equipment, Inc.; Atlas Nursing Services, Inc.; Bio-Medical Marketing
Services, Inc.; Biomed Healthcare, Inc.; Complete Communications, Inc.; Delta Pharmaceuticals,
Inc.; Eyegene Corporation; Freedom Care, LLC; Hometech Medical Equipment, Inc.; Hometech
Therapies, Inc.; Indago Healthcare of Florida, Inc.; Indago Healthcare, Inc.; Ledmir, LLC; Logic

significant and would appear to be disproportionate to any possible benefit given the extent of

discovery responses already submitted by Mr. Mirra. Essentially, Ms. Jordan is requesting

Mr. Mirra respond to approximately 1,300 additional interrogatories through the completion of

her checklists. As demonstrated throughout the course of discovery to date, the completion of

these checklists will not only burden Mr. Mirra but also further the discovery disputes between

the parties. Through his counsel, Mr. Mirra has certified that his discovery responses are

complete to the best of his knowledge, information, and belief after a reasonable inquiry. *See*

Fed. R. Civ. P. 26(g)(1). No further certification is required by the Rules of Federal Procedure,

and no further certification will be required by this Special Master. Accordingly, Mr. Mirra's

objection is sustained.

       7.    **Mr. Mirra's 11/20/18 production of legal bills in support of his counterclaims.**

On 1/7/19, Ms. Jordan identified a "new discovery dispute" concerning Mr. Mirra's

11/20/18 production of approximately 800 pages of legal bills and contemporaneous filing of a

Motion for Summary Judgment (ECF No. 300). At the outset, Ms. Jordan claims this production

violated the Court's 9/27/18 stay. Ms. Jordan objects to the production on the grounds that:

(1) no searchable metadata was produced; (2) the block billing of five allegedly unrelated matters

result in a failure to prove the relevant, claimed damages; (3) no retainer letters or agreements

---

Medical Solutions, Inc.; Neurology Therapies, Inc.; Physician Oncology Network, Inc.; Practice Made Perfect, Inc.; Primavera, Inc.; PRN Healthcare Services, Inc.; RAM Business Holdings, LLC; RAM Capital II, LLC; RAM Consultants, LLC; RAM Developers, Inc.; RAM Enterprises Holding Company, Inc.; RAM Equity Holdings, LLC; RAM Investment Management, Inc.; Retrodyne Corporation; Stat Business Group, LLC; U.S. Neurology Corporation; Access Pharmaceutical Services, LLC; Bio-Medical Innovations, Inc.; Delta Laboratories, Inc.; Indago Healthcare of South Florida, Inc.; Integrated BioPharm Corporation, Inc.; LBC Credit Partners Parallel, LP; LMS America, Inc.; My Case LLC; New England Hemophilia and Thrombosis Network, Inc.; RAM Capital Group 2004 Trust; RAM Capital Holdings, LLC; and World Wide Health, Inc.

were produced to explain contingency arrangements and discounts; and (4) no privilege log was provided to accompany the redactions.  She requests the production be stricken and Mr. Mirra's counterclaims dismissed.

In response, Mr. Mirra directed the Special Master to Ms. Jordan's 11/29/18 Motion to Strike (ECF No. 305) and the Court's 12/19/18 Order denying the same (ECF No. 311).  He also claims the parties had yet to meet and confer on the new disputes.

The Special Master agrees that the Court addressed Ms. Jordan's motion to stay through its 12/19/18 Order.  *See* ECF No. 311.  As articulated to the parties through correspondence by the Special Master on 1/25/19, the Court is currently formulating another extension of Ms. Jordan's deadline to respond to Mr. Mirra's Motion for Summary Judgment.

The parties have also revealed to the Special Master that Mr. Mirra has produced his legal bills in a format readily searchable by Ms. Jordan.  *See* 1/23/19 Letter.  The only issues remaining before the Special Master are Ms. Jordan's request to strike the production as a discovery sanction in accordance with Fed. R. Civ. P. 37(b), *Ware v. Rodale Press, Inc.*, 322 F.3d 218 (3d Cir. 2003), *Wylie v. Transunion, LLC*, Case No. 3:16-cv-102, 2017 U.S. Dist. LEXIS 162127 (W.D.Pa. Sept. 29, 2017), and *Wachtel v. Health Net, Inc.*, 239 F.R.D. 81 (D.N.J. 2006)[12] and Mr. Mirra's similar request to sanction Ms. Jordan and her counsel for the statements made in her written submissions.[13]  *See* 1/25/19, 1/23/19, 1/18/19, and 1/7/19 Letters. Although Ms. Jordan's request is tantamount to a request to dismiss Mr. Mirra's counterclaims,

---

[12]     Ms. Jordan referenced *Wiley* and *Wachtel* during the 1/11/19 hearing.

[13]     Ms. Jordan's block-billing argument is not a discovery dispute.  Rather, it is an argument directed at the proof Mr. Mirra has to support his counterclaims, which should be the subject of either a dispositive motion or pretrial ruling.  Ms. Jordan also appears to have abandoned her request for the production of Mr. Mirra's retainer letters or fee agreements with counsel.  To the extent this argument is not abandoned, Ms. Jordan's request is denied.

both of these requests are within the purview of the Special Master's appointment because they pertain to alleged discovery violations.[14]  Both requests will be denied.

> ### a.   Ms. Jordan's request to sanction Mr. Mirra by striking the production of his legal bills is denied.

Through letters dated 1/23/19, 1/18/19, and 1/7/19, Ms. Jordan requests the Special Master strike Mr. Mirra's production of legal bills as a discovery sanction.  In support of her argument, Ms. Jordan cites primarily to *Ware*, analogizing the now-extended deadline to respond to Mr. Mirra's Motion for Summary Judgment to the date of the commencement of trial and declaring insurmountable prejudice.  *See* 1/23/19 and 1/18/19 Letters.  On the other hand, Mr. Mirra cites to *Briscoe v. Klaus*, 538 F.3d 252 (3d Cir. 2008) and *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863 (3d Cir. 1984), in support of his argument that the extreme sanction of dismissal of his counterclaims is not warranted.  *See* 1/16/19 Letter.

Federal Rule of Civil Procedure 37(b)(2)(A)(v) authorizes the Court to dismiss an action due to a party's failure to comply with a discovery order.  Fed. R. Civ. P. 37(b)(2)(A)(v); *Ware*, 322 F.3d at 221.  It is well-settled "that dismissals with prejudice or defaults are drastic sanctions, termed 'extreme' by the supreme court and are to be reserved for comparable cases." *Poulis*, 747 F.2d at 867-868 (*quoting National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 643 (1976).  When considering requests to dismiss a matter as a discovery sanction, the Court considers the following 6 factors:

1.   the extent of the *party's* personal *responsibility*;
2.   the *prejudice* to the adversary caused by the failure to meet scheduling orders and respond to discovery;
3.   a *history* of dilatoriness;

---

14   The Special Master does not agree with Mr. Mirra's assertion that the Court's 12/19/18 Order (ECF No. 311) disposed of Ms. Jordan's request to strike his email production *as a discovery violation* in accordance with Fed. R. Civ. P. 37(b).

4.      whether conduct of the party or the attorney was *willful* or in *bad faith*;

5.      the effectiveness of sanctions other than dismissal, which entails an analysis of *alternative sanctions*; and

6.      the *meritoriousness* of the claim or defenses.

*Poulis*, 747 F.2d at 868 (emphasis in original).  While no single factor is dispositive, all of the factors need not be satisfied for dismissal.  *Briscoe*, 538 F.3d at 263.  However, "[d]ismissal must be a sanction of last, not first, resort."  *Poulis*, 747 F.2d at 869.

The balance of the *Poulis* factors provide that the striking of Mr. Mirra's legal bill production, which would result in the tantamount dismissal of his counterclaims, is not warranted.  Mr. Mirra had no personal responsibility for the production of his counsel's legal bills.  Mr. Mirra has hardly been lethargic in pursuit of his counterclaims considering the thousands of pages of documents exchanged between the parties to date and countless letter briefs filed before the Court and this Special Master.  Further, the success of Mr. Mirra's claims under the scrutiny of Ms. Jordan's Motion to Dismiss (ECF Nos. 214 and 215) establishes their meritoriousness.  *See* ECF No. 266; *Poulis*, 747 F.2d at 869-870 (a claim is deemed to be meritorious if the allegations in the pleadings would support recovery if established during trial).

Dismissal would also be an extreme sanction in this instance as the production of Mr. Mirra's legal bills has not been the subject of a motion to compel before the Court or the Special Master.  Contrary to Ms. Jordan's assertion, the production of Mr. Mirra's legal bills was not addressed by the Court's 7/25/18 Order as her 5/8/18 requests for the production of documents, which were the subject of the Order, do not contain a request for the legal bills supporting Mr. Mirra's counterclaims.  *See* ECF No. 269.  Further, discovery has not been completed; rather, it has been stayed pending the disposition of the parties' cantankerous discovery disputes.  For these reasons, Ms. Jordan's claims of bad faith also lack merit.

Lastly, Ms. Jordan has not been prejudiced by Mr. Mirra's production.  Prejudice comprises "the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the opposing party." *Briscoe*, 538 F.3d at 259 (citation omitted).  Prejudice also includes "the burden imposed by impeding a party's ability to prepare effectively for a full and complete trial strategy" due to the expenditure of costs to obtain court orders for compliance with discovery.  *Id.* (*referencing Poulis*, 747 F.2d at 868 (concluding the defendants were prejudiced by the plaintiffs' failure to respond to discovery and file a pretrial statement) and *Ware*, 322 F.3d at 220-23 (concluding the defendant was prejudiced by the plaintiff's failure to provide its computation of damages until one week prior to trial)).

Despite Ms. Jordan's claims, Mr. Mirra's production is not akin to that in *Ware*, where the defendant produced documents in support of its damages one week before trial, in contravention of multiple court orders including an order closing discovery the previous year. *See Ware*, 322 F.3d at 220-221.  Similarly, *Wylie* and *Wachtel* are distinguishable.[15]  Discovery

---

[15]     Indeed, *Wylie* is supportive of Mr. Mirra's argument for continued production.   In that case, the plaintiff failed to respond to the defendant's requests for admission while a motion to dismiss was pending before the Court.  2017 U.S. Dist. LEXIS 162127 at *2-3.  Once these requests were deemed to be admitted due to the plaintiff's failure to respond, the plaintiff moved to withdraw or amend these purported admissions.  *Id.* at *1-2.  The Court denied the plaintiff's motion, concluding that his purported unilateral stay on discovery during the pendency of the motion to dismiss was improper.  *Id.* at *8-9.
     Further, the discovery transgressions enumerated in *Wachtel* are not comparable to this action.  In that case, which was "fraught with repeated discovery failures … as well as dishonest misrepresentations," the Court struck 20,000 pages of documents submitted in support of the defendants' motion for summary that were not produced during the course of discovery. 239 F.R.D. at 101, 110.  The *Wachtel* Court concluded this sanction was proper in light of the defendants' "obstructionist approach to discovery," where "nonproduction was the rule rather than the exception."  *Id.* at 92, 94.  Here, the Special Master sees no evidence to support Ms. Jordan's claims that Mr. Mirra is not actively engaged in the discovery process.  As explained herein, discovery is still ongoing, albeit stayed at this moment.

is in no way closed in this matter. The parties have no trial date. The Court has not previously ordered the production of Mr. Mirra's legal bills. Ms. Jordan's expenditure of legal fees in filing letters upon letters to strike to this production is just as much her fault as that of Mr. Mirra. Accordingly, no prejudice exists, and the *Poulis* factors do not call for dismissal of Mr. Mirra's counterclaims. Ms. Jordan's request is denied

> **b.   Mr. Mirra's request for sanctions due to the statements contained in Ms. Jordan's 1/23/19 Letter is denied.**

In his 1/25/19 Letter, Mr. Mirra requests the Special Master strike Ms. Jordan's false statements in her 1/23/19 Letter regarding the legal bills and sanction Ms. Jordan and her counsel. *See* 1/25/19 Letter. Specifically, Mr. Mirra seeks his attorneys' fees and costs incurred in responding to Ms. Jordan's 1/23/19 Letter and this Special Master's proportionate costs for reviewing the 1/23/19 Letter.[16] The Special Master facially agrees with Mr. Mirra's claims that the ill-natured disposition between the parties (and their counsel) is in bad form and not justified. However, this temperament is the unfortunate (and completely unnecessary) consequence of the parties' drawn-out legal battles. Sanctions are not justified at this time but may be forthcoming if the parties continue with this unbecoming behavior. Therefore, Mr. Mirra's request is denied.

> **B.   MR. MIRRA'S DISCOVERY ISSUES.**

> **1.   Mr. Mirra's request for specific responses to his 8/22/18 interrogatories is granted.**

Mr. Mirra objects to Ms. Jordan's 9/21/18 responses to his 7 interrogatories served on 8/22/18. In these interrogatories, Mr. Mirra requests Ms. Jordan's knowledge as to the existence,

---

[16]   By 1/25/19 Letter, the Special Master adopted Mr. Mirra's request that the parties seek leave from the Special Master prior to the filing of any additional discovery disputes and that such leave request must contain an affidavit of counsel that the parties met and conferred regarding the dispute prior to filing.

ownership, and value of the entities, assets, and liabilities that she claims were omitted from the SDA. Essentially, these interrogatories seek the basis of Ms. Jordan's underlying contentions and claims — what values were missing from the SDA and when did Ms. Jordan first acquire knowledge of the missing values.

In response to these interrogatories, Ms. Jordan served responses on 9/21/18 that direct Mr. Mirra to the more than 300,000 pages of documents that were produced in the parties civil RICO action.

Mr. Mirra argues these responses are insufficient, citing Fed. R. Civ. P. 33(d), *In re Wilmington Trust Sec. Litig.*, Master Civ. No. 10-990-SLR-SRF, 2017 U.S. Dist. LEXIS 87045 (D. Del. June 7, 2017), *Novanta Corp. v. Iradion Laser, Inc.*, Civil Action No. 15-1033-SLF-SRF, 2016 WL 4987110, 2016 U.S. Dist. LEXIS 126042 (D. Del. Sept. 16, 2016), *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, C.A. No. 04-1371-JJF, 2005 WL 8136574, 2005 U.S. Dist. LEXIS 50075 (D. Del. Oct. 11, 2005), and *DiPietro v. Jefferson Bank*, 144 F.R.D. 279 (E.D.Pa. Nov. 5, 1992).[17]

Alternatively, Ms. Jordan claims her reference to this morass of documents sufficiently complies with Rule 33(d), referencing *Principal Life Ins. Co. v. DeRose*, Civil Action No. 1:08-CV-2294, 2010 WL 11549913 (M.D.Pa. Jan. 11, 2010), and *Pappas v. Loew's, Inc.*, 13 F.R.D. 471 (M.D.Pa. 1953), amongst others.[18]

---

[17]   Mr. Mirra referenced *Wilmington* and *DiPietro* during the 1/11/19 hearing.

[18]   The case law cited by Ms. Jordan is distinguishable from this dispute. In *DeRose*, the Court upheld the plaintiff's direction to over 4,000 documents in response to the defendant's contention interrogatories. 2010 WL 11549913 at *13 n.2. Here, Ms. Jordan points to over 300,000 documents — 75 times the documents the *DeRose* Court deemed acceptable. Further, *Pappas* merely contains a cite that "[*i*]*n general* where records have been produced for inspection and copying, interrogatories requiring compilation of the information there contained would be improper." 13 F.R.D. at 473 (emphasis added). As discussed herein, the breadth of

"Contention interrogatories ask a party:  to state what it contends; to state whether it makes a specified contention; to state all the facts upon which it bases a contention; to take a position, and to explain or defend that position, with respect to how the law applies to facts; or to state the legal or theoretical basis for a contention." *B. Braun Med. Inc. v. Abbott Labs.*, 155 F.R.D. 525, 527 (E.D.Pa. 1994) (*cited by Novanta Corp.*, 2016 U.S. Dist. LEXIS 126042, at *22).  Contention interrogatories are not objectionable simply because they seek an opinion or the application of law to the underlying facts of the case.  *Id.*  However, a court may defer the answering of contention interrogatories until substantial documentary or testimonial discovery has occurred.  *Id.* (*referencing Fischer & Porter Co. v. Tolson*, 143 F.R.D. 93, 96 (E.D.Pa. 1992)).

To the extent contention interrogatories are lodged prior to the substantial completion of discovery, a party offering the interrogatories "must present specific, plausible grounds for believing that securing early answers to its contention interrogatories will materially advance the goals of the Federal Rules of Civil [P]rocedure." *Id.* (citation and internal quotation marks omitted).  Specifically, a party must show:

> That there is good reason to believe that answers to its well-tailored questions will contribute meaningfully to clarifying the issues in the case, narrowing the scope of the dispute, or setting up early settlement discussion, or that such answers are likely to expose a substantial basis for a motion under [Federal Rule of Civil Procedure] 11 or Rule 56.

*Id.* (citation omitted).

---

Ms. Jordan's discovery responses to date takes this matter outside of the "general" case where a citation to produced documents adequately responds to a discovery request.

Federal Rule of Civil Procedure 33(d) permits a party to produce business records in lieu of answering interrogatories in limited circumstances and reads as follows.

### RULE 33.      INTERROGATORIES TO PARTIES

**(d)      Option to Produce Business Records.**  If the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by:

> **(1)**      specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could; and
>
> **(2)**      giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries.

Fed. R. Civ. P. 33(d).

In *Power Integrations*, this Court addressed a similar discovery issue:  whether a party properly relied on its production of over 19,000 pages of documents in response to the defendant's interrogatories.  2005 U.S. Dist. LEXIS 50075 at *1-5.  In that case, the defendant requested the Court compel narrative responses to be produced to its interrogatories instead of the plaintiff's direction to over 19,000 pages of documents.  *Id.* at *1.  In granting the defendant's request, the Court reasoned the interrogatories that sought limited clarifications to the facts underlying plaintiff's allegations should be answered in narrative format as opposed to a direction to view more than 19,000 pages of documentation.  *Id.* at *3-4.  Further, the Court concluded the plaintiff should also supply narrative responses to the interrogatories that request the position it takes on legal issues, such as damages, provided the plaintiff may supplement these responses, to the extent necessary, by expert reports.  *Id.* at *4.

On 8/22/18, Mr. Mirra served contention interrogatories that seek the basis of Ms. Jordan's claim that assets and liabilities were omitted from the SDA.  This claim is the foundation of her sole cause of action against Mr. Mirra — a breach of warranty arising out of the contents of the schedules of assets and liabilities contained in the SDA.  Ms. Jordan cannot proceed to trial on claims that entities, assets, and liabilities were omitted from the SDA without identifying which entities, assets, and liabilities it is basing its claims upon.  Moreover, substantial discovery has been completed by the parties to date, as indicated by Ms. Jordan's reference to the 300,000 plus pages of documents produced to date.  Accordingly, Mr. Mirra's interrogatories are proper.

In light of the appropriateness of Mr. Mirra's interrogatories, Ms. Jordan's reference to the 300,000 plus pages of documents is proper, and her responses are clearly deficient.  As in *Power Integrations*, Mr. Mirra seeks limited responses to identify those assets and liabilities that form the basis of Ms. Jordan's underlying action.  After 5 years in litigation, Mr. Mirra is entitled to such relief.  It is not Mr. Mirra's obligation to review Ms. Jordan's document production and guess which values may form the basis of her breach of warranty claim.  Rather, Ms. Jordan must provide narrative responses to Mr. Mirra's contention interrogatories to set the stage for the parties' upcoming trial.  To the extent Ms. Jordan needs to amend her answers following expert discovery, she may do so upon order of court.

The purpose of the discovery process is to investigate and streamline claims brought within an initial pleading.  Mr. Mirra cannot be forced to defend against claims that he had no knowledge of prior to evidence being presented at trial.  Accordingly, Ms. Jordan's objections are overruled, and Mr. Mirra's request is granted.  Ms. Jordan has 60 days from the date of the accompanying order to provide supplemental, narrative responses to Mr. Mirra's 8/22/18

interrogatories.  In her supplement, Ms. Jordan should explicitly respond to all portions of the interrogatories and identify the entities, assets, liabilities, and any other value that she claims was omitted from the SDA that form the basis of her breach of warranty claim.  Ms. Jordan will be precluded from presenting evidence during trial of any value not included in her 60-day supplement, absent leave of court.

> **2.     Mr. Mirra's request for information regarding the procedure undertaken by Ms. Jordan in preserving her personal emails is denied.**

Mr. Mirra claims that Ms. Jordan has failed to preserve emails from up to six of her personal email accounts[19] and has requested an order compelling her to sit for a Fed. R. Civ. P. 30(b)(6) deposition to detail her preservation efforts.  Fed. R. Civ. P. 30(b)(6) outlines the process by which a party may request the deposition of an organization and how the organization must respond.  Fed. R. Civ. P. 30(b)(6) does not appear to apply to this action because Ms. Jordan's listed email accounts are personal in nature.  Thus, the application of Fed. R. Civ. P. 30(b)(6) unnecessarily complicates this issue.  Moreover, the efforts taken by Ms. Jordan to preserve her personal email accounts, including but not limited to those listed herein, are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B) and this Court's Electronic Discovery Default Standard.  Accordingly, Mr. Mirra's request is denied.

---

[19]     These email accounts include:
1. Gjordan@aol.com;
2. Gigijordan015@gmail.com;
3. Gigijordan50@aol.com;
4. Holylight@live.com;
5. Gjibary@gigijordanbail.com; and
6. Jdjuliedavis@gmail.com.

**3.      Mr. Mirra's request for information regarding the procedure undertaken by Ms. Jordan to respond to Mr. Mirra's 8/1/18 requests for the production of documents is granted.**

Mr. Mirra also objects to Ms. Jordan's 8/31/18 responses to his 15 requests for the production of documents served on 8/1/18.  In these requests, Mr. Mirra seeks documents relating to the existence, ownership, and value of the entities, assets, and liabilities that Ms. Jordan claims were omitted from the SDA.  These requests are also aimed at discovering Ms. Jordan's knowledge of the entities, assets, and liabilities prior to and following the execution of the SDA.

In response to Mr. Mirra's requests, Ms. Jordan served responses on 8/31/18, which indicate that all documents responsive to Mr. Mirra's requests were previously produced in the parties' civil RICO action.

Mr. Mirra contends that Ms. Jordan's 8/31/18 responses to his interrogatories are insufficient because it is unlikely all responsive documents were produced within the RICO action.  Mr. Mirra has requested Ms. Jordan to detail the process that she undertook to review any documents that were not produced in the civil RICO action, including the steps she took to review documents for responsiveness to the 8/1/18 requests, a certification that she reviewed all documentation that was not produced in the civil RICO action, and whether she reviewed any electronic or non-public hard copy documents.

To date, Ms. Jordan has acknowledged, through counsel, that she conducted a separate review of documents in response to the 8/1/18 requests and have produced all applicable documents in accordance with Fed. R. Civ. P. 26(g)(1).  *See also* 11/20/18 Letter at 9.  The process that Ms. Jordan undertook to respond to the 8/1/18 requests for the production of documents is an appropriate subject upon which Ms. Jordan may be deposed.  However, the

advice, counsel, mental impressions, conclusions, and legal theories imparted to Ms. Jordan by her attorneys when responding to Mr. Mirra's document requests is protected by the attorney-client privilege and/or work product doctrine and cannot be disclosed or discussed through the course of this inquiry.  Therefore, Ms. Jordan's objections are sustained in part and denied in part, and Mr. Mirra's request is granted in part and denied in part.

## V.    CONCLUSION.

For the reasons outlined above, I recommend that the Court enter the proposed Order, attached hereto as Exhibit A.

In accordance with Paragraph 4 of the Honorable Judge McHugh's 10/3/18 Order appointing this Special Master (ECF No. 299), it is hereby ORDERED that Ms. Jordan file this Report and Recommendation with the Court via Electronic Case Filing on or before **2/28/19**.

This Report and Recommendation is filed pursuant to Fed. R. Civ. P. 53(e).  The parties may serve and file specific written objections to this Report and Recommendation within fourteen (14) days from this date.  Fed. R. Civ. P. 53(f); ECF No. 299.

BY THE COURT,

_____
Hon. Lawrence F. Stengel (Ret.)
Special Master

cc:    Hon. Gerald Austin McHugh (via email)
       Counsel for Plaintiff Jordan
              William D. Sullivan, Esq. (via email)
              Daniel Kornstein, Esq. (via email)
              Elihu Ezekiel Allinson, III, Esq. (via email)
       Counsel for Defendant Mirra
              Thomas Will, Esq. (via email)
              Julia Beskin, Esq. (via email)
              Kenneth Nachbar, Esq. (via email)
              Nicholas A.S. Hoy, Esq. (via email)
              Robert Raskoph, Esq. (via email)

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| GIGI JORDAN, | : | 1:14-CV-01485-GAM |
|     Plaintiff/Counterclaim-Defendant, | : | |
| | : | |
|         v. | : | |
| | : | |
| RAYMOND A. MIRRA, JR., | : | |
|     Defendant/Counterclaim-Plaintiff. | : | |

## <u>ORDER</u>

AND NOW, this ___ day of _____, 2019, upon consideration of the parties'

letter briefs from September 2018-February 2019 outlining their discovery disputes and 1/11/19

oral argument, it is hereby ORDERED:

1. Ms. Jordan's request for the asset and liability documents of Atlas Respiratory Services, Inc.; Versatile Care Solutions, Inc.; Access Healthcare Services, LLC; Apogenics Healthcare, Inc.; BioMed Pharmaceuticals, Inc.; Access Therapeutics, Inc.; Alliance Ambulatory Infusion Center, LP; BioMed California, Inc.; BioMed Kansas, Inc.; BioMed Florida, Inc.; BioMed PA, Inc.; and BioMed Texas, Inc. is GRANTED. Mr. Mirra shall produce these documents within 60 days of the date of this Order.

2. By agreement of the parties, Ms. Jordan's request for Mr. Mirra's responses to Ms. Jordan's 9/12/18 supplemental requests for the production of documents regarding Access Pharmaceutical Services, LLC; Bio-Medical Innovations, Inc.; Delta Laboratories, Inc.; Indago Healthcare of South Florida, Inc.; Integrated BioPharm Corporation, Inc.; LBC Credit Partners Parallel, LP; LMS America, Inc.; My Case LLC; New England Hemophilia and Thrombosis Network, Inc.; RAM Capital Group 2004 Trust; RAM Capital Holdings, LLC; and World Wide Health, Inc. is GRANTED. Mr. Mirra shall produce these documents within 60 days of the date of this Order.

3. Mr. Mirra's objections to the production of documents identified in Appendix A of Ms. Jordan's 9/19/18 Letter (ECF No. 288) are SUSTAINED as to entry No. 65 and DENIED as to entry Nos. 1-64 and 66-68. Mr. Mirra shall produce these documents within 60 days of the date of this Order.

4.      Ms. Jordan's request for a third-party vendor to forensically analyze Attorney Troilo and Mr. Tropiano's email accounts and electronic devices is DENIED.

5.      Ms. Jordan's request for accounting records in Sage 50/Peachtree format is DENIED.

6.      Ms. Jordan's request for Mr. Mirra to complete the checklist contained within her 5/8/18 and 9/12/18 requests for the production of documents is DENIED.

7.      Ms. Jordan's request to sanction Mr. Mirra for the production of his legal bills concomitantly with his Motion for Summary Judgment, including, but not limited to, the striking of the production, is DENIED.

8.      Mr. Mirra's request for sanctions due to the statements contained in Ms. Jordan's 1/23/19 Letter is DENIED.

9.      Mr. Mirra's request for more specific responses to his 8/22/18 interrogatories is GRANTED.  Ms. Jordan shall produce these responses within 60 days of the date of this Order.  In these responses, Ms. Jordan should explicitly identify the entities, assets, liabilities, and any other value that she claims was omitted from the SDA.  Ms. Jordan will be precluded from presenting evidence during trial of any value not included in her 60-day supplement, absent leave of court.

10.     Mr. Mirra's request to depose Ms. Jordan regarding the preservation of personal emails is DENIED.

11.     Mr. Mirra's request for information regarding the process undertaken by Ms. Jordan to respond to his 8/1/18 requests for the production of documents is GRANTED in part and DENIED in part.  Ms. Jordan may be deposed regarding the process she undertook to respond to the 8/1/18 requests for the production of documents, including but not limited to, the steps she took to review documents for responsiveness to the requests, whether she reviewed all documentation that was not produced in the civil RICO action, and whether she reviewed any electronic or non-public hard copy documents.

12.     All other requests by either party to sanction either the opposing party or his/her respective counsel are DENIED.

13.     Discovery shall be lifted for 60 days to facilitate the activities outlined herein including the deposition of Ms. Jordan.

14.     The parties are precluded from serving additional discovery responses except for those mandated herein absent order of court.

15.    The parties are precluded from serving additional discovery requests absent order of court.

BY THE COURT,

_____

Hon. Gerald Austin McHugh

cc:    Hon. Lawrence F. Stengel, Special Master (via email)
Counsel for Plaintiff Jordan
    William D. Sullivan, Esq. (via email)
    Daniel Kornstein, Esq. (via email)
    Elihu Ezekiel Allinson, III, Esq. (via email)
Counsel for Defendant Mirra
    Thomas Will, Esq. (via email)
    Julia Beskin, Esq. (via email)
    Kenneth Nachbar, Esq. (via email)
    Nicholas A.S. Hoy, Esq. (via email)
    Robert Raskoph, Esq. (via email)

# EXHIBIT B

**APPENDIX A – JUNE 13 COURT ORDERED TROILO PRIVILEGE LOGGED DOCUMENTS NOT PRODUCED**

| | | **Defendant's Privilege Log Assertions** | | | | **Why Production is Required** |
|---|---|---|---|---|---|---|
| **No.** | **Entry No. / Bates** | **Date** | **Author** | **Recipient** | **Defendant's Privilege Logged Subject Matter** | |
| 1 | RAM000037070 - RAM000037071 | 10/21/2004 | Joseph Troilo, Esq.; Bruce Kolleda | *Not Identified* | Memorandum providing legal advice regarding tax payments on real property. | *Troilo joint representation concerns certain joint assets at SDA.* |
| 2 | RAM000025070 - RAM000025073 | 11/8/2007 | Joseph Troilo, Esq. | Raymond Mirra | Correspondence providing legal advice of counsel regarding non-compete restriction agreement with United BioSource Corporation. | *Jordan still owned ARC – ARC was subject of potential acquisition by United BioSource Corp. for $50 million (undisclosed at SDA).* |
| 3 | 1 | 12/28/2007 | Joseph Troilo, Esq. | Joseph Molieri, Esq. | Email requesting legal advice regarding due diligence analysis performed in advance of potential Allion agreement and merger. | *Jordan still owned the 13 Biomed companies.* |
| 4 | 2 | 12/28/2007 | Jennifer Hoefner* | Joseph Troilo, Esq. | Email requesting legal advice regarding draft due diligence analysis performed at request of legal counsel in advance of potential Allion agreement and merger. | *Jordan still owned the 13 Biomed companies.* |
| 5 | 2a | 12/28/2007 | Jennifer Hoefner | Joseph Troilo, Esq. | Draft due diligence analysis sent in connection with request for legal advice regarding potential Allion agreement and merger. | *Jordan still owned the 13 Biomed companies.* |
| 6 | 2b | 12/28/2007 | Jennifer Hoefner | Joseph Troilo, Esq. | Draft due diligence analysis sent in connection with request for legal advice regarding potential Allion agreement and merger. | *Jordan still owned the 13 Biomed companies.* |
| 7 | 2c | 12/28/2007 | Jennifer Hoefner | Joseph Troilo, Esq. | Draft due diligence analysis sent in connection with request for legal advice regarding potential Allion agreement and merger. | *Jordan still owned the 13 Biomed companies.* |
| 8 | 3 | 2/8/2008 | Mark Kovinsky** | Joseph Tropiano; Joseph Troilo, Esq. | Email requesting legal advice and forwarding legal advice and mental impressions of counsel B. Rodos regarding potential Allion merger. | *Jordan still owned the 13 Biomed companies.* |
| 9 | 111 | 2/8/2008 | Joseph Troilo, Esq.; Joseph Molieri, Esq. | *Not Identified* | Internal draft of Agreement and Plan of Merger between Biomed and Allion containing comments and legal advice of counsel. | *Jordan still owned the 13 Biomed companies.* |
| 10 | 3a | 2/8/2008 | Joseph Troilo, Esq. | *Not Identified* | Draft Biomed filing containing comments of counsel regarding Allion merger transaction. | *Jordan still owned the 13 Biomed companies.* |
| 11 | 104 | 2/20/2008 | Joseph Troilo, Esq. | *Not Identified* | Draft schedule of partnership assets and proposed distribution for SDA transaction prepared at the request of counsel for use in providing legal advice regarding structure of SDA transaction. | *Troilo joint representation concerns certain joint assets at SDA.* |
| 12 | 4 | 2/28/2008 | Joseph Troilo, Esq. | *Not Identified* | Binder containing printed drafts of SDA agreements and drafts of distribution with handwritten legal advice and comments of counsel regarding revisions to various agreements. | *Troilo joint representation concerns certain joint assets at SDA.* |
| 13 | 5 | 2/28/2008 | Joseph Troilo, Esq. | *Not Identified* | Draft Plan of Distribution containing comments and legal advice of counsel. | *Troilo joint representation concerns certain joint assets at SDA.* |

\* J. Hoefner - Pharmacist
\*\* M. Kovinsky - Chief Investment Officer

**APPENDIX A – JUNE 13 COURT ORDERED TROILO PRIVILEGE LOGGED DOCUMENTS NOT PRODUCED**

| | Defendant's Privilege Log Assertions | | | | | Why Production is Required |
|---|---|---|---|---|---|---|
| No. | Entry No. / Bates | Date | Author | Recipient | Defendant's Privilege Logged Subject Matter | |
| 14 | RAM000029799 | 2/29/2008 | Michael Bonventure | Joseph Troilo, Esq.; Joseph Tropiano | Email containing tax analysis requested by counsel for use in providing legal advice regarding structure of SDA. | *Troilo joint representation concerns certain joint assets at SDA.* |
| 15 | RAM000017414 - RAM000017422 | 2/2008 | Joseph Troilo, Esq. | *Not Identified* | Draft schedules of assets with proposed distributions prepared at the request of counsel for use in providing legal advice regarding structure of SDA transaction, containing written legal advice of counsel and comments of | *Troilo joint representation concerns certain joint assets at SDA.* |
| 16 | 105 | 3/1/2008 | Joseph Troilo, Esq. | *Not Identified* | Summary of conversation with client containing legal advice of counsel regarding structure of SDA transaction. | *Troilo joint representation concerns certain joint assets at SDA.* |
| 17 | RAM000029797 | 3/1/2008 | Joseph Troilo, Esq. | *Not Identified* | Correspondence providing legal advice to client regarding opposing counsel's request for financial information pertinent to negotiation of SDA. | *Troilo joint representation concerns certain joint assets at SDA.* |
| 18 | 8 | 3/3/2008 | Joseph Tropiano | Joseph Troilo, Esq.; Mark Morris, Esq.; Michael A. | Email requesting legal advice regarding tax implications in SDA. | *Troilo joint representation concerns certain joint assets at SDA.* |
| 19 | 9 | 3/3/2008 | Joseph Molieri, Esq. | Joseph Troilo, Esq.; Joseph Tropiano; Mark Kovinsky | Email providing legal advice regarding closing schedules for SDA and Allion agreements, and attaching memorandum providing legal advice. | *Troilo joint representation concerns certain joint assets at SDA.* |
| 20 | 10 | 3/3/2008 | Joseph Tropiano | Jerald August, Esq.; Michael A. Bonventure; Joseph Troilo, Esq. | Email requesting legal advice of counsel regarding closing schedules for SDA agreement. | *Troilo joint representation concerns certain joint assets at SDA.* |
| 21 | 11 | 3/3/2008 | Joseph Tropiano | Jerald August, Esq.; Joseph Troilo, Esq. | Email containing legal advice of counsel and requesting legal advice regarding closing schedules for SDA | *Troilo joint representation concerns certain joint assets at SDA.* |
| 22 | 10a | 3/3/2008 | Joseph Troilo, Esq. | Jerald August, Esq.; Michael A. | Draft SDA distribution schedules containing comments of counsel regarding SDA negotiations. | *Troilo joint representation concerns certain joint assets at SDA.* |
| 23 | 11a | 3/3/2008 | Joseph Tropiano | Jerald August, Esq.; Joseph Troilo, Esq. | Attached draft organizational chart prepared containing comments of counsel for SDA negotiations. | *Troilo joint representation concerns certain joint assets at SDA.* |
| 24 | 8a | 3/3/2008 | Joseph Tropiano | Joseph Troilo, Esq.; Mark Morris, Esq.; Michael A. | Draft document prepared to request legal advice regarding tax implications of SDA. | *Troilo joint representation concerns certain joint assets at SDA.* |
| 25 | 9a | 3/3/2008 | Joseph Molieri, Esq. | Joseph Troilo, Esq.; Joseph Tropiano; Mark Kovinsky | Memorandum providing legal advice regarding closing schedules for SDA and Allion agreements. | *Troilo joint representation concerns certain joint assets at SDA. Jordan still owned the 13 Biomed companies.* |
| 26 | 112 | 3/3/2008 | Joseph Molieri, Esq.; Joseph Troilo, Esq. | Mark Kovinsky; Joseph Tropiano; Bruce Kolleda | Biomed/Allion transaction list of due diligence items and necessary agreement revisions containing legal advice of counsel and requests for information from counsel necessary to complete transaction. | *Jordan still owned the 13 Biomed companies.* |

**APPENDIX A – JUNE 13 COURT ORDERED TROILO PRIVILEGE LOGGED DOCUMENTS NOT PRODUCED**

| | | | | | | |
|---|---|---|---|---|---|---|
| **Defendant's Privilege Log Assertions** | | | | | | **Why Production is Required** |
| No. | Entry No. / Bates | Date | Author | Recipient | Defendant's Privilege Logged Subject Matter | |
| 27 | 12 | 3/4/2008 | Joseph Molieri, Esq. | Joseph Tropiano; Mark Kovinsky; Joseph Troilo, Esq. | Email providing legal advice regarding Allion agreement and plan of merger. | *Jordan still owned the 13 Biomed companies.* |
| 28 | 13 | 3/4/2008 | Joseph Molieri, Esq. | Jennifer Hoefner; Joseph Troilo, Esq. | Email providing legal advice regarding schedules to Allion agreement and plan of merger. | *Jordan still owned the 13 Biomed companies.* |
| 29 | 113 | 3/4/2008 | Joseph Molieri, Esq.; Joseph Troilo, Esq. | *Not Identified* | Internal draft of Schedules to Agreement and Plan of Merger between Biomed and Allion containing comments and legal advice of counsel. | *Jordan still owned the 13 Biomed companies.* |
| 30 | 12a | 3/4/2008 | Joseph Molieri, Esq. | Joseph Tropiano; Mark Kovinsky; Joseph Troilo, Esq. | Draft of agreement with Allion containing and reflecting mental impressions and legal advice of counsel. | *Jordan still owned the 13 Biomed companies.* |
| 31 | 13a | 3/4/2008 | Joseph Molieri, Esq. | Jennifer Hoefner; Joseph Troilo, Esq. | Draft of schedules to Allion agreement and plan of merger containing and reflecting mental impressions and legal advice of counsel. | *Jordan still owned the 13 Biomed companies.* |
| 32 | RAM000029794 | 3/5/2008 | Joseph Troilo, Esq. | *Not Identified* | Correspondence providing legal advice to client regarding negotiation of SDA. | *Troilo joint representation concerns certain joint assets at SDA.* |
| 33 | 114 | 3/5/2008 | Bradley Rodos, Esq. | Joseph Troilo, Esq. | Memorandum from counsel providing legal advice and requesting information for purposes of preparing HSR regulatory filing on behalf of Biomed. | *Jordan still owned the 13 Biomed companies.* |
| 34 | 14 | 3/7/2008 | Joseph Molieri, Esq. | Joseph Troilo, Esq. | Email forwarding legal advice from B. Rodos regarding Allion merger agreement and open issues. | *Jordan still owned the 13 Biomed companies.* |
| 35 | 15 | 3/7/2008 | Joseph Molieri, Esq. | Mark Kovinsky; Joseph Tropiano; Joseph Troilo, Esq. | Email providing legal advice and containing draft Allion merger agreement. | *Jordan still owned the 13 Biomed companies.* |
| 36 | 15a | 3/7/2008 | Joseph Molieri, Esq. | Mark Kovinsky; Joseph Tropiano; Joseph Troilo, Esq. | Draft Allion merger agreement containing mark-up by counsel. | *Jordan still owned the 13 Biomed companies.* |
| 37 | 16a | 3/7/2008 | Joseph Molieri, Esq. | Bradley Rodos, Esq.; Joseph Troilo, Esq. | Draft Allion merger agreement containing mark-up by counsel. | *Jordan still owned the 13 Biomed companies.* |
| 38 | 17 | 3/8/2008 | Joseph Tropiano | Mark Kovinsky; Joseph Tropiano; Joseph Troilo, Esq. | Email requesting legal advice and containing draft Allion merger agreement. | *Troilo joint representation concerns certain joint assets at SDA. Jordan still owned the 13 Biomed companies.* |
| 39 | 17a | 3/8/2008 | Joseph Tropiano | Mark Kovinsky; Joseph Tropiano; Joseph Troilo, Esq. | Draft Allion merger agreement containing mark-up by counsel. | *Jordan still owned the 13 Biomed companies.* |
| 40 | RAM000029791 | 3/9/2008 | Joseph Troilo, Esq. | *Not Identified* | Correspondence providing legal advice to client regarding opposing counsel's proposed asset allocation for SDA transfers of ownership interests. | *Troilo joint representation concerns certain joint assets at SDA.* |
| 41 | 106 | 3/10/2008 | Joseph Troilo, Esq. | *Not Identified* | Draft schedules of assets and proposed distribution of assets prepared at the request of counsel for use in providing legal advice regarding structure of SDA transaction. | *Troilo joint representation concerns certain joint assets at SDA.* |

**APPENDIX A – JUNE 13 COURT ORDERED TROILO PRIVILEGE LOGGED DOCUMENTS NOT PRODUCED**

| No. | Entry No. / Bates | Date | Author | Recipient | Defendant's Privilege Logged Subject Matter | Why Production is Required |
|---|---|---|---|---|---|---|
| | Defendant's Privilege Log Assertions | | | | | Why Production is Required |
| 42 | RAM000029789 | 3/10/2008 | Joseph Troilo, Esq. | Jerald August, Esq.; cc Michael Bonventure; Joseph Tropiano | Request for legal advice regarding tax implications of alternative proposed structures for SDA. | *Troilo joint representation concerns certain joint assets at SDA.* |
| 43 | RAM000029790 | 3/10/2008 | Michael Bonventure | Joseph Troilo, Esq.; Joseph Tropiano | Email containing tax analysis requested by counsel for use in providing legal advice regarding structure of SDA. | *Troilo joint representation concerns certain joint assets at SDA.* |
| 44 | 18 | 3/11/2008 | Bradley Rodos, Esq. | Joseph Troilo, Esq.; Jerald August, Esq. | Email containing legal advice of counsel regarding SDA negotiations. | *Troilo joint representation concerns certain joint assets at SDA.* |
| 45 | RAM000029788 | 3/11/2008 | Michael Bonventure | Joseph Troilo, Esq.; Joseph Tropiano | Email containing tax analysis requested by counsel for use in providing legal advice regarding structure of SDA. | *Troilo joint representation concerns certain joint assets at SDA.* |
| 46 | 115 | 3/11/2008 | Joseph Molieri, Esq. Joseph Troilo, Esq. | *Not Identified* | Biomed/Allion transaction list of due diligence items and necessary agreement revisions containing legal advice of counsel and requests for information from counsel necessary to complete transaction. | *Jordan still owned the 13 Biomed companies.* |
| 47 | 116 | 3/11/2008 | Joseph Molieri, Esq. Joseph Troilo, Esq. | *Not Identified* | Internal draft of Schedules to Agreement and Plan of Merger between Biomed and Allion containing comments and legal advice of counsel. | *Jordan still owned the 13 Biomed companies.* |
| 48 | RAM000029786 | 3/11/2008 | Jerald August, Esq. | Joseph Troilo, Esq.; cc Brad Rodos, Esq.; Mark Morris, Esq. | Email providing legal advice regarding tax implications of different structure options for SDA and Allion merger agreements. | *Troilo joint representation concerns certain joint assets at SDA.* |
| 49 | RAM000029777 | 3/12/2008 | Brad Rodos, Esq. | Joseph Troilo, Esq. | Email providing legal advice regarding negotiation of SDA. | *Troilo joint representation concerns certain joint assets at SDA.* |
| 50 | RAM000029778 | 3/12/2008 | Joseph Tropiano | Joseph Troilo, Esq. | Email requesting legal advice regarding method of accounting for large withdrawals of funds from accounts to be divided between Jordan and Mirra in SDA. | *Troilo joint representation concerns certain joint assets at SDA.* |
| 51 | RAM000029779-RAM000029783 | 3/12/2008 | Jerald August, Esq. | Joseph Troilo, Esq.; Michael Bonventure; cc Joseph Tropiano | Email providing legal advice regarding tax implications of different structure options for SDA. | *Troilo joint representation concerns certain joint assets at SDA.* |
| 52 | 118 | 3/12/2008 | Joseph Troilo, Esq. | *Not Identified* | Internal draft of indemnification agreement prepared as part of Agreement and Plan of Merger between Biomed and Allion containing comments and legal advice of counsel. | *Jordan still owned the 13 Biomed companies.* |
| 53 | 119 | 3/12/2008 | Joseph Molieri, Esq.; Joseph Troilo, Esq. | *Not Identified* | Internal draft of Schedules to Agreement and Plan of Merger between Biomed and Allion containing comments and legal advice of counsel. | *Jordan still owned the 13 Biomed companies.* |
| 54 | 120 | 3/12/2008 | Joseph Molieri, Esq.; Joseph Troilo, Esq. | *Not Identified* | Internal draft of Schedules to Agreement and Plan of Merger between Biomed and Allion containing comments and legal advice of counsel. | *Jordan still owned the 13 Biomed companies.* |
| 55 | 19 | 3/13/2008 | Joseph Troilo, Esq. | Joseph Molieri, Esq. | Email forwarding legal advice from B. Rodos regarding Allion merger agreement and drafts attached. | *Jordan still owned the 13 Biomed companies.* |
| 56 | 121 | 3/13/2008 | Joseph Molieri, Esq.; Joseph Troilo, Esq. | *Not Identified* | Internal draft of Agreement and Plan of Merger between Biomed and Allion containing comments and legal advice of counsel. | *Jordan still owned the 13 Biomed companies.* |

**APPENDIX A – JUNE 13 COURT ORDERED TROILO PRIVILEGE LOGGED DOCUMENTS NOT PRODUCED**

| No. | Entry No. / Bates | Date | Author | Recipient | Defendant's Privilege Logged Subject Matter | Why Production is Required |
|---|---|---|---|---|---|---|
| | | | **Defendant's Privilege Log Assertions** | | | **Why Production is Required** |
| 57 | 19a | 3/13/2008 | Joseph Troilo, Esq. | Joseph Molieri, Esq. | Attached draft of Allion merger agreement prepared by counsel. | *Jordan still owned the 13 Biomed companies.* |
| 58 | 19b | 3/13/2008 | Joseph Troilo, Esq. | Joseph Molieri, Esq. | Attached draft of Allion merger agreement prepared counsel. | *Jordan still owned the 13 Biomed companies.* |
| 59 | 24 | 4/10/2008 | Jerald August, Esq. | Kathy Chandler; Joseph Troilo, Esq. | Email containing legal advice of counsel regarding the negotiations of the SDA. | *Troilo joint representation concerns certain joint assets at SDA.* |
| 60 | 25 | 4/10/2008 | Jerald August, Esq. | Joseph Troilo, Esq. | Email containing legal advice of counsel regarding the negotiations of the SDA. | *Troilo joint representation concerns certain joint assets at SDA.* |
| 61 | 26 | 4/10/2008 | Jerald August, Esq. | Joseph Troilo, Esq. | Email containing legal advice of counsel regarding the negotiations of the SDA. | *Troilo joint representation concerns certain joint assets at SDA.* |
| 62 | 27 | 4/10/2008 | Jerald August, Esq. | Joseph Troilo, Esq. | Email containing legal advice of counsel regarding the negotiations of the SDA. | *Troilo joint representation concerns certain joint assets at SDA.* |
| 63 | 23 | 4/10/2008 | Jerald August, Esq. | Joseph Troilo, Esq. | Email providing legal advice regarding the execution of ownership transfers under the terms of the SDA. | *Troilo joint representation concerns certain joint assets at SDA.* |
| 64 | 109 | 4/10/2008 | Joseph Troilo, Esq. | *Not Identified* | Draft Ram Capital Group, LLC Member Withdrawal and Liquidation Agreement prepared by counsel and containing legal advice and comments of counsel. | *Jordan's member withdrawal from RAM Capital not yet executed – Jordan still owner of RAM Capital.* |
| 65 | RAM000035866-RAM000035872 | 5/29/2008 | Brad Rodos, Esq. | *Joseph Troilo, Esq.* | Email providing legal advice regarding Allion merger agreement information statement sent to former Biomed stockholders. | *Jordan was a former Biomed stockholder, so this commuication concerns her interests.* |
| 66 | RAM000025467-RAM000025483 | 3/26/2009 | Joseph Troilo, Esq. | Raymond Mirra | Correspondence providing legal advice of counsel regarding assignment of lease between Hometech Therapies, Inc. and Advanced Research Corporation. | *Jordan still owned Hometech\** |
| 67 | 110 | Undated | Joseph Troilo, Esq. | *Not Identified* | Draft schedules of net assets with proposed distributions of assets prepared at the request of counsel for use in providing legal advice regarding structure of SDA transaction. | *Troilo joint representation concerns certain joint assets at SDA.* |
| 68 | RAM000017411 | Undated | Joseph Troilo, Esq. | *Not Identified* | Draft schedule of trust activity prepared at the request of counsel for use in providing legal advice regarding structure of SDA transaction. | *Troilo joint representation concerns certain joint assets at SDA.* |

\*Documents Defendant produced in the RICO case show Jordan owned Hometech – undisclosed by Mirra at the SDA – until at least November 2009.