IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

GIGI JORDAN,

                Plaintiff,

       -against-

RAYMOND A. MIRRA, JR.,

              Defendant.

C.A. No. 14-01485-GAM

**ORAL ARGUMENT REQUESTED**

**PLAINTIFF'S OBJECTIONS TO THE SPECIAL MASTER'S FEBRUARY 27, 2019
REPORT AND RECOMMENDATION**

Plaintiff submits these objections, pursuant to Fed. R. Civ. P. 53(f)(2), to the Special

Master's February 27, 2019 Report and Recommendation (the "R&R"). *See* D.I. 316. The

standard of review provided under Fed. R. Civ. P. 53(f)(3) and (4) requires that the District Judge

must decide de novo all objections to findings of fact and conclusions of law made or

recommended by the Special Master.

**OVERVIEW**

At the outset, it is important to understand the nature of this case. Plaintiff sues for breach

of warranty based on defendant's failure to list certain assets on the SDA. Defendant has that

information, not plaintiff. That basic imbalance in information should guide review of the R&R.

The Report recommends denying the only means available to plaintiff to obtain the

financial documents needed. Without neutral third-party vendor imaging of defendant's

accounting files, plaintiff will be unable to prosecute her claim. She cannot otherwise obtain the

books and records that detail the scope and value of the assets and liabilities defendant did not

Docket No. 317
Date: March 13, 2019

list in the SDA because defendant will not produce them.

The Report then recommends discovery obligations be imposed on plaintiff, although defendant – not plaintiff – has virtually all of the financial and accounting books and records containing the information the Report requires of plaintiff – information she does not have. Plaintiff's access to those records continues to be limited to what defendant chooses to disclose – an extremely limited percentage of the accounting records needed.

Plaintiff objects to the R&R, and requests the Court:

1. Enforce its prior orders compelling defendant to produce his Peachtree accounting records in their native file format as our RFPs requested, and grant plaintiff's request for a neutral third-party vendor to image any remaining unproduced accounting and financial documents. Neutral third party vendor imaging of defendant's native ESI access files will provide plaintiff the only means to obtain these documents. If the R&R is adopted otherwise in this respect, it would preclude this crucial discovery;

2. Decline to impose the disproportionate discovery obligations on plaintiff the R&R recommends, on the misapprehension that plaintiff (rather than defendant) has the crucial financial and accounting discovery needed. At the least, defendant should produce his documents 60 days before plaintiff's interrogatory responses based on those documents are due; and

3. Grant plaintiff's request for essential counterclaim discovery – Mirra's proof of payment – the linchpin evidence of his alleged damages.

**I.      The Court Should Not Relieve Defendant of His Obligation to Produce the Crucial Discovery Plaintiff Needs to Prosecute Her Claim and Instead Should Order His Native ESI Files Be Produced**

Plaintiff's September 19 and November 20, 2018 letters to the Special Master detailed the scope of the discovery plaintiff needs. Plaintiff's letters then demonstrated the timeline of defendant's discovery recalcitrance in refusing to produce them, attaching demonstrative charts that showed for the 60 companies (and defendant Mirra's personal financial records) ordered, defendant produced less than 14% of the tax returns and 8% of the general ledgers. (*See* Pl. Nov. 20, 2018 Ltr, Ex. A). Moreover, we explained that even where those sparse records were

produced, they revealed transactions in the millions that are missing and cannot be traced from the partial, manipulated, non-native accounting files defendant produced. (*Id.*) Although, defendant excused his incomplete production of the accounting records in non-native Microsoft Excel ("Excel") and TIFF format as acceptable, the attached affidavit of our forensic accountant and business valuation expert explains why defendants' non-native Excel and TIFF files are insufficient. (*See* Warshavsky Mar. 13, 2019 Aff. at ¶¶ 25-29, 39-43 and at *passim*; *see also* Def. Nov. 6, 2018 Ltr. at 6-8, Ex. B).

    With no other path to obtain the key accounting and financial documents, our September 19 letter asked that a neutral third-party vendor be permitted to image defendant's native Peachtree/Sage 50 accounting files (the accounting software in which they were ordinarily maintained). (*See* Pl. Sept. 19, 2018 Ltr. at 12-15, D.I. 288).

    The R&R not only rejects the request for neutral third-party vendor imaging, but also recommends relieving defendant altogether of his obligation to provide his accounting records in their native ESI file format – Peachtree/Sage 50. (*See* Feb. 27, 2019 R&R at 25-26, Ex. A at ¶ 5, D.I. 316; *see also* Pl. May 8, 2018 RFP at p. 17, ¶¶ 5, 7, Ex. C).

    This recommendation is confusing. While the Report recommends the Court order a substantial number of new financial documents about 24 additional companies, and reiterates the need for defendant to produce those documents responsive to our first RFPs (which defendant has not yet done), the R&R provides no insight as to how plaintiff will obtain them without the neutral third-party imaging requested.[1]

---

[1] *See* Feb. 27, 2019 R&R at 1 ("I recommend that the Court enter the attached order, requiring the production of responses to Ms. Jordan's supplemental requests for the production of documents served on 5/8/18 and 9/12/18."); *see also id.* at Ex. A, ¶¶ 1-2.

3

If the R&R is endorsed, rejecting our request for the imaging, defendant's ongoing concealment of the basic evidence required to prosecute our claim will be rewarded. For example, defendant produced not a single general ledger – the most basic accounting record – for at least 25 of the companies listed in our first RFPs.[2] One of those 25 companies was Physician's Oncology Network Inc. ("P.O.N.I."), a company that defendant dissolved on March 1, 2008 at the height of the SDA negotiation (leaving P.O.N.I. off the SDA Schedules). (*See* Pl. May 23, 2018 Ltr. at 3, D.I. 242). Plaintiff only later discovered that defendant had wired $1 million to P.O.N.I. in 2005 from an account only plaintiff was authorized to control. This Court compelled defendant to produce those records, but he has not. (*See* Jun. 13, 2018 Order, D.I. 257; Jul. 25, 2018 Order, D.I. 269). Without production of P.O.N.I.'s basic accounting records, the only P.O.N.I.-related damages plaintiff can prove is the $1 million she already knew about from her own bank records, having obtained no other information about P.O.N.I. in discovery.

Appendices I, II and III[3] show the small fraction of basic accounting and financial records defendant produced for the crucial period from 2002-2008/9,[4] which include only:

- 13% of the general ledgers;
- 23% of the tax returns;
- 0% of the bank statements;
- 2% of the balance sheets; and
- 14% of the income statements.

Without the native financial and accounting records requested, plaintiff cannot identify the entities, assets, liabilities and values defendant did not list in the SDA, and will be prejudiced in

---

[2] *See* Appendix I.A, listing the companies for which general ledgers were requested, but not produced, at No.'s 4, 11-14, 19, 25, 27, 29-31, 33, 35, 37, 40, 42, 44, 47-48, 50-52, 57, 59 - 61.

[3] Appendix II lists the missing records, and Appendix III provides detail by month for the missing records identified in Appendix I (as to the partial versus entirely absent records).

[4] These demonstratives represent only the periods from 2002-2008/9, plaintiff reserves the right for need of all documents for all relevant periods, and the demonstratives do not in any way indicate Plaintiff's waiver otherwise.

her ability to prosecute her breach of warranty claim. (*See* Warshavsky Mar. 13, 2019 Aff. at ¶¶ 14-24 and at *passim*). The affidavit of our forensic accounting expert explains the crucial need of the financial documents not produced. (*Id.* at ¶¶ 16-24 and at *passim*). The Court has twice compelled these documents, the R&R reinforces the need for defendant to produce them, and plaintiff therefore requests that the Court order the neutral third-party imaging that will yield those records. (*See* Jun. 13, 2018 Order, D.I. 257; Jul. 25, 2018 Order, D.I. 269; Feb. 27, 2019 R&R at 1, D.I. 316).

## II.     The Report Recommends Discovery Requirements Be Imposed on Plaintiff that Are Disproportionate to the Needs of the Case

*Plaintiff Does Not Have the Information Needed to Amend Her Interrogatory Responses.* Given the nature of the case, the R&R misdirects discovery obligations to plaintiff that (at this stage), should apply only to defendant, namely, requiring that plaintiff should amend her interrogatory responses within 60 days, and list every entity, asset, liability and value she claims defendant omitted from the SDA, suffering the extreme penalty of claim preclusion at trial if she fails to fully identify them now. (*See* Feb. 27, 2019 R&R at 1, 32-37, Ex. A at ¶ 9, D.I. 316).

This recommendation seems to turn the equities at play in this case on their head. Plaintiff does not have the financial records needed to provide the information defendant's contention interrogatories request of her. (*See* Warshavsky Mar. 13, 2019 Aff. at ¶¶ 14-29 and at *passim*). The Report recommends – that within the same 60-day time period as defendant should produce his complex financial records for 24 new companies – plaintiff should respond to contention interrogatories about them.  (*See* Feb. 27, 2019 R&R at 1, 4-6, 32-37, Ex. A at ¶¶ 1-2, 9, D.I. 316). Plaintiff will be unable to cull, analyze and summarize the assets and liabilities contained in records she will not yet have even received, since defendant will be producing them

in the same timeframe. Besides this, as the attached affidavit of our forensic accounting expert

explains, "plaintiff does not possess the necessary information to identify the entities, assets,

liabilities, and other values omitted from the SDA, or to conduct a valuation of these items,

because the defendant has not produced sufficient documentation to enable her to do so." (*See*

Warshavsky Mar. 13, 2019 Aff. at ¶ 14). Even where these vital documents are provided,

"[i]dentifying which entities, assets, liabilities, and other values were omitted from the SDA

requires a complex forensic analysis, which includes tracing transactions through the various

interrelated financial and accounting records for the numerous entities defendant established, and

analyzing" them – properly the subject of expert analysis and findings. (*Id*. at ¶¶ 45-49, 50); *see*

*also Farran v. Johnston Equip., Inc*., No. CIV. A. 93-6148, 1995 WL 298223, at *4 (E.D. Pa.

May 11, 1995) ("[Plaintiff] is reminded of its duty to supplement its [interrogatory] responses []

[as] its expert witnesses and reports become available."); *see also Pers. Audio, LLC v. Google*

*LLC*, No. CV 17-1751-CFC-CJB, 2018 WL 4502002, at *1 (D. Del. Sept. 20, 2018); *In re*

*Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.*, Civ. No. 09-MD-2118-

SLR, 2013 WL 12291705, at * 1 (D. Del. Oct. 22, 2013).

 Where more than 90% of the ordered business records are not yet produced, and the

Report recommends that a substantial number of additional records should be ordered, it is

premature to ask plaintiff to explicitly identify all of the entities, assets, liabilities, and values she

claims defendant omitted, much less suffer claim preclusion where that listing is incomplete.

*Farran,* 1995 WL 298223, at *4 ("Although [Plaintiff] has a duty under Rule 26(e) to

supplement [her] answers to interrogatories…[Plaintiff] cannot be expected to provide

information not yet ascertained due to [Defendant's] own delay"). At most, all plaintiff can do in

amending her interrogatory responses now would be to state the bank accounts and names of entities reflected in the small percentage of records defendant has produced to date.

***Plaintiff's Interrogatory Responses Properly Refer Defendant to His Own Business Records.*** The Report appears to mistakenly read plaintiff's interrogatory responses, directing defendant to the bates numbers of his own business records produced in the RICO case (containing the only information she has to answer them), as if instead plaintiff dumped her *own* documents on *him*. (*See* Feb. 27, 2019 R&R at 36, D.I. 316). By this misunderstanding, the Report found that it is not "Mr. Mirra's obligation to review ***Ms. Jordan's document production*** for the answers to his interrogatories" out of the "morass" of documents *she* produced. (*Id.* at 33, 36, emphasis added). The Report overlooked that the "morass" of documents referred to were defendant's own records, therefore it is not the case that defendant is "forced to defend at trial against claims that he had no knowledge of prior to evidence being presented at trial" as the Report concludes. (*Id.* at 36).

There is no unfair surprise to defendant here, since these are his own business records. Instead it is plaintiff who is struggling to glean from defendant's incomplete "morass" of documents the entities, assets, liabilities, and values defendant did not list.

Because of this confusion, the Report overlooks that Rule 33(d) and the relevant case law supports plaintiff's reference to defendant's own business records, where they answer his questions better than she can. *See Pappas v. Loew's, Inc*., 13 F.R.D. 471, 473 n. 3 (M.D. Pa. 1953) *citing Cinema Amusements, Inc. v. Loew's Inc*., D.C. Del.1947, 7 F.R.D. 318, at 321, 322 (Where, as here, "the matter inquired of be only found in records or documents" that are readily available to defendant, courts find "no reason would seem to exist to cast the burden of effort or expense upon the interrogated party" to ferret out that information from defendant's records); *see*

*also Id.* citing *Byers Theatres, Inc. v. Murphy*, D.C.Va.1940, 1 F.R.D. 286, at page 289, *Klein v. Leader Elec. Corp.*, D.C.Ill.1948, 81 F.Supp. 624, at page 625 ("[i]t is also obvious that one party should not be allowed to require another to make investigation, research or compilation of data or statistics for him which he might equally as well make for himself."); Pl. Nov. 20 Ltr. at 5-6, Ex. A.

   We ask that the Court decline to endorse the Report's recommendation that plaintiff be required to amend her interrogatory responses until 60 days after the documents the Court ordered, and the new documents the R&R recommends be ordered, are produced to plaintiff, such that her forensic accounting experts have sufficient time to analyze and report the information needed for plaintiff to amend them.

   ***Only One Deposition of Plaintiff is Needed.*** This Court's Scheduling Order provides for the depositions of plaintiff and the defendant, neither of which has been conducted (or scheduled) as yet. (*See* Feb. 1, 2018 Order at 3(f)(i), (iii), D.I. 209). In response to defendant's initial objections about Plaintiff's adequate search for responsive records in this case – later withdrawn as "moot[ed]" at the January 11 hearing – the Report recommends a deposition of plaintiff on that subject to occur within 60 days. (*See* Feb. 27, 2019 R&R at 1, D.I. 316.; *see also* Tr., Jan. 11, 2019 at 71:23-25; 88:15-20, Ex. D).

   It is unclear whether this limited deposition as recommended is in addition to, or intended as instead of, the general deposition of plaintiff this Court's Scheduling Order requires. (*See* Feb. 1, 2018 Order at 3(f)(iii), D.I. 209). Regardless, one general deposition of plaintiff provides defendant ample opportunity to query plaintiff on such issues (to the extent they exist). We believe no additional deposition of plaintiff is needed for the express purpose recommended.

### III.   The R&R Overlooked the Parties' Agreement that Defendant Would Amend His Interrogatory Responses

The Report overlooks the parties' agreement that defendant would amend his interrogatory responses to conform with the same scope of discovery this Court set for his document production by September 30. (*See* Jun. 13, 2018 Order, D.I. 257; Jul. 25, 2018 Order, D.I. 269; *see also* Def. Sept. 13, 2018 Ltr. at 2, Ex. E). Our September 19 letter explained that defendant agreed to do so, citing his September 13 letter to plaintiff as follows:

> Second, we discussed Ms. Jordan's request that Mr. Mirra amend his interrogatory responses in light of the Court's rulings regarding the scope of document discovery in this action. We agreed to do so. We will serve amended responses by September 30, as you have requested.

(*See* Pl. Sept. 19, 2018 Ltr. at 6, D.I. 288; *see also* Def. Sept. 13, 2018 Ltr. at 2, emphasis added, Ex. E). Because discovery was stayed just before September 30, defendant has not so amended his interrogatory responses, and the R&R is silent on this point. We ask the Court to so order that defendant amend his interrogatory responses, as agreed, within 60 days (or should the Court prefer, Plaintiff reserves the right to address this issue directly to the Special Master).

### IV.   Plaintiff Needs Proof That Defendant Paid the Legal Bills Himself.

Our letters to the Special Master after Mirra's surprise production of 800 pages of legal bills (during the stay of discovery) appended to his November 20 summary judgment motion on the counterclaims, explained our need of the other counterclaim discovery our RFPs requested – and this Court ordered – but Mirra had not produced.[5]

---

[5]  *See* Jordan's 5/8/18 RFPs, expressly requesting at RFP No. 62,

> …[for] All Documents…related to Your Counterclaims' assertion of "damages," "attorney fees," and "costs," produce all Documents, including: All Documents Related to letters of engagement, retention agreements, …[and] All Documents Related to Your bills…[including] Your payment of the "attorney fees," "costs," and all other "damages" asserted.

The crucial evidence needed is proof of Mirra's direct payment of the bills. Based on Mirra's business records produced in this case (and Jordan's general knowledge of Mirra's business practices), it is possible, if not probable, that RAM Capital (or another of Mirra's many holding companies) paid some or all of the legal bills submitted as Mirra's counterclaim damages.

Because the bills appended to Mirra's summary judgment motion reflect six different suits – involving other plaintiffs, and in one case where Mirra is not a party himself – proof of Mirra's payment is vital. The lack of defendant's personal payment would be dispositive of his breach of contract claim. Since Mirra is the only person with standing, lacking personal damages, the counterclaim fails as a matter of law. *See Meade v. Kiddie Acad. Domestic Franchising, LLC*, 501 F. App'x 106, 108 (3d Cir. 2012) ("[a] shareholder – even the sole shareholder – does not have standing to assert claims alleging wrongs to the corporation."); *see also In re Kaplan*, 143 F.3d 807, 811-12 (3d Cir. 1998) ("a shareholder (even a shareholder in a closely-held corporation) may not sue for personal injuries that result directly from injuries to the corporation… since [Plaintiff] chose to structure his business in the corporate form and received the benefits of that form by avoiding liability for [Corporation's] debts, the derivative injury rule prevents him from piercing the corporate veil in reverse in order to recover individually for [Corporation's] losses"); *Pitchford v. PEPI, Inc.*, 531 F.2d 92 (3d Cir. 1975); *Oakmont Note Grp. LLC v. Andrews*, No. CIV.A. 12-5257, 2013 WL 4184359, at *4 (E.D. Pa. Aug. 15, 2013) ("…a member of a LLC cannot sue in its own name for injuries to the limited liability company."); *Hvizdak v. United States*, No. CIV.A. 14-1296, 2015 WL 5098745, at *3 (W.D. Pa. Aug. 31, 2015)("Where a plaintiff's complaint alleges only harm to the limited liability company, the plaintiff cannot recover, because the harm to him or her, as a member, is

indirect."); *Roy v. Banco Popular de Puerto Rico*, No. ST-14-CV-306, 2018 WL 4178704, at *3 (V.I. Super. Aug. 29, 2018)("That an individual member of an LLC may not sue individually for injuries to the LLC is a rule firmly established and widespread in U.S. jurisdictions.").

The R&R is silent on our request for Mirra's proof of payment. We ask the Court order Mirra to produce this evidence, which Jordan should receive before being required to respond to Mirra's summary judgment motion on the counterclaim.

The Report also recommends denial of the discovery Jordan requested regarding the letters of retention and billing arrangements by an erroneous finding that Jordan did not request, and the Court did not therefore order those records.[6] In fact, Jordan's RFP No. 62 expressly requested in regard to the counterclaim: "all letters of engagement, retention agreements, …[and] All Documents Related to … Your payment of the 'attorney fees,' 'costs,' and all other 'damages' asserted." (*See* Pl. May 8, 2018 RFPs, Ex. C). And this Court endorsed that, ordering that defendant must "comply with plaintiff's Request for Production, with the only modifications being those outlined in [the] June 13, 2018 Clarification Order." (Jul. 25, 2018 Order, D.I. 269 at 1). Echoing the Court's endorsement of our request for the counterclaim evidence is the Court's Scheduling Order, requiring document discovery of the "newly interposed counterclaims by Counterclaim-Plaintiff Mirra." (*See* Feb. 1, 2018 Order at 3(b)(i), D.I. 209).

Given that six other matters are billed together, with parties other than Mirra represented by the law firm, and all those bills are included among the claimed damages appended to the summary judgment motion, Jordan should be able to receive the retention letters requested for

---

[6] *See* Feb. 27, 2019 R&R at 30, D.I. 316 ("Contrary to Ms. Jordan's assertion, the production of Mr. Mirra's legal bills was not addressed by the Court's 7/25/18 Order as her 5/8/18 requests for the production of documents, which were the subject of the Order, do not contain a request for the legal bills supporting Mr. Mirra's counterclaims.").

each matter the law firm was engaged. We ask the Court enforce its prior order that these

documents must be produced.

## **CONCLUSION**

The Court should order the following relief regarding plaintiff's objections to the R&R:

1.      Within 60 days defendant must produce the Peachtree/Sage 50 accounting records reflected in Appendix I - A, D and E (the general ledgers, balance sheets and income statements) for the periods indicated therein.

2.      Should defendant fail to produce the Peachtree/Sage 50 native files identified within 60 days of such order, a neutral third party vendor should image them for production to plaintiff.

3.      The Court should reject the Report's recommendations that plaintiff be required to amend her interrogatory responses where defendant's production of documents is incomplete. Should any amendment of plaintiff's interrogatory responses be required, the Court should require that she must do so only 60 days after the necessary documents are received, and plaintiff's forensic accountant and business valuation expert has the opportunity to analyze the information requested.

4.      The Court should reject the recommendation that plaintiff sit for a specific deposition on only the subject of her search for discovery documents in this case.

5.      Within 60 days, defendant provide his amended interrogatory responses as stipulated, to conform with the scope of discovery this Court ordered on July 25 and June 13, 2018.

6.      Within 30 days, Mirra produce all proof of payment, all retainer letters, and memorialization of billing arrangements related to the legal bills defendant adduces as evidence of damages to his November 20, 2018 summary judgment motion on the counterclaims. Jordan's opposition to the summary judgment motion on the counterclaims should not be required until after such time that evidence is produced.

Dated: March 13, 2019

Respectfully submitted,

SULLIVAN • HAZELTINE •
ALLINSON LLC

By:  */s/ E.E. Allinson III*
Elihu E. Allinson III (DE Bar No. 3476)
901 North Market Street, Suite 1300
Wilmington, Delaware 19801
Tel: (302) 428-8191
Fax: (302) 428-8195
zallinson@sha-llc.com

EMERY CELLI BRINCKERHOFF
   & ABADY LLP
Daniel J. Kornstein
600 Fifth Avenue
New York, New York 10020
Tel:  (212) 763-5000
Fax:  (212) 763-5001
dkornstein@ecbalaw.com

RIVKIN RADLER LLP
Max Gershenoff
926 RXR Plaza
Uniondale, New York 11556
Tel: (516) 357-3000
Fax: (516) 357-3333
max.gershenoff@rivkin.com

*Attorneys for Plaintiff and Counterclaim-*
*Defendant Gigi Jordan*

# APPENDIX I

**APPENDIX I.A – GENERAL LEDGER MATRIX OF MISSING RECORDS**

**% PRODUCED: 13%**

**(FROM 2002 TO 2009)**

Legend:
- PRODUCED (yellow)
- NOT PRODUCED (black)
- NOT REQUESTED (gray)

Cell key: P = Produced, N = Not Produced, R = Not Requested

| # | RECORDS SOUGHT | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 |
|---|---|---|---|---|---|---|---|---|---|
| 1 | Defendant - Raymond A. Mirra | R | N | N | N | N | N | N | N |
| 2 | AAA Equipment Rentals, LLC | R | N | N | N | N | R | R | N |
| 3 | AAA Grading & Paving LLC | R | P | P | N | N | R | R | N |
| 4 | Access Healthcare Services, LLC | R | R | R | N | N | N | N | N |
| 5 | Access Pharmaceutical Services, LLC | R | R | R | N | N | N | N | N |
| 6 | Access Therapeutics, Inc. | R | R | R | N | R | N | N | N |
| 7 | Advanced Research Corporation | N | N | N | N | N | P | P | P |
| 8 | Alliance Ambulatory Infusion Center, LP | N | N | N | N | N | N | N | N |
| 9 | Apogenics Healthcare, Inc. | R | R | R | N | N | N | N | N |
| 10 | Apogenics, Inc. | R | R | R | N | N | N | P | P |
| 11 | Ashland Pharmacy, Inc. | R | R | R | N | N | N | N | N |
| 12 | Atlanta I.D. Group, P.C. | R | R | R | N | N | N | N | N |
| 13 | Atlas Medical Equipment, Inc. | R | R | R | N | N | N | N | N |
| 14 | Atlas Nursing Services, Inc. | R | R | R | N | N | N | N | N |
| 15 | Atlas Respiratory Services, Inc. | R | R | R | N | N | N | N | N |
| 16 | Biomed America, Inc. | R | R | R | N | N | N | N | N |
| 17 | Biomed California, Inc. | R | R | R | N | N | N | N | N |
| 18 | Biomed Florida, Inc. | R | R | R | N | N | N | R | N |
| 19 | Biomed Healthcare, Inc. | R | R | R | N | N | N | R | N |
| 20 | Biomed Kansas, Inc. | R | R | R | N | N | N | R | N |
| 21 | Biomed PA, Inc. | R | R | R | N | N | N | N | N |
| 22 | Biomed Pharmaceuticals, Inc. | R | R | R | N | R | N | N | N |
| 23 | Biomed Texas, Inc. | R | R | R | N | R | N | N | N |
| 24 | Bio-Medical Innovations, Inc. | R | R | R | N | N | N | N | N |
| 25 | Bio-Medical Marketing Services, Inc. | R | N | N | N | N | N | N | N |
| 26 | Cancer Innovations, Inc. | N | N | N | N | N | P | P | P |
| 27 | Complete Communications, Inc. | N | N | N | N | N | N | N | R |
| 28 | Delta Laboratories, Inc. | R | N | R | N | N | N | N | N |
| 29 | Delta Pharmaceuticals, Inc. | R | R | R | N | N | N | N | N |
| 30 | Eyegene Corporation | R | R | R | N | N | N | N | N |
| 31 | Freedom Care, LLC | R | R | R | N | N | R | N | N |
| 32 | Greta Company, LLC | N | N | N | N | N | N | N | N |
| 33 | Hometech Medical Equipment, Inc. | N | N | N | N | N | N | N | N |
| 34 | Hometech Therapies, Inc | N | N | N | N | N | N | P | P |
| 35 | Indago Healthcare of Florida, Inc. | R | R | R | N | N | N | N | R |
| 36 | Indago Healthcare of South Florida, Inc. | R | R | R | N | N | R | R | R |
| 37 | Indago Healthcare, Inc. | R | R | R | N | N | N | R | R |
| 38 | Integrated BioPharm Corporation, Inc. | R | R | R | N | R | N | N | N |
| 39 | LBC Credit Partners Parallel, LP | N | N | N | N | N | N | N | R |
| 40 | Ledmir, LLC | N | N | N | N | N | N | R | R |

Appendix I.A to Plaintiff's March 13, 2019 Objections

## APPENDIX I.A – GENERAL LEDGER MATRIX OF MISSING RECORDS

**% PRODUCED: 13%**

**(FROM 2002 TO 2009)**

| | |
|---|---|
| PRODUCED | (yellow) |
| NOT PRODUCED | (black) |
| NOT REQUESTED | (gray) |

| RECORDS SOUGHT | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 |
|---|---|---|---|---|---|---|---|---|
| 41 LMS America, Inc. | gray | gray | black | black | gray | gray | gray | gray |
| 42 Logic Medical Solutions, Inc. | gray | black | gray | gray | gray | gray | gray | gray |
| 43 My Case LLC | gray | gray | gray | gray | gray | gray | black | black |
| 44 Neurology Therapeutics, Inc. | black | black | black | black | black | black | black | yellow |
| 45 New England Hemophilia and Thrombosis Network, Inc. | gray | gray | gray | gray | gray | gray | gray | gray |
| 46 Parallex, LLC | gray | gray | gray | gray | gray | gray | gray | black |
| 47 Physician Oncology Network, Inc. | gray | gray | black | black | black | black | black | gray |
| 48 Practice Made Perfect, Inc. | black | black | black | black | black | black | black | black |
| 49 Pridecare, Inc. | black | black | black | black | black | yellow | yellow | yellow |
| 50 Primavera, Inc. | black | black | black | black | black | black | black | black |
| 51 PRN Healthcare Services, Inc. | gray | gray | gray | gray | gray | gray | gray | gray |
| 52 RAM Business Holdings, LLC | gray | black | gray | gray | gray | gray | black | gray |
| 53 RAM Capital Group 2004 Trust | black | black | black | black | black | black | black | black |
| 54 RAM Capital Group, LLC | black | yellow | yellow | yellow | yellow | yellow | yellow | yellow |
| 55 RAM Capital Holdings, LLC | black | black | black | black | black | black | black | black |
| 56 RAM Capital II, LLC | gray | gray | gray | gray | gray | black | yellow | yellow |
| 57 RAM Consultants, LLC | black | black | black | black | black | black | black | black |
| 58 RAM Developers, Inc. | black | yellow | yellow | black | yellow | yellow | gray | gray |
| 59 RAM Enterprises Holding Company, Inc. | black | black | gray | gray | gray | gray | gray | gray |
| 60 RAM Equity Holdings, LLC | black | black | gray | gray | gray | gray | gray | gray |
| 61 RAM Investment Management, Inc. | black | black | gray | gray | gray | gray | gray | gray |
| 62 RAM Realty Holdings, LLC | yellow | yellow | yellow | yellow | yellow | black | yellow | yellow |
| 63 Retrodyne Corporation | black | yellow | yellow | yellow | gray | gray | gray | gray |
| 64 Stat Business Group, LLC | gray | gray | gray | gray | gray | gray | gray | black |
| 65 Stone Ridge Enterprises, LLC | black | yellow | yellow | yellow | yellow | yellow | yellow | yellow |
| 66 Sven LLC | gray | black | gray | gray | gray | gray | gray | gray |
| 67 U.S. Neurology Corporation | black | black | yellow | yellow | yellow | gray | gray | gray |
| 68 Valley Creek Estate, Inc. | gray | gray | gray | gray | gray | gray | gray | gray |
| 69 Vasgene Therapeutics, Inc. | black | black | black | black | black | yellow | yellow | yellow |
| 70 Versatile Care Solutions, Inc. | gray | gray | gray | gray | black | black | gray | gray |
| 71 West Highland Company, LLC | black | black | black | yellow | black | black | yellow | black |
| 72 World Wide Health, Inc. | black | black | black | black | black | black | black | black |

Appendix I.A to Plaintiff's March 13, 2019 Objections

## APPENDIX I.B – TAX RETURNS MATRIX OF MISSING RECORDS

**% PRODUCED: 23%**

**(FROM 2002 TO 2008)**

| Legend |
|---|
| PRODUCED (yellow) |
| NOT PRODUCED (black) |
| NOT REQUESTED (gray) |

*Cell status abbreviations: P = Produced, NP = Not Produced, NR = Not Requested*

| # | TAX RETURNS REQUEST FOR: | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 |
|---|---|---|---|---|---|---|---|---|
| 1 | Defendant - Raymond A. Mirra | NR | NP | NP | NP | NP | NR | NR |
| 2 | AAA Equipment Rentals, LLC | NR | NP | NP | NP | NP | NR | NR |
| 3 | AAA Grading & Paving LLC | NR | NR | NR | NP | NP | NR | NR |
| 4 | Access Healthcare Services, LLC | NR | NR | NR | NP | NP | NP | NP |
| 5 | Access Pharmaceutical Services, LLC | NR | NR | NR | NP | NP | NP | NP |
| 6 | Access Therapeutics, Inc. | NR | NR | NR | NR | NP | P | NP |
| 7 | Advanced Research Corporation | NP | NP | P | P | P | P | P |
| 8 | Alliance Ambulatory Infusion Center, LP | NP | NR | NR | NP | NP | NP | NP |
| 9 | Apogenics Healthcare, Inc. | NR | NR | NR | NP | NP | NP | NP |
| 10 | Apogenics, Inc. | NR | NR | NR | NR | NP | NP | NP |
| 11 | Ashland Pharmacy, Inc. | NP | NP | NP | NP | NP | NP | NP |
| 12 | Atlanta I.D. Group, P.C. | NP | NP | NP | NP | NP | NP | NP |
| 13 | Atlas Medical Equipment, Inc. | NR | NR | NR | NP | NP | NP | NP |
| 14 | Atlas Nursing Services, Inc. | NR | NR | NR | P | P | P | NP |
| 15 | Atlas Respiratory Services, Inc. | NR | NR | NP | NP | NP | P | NP |
| 16 | Biomed America, Inc. | NR | NR | NR | NP | NP | P | NP |
| 17 | Biomed California, Inc. | NR | NR | NR | NP | NP | P | NP |
| 18 | Biomed Florida, Inc. | NR | NR | NR | NP | NP | P | NP |
| 19 | Biomed Healthcare, Inc. | NR | NR | NR | NP | NP | P | NP |
| 20 | Biomed Kansas, Inc. | NR | NR | NR | NP | NP | P | NP |
| 21 | Biomed PA, Inc. | NR | NR | NR | NP | NP | P | NP |
| 22 | Biomed Pharmaceuticals, Inc. | NR | NR | NR | NP | NP | P | NP |
| 23 | Biomed Texas, Inc. | NR | NR | NR | NP | NP | P | NP |
| 24 | Bio-Medical Innovations, Inc. | NR | NR | NR | NP | NP | NP | NP |
| 25 | Bio-Medical Marketing Services, Inc. | NR | NP | NR | NR | NR | NR | NR |
| 26 | Cancer Innovations, Inc. | NP | NP | P | P | P | P | P |
| 27 | Complete Communications, Inc. | NP | NP | NP | NP | NP | NP | NR |
| 28 | Delta Laboratories, Inc. | NP | NP | NP | NP | NP | NP | NR |
| 29 | Delta Pharmaceuticals, Inc. | NP | NP | NP | NP | NP | P | P |
| 30 | Eyegene Corporation | NP | NP | NP | NP | NP | NP | NR |
| 31 | Freedom Care, LLC | NP | NP | NP | NP | NP | NP | NP |
| 32 | Greta Company, LLC | NP | NP | NP | NP | NP | NP | NP |
| 33 | Hometech Medical Equipment, Inc. | NP | NP | NP | NP | NP | NP | NP |
| 34 | Hometech Therapies, Inc | NP | NP | NP | NP | NP | P | P |
| 35 | Indago Healthcare of Florida, Inc. | NR | NR | NR | NR | NR | NR | NR |
| 36 | Indago Healthcare of South Florida, Inc. | NR | NR | NR | NR | NR | NR | NR |
| 37 | Indago Healthcare, Inc. | NR | NR | NR | NP | NP | NR | NR |
| 38 | Integrated BioPharm Corporation, Inc. | NP | NP | NP | NP | NP | NP | NP |
| 39 | LBC Credit Partners Parallel, LP | NP | NP | NP | NP | NR | NR | NR |
| 40 | Ledmir, LLC | NP | NP | NP | NP | NP | NP | NP |

**1 of 2**

**APPENDIX I.B – TAX RETURNS MATRIX OF MISSING RECORDS**

**% PRODUCED: 23%**

**(FROM 2002 TO 2008)**

| | PRODUCED |
|---|---|
| | NOT PRODUCED |
| | NOT REQUESTED |

Legend: PRODUCED = yellow, NOT PRODUCED = black, NOT REQUESTED = gray

| TAX RETURNS REQUEST FOR: | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 |
|---|---|---|---|---|---|---|---|
| 41 LMS America, Inc. | NR | NR | NP | NP | NR | NR | NR |
| 42 Logic Medical Solutions, Inc. | NP | NP | NP | NR | NR | NR | NR |
| 43 My Case LLC | NR | NR | NR | NR | NR | NR | NP |
| 44 Neurology Therapeutics, Inc. | NR | NR | NR | NR | P | P | P |
| 45 New England Hemophilia and Thrombosis Network, Inc. | NR | NR | NR | NR | NP | NP | NP |
| 46 Parallex, LLC | NR | NR | NR | NR | NR | NR | NP |
| 47 Physician Oncology Network, Inc. | NR | NR | NP | NP | NP | NP | NP |
| 48 Practice Made Perfect, Inc. | NP | NP | NP | NP | NP | NP | NP |
| 49 Pridecare, Inc. | NP | NP | NP | P | P | P | P |
| 50 Primavera, Inc. | NR | NR | NP | NP | NP | NP | NP |
| 51 PRN Healthcare Services, Inc. | NR | NP | NP | NP | NP | NP | NP |
| 52 RAM Business Holdings, LLC | NR | NP | P | P | P | NP | NR |
| 53 RAM Capital Group 2004 Trust | NR | NR | NP | NP | NP | NP | NP |
| 54 RAM Capital Group, LLC | NP | NP | P | P | P | P | P |
| 55 RAM Capital Holdings, LLC | NP | NP | NP | NP | NP | NP | NP |
| 56 RAM Capital II, LLC | NR | NR | NR | NR | NR | NP | NP |
| 57 RAM Consultants, LLC | NP | P | P | P | P | NR | NR |
| 58 RAM Developers, Inc. | P | P | P | P | P | NR | NR |
| 59 RAM Enterprises Holding Company, Inc. | NP | NP | NR | NR | NR | NR | NR |
| 60 RAM Equity Holdings, LLC | NR | NP | NP | NP | NR | NR | NR |
| 61 RAM Investment Management, Inc. | NP | NP | NP | NP | NP | NR | NP |
| 62 RAM Realty Holdings, LLC | NR | NP | NP | P | P | P | P |
| 63 Retrodyne Corporation | NP | P | P | NR | NR | NR | NR |
| 64 Stat Business Group, LLC | NR | NR | NR | NR | NR | NR | NR |
| 65 Stone Ridge Enterprises, LLC | NR | NP | NP | P | P | P | P |
| 66 Sven LLC | NR | NR | NR | NR | NR | NR | NR |
| 67 U.S. Neurology Corporation | NR | NR | NR | NR | NR | NR | NR |
| 68 Valley Creek Estate, Inc. | NR | NR | NR | NR | NP | NP | NP |
| 69 Vasgene Therapeutics, Inc. | P | P | P | P | P | NP | P |
| 70 Versatile Care Solutions, Inc. | NR | NR | NR | NP | NP | NP | NP |
| 71 West Highland Company, LLC | NP | P | P | P | P | P | P |
| 72 World Wide Health, Inc. | NP | NP | NP | NP | NP | NP | NP |

Appendix I.B to Plaintiff's March 13, 2019 Objections

## APPENDIX I.C – BANK STATEMENTS MATRIX OF MISSING RECORDS

**% PRODUCED: 0%**

**(FROM 2002 TO 2008)**

| | |
|---|---|
| PRODUCED | (yellow) |
| NOT PRODUCED | (black) |
| NOT REQUESTED | (gray) |

| | RECORDS SOUGHT | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 |
|---|---|---|---|---|---|---|---|
| 1 | Defendant - Raymond A. Mirra | | | | | | | |
| 2 | AAA Equipment Rentals, LLC | | | | | | | |
| 3 | AAA Grading & Paving LLC | | | | | | | |
| 4 | Access Healthcare Services, LLC | | | | | | | |
| 5 | Access Pharmaceutical Services, LLC | | | | | | | |
| 6 | Access Therapeutics, Inc. | | | | | | | |
| 7 | Advanced Research Corporation | | | | | | | |
| 8 | Alliance Ambulatory Infusion Center, LP | | | | | | | |
| 9 | Apogenics Healthcare, Inc. | | | | | | | |
| 10 | Apogenics, Inc. | | | | | | | |
| 11 | Ashland Pharmacy, Inc. | | | | | | | |
| 12 | Atlanta I.D. Group, P.C. | | | | | | | |
| 13 | Atlas Medical Equipment, Inc. | | | | | | | |
| 14 | Atlas Nursing Services, Inc. | | | | | | | |
| 15 | Atlas Respiratory Services, Inc. | | | | | | | |
| 16 | Biomed America, Inc. | | | | | | | |
| 17 | Biomed California, Inc. | | | | | | | |
| 18 | Biomed Florida, Inc. | | | | | | | |
| 19 | Biomed Healthcare, Inc. | | | | | | | |
| 20 | Biomed Kansas, Inc. | | | | | | | |
| 21 | Biomed PA, Inc. | | | | | | | |
| 22 | Biomed Pharmaceuticals, Inc. | | | | | | | |
| 23 | Biomed Texas, Inc. | | | | | | | |
| 24 | Bio-Medical Innovations, Inc. | | | | | | | |
| 25 | Bio-Medical Marketing Services, Inc. | | | | | | | |
| 26 | Cancer Innovations, Inc. | | | | | | | |
| 27 | Complete Communications, Inc. | | | | | | | |
| 28 | Delta Laboratories, Inc. | | | | | | | |
| 29 | Delta Pharmaceuticals, Inc. | | | | | | | |
| 30 | Eyegene Corporation | | | | | | | |
| 31 | Freedom Care, LLC | | | | | | | |
| 32 | Greta Company, LLC | | | | | | | |
| 33 | Hometech Medical Equipment, Inc. | | | | | | | |
| 34 | Hometech Therapies, Inc | | | | | | | |
| 35 | Indago Healthcare of Florida, Inc. | | | | | | | |
| 36 | Indago Healthcare of South Florida, Inc. | | | | | | | |
| 37 | Indago Healthcare, Inc. | | | | | | | |
| 38 | Integrated BioPharm Corporation, Inc. | | | | | | | |
| 39 | LBC Credit Partners Parallel, LP | | | | | | | |
| 40 | Ledmir, LLC | | | | | | | |

**1 of 2**

## APPENDIX I.C – BANK STATEMENTS MATRIX OF MISSING RECORDS

**% PRODUCED: 0%**

**(FROM 2002 TO 2008)**

| | |
|---|---|
| PRODUCED | (yellow) |
| NOT PRODUCED | (black) |
| NOT REQUESTED | (gray) |

| RECORDS SOUGHT | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 |
|---|---|---|---|---|---|---|---|
| 41 LMS America, Inc. | NR | NR | NP | NP | NR | NR | NR |
| 42 Logic Medical Solutions, Inc. | NP | NP | NP | NR | NR | NR | NP |
| 43 My Case LLC | NR | NR | NR | NR | NR | NR | NP |
| 44 Neurology Therapeutics, Inc. | NR | NR | NR | NR | NP | NP | NP |
| 45 New England Hemophilia and Thrombosis Network, Inc. | NR | NR | NR | NR | NP | NP | NP |
| 46 Parallex, LLC | NR | NR | NR | NR | NR | NR | NR |
| 47 Physician Oncology Network, Inc. | NR | NR | NP | NP | NP | NP | NP |
| 48 Practice Made Perfect, Inc. | NP | NP | NP | NP | NP | NP | NP |
| 49 Pridecare, Inc. | NP | NR | NR | NR | NR | NR | NR |
| 50 Primavera, Inc. | NP | NR | NR | NR | NR | NR | NR |
| 51 PRN Healthcare Services, Inc. | NR | NR | NR | NR | NR | NR | NR |
| 52 RAM Business Holdings, LLC | NR | NP | NR | NR | NR | NR | NR |
| 53 RAM Capital Group 2004 Trust | NP | NP | NP | NP | NP | NP | NP |
| 54 RAM Capital Group, LLC | NP | NP | NP | NP | NP | NP | NP |
| 55 RAM Capital Holdings, LLC | NP | NP | NP | NP | NP | NP | NP |
| 56 RAM Capital II, LLC | NP | NR | NR | NR | NR | NP | NR |
| 57 RAM Consultants, LLC | NP | NP | NP | NP | NP | NP | NP |
| 58 RAM Developers, Inc. | NP | NP | NP | NP | NP | NR | NR |
| 59 RAM Enterprises Holding Company, Inc. | NP | NP | NP | NP | NP | NP | NP |
| 60 RAM Equity Holdings, LLC | NP | NP | NP | NP | NP | NP | NP |
| 61 RAM Investment Management, Inc. | NP | NR | NR | NR | NR | NR | NR |
| 62 RAM Realty Holdings, LLC | NP | NR | NR | NR | NR | NR | NR |
| 63 Retrodyne Corporation | NP | NP | NP | NP | NP | NP | NP |
| 64 Stat Business Group, LLC | NR | NR | NR | NR | NR | NR | NR |
| 65 Stone Ridge Enterprises, LLC | NR | NP | NP | NP | NP | NP | NP |
| 66 Sven LLC | NP | NR | NR | NR | NR | NR | NR |
| 67 U.S. Neurology Corporation | NR | NP | NP | NP | NP | NP | NP |
| 68 Valley Creek Estate, Inc. | NR | NP | NP | NP | NP | NP | NP |
| 69 Vasgene Therapeutics, Inc. | NP | NP | NP | NP | NP | NP | NP |
| 70 Versatile Care Solutions, Inc. | NR | NR | NR | NR | NP | NP | NP |
| 71 West Highland Company, LLC | NP | NP | NP | NP | NP | NP | NP |
| 72 World Wide Health, Inc. | NP | NP | NP | NP | NP | NP | NP |

## APPENDIX I.D – BALANCE SHEETS MATRIX OF MISSING RECORDS

**% PRODUCED: 2%**

**(FROM 2002 TO 2008)**

| | PRODUCED |
|---|---|
| | NOT PRODUCED |
| | NOT REQUESTED |

Legend: P = Produced (yellow), N = Not Produced (black), R = Not Requested (gray)

| | RECORDS SOUGHT | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 |
|---|---|---|---|---|---|---|---|
| 1 | Defendant - Raymond A. Mirra | N | N | N | P | P | N | N |
| 2 | AAA Equipment Rentals, LLC | R | N | N | P | N | R | R |
| 3 | AAA Grading & Paving LLC | R | N | N | R | N | R | N |
| 4 | Access Healthcare Services, LLC | R | R | R | R | N | N | N |
| 5 | Access Pharmaceutical Services, LLC | R | R | R | R | N | N | N |
| 6 | Access Therapeutics, Inc. | R | R | R | R | N | N | N |
| 7 | Advanced Research Corporation | N | N | N | N | N | N | N |
| 8 | Alliance Ambulatory Infusion Center, LP | N | N | N | N | N | N | N |
| 9 | Apogenics Healthcare, Inc. | R | R | R | R | R | R | R |
| 10 | Apogenics, Inc. | R | R | R | R | R | R | R |
| 11 | Ashland Pharmacy, Inc. | N | N | N | N | N | N | N |
| 12 | Atlanta I.D. Group, P.C. | N | N | N | N | N | N | N |
| 13 | Atlas Medical Equipment, Inc. | N | N | N | N | N | N | N |
| 14 | Atlas Nursing Services, Inc. | N | N | N | N | N | N | N |
| 15 | Atlas Respiratory Services, Inc. | R | N | N | N | N | N | N |
| 16 | Biomed America, Inc. | R | R | R | R | R | R | R |
| 17 | Biomed California, Inc. | R | R | R | R | R | N | R |
| 18 | Biomed Florida, Inc. | R | R | R | R | R | N | N |
| 19 | Biomed Healthcare, Inc. | R | R | R | R | R | N | N |
| 20 | Biomed Kansas, Inc. | R | R | R | R | R | N | N |
| 21 | Biomed PA, Inc. | R | R | R | R | R | R | N |
| 22 | Biomed Pharmaceuticals, Inc. | N | N | N | N | N | N | N |
| 23 | Biomed Texas, Inc. | R | R | R | R | N | R | N |
| 24 | Bio-Medical Innovations, Inc. | R | R | R | N | N | R | R |
| 25 | Bio-Medical Marketing Services, Inc. | R | N | N | N | N | R | R |
| 26 | Cancer Innovations, Inc. | N | N | N | N | N | N | N |
| 27 | Complete Communications, Inc. | N | N | N | N | N | N | N |
| 28 | Delta Laboratories, Inc. | N | N | N | N | R | R | R |
| 29 | Delta Pharmaceuticals, Inc. | N | N | N | N | N | N | N |
| 30 | Eyegene Corporation | R | R | R | R | R | R | R |
| 31 | Freedom Care, LLC | R | R | R | R | R | R | N |
| 32 | Greta Company, LLC | N | N | N | N | N | N | N |
| 33 | Hometech Medical Equipment, Inc. | N | N | N | N | N | N | N |
| 34 | Hometech Therapies, Inc | N | N | N | N | N | N | N |
| 35 | Indago Healthcare of Florida, Inc. | R | R | R | N | N | R | R |
| 36 | Indago Healthcare of South Florida, Inc. | R | R | R | N | N | R | R |
| 37 | Indago Healthcare, Inc. | N | N | N | N | N | N | N |
| 38 | Integrated BioPharm Corporation, Inc. | N | N | N | N | N | N | N |
| 39 | LBC Credit Partners Parallel, LP | N | N | N | N | N | N | N |
| 40 | Ledmir, LLC | N | N | N | N | R | R | R |

**Appendix I.D to Plaintiff's March 13, 2019 Objections**

## APPENDIX I.D – BALANCE SHEETS MATRIX OF MISSING RECORDS

**% PRODUCED: 2%**

**(FROM 2002 TO 2008)**

| | |
|---|---|
| PRODUCED | (yellow) |
| NOT PRODUCED | (black) |
| NOT REQUESTED | (gray) |

| RECORDS SOUGHT | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 |
|---|---|---|---|---|---|---|---|
| 41 LMS America, Inc. | Not Requested | Not Requested | Not Produced | Not Requested | Not Requested | Not Requested | Not Requested |
| 42 Logic Medical Solutions, Inc. | Not Produced | Not Produced | Not Produced | Not Requested | Not Requested | Not Requested | Not Produced |
| 43 My Case LLC | Not Requested | Not Requested | Not Requested | Not Requested | Not Requested | Not Requested | Not Produced |
| 44 Neurology Therapeutics, Inc. | Not Requested | Not Requested | Not Requested | Not Requested | Not Produced | Not Produced | Not Produced |
| 45 New England Hemophilia and Thrombosis Network, Inc. | Not Requested | Not Requested | Not Requested | Not Requested | Not Requested | Not Requested | Not Requested |
| 46 Parallex, LLC | Not Requested | Not Requested | Not Requested | Not Requested | Not Requested | Not Requested | Not Requested |
| 47 Physician Oncology Network, Inc. | Not Requested | Not Requested | Not Produced | Not Produced | Not Produced | Not Produced | Not Produced |
| 48 Practice Made Perfect, Inc. | Not Produced | Not Produced | Not Produced | Not Produced | Not Produced | Not Produced | Not Produced |
| 49 Pridecare, Inc. | Not Produced | Not Produced | Produced | Produced | Not Produced | Not Produced | Not Produced |
| 50 Primavera, Inc. | Not Produced | Not Produced | Not Produced | Not Produced | Not Produced | Not Produced | Not Produced |
| 51 PRN Healthcare Services, Inc. | Not Requested | Not Produced | Not Produced | Not Produced | Not Produced | Not Produced | Not Produced |
| 52 RAM Business Holdings, LLC | Not Requested | Not Produced | Not Produced | Not Produced | Not Produced | Not Produced | Not Requested |
| 53 RAM Capital Group 2004 Trust | Not Produced | Not Produced | Not Produced | Not Produced | Not Produced | Not Produced | Not Produced |
| 54 RAM Capital Group, LLC | Not Produced | Not Produced | Not Produced | Not Produced | Produced | Produced | Not Produced |
| 55 RAM Capital Holdings, LLC | Not Produced | Not Produced | Not Produced | Not Produced | Not Produced | Not Produced | Not Produced |
| 56 RAM Capital II, LLC | Not Requested | Not Requested | Not Requested | Not Requested | Not Requested | Not Requested | Not Requested |
| 57 RAM Consultants, LLC | Not Requested | Not Requested | Not Requested | Not Requested | Not Requested | Not Requested | Not Requested |
| 58 RAM Developers, Inc. | Not Produced | Not Produced | Not Produced | Not Produced | Not Produced | Not Requested | Not Requested |
| 59 RAM Enterprises Holding Company, Inc. | Not Produced | Not Produced | Not Produced | Not Produced | Not Produced | Not Produced | Not Produced |
| 60 RAM Equity Holdings, LLC | Not Produced | Not Produced | Not Produced | Not Produced | Not Produced | Not Produced | Not Produced |
| 61 RAM Investment Management, Inc. | Not Produced | Not Produced | Not Produced | Not Produced | Not Produced | Not Produced | Not Produced |
| 62 RAM Realty Holdings, LLC | Not Produced | Not Produced | Not Produced | Not Produced | Not Produced | Not Produced | Not Produced |
| 63 Retrodyne Corporation | Not Produced | Not Produced | Not Produced | Not Requested | Not Produced | Not Produced | Not Produced |
| 64 Stat Business Group, LLC | Not Requested | Not Requested | Not Requested | Not Requested | Not Requested | Not Requested | Not Produced |
| 65 Stone Ridge Enterprises, LLC | Not Requested | Not Produced | Not Produced | Not Produced | Not Produced | Not Produced | Not Produced |
| 66 Sven LLC | Not Produced | Not Requested | Not Requested | Not Requested | Not Requested | Not Requested | Not Requested |
| 67 U.S. Neurology Corporation | Not Requested | Not Produced | Not Produced | Not Produced | Not Produced | Not Produced | Not Produced |
| 68 Valley Creek Estate, Inc. | Not Requested | Not Produced | Not Produced | Not Produced | Not Produced | Not Produced | Not Produced |
| 69 Vasgene Therapeutics, Inc. | Not Produced | Not Produced | Not Produced | Not Produced | Not Produced | Not Produced | Not Produced |
| 70 Versatile Care Solutions, Inc. | Not Requested | Not Requested | Not Requested | Not Produced | Not Produced | Not Produced | Not Produced |
| 71 West Highland Company, LLC | Not Produced | Not Produced | Not Produced | Produced | Not Produced | Not Produced | Not Produced |
| 72 World Wide Health, Inc. | Not Produced | Not Produced | Not Produced | Not Produced | Not Produced | Not Produced | Not Produced |

Appendix I.D to Plaintiff's March 13, 2019 Objections

**APPENDIX I.E – INCOME STATEMENTS MATRIX OF MISSING RECORDS**

**% PRODUCED: 14%**

**(FROM 2002 TO 2008)**

Legend:
- PRODUCED (yellow)
- NOT PRODUCED (black)
- NOT REQUESTED (gray)

Cell codes below: P = Produced, N = Not Produced, R = Not Requested

| # | RECORDS SOUGHT | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 |
|---|---|---|---|---|---|---|---|---|
| 1 | Defendant - Raymond A. Mirra | N | N | N | N | P | N | N |
| 2 | AAA Equipment Rentals, LLC | R | N | R | P | P | R | R |
| 3 | AAA Grading & Paving LLC | R | P | N | P | R | R | R |
| 4 | Access Healthcare Services, LLC | N | N | N | N | N | N | N |
| 5 | Access Pharmaceutical Services, LLC | R | R | R | N | N | R | R |
| 6 | Access Therapeutics, Inc. | N | N | N | N | N | N | R |
| 7 | Advanced Research Corporation | N | N | N | P | P | P | P |
| 8 | Alliance Ambulatory Infusion Center, LP | N | N | N | N | N | N | N |
| 9 | Apogenics Healthcare, Inc. | R | R | R | R | R | R | R |
| 10 | Apogenics, Inc. | R | R | R | R | R | R | P |
| 11 | Ashland Pharmacy, Inc. | N | N | N | N | N | N | N |
| 12 | Atlanta I.D. Group, P.C. | N | N | N | N | N | N | N |
| 13 | Atlas Medical Equipment, Inc. | N | N | N | N | N | N | N |
| 14 | Atlas Nursing Services, Inc. | N | N | N | P | P | P | N |
| 15 | Atlas Respiratory Services, Inc. | R | N | N | P | P | R | R |
| 16 | Biomed America, Inc. | R | R | R | N | N | R | R |
| 17 | Biomed California, Inc. | R | R | R | R | R | R | R |
| 18 | Biomed Florida, Inc. | R | R | R | R | R | N | R |
| 19 | Biomed Healthcare, Inc. | R | R | R | R | R | R | R |
| 20 | Biomed Kansas, Inc. | R | R | R | R | R | R | R |
| 21 | Biomed PA, Inc. | R | R | R | R | R | R | R |
| 22 | Biomed Pharmaceuticals, Inc. | R | R | R | N | N | R | R |
| 23 | Biomed Texas, Inc. | R | R | R | R | R | R | N |
| 24 | Bio-Medical Innovations, Inc. | R | R | R | N | N | R | R |
| 25 | Bio-Medical Marketing Services, Inc. | R | N | R | R | N | R | R |
| 26 | Cancer Innovations, Inc. | N | N | N | N | P | P | N |
| 27 | Complete Communications, Inc. | N | N | N | N | N | N | N |
| 28 | Delta Laboratories, Inc. | N | N | N | R | R | R | R |
| 29 | Delta Pharmaceuticals, Inc. | N | N | N | P | N | N | N |
| 30 | Eyegene Corporation | R | R | R | R | R | R | R |
| 31 | Freedom Care, LLC | R | R | R | R | R | R | N |
| 32 | Greta Company, LLC | N | N | N | N | N | N | N |
| 33 | Hometech Medical Equipment, Inc. | N | N | N | N | N | N | N |
| 34 | Hometech Therapies, Inc | R | R | R | R | R | R | P |
| 35 | Indago Healthcare of Florida, Inc. | R | R | R | P | P | P | P |
| 36 | Indago Healthcare of South Florida, Inc. | R | R | R | N | N | R | R |
| 37 | Indago Healthcare, Inc. | N | N | N | P | N | P | N |
| 38 | Integrated BioPharm Corporation, Inc. | N | N | N | N | N | N | N |
| 39 | LBC Credit Partners Parallel, LP | R | R | R | R | R | R | R |
| 40 | Ledmir, LLC | N | P | P | R | R | R | R |

**1 of 2**

**APPENDIX I.E – INCOME STATEMENTS MATRIX OF MISSING RECORDS**

**% PRODUCED: 14%**

**(FROM 2002 TO 2008)**

| | |
|---|---|
| PRODUCED | |
| NOT PRODUCED | |
| NOT REQUESTED | |

Legend: P = Produced, NP = Not Produced, NR = Not Requested

| RECORDS SOUGHT | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 |
|---|---|---|---|---|---|---|---|
| 41 LMS America, Inc. | NR | NR | NP | NR | NR | NR | NR |
| 42 Logic Medical Solutions, Inc. | NP | NP | NP | NR | NR | NR | NP |
| 43 My Case LLC | NR | NR | NR | NR | NR | NR | NR |
| 44 Neurology Therapeutics, Inc. | NR | NR | NR | NR | NP | NP | P |
| 45 New England Hemophilia and Thrombosis Network, Inc. | NR | NR | NR | NR | NP | NP | NR |
| 46 Parallex, LLC | NR | NR | NR | NR | NR | NR | NR |
| 47 Physician Oncology Network, Inc. | NR | NR | NR | NP | NP | NP | NR |
| 48 Practice Made Perfect, Inc. | NP | NP | NP | NP | NP | NP | NR |
| 49 Pridecare, Inc. | NP | NP | P | P | P | NP | NR |
| 50 Primavera, Inc. | NP | NP | NP | NP | NP | NP | NR |
| 51 PRN Healthcare Services, Inc. | NR | NR | NR | NR | NR | NR | NR |
| 52 RAM Business Holdings, LLC | NP | NP | NP | NP | NP | NP | NR |
| 53 RAM Capital Group 2004 Trust | NR | NR | NR | NR | NR | NR | NR |
| 54 RAM Capital Group, LLC | NP | NP | NP | NP | P | P | NP |
| 55 RAM Capital Holdings, LLC | NP | NP | NP | NP | NP | NP | NP |
| 56 RAM Capital II, LLC | NR | NR | NR | NR | NR | NR | NR |
| 57 RAM Consultants, LLC | NP | P | P | P | P | NP | NR |
| 58 RAM Developers, Inc. | NP | NP | NP | NP | NP | NR | NR |
| 59 RAM Enterprises Holding Company, Inc. | NP | NP | NP | NP | NP | NR | NR |
| 60 RAM Equity Holdings, LLC | NP | NP | NP | NP | NP | NR | NR |
| 61 RAM Investment Management, Inc. | NP | NP | NP | NP | NP | NR | NR |
| 62 RAM Realty Holdings, LLC | NP | NP | NP | P | P | P | NR |
| 63 Retrodyne Corporation | NP | NP | P | P | NR | NR | NR |
| 64 Stat Business Group LLC | NR | NR | NR | NR | NR | NR | NR |
| 65 Stone Ridge Enterprises, LLC | NP | NP | NP | P | P | P | NP |
| 66 Sven LLC | NR | NR | NR | NR | NR | NR | NR |
| 67 U.S. Neurology Corporation | NP | NP | NP | NP | NP | NP | NR |
| 68 Valley Creek Estate, Inc. | NR | NR | NR | NR | P | NR | NR |
| 69 Vasgene Therapeutics, Inc. | NP | NP | NP | NP | NP | NP | NR |
| 70 Versatile Care Solutions, Inc. | NR | NR | NR | NR | NP | NP | NR |
| 71 West Highland Company, LLC | NP | NP | NP | P | P | NP | NP |
| 72 World Wide Health, Inc. | NP | NP | NP | NP | NP | NP | NP |

Appendix I.E to Plaintiff's March 13, 2019 Objections

# APPENDIX II

# APPENDIX II – MISSING FINANCIAL DOCUMENTS BY LIST

## A.     General Ledgers

|   | Entity - Document Request | Records Sought |
|---|---------------------------|----------------|
| 1 | Defendant - Raymond A. Mirra | Jan. 2002 to Jan. 2005; Dec. 2005; Oct. 2006 to Apr. 2008; Sep. 2008 to Dec. 2008 |
| 2 | AAA Equipment Rentals LLC | Jan. 2003 to Apr. 2005; June 2005 to Sep. 2005; Nov. 2005; Jan. 2006 to Dec. 2006 |
| 3 | AAA Grading & Paving LLC | Oct. 2005 to Nov. 2005; Jan. 2006 to Dec. 2006 |
| 4 | Access HealthCare Services, LLC | Jan. 2005 to Dec. 2008 |
| 5 | Access Pharmaceutical Services, LLC | Jan. 2005 to Dec. 2008 |
| 6 | Access Therapeutics, Inc. | Jan. 2006 to Dec. 2008 |
| 7 | Advanced Research Corporation | Jan. 2002 to June 2005; Aug. 2005 to Dec. 2006 |
| 8 | Alliance Ambulatory Infusion Center, LP | Jan. 2002 to Dec. 2008 |
| 9 | Apogenics Healthcare, Inc. | Jan. 2005 to Dec. 2008 |
| 10 | Apogenics, Inc. | N/A |
| 11 | Ashland Pharmacy, Inc. | Jan. 2002 to Dec. 2008 |
| 12 | Atlanta I.D. Group, P.C. | Jan. 2002 to Dec. 2008 |
| 13 | Atlas Medical Equipment, Inc. | Jan. 2005 to Dec. 2008 |
| 14 | Atlas Nursing Services, Inc. | Jan. 2005 to Dec. 2008 |
| 15 | Atlas Respiratory Services, Inc. | Jan. 2004 to Dec. 2008 |
| 16 | Biomed America, Inc. | Jan. 2007 to Dec. 2008 |
| 17 | Biomed California, Inc. | Jan. 2007 to Dec. 2008 |
| 18 | Biomed Florida, Inc. | Jan. 2007 to Dec. 2008 |
| 19 | Biomed Healthcare, Inc. | Jan. 2008 to Dec. 2008 |
| 20 | Biomed Kansas, Inc. | Jan. 2007 to Dec. 2008 |
| 21 | Biomed PA, Inc. | Jan. 2007 to Dec. 2008 |
| 22 | Biomed Pharmaceuticals, Inc. | Jan. 2005 to Dec. 2008 |
| 23 | Biomed Texas, Inc. | Jan. 2007 to Dec. 2008 |
| 24 | Bio-Medical Innovations, Inc. | Jan. 2005 to Dec. 2008 |
| 25 | Bio-Medical Marketing Services, Inc. | Jan. 2003 to Dec. 2005 |
| 26 | Cancer Innovations, Inc. | Jan. 2002 to Dec. 2006 |
| 27 | Complete Communications, Inc. | Jan. 2002 to Dec. 2008 |
| 28 | Delta Laboratories, Inc. | Jan. 2002 to Dec. 2003 |
| 29 | Delta Pharmaceuticals, Inc. | Jan. 2002 to Dec. 2008 |
| 30 | Eyegene Corporation | Jan. 2004 to Dec. 2008 |
| 31 | Freedom Care, LLC | Jan. 2008 to Dec. 2008 |
| 32 | Greta Company, LLC | Jan. 2002 to Dec. 2008 |
| 33 | Hometech Medical Equipment, Inc. | Jan. 2002 to Dec. 2008 |
| 34 | Hometech Therapies, Inc. | Jan. 2002 to Dec. 2007 |
| 35 | Indago Healthcare of Florida, Inc. | Jan. 2005 to Dec. 2008 |
| 36 | Indago Healthcare of South Florida, Inc. | Jan. 2005 to Dec. 2006 |
| 37 | Indago Healthcare, Inc. | Jan. 2005 to Dec. 2008 |

# APPENDIX II – MISSING FINANCIAL DOCUMENTS BY LIST

| 38 | Integrated BioPharm Corporation, Inc. | Jan. 2007 to Dec. 2008 |
|---|---|---|
| 39 | LBC Credit Partners Parallel, LP | Jan. 2005 to Dec. 2008 |
| 40 | Ledmir, LLC | Jan. 2002 to Dec. 2005 |
| 41 | LMS America, Inc. | Jan. 2004 to Dec. 2005 |
| 42 | Logic Medical Solutions, Inc. | Jan. 2002 to Dec. 2004 |
| 43 | My Case LLC | Jan. 2008 to Dec. 2008 |
| 44 | Neurology Therapeutics, Inc. | Jan. 2006 to Dec. 2008 |
| 45 | New England Hemophilia and Thrombosis Network, Inc. | Jan. 2006 to Dec. 2008 |
| 46 | Parallex, LLC | Jan. 2008 to Dec. 2008 |
| 47 | Physician Oncology Network, Inc. | Jan. 2004 to Dec. 2008 |
| 48 | Practice Made Perfect, Inc. | Jan. 2002 to Dec. 2008 |
| 49 | Pridecare, Inc. | Jan. 2002 to June 2005; Aug. 2005 to Sep. 2005; Nov. 2005 to Dec. 2006; Jan. 2008 to Dec. 2008 |
| 50 | Primavera, Inc. | Jan. 2002 to Dec. 2008 |
| 51 | PRN Healthcare Services, Inc. | Jan. 2004 to Dec. 2008 |
| 52 | RAM Business Holdings, LLC | Jan. 2003 to Dec. 2007 |
| 53 | RAM Capital Group 2004 Trust | Jan. 2002 to Dec. 2008 |
| 54 | RAM Capital Group, LLC | Jan. 2002 to Dec. 2002 |
| 55 | RAM Capital Holdings, LLC | Jan. 2002 to Dec. 2008 |
| 56 | RAM Capital II, LLC | Jan. 2007 to Dec. 2008 |
| 57 | RAM Consultants, LLC | Jan. 2002 to Dec. 2005 |
| 58 | RAM Developers, Inc. | Jan. 2002 to June 2002; Aug. 2002 to Dec. 2002; Jan. 2004 to Dec. 2004; Jan. 2006 to Dec. 2006 |
| 59 | RAM Enterprises Holding Company, Inc. | Jan. 2002 to Dec. 2005 |
| 60 | RAM Equity Holdings, LLC | Jan. 2003 to Dec. 2006 |
| 61 | RAM Investment Management, Inc. | Jan. 2002 to Dec. 2008 |
| 62 | RAM Realty Holdings, LLC | Jan. 2007 to Dec. 2007 |
| 63 | Retrodyne Corporation | Jan. 2002 to Dec. 2002 |
| 64 | Stat Business Group, LLC | N/A |
| 65 | Stone Ridge Enterprises, LLC | Jan. 2007 to Dec. 2007 |
| 66 | Sven LLC | Jan. 2002 to Dec. 2008 |
| 67 | U.S. Neurology Corporation | Jan. 2003 to Dec. 2003 |
| 68 | Valley Creek Estate, Inc. | Jan. 2006 to June 2006; Aug. 2006 to Dec. 2008 |
| 69 | VasGene Therapeutics, Inc. | Jan. 2002 to Dec. 2006 |
| 70 | Versatile Care Solutions, Inc. | Jan. 2005 to Dec. 2008 |
| 71 | West Highland Company, LLC | Jan. 2002 to Dec. 2004; Apr. 2006; July 2006; Nov. 2006 to Dec. 2008 |
| 72 | World Wide Health, Inc. | Jan. 2002 to Dec. 2008 |

Appendix II to Plaintiff's March 13, 2019 Objections

# APPENDIX II – MISSING FINANCIAL DOCUMENTS BY LIST

**B.      Tax Returns**

|    | Entity - Document Request | Records Sought |
|----|---------------------------|----------------|
| 1  | Defendant - Raymond A. Mirra | Jan. 2002 to Dec. 2008 |
| 2  | AAA Equipment Rentals LLC | Jan. 2003 to Dec. 2006 |
| 3  | AAA Grading & Paving LLC | Jan. 2003 to Dec. 2006 |
| 4  | Access HealthCare Services, LLC | Jan. 2005 to Dec. 2008 |
| 5  | Access Pharmaceutical Services, LLC | Jan. 2005 to Dec. 2008 |
| 6  | Access Therapeutics, Inc. | Jan. 2006 to Dec. 2006; Apr. 2008 to Dec. 2008 |
| 7  | Advanced Research Corporation | Jan. 2002 to Dec. 2003 |
| 8  | Alliance Ambulatory Infusion Center, LP | Jan. 2002 to Dec. 2008 |
| 9  | Apogenics Healthcare, Inc. | Jan. 2005 to Dec. 2008 |
| 10 | Apogenics, Inc. | Jan. 2008 to Dec. 2008 |
| 11 | Ashland Pharmacy, Inc. | Jan. 2002 to Dec. 2008 |
| 12 | Atlanta I.D. Group, P.C. | Jan. 2002 to Dec. 2008 |
| 13 | Atlas Medical Equipment, Inc. | Jan. 2005 to Dec. 2008 |
| 14 | Atlas Nursing Services, Inc. | Jan. 2008 to Dec. 2008 |
| 15 | Atlas Respiratory Services, Inc. | Jan. 2004 to Dec. 2006; Apr. 2008 to Dec. 2008 |
| 16 | Biomed America, Inc. | Apr. 2008 to Dec. 2008 |
| 17 | Biomed California, Inc. | Apr. 2008 to Dec. 2008 |
| 18 | Biomed Florida, Inc. | Apr. 2008 to Dec. 2008 |
| 19 | Biomed Healthcare, Inc. | Jan. 2008 to Dec. 2008 |
| 20 | Biomed Kansas, Inc. | Apr. 2008 to Dec. 2008 |
| 21 | Biomed PA, Inc. | Apr. 2008 to Dec. 2008 |
| 22 | Biomed Pharmaceuticals, Inc. | Jan. 2005 to Dec. 2006; Apr. 2008 to Dec. 2008 |
| 23 | Biomed Texas, Inc. | Apr. 2008 to Dec. 2008 |
| 24 | Bio-Medical Innovations, Inc. | Jan. 2005 to Dec. 2008 |
| 25 | Bio-Medical Marketing Services, Inc. | Jan. 2003 to Dec. 2005 |
| 26 | Cancer Innovations, Inc. | Jan. 2002 to Dec. 2003 |
| 27 | Complete Communications, Inc. | Jan. 2002 to Dec. 2008 |
| 28 | Delta Laboratories, Inc. | Jan. 2002 to Dec. 2003 |
| 29 | Delta Pharmaceuticals, Inc. | Jan. 2002 to Dec. 2006 |
| 30 | Eyegene Corporation | Jan. 2004 to Dec. 2008 |
| 31 | Freedom Care, LLC | Jan. 2008 to Dec. 2008 |
| 32 | Greta Company, LLC | Jan. 2002 to Dec. 2008 |
| 33 | Hometech Medical Equipment, Inc. | Jan. 2002 to Dec. 2008 |
| 34 | Hometech Therapies, Inc. | Jan. 2002 to Dec. 2006 |
| 35 | Indago Healthcare of Florida, Inc. | Jan. 2005 to Dec. 2008 |
| 36 | Indago Healthcare of South Florida, Inc. | Jan. 2005 to Dec. 2006 |
| 37 | Indago Healthcare, Inc. | Jan. 2005 to Dec. 2008 |
| 38 | Integrated BioPharm Corporation, Inc. | Jan. 2007 to Dec. 2008 |

Page 3 of 12

# APPENDIX II – MISSING FINANCIAL DOCUMENTS BY LIST

| 39 | LBC Credit Partners Parallel, LP | Jan. 2005 to Dec. 2008 |
|----|----------------------------------|------------------------|
| 40 | Ledmir, LLC | Jan. 2002 to Dec. 2005 |
| 41 | LMS America, Inc. | Jan. 2004 to Dec. 2005 |
| 42 | Logic Medical Solutions, Inc. | Jan. 2002 to Dec. 2004 |
| 43 | My Case LLC | Jan. 2008 to Dec. 2008 |
| 44 | Neurology Therapeutics, Inc. | Jan. 2006 to Dec. 2008 |
| 45 | New England Hemophilia and Thrombosis Network, Inc. | Jan. 2006 to Dec. 2008 |
| 46 | Parallex, LLC | Jan. 2008 to Dec. 2008 |
| 47 | Physician Oncology Network, Inc. | Jan. 2004 to Dec. 2008 |
| 48 | Practice Made Perfect, Inc. | Jan. 2002 to Dec. 2008 |
| 49 | Pridecare, Inc. | Jan. 2002 to Dec. 2004 |
| 50 | Primavera, Inc. | Jan. 2002 to Dec. 2008 |
| 51 | PRN Healthcare Services, Inc. | Jan. 2004 to Dec. 2008 |
| 52 | RAM Business Holdings, LLC | Jan. 2003 to Dec. 2003; Jan. 2007 to Dec. 2007 |
| 53 | RAM Capital Group 2004 Trust | Jan. 2002 to Dec. 2008 |
| 54 | RAM Capital Group, LLC | Jan. 2002 to Dec. 2003 |
| 55 | RAM Capital Holdings, LLC | Jan. 2002 to Dec. 2008 |
| 56 | RAM Capital II, LLC | Jan. 2007 to Dec. 2008 |
| 57 | RAM Consultants, LLC | Jan. 2002 to Dec. 2008 |
| 58 | RAM Developers, Inc. | N/A |
| 59 | RAM Enterprises Holding Company, Inc. | Jan. 2002 to Dec. 2005 |
| 60 | RAM Equity Holdings, LLC | Jan. 2003 to Dec. 2006 |
| 61 | RAM Investment Management, Inc. | Jan. 2002 to Dec. 2008 |
| 62 | RAM Realty Holdings, LLC | Jan. 2003 to Dec. 2004 |
| 63 | Retrodyne Corporation | Jan. 2002 to Dec. 2004 |
| 64 | Stat Business Group, LLC | N/A |
| 65 | Stone Ridge Enterprises, LLC | Jan. 2002 to Dec. 2008 |
| 66 | Sven LLC | Jan. 2002 to Dec. 2008 |
| 67 | U.S. Neurology Corporation | Jan. 2003 to Dec. 2005 |
| 68 | Valley Creek Estate, Inc. | Jan. 2006 to Dec. 2008 |
| 69 | VasGene Therapeutics, Inc. | Jan. 2002 to Dec. 2002; Jan. 2007 to Dec. 2007 |
| 70 | Versatile Care Solutions, Inc. | Jan. 2005 to Dec. 2008 |
| 71 | West Highland Company, LLC | Jan. 2002 to Dec. 2002 |
| 72 | World Wide Health, Inc. | Jan. 2002 to Dec. 2008 |

Appendix II to Plaintiff's March 13, 2019 Objections

# APPENDIX II – MISSING FINANCIAL DOCUMENTS BY LIST

**C.**     **Bank Statements**

|    | Entity - Document Request | Records Sought |
|----|---------------------------|----------------|
| 1  | Defendant - Raymond A. Mirra | Jan. 2002 to Dec. 2008 |
| 2  | AAA Equipment Rentals LLC | Jan. 2003 to Dec. 2006 |
| 3  | AAA Grading & Paving LLC | Jan. 2006 to Dec. 2004; Dec. 2005 to Dec. 2006 |
| 4  | Access HealthCare Services, LLC | Jan. 2005 to Dec. 2008 |
| 5  | Access Pharmaceutical Services, LLC | Jan. 2005 to Dec. 2008 |
| 6  | Access Therapeutics, Inc. | Jan. 2006 to Dec. 2008 |
| 7  | Advanced Research Corporation | Jan. 2002 to Dec. 2008 |
| 8  | Alliance Ambulatory Infusion Center, LP | Jan. 2002 to Dec. 2008 |
| 9  | Apogenics Healthcare, Inc. | Jan. 2005 to Dec. 2008 |
| 10 | Apogenics, Inc. | Jan. 2008 to Dec. 2008 |
| 11 | Ashland Pharmacy, Inc. | Jan. 2002 to Dec. 2008 |
| 12 | Atlanta I.D. Group, P.C. | Jan. 2002 to Dec. 2008 |
| 13 | Atlas Medical Equipment, Inc. | Jan. 2005 to Dec. 2008 |
| 14 | Atlas Nursing Services, Inc. | Jan. 2005 to Dec. 2008 |
| 15 | Atlas Respiratory Services, Inc. | Jan. 2004 to Dec. 2008 |
| 16 | Biomed America, Inc. | Jan. 2007 to Dec. 2008 |
| 17 | Biomed California, Inc. | Jan. 2007 to Dec. 2008 |
| 18 | Biomed Florida, Inc. | Jan. 2007 to Dec. 2008 |
| 19 | Biomed Healthcare, Inc. | Jan. 2008 to Dec. 2008 |
| 20 | Biomed Kansas, Inc. | Jan. 2007 to Dec. 2008 |
| 21 | Biomed PA, Inc. | Jan. 2007 to Dec. 2008 |
| 22 | Biomed Pharmaceuticals, Inc. | Jan. 2005 to Dec. 2008 |
| 23 | Biomed Texas, Inc. | Jan. 2007 to Dec. 2008 |
| 24 | Bio-Medical Innovations, Inc. | Jan. 2005 to Dec. 2008 |
| 25 | Bio-Medical Marketing Services, Inc. | Jan. 2003 to Dec. 2005 |
| 26 | Cancer Innovations, Inc. | Jan. 2002 to Dec. 2008 |
| 27 | Complete Communications, Inc. | Jan. 2002 to Dec. 2008 |
| 28 | Delta Laboratories, Inc. | Jan. 2002 to Dec. 2003 |
| 29 | Delta Pharmaceuticals, Inc. | Jan. 2002 to Dec. 2008 |
| 30 | Eyegene Corporation | Jan. 2004 to Dec. 2008 |
| 31 | Freedom Care, LLC | Jan. 2008 to Dec. 2008 |
| 32 | Greta Company, LLC | Jan. 2002 to Dec. 2008 |
| 33 | Hometech Medical Equipment, Inc. | Jan. 2002 to Dec. 2008 |
| 34 | Hometech Therapies, Inc. | Jan. 2002 to Dec. 2008 |
| 35 | Indago Healthcare of Florida, Inc. | Jan. 2005 to Dec. 2008 |
| 36 | Indago Healthcare of South Florida, Inc. | Jan. 2005 to Dec. 2006 |
| 37 | Indago Healthcare, Inc. | Jan. 2005 to Dec. 2008 |
| 38 | Integrated BioPharm Corporation, Inc. | Jan. 2007 to Dec. 2008 |

Page 5 of 12

# APPENDIX II – MISSING FINANCIAL DOCUMENTS BY LIST

| | | |
|---|---|---|
| 39 | LBC Credit Partners Parallel, LP | Jan. 2005 to Dec. 2008 |
| 40 | Ledmir, LLC | Jan. 2002 to Dec. 2005 |
| 41 | LMS America, Inc. | Jan. 2004 to Dec. 2005 |
| 42 | Logic Medical Solutions, Inc. | Jan. 2002 to Jan. 2004 |
| 43 | My Case LLC | Jan. 2008 to Dec. 2008 |
| 44 | Neurology Therapeutics, Inc. | Jan. 2006 to Dec. 2008 |
| 45 | New England Hemophilia and Thrombosis Network, Inc. | Jan. 2006 to Dec. 2008 |
| 46 | Parallex, LLC | Jan. 2008 to Dec. 2008 |
| 47 | Physician Oncology Network, Inc. | Jan. 2004 to Dec. 2008 |
| 48 | Practice Made Perfect, Inc. | Jan. 2002 to Dec. 2008 |
| 49 | Pridecare, Inc. | Jan. 2002 to Dec. 2008 |
| 50 | Primavera, Inc. | Jan. 2002 to Dec. 2008 |
| 51 | PRN Healthcare Services, Inc. | Jan. 2004 to Dec. 2008 |
| 52 | RAM Business Holdings, LLC | Jan. 2003 to Dec. 2008 |
| 53 | RAM Capital Group 2004 Trust | Jan. 2002 to Dec. 2008 |
| 54 | RAM Capital Group, LLC | Jan. 2002 to Dec. 2008 |
| 55 | RAM Capital Holdings, LLC | Jan. 2002 to Dec. 2008 |
| 56 | RAM Capital II, LLC | Jan. 2007 to Dec. 2008 |
| 57 | RAM Consultants, LLC | Jan. 2002 to Dec. 2005 |
| 58 | RAM Developers, Inc. | Jan. 2002 to Dec. 2004; June 2005; Dec. 2005 to Dec. 2006 |
| 59 | RAM Enterprises Holding Company, Inc. | Jan. 2002 to Dec. 2005 |
| 60 | RAM Equity Holdings, LLC | Jan. 2002 to Dec. 2004; Mar. 2005; June 2005 to July 2005; Oct. 2005 to Dec. 2006 |
| 61 | RAM Investment Management, Inc. | Jan. 2002 to Dec. 2008 |
| 62 | RAM Realty Holdings, LLC | Jan. 2003 to Dec. 2008 |
| 63 | Retrodyne Corporation | Jan. 2002 to Dec. 2004 |
| 64 | Stat Business Group, LLC | N/A |
| 65 | Stone Ridge Enterprises, LLC | Jan. 2002 to Dec. 2008 |
| 66 | Sven LLC | Jan. 2002 to Dec. 2008 |
| 67 | U.S. Neurology Corporation | Jan. 2002 to Dec. 2004; June 2005 to Dec. 2005 |
| 68 | Valley Creek Estate, Inc. | Jan. 2006 to Dec. 2008 |
| 69 | VasGene Therapeutics, Inc. | Jan. 2002 to Dec. 2008 |
| 70 | Versatile Care Solutions, Inc. | Jan. 2005 to Dec. 2008 |
| 71 | West Highland Company, LLC | Jan. 2002 to Nov. 2007; Jan. 2008 to Dec. 2008 |
| 72 | World Wide Health, Inc. | Jan. 2002 to Dec. 2008 |

# APPENDIX II – MISSING FINANCIAL DOCUMENTS BY LIST

### D.      Balance Sheets

| | **Entity - Document Request** | **Records Sought** |
|---|---|---|
| 1 | Defendant - Raymond A. Mirra | Jan. 2002 to Jun. 2002; Nov. 2002; Jan. 2003 to Nov. 2003; Jan. 2004 to Nov. 2004; Oct. 2007 to Dec. 2008 |
| 2 | AAA Equipment Rentals LLC | Jan. 2002 to June 2005; July 2005 to Sep. 2005; Jan. 2006 to Dec. 2008 |
| 3 | AAA Grading & Paving LLC | Jan. 2003 to Nov. 2003; Jan. 2004 to Dec. 2004; June 2005; Jan. 2006 to Dec. 2006 |
| 4 | Access HealthCare Services, LLC | Jan. 2005 to Dec. 2008 |
| 5 | Access Pharmaceutical Services, LLC | Jan. 2005 to Dec. 2008 |
| 6 | Access Therapeutics, Inc. | Jan. 2006 to Dec. 2008 |
| 7 | Advanced Research Corporation | Jan. 2002 to Dec. 2004; Feb. 2005 to June 2005; Aug. 2005 to Nov. 2005; Jan. 2006 to Sep. 2006; Nov. 2006; Mar. 2007 to Nov. 2007; Jan. 2008; May 2008 to Nov. 2008 |
| 8 | Alliance Ambulatory Infusion Center, LP | Jan. 2002 to Dec. 2008 |
| 9 | Apogenics Healthcare, Inc. | Jan. 2005 to Jan. 2008; Mar. 2008 to Dec. 2008 |
| 10 | Apogenics, Inc. | Jan. 2008 to Nov. 2008 |
| 11 | Ashland Pharmacy, Inc. | Jan. 2002 to Dec. 2008 |
| 12 | Atlanta I.D. Group, P.C. | Jan. 2002 to Dec. 2008 |
| 13 | Atlas Medical Equipment, Inc. | Jan. 2005 to Dec. 2008 |
| 14 | Atlas Nursing Services, Inc. | Jan. 2005 to Nov. 2005; Jan. 2006 to July 2006; Feb. 2007 to Nov. 2007; Jan. 2008 to Dec. 2008 |
| 15 | Atlas Respiratory Services, Inc. | Jan. 2004 to Nov. 2005; Jan. 2006 to Sep. 2006; Nov. 2006; Jan. 2007 to June 2007; Sep. 2007 to Oct. 2007; Dec. 2007 to Dec. 2008 |
| 16 | Biomed America, Inc. | Jan. 2007 to Dec. 2008 |
| 17 | Biomed California, Inc. | Jan. 2007 to Dec. 2008 |
| 18 | Biomed Florida, Inc. | Jan. 2007 to Dec. 2008 |
| 19 | Biomed Healthcare, Inc. | Jan. 2008 to Dec. 2008 |
| 20 | Biomed Kansas, Inc. | Jan. 2007 to Dec. 2008 |
| 21 | Biomed PA, Inc. | Jan. 2007 to Dec. 2008 |
| 22 | Biomed Pharmaceuticals, Inc. | Jan. 2005 to Mar. 2007; May 2007 to Nov. 2007; Feb. 2008 to Dec. 2008 |
| 23 | Biomed Texas, Inc. | Jan. 2007 to Dec. 2008 |
| 24 | Bio-Medical Innovations, Inc. | Jan. 2005 to Dec. 2008 |
| 25 | Bio-Medical Marketing Services, Inc. | Jan. 2003 to Dec. 2005 |
| 26 | Cancer Innovations, Inc. | Jan. 2002 to Nov. 2005; Jan. 2006 to Sep. 2006; Nov. 2006; Feb. 2007 to Nov. 2007; Jan. 2008 to Nov. 2008 |

# APPENDIX II – MISSING FINANCIAL DOCUMENTS BY LIST

| 27 | Complete Communications, Inc. | Jan. 2002 to Dec. 2008 |
|----|-------------------------------|------------------------|
| 28 | Delta Laboratories, Inc. | Jan. 2002 to Dec. 2003 |
| 29 | Delta Pharmaceuticals, Inc. | Jan. 2002 to Nov. 2003; Jan. 2004 to May 2004; July 2004 to Oct. 2006; Dec. 2006 to Nov. 2007; Jan. 2008 to Dec. 2008 |
| 30 | Eyegene Corporation | Jan. 2004 to Dec. 2008 |
| 31 | Freedom Care, LLC | Jan. 2008 to Dec. 2008 |
| 32 | Greta Company, LLC | Jan. 2002 to Dec. 2008 |
| 33 | Hometech Medical Equipment, Inc. | Jan. 2002 to Dec. 2008 |
| 34 | Hometech Therapies, Inc. | Jan. 2002 to Oct. 2008 |
| 35 | Indago Healthcare of Florida, Inc. | Jan. 2005 to Oct. 2005; Jan. 2006 to July 2006; Sep. 2006; Nov. 2006 to Nov. 2007; Jan. 2008 to Nov. 2008 |
| 36 | Indago Healthcare of South Florida, Inc. | Jan. 2005 to Dec. 2006 |
| 37 | Indago Healthcare, Inc. | Jan. 2005 to Oct. 2005; Jan. 2006 to June 2006; Sep. 2006; Nov. 2006 to Dec. 2006; Feb. 2007 to Nov. 2007; Jan. 2008 to Dec. 2008 |
| 38 | Integrated BioPharm Corporation, Inc. | Jan. 2007 to Dec. 2008 |
| 39 | LBC Credit Partners Parallel, LP | Jan. 2005 to Dec. 2008 |
| 40 | Ledmir, LLC | Jan. 2002 to Sep. 2005; Nov. 2005 to Dec. 2008 |
| 41 | LMS America, Inc. | Jan. 2004 to Dec. 2005 |
| 42 | Logic Medical Solutions, Inc. | Jan. 2002 to Nov. 2003; Jan. 2004 to May 2004; July 2004 to Dec. 2004 |
| 43 | My Case LLC | Jan. 2008 to Dec. 2008 |
| 44 | Neurology Therapeutics, Inc. | Jan. 2006 to Sep. 2006; Nov. 2006 to Nov. 2007; Jan. 2008 to Nov. 2008 |
| 45 | New England Hemophilia and Thrombosis Network, Inc. | Jan. 2006 to Dec. 2008 |
| 46 | Parallex, LLC | Jan. 2008 to Nov. 2008 |
| 47 | Physician Oncology Network, Inc. | Jan. 2004 to Dec. 2008 |
| 48 | Practice Made Perfect, Inc. | Jan. 2002 to Dec. 2008 |
| 49 | Pridecare, Inc. | Jan. 2002 to Nov. 2003; Mar. 2005 to Sep. 2005; Jan. 2006 to Sep. 2006; Nov. 2006 to Dec. 2006; Mar. 2007 to Apr. 2007; Aug. 2007 to Nov. 2007; Jan. 2008 to Dec. 2008 |
| 50 | Primavera, Inc. | Jan. 2002 to Dec. 2008 |
| 51 | PRN Healthcare Services, Inc. | Jan. 2004 to Dec. 2008 |
| 52 | RAM Business Holdings, LLC | Jan. 2002 to July 2005; Sep. 2005 to Oct. 2005; Dec. 2005 to Dec. 2007 |
| 53 | RAM Capital Group 2004 Trust | Jan. 2002 to Dec. 2008 |

Appendix II to Plaintiff's March 13, 2019 Objections

# APPENDIX II – MISSING FINANCIAL DOCUMENTS BY LIST

| 54 | RAM Capital Group, LLC | Jan. 2002 to Feb. 2003; Dec. 2003 to May 2004; July 2004 to Nov. 2004; Sep. 2005; June 2008 to Dec. 2008 |
|----|------------------------|----------------------------------|
| 55 | RAM Capital Holdings, LLC | Jan. 2002 to Dec. 2008 |
| 56 | RAM Capital II, LLC | Jan. 2007 to Nov. 2007; Jan. 2008 to Dec. 2008 |
| 57 | RAM Consultants, LLC | Jan. 2002 to Nov. 2003; Jan. 2004 to May 2004; July 2004 to Nov. 2004; Jan. 2005 to June 2005; Aug. 2005 to Oct. 2005; Dec. 2005 |
| 58 | RAM Developers, Inc. | Jan. 2002 to Nov. 2003; Jan. 2004 to May 2004; July 2004 to Nov. 2004; June 2005; Jan. 2006 to Dec. 2006 |
| 59 | RAM Enterprises Holding Company, Inc. | Jan. 2002 to Dec. 2005 |
| 60 | RAM Equity Holdings, LLC | Jan. 2003 to Dec. 2006 |
| 61 | RAM Investment Management, Inc. | Jan. 2002 to Dec. 2008 |
| 62 | RAM Realty Holdings, LLC | Jan. 2003 to Aug. 2003; July 2004 to Nov. 2004; Jan. 2005 to June 2005; Aug. 2005 to Oct. 2005; Feb. 2006 to Aug. 2006; Mar. 2007 to Nov. 2007; Jan. 2008 to Dec. 2008 |
| 63 | Retrodyne Corporation | Jan. 2002 to Nov. 2003; Jan. 2004 to Nov. 2004 |
| 64 | Stat Business Group, LLC | N/A |
| 65 | Stone Ridge Enterprises, LLC | Jan. 2003; Jan. 2004 to May 2004; July 2004 to May 2005; Sep. 2005 to Oct. 2005; Jan. 2006 to Aug. 2006; Mar. 2007 to Nov. 2007; Jan. 2008 to Dec. 2008 |
| 66 | Sven LLC | Jan. 2002 to Dec. 2008 |
| 67 | U.S. Neurology Corporation | Jan. 2003 to Nov. 2004 |
| 68 | Valley Creek Estate, Inc. | Jan. 2006 to Dec. 2008 |
| 69 | VasGene Therapeutics, Inc. | Jan. 2002 to Nov. 2006; Jan. 2007 to Oct. 2007; Jan. 2008 to June 2008; Aug. 2008 |
| 70 | Versatile Care Solutions, Inc. | Jan. 2005 to Dec. 2008 |
| 71 | West Highland Company, LLC | Jan. 2002 to Dec. 2004; Jan. 2006 to Nov. 2007; Jan. 2008 to Dec. 2008 |
| 72 | World Wide Health, Inc. | Jan. 2002 to Dec. 2008 |

# APPENDIX II – MISSING FINANCIAL DOCUMENTS BY LIST

**E.      Income Statements**

|   | **Entity - Document Request** | **Records Sought** |
|---|---|---|
| 1 | Defendant - Raymond A. Mirra | Jan. 2002 to Jan. 2005; Oct. 2007 to Nov. 2007; Jan. 2008 to Dec. 2008 |
| 2 | AAA Equipment Rentals LLC | Jan. 2003 to Dec. 2006 |
| 3 | AAA Grading & Paving LLC | Jan. 2004 to Dec. 2004; Apr. 2005 to Nov. 2005; Jan. 2006 to Dec. 2008 |
| 4 | Access HealthCare Services, LLC | Jan. 2005 to Dec. 2008 |
| 5 | Access Pharmaceutical Services, LLC | Jan. 2005 to Dec. 2008 |
| 6 | Access Therapeutics, Inc. | Jan. 2006 to Dec. 2008 |
| 7 | Advanced Research Corporation | Jan. 2002 to Dec. 2005; Mar. 2007 to Nov. 2007; Jan. 2008; Apr. 2008 to Dec. 2008 |
| 8 | Alliance Ambulatory Infusion Center, LP | Jan. 2002 to Dec. 2008 |
| 9 | Apogenics Healthcare, Inc. | Jan. 2005 to Dec. 2007; Mar. 2008 to Dec. 2008 |
| 10 | Apogenics, Inc. | Jan. 2008 to Dec. 2008 |
| 11 | Ashland Pharmacy, Inc. | Jan. 2002 to Dec. 2008 |
| 12 | Atlanta I.D. Group, P.C. | Jan. 2002 to Dec. 2008 |
| 13 | Atlas Medical Equipment, Inc. | Jan. 2005 to Dec. 2008 |
| 14 | Atlas Nursing Services, Inc. | Jan. 2005 to Dec. 2005; Feb. 2007 to Dec. 2008 |
| 15 | Atlas Respiratory Services, Inc. | Jan. 2004 to Dec. 2004; Dec. 2005; Jan. 2007 to Dec. 2008 |
| 16 | Biomed America, Inc. | Jan. 2007 to Dec. 2008 |
| 17 | Biomed California, Inc. | Jan. 2007 to Dec. 2008 |
| 18 | Biomed Florida, Inc. | Jan. 2007 to Dec. 2008 |
| 19 | Biomed Healthcare, Inc. | Jan. 2008 to Dec. 2008 |
| 20 | Biomed Kansas, Inc. | Jan. 2007 to Dec. 2008 |
| 21 | Biomed PA, Inc. | Jan. 2007 to Dec. 2008 |
| 22 | Biomed Pharmaceuticals, Inc. | Jan. 2005 to Mar. 2007; May 2007 to Nov. 2007; Jan. 2008 to Dec. 2008 |
| 23 | Biomed Texas, Inc. | Jan. 2008 to Dec. 2008 |
| 24 | Bio-Medical Innovations, Inc. | Jan. 2005 to Dec. 2008 |
| 25 | Bio-Medical Marketing Services, Inc. | Jan. 2003 to Dec. 2005 |
| 26 | Cancer Innovations, Inc. | Jan. 2002 to Nov. 2005; Feb. 2007 to Nov. 2007; Jan. 2008 to Dec. 2008 |
| 27 | Complete Communications, Inc. | Jan. 2002 to Dec. 2008 |
| 28 | Delta Laboratories, Inc. | Jan. 2002 to Dec. 2003 |
| 29 | Delta Pharmaceuticals, Inc. | Jan. 2002 to May 2004; July 2004 to Dec. 2004 to Oct. 2006; Dec. 2006 to Nov. 2007; Jan. 2008 to Nov. 2008 |
| 30 | Eyegene Corporation | Jan. 2004 to Dec. 2008 |
| 31 | Freedom Care, LLC | Jan. 2008 to Dec. 2008 |

Appendix II to Plaintiff's March 13, 2019 Objections

# APPENDIX II – MISSING FINANCIAL DOCUMENTS BY LIST

| 32 | Greta Company, LLC | Jan. 2002 to Dec. 2008 |
|----|--------------------|------------------------|
| 33 | Hometech Medical Equipment, Inc. | Jan. 2002 to Dec. 2008 |
| 34 | Hometech Therapies, Inc. | Jan. 2002 to Oct 2008 |
| 35 | Indago Healthcare of Florida, Inc. | Jan. 2005 to Nov. 2005; Jan. 2007 to Dec. 2008 |
| 36 | Indago Healthcare of South Florida, Inc. | Jan. 2005 to Dec. 2006 |
| 37 | Indago Healthcare, Inc. | Jan. 2005 to June 2006; Oct. 2006; Dec. 2006; Feb. 2007 to 2008 |
| 38 | Integrated BioPharm Corporation, Inc. | Jan. 2007 to Dec. 2008 |
| 39 | LBC Credit Partners Parallel, LP | Jan. 2005 to Dec. 2008 |
| 40 | Ledmir, LLC | Jan. 2002 to Dec. 2005 |
| 41 | LMS America, Inc. | Jan. 2004 to Dec. 2005 |
| 42 | Logic Medical Solutions, Inc. | Jan. 2002 to Feb. 2003; Apr. 2003 to May 2004; July 2004 to Dec. 2004 |
| 43 | My Case LLC | Jan. 2008 to Dec. 2008 |
| 44 | Neurology Therapeutics, Inc. | Jan. 2006 to Dec. 2008 |
| 45 | New England Hemophilia and Thrombosis Network, Inc. | Jan. 2006 to Dec. 2008 |
| 46 | Parallex, LLC | Jan. 2008 to Dec. 2008 |
| 47 | Physician Oncology Network, Inc. | Jan. 2004 to Dec. 2008 |
| 48 | Practice Made Perfect, Inc. | Jan. 2002 to Dec. 2008 |
| 49 | Pridecare, Inc. | Jan. 2002 to Dec. 2003; Feb. 2005 to Nov. 2005; Feb. 2007 to Dec. 2008 |
| 50 | Primavera, Inc. | Jan. 2002 to Dec. 2008 |
| 51 | PRN Healthcare Services, Inc. | Jan. 2004 to Dec. 2008 |
| 52 | RAM Business Holdings, LLC | Jan. 2003 to Dec. 2007 |
| 53 | RAM Capital Group 2004 Trust | Jan. 2002 to Dec. 2008 |
| 54 | RAM Capital Group, LLC | Jan. 2002 to Nov. 2004; Jan. 2005 to Nov. 2005; Oc.t 2007 to Nov. 2007; Apr. 2008 to Dec. 2008 |
| 55 | RAM Capital Holdings, LLC | Jan. 2002 to Dec. 2008 |
| 56 | RAM Capital II, LLC | Jan. 2007 to Feb. 2008; Apr. 2008 to Sep. 2008; Nov. 2008 to Dec. 2008 |
| 57 | RAM Consultants, LLC | Jan. 2002 to Nov. 2006; Jan. 2004 to May 2004; July 2004 to Dec. 2005 |
| 58 | RAM Developers, Inc. | Jan. 2002 to Dec. 2004; Apr. 2005; Dec. 2005; Jan. 2006 to Dec. 2006 |
| 59 | RAM Enterprises Holding Company, Inc. | Jan. 2002 to Dec. 2005 |
| 60 | RAM Equity Holdings, LLC | Jan. 2003 to Dec. 2006 |
| 61 | RAM Investment Management, Inc. | Jan. 2002 to Dec. 2008 |
| 62 | RAM Realty Holdings, LLC | Jan. 2003 to Aug. 2003; Jan. 2004 to Nov. 2004; Jan. 2005 to Nov. 2005; Mar. 2007 to Dec. 2008 |

Appendix II to Plaintiff's March 13, 2019 Objections

## APPENDIX II – MISSING FINANCIAL DOCUMENTS BY LIST

| 63 | Retrodyne Corporation | Jan. 2002 to Nov. 2003; Jan. 2004 May 2004; July 2004 to Dec. 2004 |
|---|---|---|
| 64 | Stat Business Group, LLC | N/A |
| 65 | Stone Ridge Enterprises, LLC | Jan. 2003; Jan. 2004 to Dec. 2005; Mar. 2007 to Dec. 2008 |
| 66 | Sven LLC | Jan. 2002 to Dec. 2008 |
| 67 | U.S. Neurology Corporation | Jan. 2003 to Dec. 2005 |
| 68 | Valley Creek Estate, Inc. | Jan. 2007 to Dec. 2008 |
| 69 | VasGene Therapeutics, Inc. | Jan. 2002 to Oct. 2007; Dec. 2007 to Dec. 2008 |
| 70 | Versatile Care Solutions, Inc. | Jan. 2005 to Dec. 2008 |
| 71 | West Highland Company, LLC | Jan. 2002 to Feb. 2005; Dec. 2005; Jan. 2007 to Nov. 2007; Jan. 2008 to Dec. 2008 |
| 72 | World Wide Health, Inc. | Jan. 2002 to Dec. 2008 |

Appendix II to Plaintiff's March 13, 2019 Objections

# APPENDIX III

# APPENDIX III – DETAIL: PRODUCED VS. MISSING RECORDS

| | |
|---|---|
| PRODUCED | |
| NOT PRODUCED | |
| NOT REQUESTED | |

| Entity - Document Request | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 |
|---|---|---|---|---|---|---|---|
| | J F M A M J J A S O N D | J F M A M J J A S O N D | J F M A M J J A S O N D | J F M A M J J A S O N D | J F M A M J J A S O N D | J F M A M J J A S O N D | J F M A M J J A S O N D |
| **1  Defendant - Raymond A. Mirra** | | | | | | | |
| General Ledger Details (Monthly) | | | | | | | |
| Balance Sheets (Monthly) | | | | | | | |
| Bank Statements (Monthly) | | | | | | | |
| Income Statements (Monthly) | | | | | | | |
| Income Statements (Yearly) | | | | | | | |
| Tax Returns (Yearly) | | | | | | | |
| Tax Workpapers (Yearly) | | | | | | | |
| | | | | | | | |
| **2  AAA Equipment Rentals LLC** | | | | | | | |
| General Ledger Details (Monthly) | | | | | | | |
| Balance Sheets (Monthly) | | | | | | | |
| Bank Statements (Monthly) | | | | | | | |
| Income Statements (Monthly) | | | | | | | |
| Income Statements (Yearly) | | | | | | | |
| Tax Returns (Yearly) | | | | | | | |
| Tax Workpapers (Yearly) | | | | | | | |
| AR Aging / Payment Records | | | | | | | |
| | | | | | | | |
| **3  AAA Grading & Paving LLC** | | | | | | | |
| General Ledger Details (Monthly) | | | | | | | |
| Balance Sheets (Monthly) | | | | | | | |
| Bank Statements (Monthly) | | | | | | | |
| Income Statements (Monthly) | | | | | | | |
| Income Statements (Yearly) | | | | | | | |
| Tax Returns (Yearly) | | | | | | | |
| Tax Workpapers (Yearly) | | | | | | | |
| AR Aging / Payment Records | | | | | | | |
| | | | | | | | |
| **4  Access HealthCare Services, LLC** | | | | | | | |
| General Ledger Details (Monthly) | | | | | | | |
| Balance Sheets (Monthly) | | | | | | | |
| Bank Statements (Monthly) | | | | | | | |
| Income Statements (Monthly) | | | | | | | |
| Income Statements (Yearly) | | | | | | | |
| Tax Returns (Yearly) | | | | | | | |
| Tax Workpapers (Yearly) | | | | | | | |
| AR Aging / Payment Records | | | | | | | |

Appendix III to Plaintiff's March 13, 2019 Objections

# APPENDIX III – DETAIL: PRODUCED VS. MISSING RECORDS

| | |
|---|---|
| PRODUCED | (green) |
| NOT PRODUCED | (white) |
| NOT REQUESTED | (gray) |

| Entity - Document Request | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 |
|---|---|---|---|---|---|---|---|
| **5  Access Pharmaceutical Services, LLC** | | | | | | | |
| General Ledger Details (Monthly) | | | | | | | |
| Balance Sheets (Monthly) | | | | | | | |
| Bank Statements (Monthly) | | | | | | | |
| Income Statements (Monthly) | | | | | | | |
| Income Statements (Yearly) | | | | | | | |
| Tax Returns (Yearly) | | | | | | | |
| Tax Workpapers (Yearly) | | | | | | | |
| AR Aging / Payment Records | | | | | | | |
| **6  Access Therapeutics, Inc.** | | | | | | | |
| General Ledger Details (Monthly) | | | | | | | |
| Balance Sheets (Monthly) | | | | | | | |
| Bank Statements (Monthly) | | | | | | | |
| Income Statements (Monthly) | | | | | | | |
| Income Statements (Yearly) | | | | | | | |
| Tax Returns (Yearly) | | | | | | PRODUCED | PRODUCED |
| Tax Workpapers (Yearly) | | | | | | | |
| AR Aging / Payment Records | | | | | | | |
| Promissory Notes | | | | | | | |
| **7  Advanced Research Corporation** | | | | | | | |
| General Ledger Details (Monthly) | | | | | | PRODUCED | PRODUCED |
| Balance Sheets (Monthly) | | | PRODUCED | PRODUCED | PRODUCED | PRODUCED | PRODUCED |
| Bank Statements (Monthly) | | | | | | | |
| Income Statements (Monthly) | | | | PRODUCED | PRODUCED | PRODUCED | PRODUCED |
| Income Statements (Yearly) | | | PRODUCED | PRODUCED | PRODUCED | PRODUCED | PRODUCED |
| Tax Returns (Yearly) | | | PRODUCED | PRODUCED | PRODUCED | PRODUCED | PRODUCED |
| Tax Workpapers (Yearly) | | | | PRODUCED | PRODUCED | PRODUCED | PRODUCED |
| AR Aging / Payment Records | | | | | | | |
| **8  Alliance Ambulatory Infusion Center, LP** | | | | | | | |
| General Ledger Details (Monthly) | | | | | | | |
| Balance Sheets (Monthly) | | | | | | | |
| Bank Statements (Monthly) | | | | | | | |
| Income Statements (Monthly) | | | | | | | |
| Income Statements (Yearly) | | | | | | | |
| Tax Returns (Yearly) | | | | | | | |
| Tax Workpapers (Yearly) | | | | | | | |
| AR Aging / Payment Records | | | | | | | |

Appendix III to Plaintiff's March 13, 2019 Objections

# APPENDIX III – DETAIL: PRODUCED VS. MISSING RECORDS

| | |
|---|---|
| PRODUCED | *(green)* |
| NOT PRODUCED | |
| NOT REQUESTED | |

| Entity - Document Request | 2002 (J F M A M J J A S O N D) | 2003 (J F M A M J J A S O N D) | 2004 (J F M A M J J A S O N D) | 2005 (J F M A M J J A S O N D) | 2006 (J F M A M J J A S O N D) | 2007 (J F M A M J J A S O N D) | 2008 (J F M A M J J A S O N D) |
|---|---|---|---|---|---|---|---|
| **9  Apogenics Healthcare, Inc.** | | | | | | | |
| General Ledger Details (Monthly) | | | | | | | |
| Balance Sheets (Monthly) | | | | | | | PRODUCED: Jan |
| Bank Statements (Monthly) | | | | | | | |
| Income Statements (Monthly) | | | | | | | PRODUCED: Jan |
| Income Statements (Yearly) | | | | | | | |
| Tax Returns (Yearly) | | | | | | | |
| Tax Workpapers (Yearly) | | | | | | | |
| AR Aging / Payment Records | | | | | | | |
| **10  Apogenics, Inc.** | | | | | | | |
| General Ledger Details (Monthly) | | | | | | | PRODUCED: Jan–Dec |
| Balance Sheets (Monthly) | | | | | | | |
| Bank Statements (Monthly) | | | | | | | |
| Income Statements (Monthly) | | | | | | | |
| Income Statements (Yearly) | | | | | | | PRODUCED: Jan–Dec |
| Tax Returns (Yearly) | | | | | | | |
| Tax Workpapers (Yearly) | | | | | | | |
| AR Aging / Payment Records | | | | | | | |
| **11  Ashland Pharmacy, Inc.** | | | | | | | |
| General Ledger Details (Monthly) | | | | | | | |
| Balance Sheets (Monthly) | | | | | | | |
| Bank Statements (Monthly) | | | | | | | |
| Income Statements (Monthly) | | | | | | | |
| Income Statements (Yearly) | | | | | | | |
| Tax Returns (Yearly) | | | | | | | |
| Tax Workpapers (Yearly) | | | | | | | |
| AR Aging / Payment Records | | | | | | | |
| **12  Atlanta I.D. Group, P.C.** | | | | | | | |
| General Ledger Details (Monthly) | | | | | | | |
| Balance Sheets (Monthly) | | | | | | | |
| Bank Statements (Monthly) | | | | | | | |
| Income Statements (Monthly) | | | | | | | |
| Income Statements (Yearly) | | | | | | | |
| Tax Returns (Yearly) | | | | | | | |
| Tax Workpapers (Yearly) | | | | | | | |
| AR Aging / Payment Records | | | | | | | |

Appendix III to Plaintiff's March 13, 2019 Objections

# APPENDIX III – DETAIL: PRODUCED VS. MISSING RECORDS

| | PRODUCED |
|---|---|
| | NOT PRODUCED |
| | NOT REQUESTED |

| Entity - Document Request | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 |
|---|---|---|---|---|---|---|---|
| **13 Atlas Medical Equipment, Inc.** | | | | | | | |
| General Ledger Details (Monthly) | | | | | | | |
| Balance Sheets (Monthly) | | | | | | | |
| Bank Statements (Monthly) | | | | | | | |
| Income Statements (Monthly) | | | | | | | |
| Income Statements (Yearly) | | | | | | | |
| Tax Returns (Yearly) | | | | | | | |
| Tax Workpapers (Yearly) | | | | | | | |
| AR Aging / Payment Records | | | | | | | |
| | | | | | | | |
| **14 Atlas Nursing Services, Inc.** | | | | | | | |
| General Ledger Details (Monthly) | | | | | | | |
| Balance Sheets (Monthly) | | | | | | | |
| Bank Statements (Monthly) | | | | | | | |
| Income Statements (Monthly) | | | | | | | |
| Income Statements (Yearly) | | | | | | | |
| Tax Returns (Yearly) | | | | | | | |
| Tax Workpapers (Yearly) | | | | | | | |
| AR Aging / Payment Records | | | | | | | |
| | | | | | | | |
| **15 Atlas Respiratory Services, Inc.** | | | | | | | |
| General Ledger Details (Monthly) | | | | | | | |
| Balance Sheets (Monthly) | | | | | | | |
| Bank Statements (Monthly) | | | | | | | |
| Income Statements (Monthly) | | | | | | | |
| Income Statements (Yearly) | | | | | | | |
| Tax Returns (Yearly) | | | | | | | |
| Tax Workpapers (Yearly) | | | | | | | |
| AR Aging / Payment Records | | | | | | | |
| | | | | | | | |
| **16 Biomed America, Inc.** | | | | | | | |
| General Ledger Details (Monthly) | | | | | | | |
| Balance Sheets (Monthly) | | | | | | | |
| Bank Statements (Monthly) | | | | | | | |
| Income Statements (Monthly) | | | | | | | |
| Income Statements (Yearly) | | | | | | | |
| Tax Returns (Yearly) | | | | | | | |
| Tax Workpapers (Yearly) | | | | | | | |
| AR Aging / Payment Records | | | | | | | |

Appendix III to Plaintiff's March 13, 2019 Objections

# APPENDIX III – DETAIL: PRODUCED VS. MISSING RECORDS

| | PRODUCED |
|---|---|
| | NOT PRODUCED |
| | NOT REQUESTED |

| Entity - Document Request | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 |
|---|---|---|---|---|---|---|---|
| **17 Biomed California, Inc.** | | | | | | | |
| General Ledger Details (Monthly) | | | | | | | |
| Balance Sheets (Monthly) | | | | | | | |
| Bank Statements (Monthly) | | | | | | | |
| Income Statements (Monthly) | | | | | | | |
| Income Statements (Yearly) | | | | | | | |
| Tax Returns (Yearly) | | | | | | PRODUCED | |
| Tax Workpapers (Yearly) | | | | | | | |
| AR Aging / Payment Records | | | | | | | |
| **18 Biomed Florida, Inc.** | | | | | | | |
| General Ledger Details (Monthly) | | | | | | | |
| Balance Sheets (Monthly) | | | | | | | |
| Bank Statements (Monthly) | | | | | | | |
| Income Statements (Monthly) | | | | | | | |
| Income Statements (Yearly) | | | | | | | |
| Tax Returns (Yearly) | | | | | | PRODUCED | |
| Tax Workpapers (Yearly) | | | | | | | |
| AR Aging / Payment Records | | | | | | | |
| **19 Biomed Healthcare, Inc.** | | | | | | | |
| General Ledger Details (Monthly) | | | | | | | |
| Balance Sheets (Monthly) | | | | | | | |
| Bank Statements (Monthly) | | | | | | | |
| Income Statements (Monthly) | | | | | | | |
| Income Statements (Yearly) | | | | | | | |
| Tax Returns (Yearly) | | | | | | | |
| Tax Workpapers (Yearly) | | | | | | | |
| AR Aging / Payment Records | | | | | | | |
| **20 Biomed Kansas, Inc.** | | | | | | | |
| General Ledger Details (Monthly) | | | | | | | |
| Balance Sheets (Monthly) | | | | | | | |
| Bank Statements (Monthly) | | | | | | | |
| Income Statements (Monthly) | | | | | | | |
| Income Statements (Yearly) | | | | | | | |
| Tax Returns (Yearly) | | | | | | PRODUCED | |
| Tax Workpapers (Yearly) | | | | | | | |
| AR Aging / Payment Records | | | | | | | |

Appendix III to Plaintiff's March 13, 2019 Objections

# APPENDIX III – DETAIL: PRODUCED VS. MISSING RECORDS

| Legend | |
|---|---|
| PRODUCED | (green) |
| NOT PRODUCED | (dark gray) |
| NOT REQUESTED | (white) |

| Entity - Document Request | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 |
|---|---|---|---|---|---|---|---|
| | J F M A M J J A S O N D | J F M A M J J A S O N D | J F M A M J J A S O N D | J F M A M J J A S O N D | J F M A M J J A S O N D | J F M A M J J A S O N D | J F M A M J J A S O N D |
| **21 Biomed PA, Inc.** | | | | | | | |
| General Ledger Details (Monthly) | | | | | | | |
| Balance Sheets (Monthly) | | | | | | | |
| Bank Statements (Monthly) | | | | | | | |
| Income Statements (Monthly) | | | | | | | |
| Income Statements (Yearly) | | | | | | | |
| Tax Returns (Yearly) | | | | | | PRODUCED (J–O) | |
| Tax Workpapers (Yearly) | | | | | | | |
| AR Aging / Payment Records | | | | | | | |
| **22 Biomed Pharmaceuticals, Inc.** | | | | | | | |
| General Ledger Details (Monthly) | | | | | | | |
| Balance Sheets (Monthly) | | | | | | PRODUCED (Feb) | PRODUCED (Feb) |
| Bank Statements (Monthly) | | | | | | | |
| Income Statements (Monthly) | | | | | | PRODUCED (Feb) | PRODUCED (Feb) |
| Income Statements (Yearly) | | | | | | | |
| Tax Returns (Yearly) | | | | | | PRODUCED (J–O) | |
| Tax Workpapers (Yearly) | | | | | | | |
| AR Aging / Payment Records | | | | | | | |
| **23 Biomed Texas, Inc.** | | | | | | | |
| General Ledger Details (Monthly) | | | | | | | |
| Balance Sheets (Monthly) | | | | | | | |
| Bank Statements (Monthly) | | | | | | | |
| Income Statements (Monthly) | | | | | | | |
| Income Statements (Yearly) | | | | | | | |
| Tax Returns (Yearly) | | | | | | PRODUCED (J–O) | |
| Tax Workpapers (Yearly) | | | | | | | |
| AR Aging / Payment Records | | | | | | | |
| **24 Bio-Medical Innovations, Inc.** | | | | | | | |
| General Ledger Details (Monthly) | | | | | | | |
| Balance Sheets (Monthly) | | | | | | | |
| Bank Statements (Monthly) | | | | | | | |
| Income Statements (Monthly) | | | | | | | |
| Income Statements (Yearly) | | | | | | | |
| Tax Returns (Yearly) | | | | | | | |
| Tax Workpapers (Yearly) | | | | | | | |
| AR Aging / Payment Records | | | | | | | |

Appendix III to Plaintiff's March 13, 2019 Objections

# APPENDIX III – DETAIL: PRODUCED VS. MISSING RECORDS

| | PRODUCED |
|---|---|
| | NOT PRODUCED |
| | NOT REQUESTED |

| Entity - Document Request | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 |
|---|---|---|---|---|---|---|---|
| **25 Bio-Medical Marketing Services, Inc.** | | | | | | | |
| General Ledger Details (Monthly) | | | | | | | |
| Balance Sheets (Monthly) | | | | | | | |
| Bank Statements (Monthly) | | | | | | | |
| Income Statements (Monthly) | | | | | | | |
| Income Statements (Yearly) | | | | | | | |
| Tax Returns (Yearly) | | | | | | | |
| Tax Workpapers (Yearly) | | | | | | | |
| AR Aging / Payment Records | | | | | | | |
| | | | | | | | |
| **26 Cancer Innovations, Inc.** | | | | | | | |
| General Ledger Details (Monthly) | | | | | PRODUCED | PRODUCED | PRODUCED |
| Balance Sheets (Monthly) | | | | | PRODUCED (partial) | PRODUCED (partial) | PRODUCED (partial) |
| Bank Statements (Monthly) | | | | | | | |
| Income Statements (Monthly) | | | | | PRODUCED | PRODUCED | |
| Income Statements (Yearly) | | | | | | | |
| Tax Returns (Yearly) | | | | | | | |
| Tax Workpapers (Yearly) | | PRODUCED | PRODUCED | PRODUCED | PRODUCED | PRODUCED | PRODUCED |
| AR Aging / Payment Records | | | | | | | |
| | | | | | | | |
| **27 Complete Communications, Inc.** | | | | | | | |
| General Ledger Details (Monthly) | | | | | | | |
| Balance Sheets (Monthly) | | | | | | | |
| Bank Statements (Monthly) | | | | | | | |
| Income Statements (Monthly) | | | | | | | |
| Income Statements (Yearly) | | | | | | | |
| Tax Returns (Yearly) | | | | | | | |
| Tax Workpapers (Yearly) | | | | | | | |
| AR Aging / Payment Records | | | | | | | |
| | | | | | | | |
| **28 Delta Laboratories, Inc.** | | | | | | | |
| General Ledger Details (Monthly) | | | | | | | |
| Balance Sheets (Monthly) | | | | | | | |
| Bank Statements (Monthly) | | | | | | | |
| Income Statements (Monthly) | | | | | | | |
| Income Statements (Yearly) | | | | | | | |
| Tax Returns (Yearly) | | | | | | | |
| Tax Workpapers (Yearly) | | | | | | | |
| AR Aging / Payment Records | | | | | | | |

## APPENDIX III – DETAIL: PRODUCED VS. MISSING RECORDS

| PRODUCED |
| NOT PRODUCED |
| NOT REQUESTED |

| Entity - Document Request | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 |
|---|---|---|---|---|---|---|---|
| **29 Delta Pharmaceuticals, Inc.** | | | | | | | |
| General Ledger Details (Monthly) | | | | | | | |
| Balance Sheets (Monthly) | | ▮ | ▮ | | | ▮ | ▮ |
| Bank Statements (Monthly) | | | | | | | |
| Income Statements (Monthly) | | | ▮ | | ▮ | | |
| Income Statements (Yearly) | | | | ▮▮▮▮▮▮▮ | | | |
| Tax Returns (Yearly) | | | | | | ▮▮▮▮▮ | ▮▮▮▮▮▮▮▮▮▮ |
| Tax Workpapers (Yearly) | | | | | | | |
| AR Aging / Payment Records | | | | | | | |
| **30 Eyegene Corporation** | | | | | | | |
| General Ledger Details (Monthly) | | | | | | | |
| Balance Sheets (Monthly) | | | | | | | |
| Bank Statements (Monthly) | | | | | | | |
| Income Statements (Monthly) | | | | | | | |
| Income Statements (Yearly) | | | | | | | |
| Tax Returns (Yearly) | | | | | | | |
| Tax Workpapers (Yearly) | | | | | | | |
| AR Aging / Payment Records | | | | | | | |
| **31 Freedom Care, LLC** | | | | | | | |
| General Ledger Details (Monthly) | | | | | | | |
| Balance Sheets (Monthly) | | | | | | | |
| Bank Statements (Monthly) | | | | | | | |
| Income Statements (Monthly) | | | | | | | |
| Income Statements (Yearly) | | | | | | | |
| Tax Returns (Yearly) | | | | | | | |
| Tax Workpapers (Yearly) | | | | | | | |
| AR Aging / Payment Records | | | | | | | |
| **32 Greta Company, LLC** | | | | | | | |
| General Ledger Details (Monthly) | | | | | | | |
| Balance Sheets (Monthly) | | | | | | | |
| Bank Statements (Monthly) | | | | | | | |
| Income Statements (Monthly) | | | | | | | |
| Income Statements (Yearly) | | | | | | | |
| Tax Returns (Yearly) | | | | | | | |
| Tax Workpapers (Yearly) | | | | | | | |
| AR Aging / Payment Records | | | | | | | |

# APPENDIX III – DETAIL: PRODUCED VS. MISSING RECORDS

| | |
|---|---|
| PRODUCED | (green) |
| NOT PRODUCED | (white) |
| NOT REQUESTED | (gray) |

| Entity - Document Request | 2002 J F M A M J J A S O N D | 2003 J F M A M J J A S O N D | 2004 J F M A M J J A S O N D | 2005 J F M A M J J A S O N D | 2006 J F M A M J J A S O N D | 2007 J F M A M J J A S O N D | 2008 J F M A M J J A S O N D |
|---|---|---|---|---|---|---|---|
| **33 Hometech Medical Equipment, Inc.** | | | | | | | |
| General Ledger Details (Monthly) | | | | | | | |
| Balance Sheets (Monthly) | | | | | | | |
| Bank Statements (Monthly) | | | | | | | |
| Income Statements (Monthly) | | | | | | | |
| Income Statements (Yearly) | | | | | | | |
| Tax Returns (Yearly) | | | | | | | |
| Tax Workpapers (Yearly) | | | | | | | |
| AR Aging / Payment Records | | | | | | | |
| **34 Hometech Therapies, Inc.** | | | | | | | |
| General Ledger Details (Monthly) | | | | | | | PRODUCED |
| Balance Sheets (Monthly) | | | | | | | PRODUCED |
| Bank Statements (Monthly) | | | | | | | |
| Income Statements (Monthly) | | | | | | | |
| Income Statements (Yearly) | | | | | | | PRODUCED |
| Tax Returns (Yearly) | | | | | | PRODUCED | PRODUCED |
| Tax Workpapers (Yearly) | | | | | | | |
| AR Aging / Payment Records | | | | | | | |
| **35 Indago Healthcare of Florida, Inc.** | | | | | | | |
| General Ledger Details (Monthly) | | | | | | | |
| Balance Sheets (Monthly) | | | | PRODUCED | PRODUCED | PRODUCED | PRODUCED |
| Bank Statements (Monthly) | | | | | | | |
| Income Statements (Monthly) | | | | | PRODUCED | | |
| Income Statements (Yearly) | | | | PRODUCED | PRODUCED | PRODUCED | PRODUCED |
| Tax Returns (Yearly) | | | | | | | |
| Tax Workpapers (Yearly) | | | | | | | |
| AR Aging / Payment Records | | | | | | | |
| **36 Indago Healthcare of South Florida, Inc.** | | | | | | | |
| General Ledger Details (Monthly) | | | | | | | |
| Balance Sheets (Monthly) | | | | | | | |
| Bank Statements (Monthly) | | | | | | | |
| Income Statements (Monthly) | | | | | | | |
| Income Statements (Yearly) | | | | | | | |
| Tax Returns (Yearly) | | | | | | | |
| Tax Workpapers (Yearly) | | | | | | | |
| AR Aging / Payment Records | | | | | | | |

Appendix III to Plaintiff's March 13, 2019 Objections

# APPENDIX III – DETAIL: PRODUCED VS. MISSING RECORDS

**Legend:**
- PRODUCED (green)
- NOT PRODUCED
- NOT REQUESTED

| Entity - Document Request | 2002 (J F M A M J J A S O N D) | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 |
|---|---|---|---|---|---|---|---|
| **37 Indago Healthcare, Inc.** | | | | | | | |
| General Ledger Details (Monthly) | | | | | | | |
| Balance Sheets (Monthly) | | | | Produced (Dec) | Produced (Aug, Oct) | Produced (Jan) | Produced (Dec) |
| Bank Statements (Monthly) | | | | | | | |
| Income Statements (Monthly) | | | | | Produced (Aug, Oct) | Produced (Jan) | |
| Income Statements (Yearly) | | | | Produced (Jan–Sep) | | Produced (Jan–Oct) | |
| Tax Returns (Yearly) | | | | | | | |
| Tax Workpapers (Yearly) | | | | | | | |
| AR Aging / Payment Records | | | | | | | |
| | | | | | | | |
| **38 Integrated BioPharm Corporation, Inc.** | | | | | | | |
| General Ledger Details (Monthly) | | | | | | | |
| Balance Sheets (Monthly) | | | | | | | |
| Bank Statements (Monthly) | | | | | | | |
| Income Statements (Monthly) | | | | | | | |
| Income Statements (Yearly) | | | | | | | |
| Tax Returns (Yearly) | | | | | | | |
| Tax Workpapers (Yearly) | | | | | | | |
| AR Aging / Payment Records | | | | | | | |
| | | | | | | | |
| **39 LBC Credit Partners Parallel, LP** | | | | | | | |
| General Ledger Details (Monthly) | | | | | | | |
| Balance Sheets (Monthly) | | | | | | | |
| Bank Statements (Monthly) | | | | | | | |
| Income Statements (Monthly) | | | | | | | |
| Income Statements (Yearly) | | | | | | | |
| Tax Returns (Yearly) | | | | | | | |
| Tax Workpapers (Yearly) | | | | | | | |
| AR Aging / Payment Records | | | | | | | |
| | | | | | | | |
| **40 Ledmir, LLC** | | | | | | | |
| General Ledger Details (Monthly) | | | | | | | |
| Balance Sheets (Monthly) | | | | Produced (Nov) | | | |
| Bank Statements (Monthly) | | | | | | | |
| Income Statements (Monthly) | | | | | | | |
| Income Statements (Yearly) | | Produced (Mar–Oct) | | | | | |
| Tax Returns (Yearly) | | | | | | | |
| Tax Workpapers (Yearly) | | | | | | | |
| AR Aging / Payment Records | | | | | | | |

**10 of 18**

## APPENDIX III – DETAIL: PRODUCED VS. MISSING RECORDS

| | |
|---|---|
| PRODUCED | |
| NOT PRODUCED | |
| NOT REQUESTED | |

| Entity - Document Request | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 |
|---|---|---|---|---|---|---|---|
| | J F M A M J J A S O N D | J F M A M J J A S O N D | J F M A M J J A S O N D | J F M A M J J A S O N D | J F M A M J J A S O N D | J F M A M J J A S O N D | J F M A M J J A S O N D |
| **41 LMS America, Inc.** | | | | | | | |
| General Ledger Details (Monthly) | | | | | | | |
| Balance Sheets (Monthly) | | | | | | | |
| Bank Statements (Monthly) | | | | | | | |
| Income Statements (Monthly) | | | | | | | |
| Income Statements (Yearly) | | | | | | | |
| Tax Returns (Yearly) | | | | | | | |
| Tax Workpapers (Yearly) | | | | | | | |
| AR Aging / Payment Records | | | | | | | |
| **42 Logic Medical Solutions, Inc.** | | | | | | | |
| General Ledger Details (Monthly) | | | | | | | |
| Balance Sheets (Monthly) | | | | | | | |
| Bank Statements (Monthly) | | | | | | | |
| Income Statements (Monthly) | | | | | | | |
| Income Statements (Yearly) | | | | | | | |
| Tax Returns (Yearly) | | | | | | | |
| Tax Workpapers (Yearly) | | | | | | | |
| AR Aging / Payment Records | | | | | | | |
| **43 My Case LLC** | | | | | | | |
| General Ledger Details (Monthly) | | | | | | | |
| Balance Sheets (Monthly) | | | | | | | |
| Bank Statements (Monthly) | | | | | | | |
| Income Statements (Monthly) | | | | | | | |
| Income Statements (Yearly) | | | | | | | |
| Tax Returns (Yearly) | | | | | | | |
| Tax Workpapers (Yearly) | | | | | | | |
| AR Aging / Payment Records | | | | | | | |
| **44 Neurology Therapeutics, Inc.** | | | | | | | |
| General Ledger Details (Monthly) | | | | | | | |
| Balance Sheets (Monthly) | | | | | | | |
| Bank Statements (Monthly) | | | | | | | |
| Income Statements (Yearly) | | | | | | | |
| Tax Returns (Yearly) | | | | | | | |
| Tax Workpapers (Yearly) | | | | | | | |
| AR Aging / Payment Records | | | | | | | |

# APPENDIX III – DETAIL: PRODUCED VS. MISSING RECORDS

| PRODUCED |
|---|
| NOT PRODUCED |
| NOT REQUESTED |

| Entity - Document Request | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 |
|---|---|---|---|---|---|---|---|
| | J F M A M J J A S O N D | J F M A M J J A S O N D | J F M A M J J A S O N D | J F M A M J J A S O N D | J F M A M J J A S O N D | J F M A M J J A S O N D | J F M A M J J A S O N D |
| **45 New England Hemophilia and Thrombosis Network, Inc.** | | | | | | | |
| General Ledger Details (Monthly) | | | | | | | |
| Balance Sheets (Monthly) | | | | | | | |
| Bank Statements (Monthly) | | | | | | | |
| Income Statements (Monthly) | | | | | | | |
| Income Statements (Yearly) | | | | | | | |
| Tax Returns (Yearly) | | | | | | | |
| Tax Workpapers (Yearly) | | | | | | | |
| AR Aging / Payment Records | | | | | | | |
| **46 Parallex, LLC** | | | | | | | |
| General Ledger Details (Monthly) | | | | | | | |
| Balance Sheets (Monthly) | | | | | | | |
| Bank Statements (Monthly) | | | | | | | |
| Income Statements (Monthly) | | | | | | | |
| Income Statements (Yearly) | | | | | | | |
| Tax Returns (Yearly) | | | | | | | |
| Tax Workpapers (Yearly) | | | | | | | |
| AR Aging / Payment Records | | | | | | | |
| **47 Physician Oncology Network, Inc.** | | | | | | | |
| General Ledger Details (Monthly) | | | | | | | |
| Balance Sheets (Monthly) | | | | | | | |
| Bank Statements (Monthly) | | | | | | | |
| Income Statements (Monthly) | | | | | | | |
| Income Statements (Yearly) | | | | | | | |
| Tax Returns (Yearly) | | | | | | | |
| Tax Workpapers (Yearly) | | | | | | | |
| AR Aging / Payment Records | | | | | | | |
| **48 Practice Made Perfect, Inc.** | | | | | | | |
| General Ledger Details (Monthly) | | | | | | | |
| Balance Sheets (Monthly) | | | | | | | |
| Bank Statements (Monthly) | | | | | | | |
| Income Statements (Monthly) | | | | | | | |
| Income Statements (Yearly) | | | | | | | |
| Tax Returns (Yearly) | | | | | | | |
| Tax Workpapers (Yearly) | | | | | | | |
| AR Aging / Payment Records | | | | | | | |

Appendix III to Plaintiff's March 13, 2019 Objections

# APPENDIX III – DETAIL: PRODUCED VS. MISSING RECORDS

| | Legend |
|---|---|
| PRODUCED | (green) |
| NOT PRODUCED | (white) |
| NOT REQUESTED | (gray) |

Column headers: months **J F M A M J J A S O N D** repeated for each year **2002 · 2003 · 2004 · 2005 · 2006 · 2007 · 2008**

| Entity - Document Request | Produced (green) months |
|---|---|
| **49 Pridecare, Inc.** | |
| General Ledger Details (Monthly) | 2005 (~Jun; ~Oct); 2007 (Jan–Sep) |
| Balance Sheets (Monthly) | 2004 (Jan–Dec); 2005 (~Aug); 2007 (Jan–Aug) |
| Bank Statements (Monthly) | — |
| Income Statements (Monthly) | 2004 (Jan–Sep) |
| Income Statements (Yearly) | 2005 (Jan–Dec); 2006 (Jan–Dec) |
| Tax Returns (Yearly) | 2004; 2005; 2006; 2007 |
| Tax Workpapers (Yearly) | 2006; 2007; 2008 |
| AR Aging / Payment Records | — |
| **50 Primavera, Inc.** | |
| General Ledger Details (Monthly) | — |
| Balance Sheets (Monthly) | — |
| Bank Statements (Monthly) | — |
| Income Statements (Monthly) | — |
| Income Statements (Yearly) | — |
| Tax Returns (Yearly) | — |
| Tax Workpapers (Yearly) | — |
| AR Aging / Payment Records | — |
| **51 PRN Healthcare Services, Inc.** | |
| General Ledger Details (Monthly) | — (2002 not requested) |
| Balance Sheets (Monthly) | — (2002 not requested) |
| Bank Statements (Monthly) | — (2002 not requested) |
| Income Statements (Monthly) | — (2002 not requested) |
| Income Statements (Yearly) | — (2002 not requested) |
| Tax Returns (Yearly) | — (2002 not requested) |
| Tax Workpapers (Yearly) | — (2002 not requested) |
| AR Aging / Payment Records | — (2002 not requested) |
| **52 RAM Business Holdings, LLC** | |
| General Ledger Details (Monthly) | — (2002 & 2008 not requested) |
| Balance Sheets (Monthly) | 2005 (~May; ~Jul) |
| Bank Statements (Monthly) | — (2002 & 2008 not requested) |
| Income Statements (Monthly) | — (2002 & 2008 not requested) |
| Income Statements (Yearly) | — (2002 & 2008 not requested) |
| Tax Returns (Yearly) | 2004; 2005; 2006 |
| Tax Workpapers (Yearly) | — (2002 & 2008 not requested) |
| AR Aging / Payment Records | — (2002 & 2008 not requested) |

# APPENDIX III – DETAIL: PRODUCED VS. MISSING RECORDS

**Legend:**
- PRODUCED (green)
- NOT PRODUCED (white)
- NOT REQUESTED (gray)

| Entity - Document Request | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 |
|---|---|---|---|---|---|---|---|
| **53 RAM Capital Group 2004 Trust** | | | | | | | |
| General Ledger Details (Monthly) | | | | | | | |
| Balance Sheets (Monthly) | | | | | | | |
| Bank Statements (Monthly) | | | | | | | |
| Income Statements (Monthly) | | | | | | | |
| Income Statements (Yearly) | | | | | | | |
| Tax Returns (Yearly) | | | | | | | |
| Tax Workpapers (Yearly) | | | | | | | |
| AR Aging / Payment Records | | | | | | | |
| **54 RAM Capital Group, LLC** | | | | | | | |
| General Ledger Details (Monthly) | | produced | produced | produced | produced | produced | produced |
| Balance Sheets (Monthly) | | produced | | produced | produced | produced | produced |
| Bank Statements (Monthly) | | | | | | | |
| Income Statements (Monthly) | | | produced (Dec) | produced | produced | produced | produced |
| Income Statements (Yearly) | | | | produced | produced | produced | produced |
| Tax Returns (Yearly) | | produced | produced | | | | |
| Tax Workpapers (Yearly) | | | | | | produced | produced |
| AR Aging / Payment Records | | | | | | | |
| **55 RAM Capital Holdings, LLC** | | | | | | | |
| General Ledger Details (Monthly) | | | | | | | |
| Balance Sheets (Monthly) | | | | | | | |
| Bank Statements (Monthly) | | | | | | | |
| Income Statements (Monthly) | | | | | | | |
| Income Statements (Yearly) | | | | | | | |
| Tax Returns (Yearly) | | | | | | | |
| Tax Workpapers (Yearly) | | | | | | | |
| AR Aging / Payment Records | | | | | | | |
| **56 RAM Capital II, LLC** | | | | | | | |
| General Ledger Details (Monthly) | | | | | | | |
| Balance Sheets (Monthly) | | | | | | | produced |
| Bank Statements (Monthly) | | | | | | | |
| Income Statements (Monthly) | | | | | | | produced |
| Income Statements (Yearly) | | | | | | | |
| Tax Returns (Yearly) | | | | | | | |
| Tax Workpapers (Yearly) | | | | | | | |
| AR Aging / Payment Records | | | | | | | |

**14 of 18**

Appendix III to Plaintiff's March 13, 2019 Objections

# APPENDIX III – DETAIL: PRODUCED VS. MISSING RECORDS

**Legend:**
- PRODUCED (green)
- NOT PRODUCED (white)
- NOT REQUESTED (gray)

| Entity - Document Request | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 |
|---|---|---|---|---|---|---|---|
| **57 RAM Consultants, LLC** | | | | | | | |
| General Ledger Details (Monthly) | | | | | NOT REQUESTED | NOT REQUESTED | NOT REQUESTED |
| Balance Sheets (Monthly) | | produced (scattered) | produced (scattered) | produced (scattered) | NOT REQUESTED | NOT REQUESTED | NOT REQUESTED |
| Bank Statements (Monthly) | | | produced (scattered) | | NOT REQUESTED | NOT REQUESTED | NOT REQUESTED |
| Income Statements (Monthly) | | | produced (scattered) | | NOT REQUESTED | NOT REQUESTED | NOT REQUESTED |
| Income Statements (Yearly) | | produced (full) | produced (full) | produced (full) | NOT REQUESTED | NOT REQUESTED | NOT REQUESTED |
| Tax Returns (Yearly) | | | | | NOT REQUESTED | NOT REQUESTED | NOT REQUESTED |
| Tax Workpapers (Yearly) | | | | | NOT REQUESTED | NOT REQUESTED | NOT REQUESTED |
| AR Aging / Payment Records | | | | | NOT REQUESTED | NOT REQUESTED | NOT REQUESTED |
| **58 RAM Developers, Inc.** | | | | | | | |
| General Ledger Details (Monthly) | produced (scattered) | produced (early) | | produced | NOT REQUESTED | NOT REQUESTED | NOT REQUESTED |
| Balance Sheets (Monthly) | | produced (scattered) | produced (scattered) | produced | NOT REQUESTED | NOT REQUESTED | NOT REQUESTED |
| Bank Statements (Monthly) | | | | produced | NOT REQUESTED | NOT REQUESTED | NOT REQUESTED |
| Income Statements (Monthly) | | | produced (scattered) | produced | NOT REQUESTED | NOT REQUESTED | NOT REQUESTED |
| Income Statements (Yearly) | | produced (full) | | produced | NOT REQUESTED | NOT REQUESTED | NOT REQUESTED |
| Tax Returns (Yearly) | produced (full) | produced (full) | produced (full) | produced (full) | NOT REQUESTED | NOT REQUESTED | NOT REQUESTED |
| Tax Workpapers (Yearly) | | | | | NOT REQUESTED | NOT REQUESTED | NOT REQUESTED |
| AR Aging / Payment Records | | | | | NOT REQUESTED | NOT REQUESTED | NOT REQUESTED |
| **59 RAM Enterprise Holding Company, Inc.** | | | | | | | |
| General Ledger Details (Monthly) | | | | | NOT REQUESTED | NOT REQUESTED | NOT REQUESTED |
| Balance Sheets (Monthly) | | | | | NOT REQUESTED | NOT REQUESTED | NOT REQUESTED |
| Bank Statements (Monthly) | | | | | NOT REQUESTED | NOT REQUESTED | NOT REQUESTED |
| Income Statements (Monthly) | | | | | NOT REQUESTED | NOT REQUESTED | NOT REQUESTED |
| Income Statements (Yearly) | | | | | NOT REQUESTED | NOT REQUESTED | NOT REQUESTED |
| Tax Returns (Yearly) | | | | | NOT REQUESTED | NOT REQUESTED | NOT REQUESTED |
| Tax Workpapers (Yearly) | | | | | NOT REQUESTED | NOT REQUESTED | NOT REQUESTED |
| AR Aging / Payment Records | | | | | NOT REQUESTED | NOT REQUESTED | NOT REQUESTED |
| **60 RAM Equity Holdings, LLC** | | | | | | | |
| General Ledger Details (Monthly) | | | | | NOT REQUESTED | NOT REQUESTED | NOT REQUESTED |
| Balance Sheets (Monthly) | | | | | NOT REQUESTED | NOT REQUESTED | NOT REQUESTED |
| Bank Statements (Monthly) | | | | produced (scattered) | NOT REQUESTED | NOT REQUESTED | NOT REQUESTED |
| Income Statements (Monthly) | | | | | NOT REQUESTED | NOT REQUESTED | NOT REQUESTED |
| Income Statements (Yearly) | | | | | NOT REQUESTED | NOT REQUESTED | NOT REQUESTED |
| Tax Returns (Yearly) | | | | | NOT REQUESTED | NOT REQUESTED | NOT REQUESTED |
| Tax Workpapers (Yearly) | | | | | NOT REQUESTED | NOT REQUESTED | NOT REQUESTED |
| AR Aging / Payment Records | | | | | NOT REQUESTED | NOT REQUESTED | NOT REQUESTED |

# APPENDIX III – DETAIL: PRODUCED VS. MISSING RECORDS

| | |
|---|---|
| PRODUCED | |
| NOT PRODUCED | |
| NOT REQUESTED | |

| Entity - Document Request | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 |
|---|---|---|---|---|---|---|---|
| | J F M A M J J A S O N D | J F M A M J J A S O N D | J F M A M J J A S O N D | J F M A M J J A S O N D | J F M A M J J A S O N D | J F M A M J J A S O N D | J F M A M J J A S O N D |
| **61 RAM Investment Managemnt, Inc.** | | | | | | | |
| General Ledger Details (Monthly) | | | | | | | |
| Balance Sheets (Monthly) | | | | | | | |
| Bank Statements (Monthly) | | | | | | | |
| Income Statements (Monthly) | | | | | | | |
| Income Statements (Yearly) | | | | | | | |
| Tax Returns (Yearly) | | | | | | | |
| Tax Workpapers (Yearly) | | | | | | | |
| AR Aging / Payment Records | | | | | | | |
| **62 RAM Realty Holdings, LLC** | | | | | | | |
| General Ledger Details (Monthly) | | | | | | | |
| Balance Sheets (Monthly) | | | | | | | |
| Bank Statements (Monthly) | | | | | | | |
| Income Statements (Monthly) | | | | | | | |
| Income Statements (Yearly) | | | | | | | |
| Tax Returns (Yearly) | | | | | | | |
| Tax Workpapers (Yearly) | | | | | | | |
| AR Aging / Payment Records | | | | | | | |
| **63 Retrodyne Corporation** | | | | | | | |
| General Ledger Details (Monthly) | | | | | | | |
| Balance Sheets (Monthly) | | | | | | | |
| Bank Statements (Monthly) | | | | | | | |
| Income Statements (Monthly) | | | | | | | |
| Income Statements (Yearly) | | | | | | | |
| Tax Returns (Yearly) | | | | | | | |
| Tax Workpapers (Yearly) | | | | | | | |
| AR Aging / Payment Records | | | | | | | |
| **64 Stat Business Group, LLC** | | | | | | | |
| General Ledger Details (Monthly) | | | | | | | |
| Balance Sheets (Monthly) | | | | | | | |
| Bank Statements (Monthly) | | | | | | | |
| Income Statements (Monthly) | | | | | | | |
| Income Statements (Yearly) | | | | | | | |
| Tax Returns (Yearly) | | | | | | | |
| Tax Workpapers (Yearly) | | | | | | | |
| AR Aging / Payment Records | | | | | | | |

Appendix III to Plaintiff's March 13, 2019 Objections

# APPENDIX III – DETAIL: PRODUCED VS. MISSING RECORDS

| | |
|---|---|
| PRODUCED | |
| NOT PRODUCED | |
| NOT REQUESTED | |

| Entity - Document Request | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 |
|---|---|---|---|---|---|---|---|
| | J F M A M J J A S O N D | J F M A M J J A S O N D | J F M A M J J A S O N D | J F M A M J J A S O N D | J F M A M J J A S O N D | J F M A M J J A S O N D | J F M A M J J A S O N D |
| **65 Stone Ridge Enterprises, LLC** | | | | | | | |
| General Ledger Details (Monthly) | | | | | | | |
| Balance Sheets (Monthly) | | | | | | | |
| Bank Statements (Monthly) | | | | | | | |
| Income Statements (Monthly) | | | | | | | |
| Income Statements (Yearly) | | | | | | | |
| Tax Returns (Yearly) | | | | | | | |
| Tax Workpapers (Yearly) | | | | | | | |
| AR Aging / Payment Records | | | | | | | |
| **66 Sven LLC** | | | | | | | |
| General Ledger Details (Monthly) | | | | | | | |
| Balance Sheets (Monthly) | | | | | | | |
| Bank Statements (Monthly) | | | | | | | |
| Income Statements (Monthly) | | | | | | | |
| Income Statements (Yearly) | | | | | | | |
| Tax Returns (Yearly) | | | | | | | |
| Tax Workpapers (Yearly) | | | | | | | |
| AR Aging / Payment Records | | | | | | | |
| **67 U.S. Neurology Corporation** | | | | | | | |
| General Ledger Details (Monthly) | | | | | | | |
| Balance Sheets (Monthly) | | | | | | | |
| Bank Statements (Monthly) | | | | | | | |
| Income Statements (Monthly) | | | | | | | |
| Income Statements (Yearly) | | | | | | | |
| Tax Returns (Yearly) | | | | | | | |
| Tax Workpapers (Yearly) | | | | | | | |
| AR Aging / Payment Records | | | | | | | |
| **68 Valley Creek Estate, Inc.** | | | | | | | |
| General Ledger Details (Monthly) | | | | | | | |
| Balance Sheets (Monthly) | | | | | | | |
| Bank Statements (Monthly) | | | | | | | |
| Income Statements (Monthly) | | | | | | | |
| Income Statements (Yearly) | | | | | | | |
| Tax Returns (Yearly) | | | | | | | |
| Tax Workpapers (Yearly) | | | | | | | |
| AR Aging / Payment Records | | | | | | | |

# APPENDIX III – DETAIL: PRODUCED VS. MISSING RECORDS

| | PRODUCED |
|---|---|
| | NOT PRODUCED |
| | NOT REQUESTED |

| Entity - Document Request | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 |
|---|---|---|---|---|---|---|---|
| **69 VasGene Therapeutics, Inc.** | | | | | | | |
| General Ledger Details (Monthly) | | | | | | ▓ | ▓ |
| Balance Sheets (Monthly) | | | | | | ▓ | ▓ |
| Bank Statements (Monthly) | | | | | | | |
| Income Statements (Monthly) | | | | | | ▓ | |
| Income Statements (Yearly) | | | | | | | |
| Tax Returns (Yearly) | | ▓ | | | | | ▓ |
| Tax Workpapers (Yearly) | | | | ▓ | ▓ | | ▓ |
| AR Aging / Payment Records | | | | | | | |
| **70 Versatile Care Solutions, Inc.** | | | | | | | |
| General Ledger Details (Monthly) | | | | | | | |
| Balance Sheets (Monthly) | | | | | | | |
| Bank Statements (Monthly) | | | | | | | |
| Income Statements (Monthly) | | | | | | | |
| Income Statements (Yearly) | | | | | | | |
| Tax Returns (Yearly) | | | | | | | |
| Tax Workpapers (Yearly) | | | | | | | |
| AR Aging / Payment Records | | | | | | | |
| **71 West Highland Company, LLC** | | | | | | | |
| General Ledger Details (Monthly) | | | | ▓ | ▓ | | |
| Balance Sheets (Monthly) | | | | ▓ | | ▓ | |
| Bank Statements (Monthly) | | | | | | | |
| Income Statements (Monthly) | | | | ▓ | ▓ | ▓ | |
| Income Statements (Yearly) | | | | | | | |
| Tax Returns (Yearly) | | | | | | | |
| Tax Workpapers (Yearly) | | ▓ | | ▓ | ▓ | ▓ | ▓ |
| AR Aging / Payment Records | | | | | | | |
| **72 World Wide Health, Inc.** | | | | | | | |
| General Ledger Details (Monthly) | | | | | | | |
| Balance Sheets (Monthly) | | | | | | | |
| Bank Statements (Monthly) | | | | | | | |
| Income Statements (Monthly) | | | | | | | |
| Income Statements (Yearly) | | | | | | | |
| Tax Returns (Yearly) | | | | | | | |
| Tax Workpapers (Yearly) | | | | | | | |
| AR Aging / Payment Records | | | | | | | |

Appendix III to Plaintiff's March 13, 2019 Objections

# EXHIBIT A

EMERY CELLI BRINCKERHOFF & ABADY LLP

RICHARD D. EMERY
ANDREW G. CELLI, JR.
MATTHEW D. BRINCKERHOFF
JONATHAN S. ABADY
EARL S. WARD
ILANN M. MAAZEL
HAL R. LIEBERMAN
DANIEL J. KORNSTEIN
O. ANDREW F. WILSON
ELIZABETH S. SAYLOR
KATHERINE ROSENFELD
DEBRA L. GREENBERGER
ZOE SALZMAN
SAM SHAPIRO

ATTORNEYS AT LAW
600 FIFTH AVENUE AT ROCKEFELLER CENTER
10TH FLOOR
NEW YORK, NEW YORK 10020

TEL: (212) 763-5000
FAX: (212) 763-5001
www.ecbalaw.com

CHARLES J. OGLETREE, JR.
EMERITUS

DIANE L. HOUK
JESSICA CLARKE

ALISON FRICK
DAVID LEBOWITZ
DOUGLAS E. LIEB
ALANNA KAUFMAN
EMMA L. FREEMAN
DAVID BERMAN
ASHOK CHANDRAN

DANIEL TREIMAN

November 20, 2018

**VIA E-MAIL**

The Honorable Lawrence F. Stengel
Saxton & Stump
Lawyers and Consultants
280 Granite Run Drive, Suite 300
Lancaster, PA 17601

Re:     *Jordan v. Mirra,* Plaintiff Jordan's Response To
        Defendant Mirra's Nov. 6, 2018 Discovery Complaints

Dear Judge Stengel,

When Mirra's Nov. 6 discovery complaints are properly evaluated, they should be rejected as both meritless and cynically ironic. But those complaints cannot be considered in the abstract. To properly assess those issues, it is essential to put them in context and to appreciate exactly what this case is about.

**Essential Context: An Introduction**

This is a simple case. It involves only one remaining claim. Jordan sues Mirra for breach of warranty. In the parties' 2008 business separation agreement ("SDA"), Jordan negotiated for and obtained Mirra's warranty that he there fully listed all of the parties' assets and liabilities. Mirra alone was uniquely aware of their full scope because he maintained and managed all of the books and records of their companies and investments. All of the parties' assets were held jointly, regardless of whose name the particular asset was nominally in. As Mirra testified at his deposition (in the RICO case) no less than twelve times: ███████████████████ ████████████████████████████████████████████ Mirra failed to list all of those joint assets and liabilities in the separation agreement. Hence he breached his warranty.

---

[1] *See* Appendix I, summary of deposition excerpts from the RICO case of Mirra, Attorney Troilo, and Accountant Tropiano, ██████████████████████████████ ████

EMERY CELLI BRINCKERHOFF & ABADY LLP

The Hon. Lawrence F. Stengel
Nov. 20, 2018
Page 2

In discovery in this case, Mirra has tried to turn these essential facts on their head. Obstructing Jordan's efforts in discovery to obtain the financial books and records that disclose the assets and liabilities he conceals, Mirra's November 6 letter now absurdly claims that Jordan has them. But it is Mirra who has thwarted discovery, rebuffing Judge McHugh's orders at every stage in this case.

## A Short Chronology of Mirra's Discovery Recalcitrance

The great irony of Mirra's discovery complaints emerges from a brief indisputable history of his own massive discovery stonewalling over the past ten months. Since February 2018 Mirra has tried to frustrate Jordan's efforts to conduct discovery and the Court's Orders about that discovery.

**February 1, 2018:** After an initial scheduling conference and as early as the first Scheduling Order entered by Judge McHugh, Mirra pushed back. (D.I. 209, First Amended Scheduling Order, Feb 1, 2018).

**April 27, 2018:** Mirra unilaterally declared by letter to the Court that despite the discovery scheduling order, his own view was that "general fact discovery in this action is now closed." (D.I. 229, Def. Apr. 27, 2018 Ltr. at 2).

**May 31, 2018:** In response, Judge McHugh rejected Mirra's pronouncement about the end of discovery. In his May 31 Order, Judge McHugh stated that he had "made clear in [his] order that fact-discovery" was to proceed "in this matter" through at least "June 29, 2018." (D.I. 250, Order, May 31, 2018 at n. 1). Judge McHugh ruled Mirra's "procedural arguments" to the contrary were "without merit." (*Id.*). Judge McHugh's Order also granted "Plaintiff's request for a ruling that the privilege" Mirra alone had asserted "over communications and documents generated by [attorney] Joseph Troilo also applies to Plaintiff." (*Id.* at 1).

**May 31, 2018:** Mirra continued his campaign of obstructing discovery. On receiving Jordan's first document requests and interrogatories, Mirra wrote the Court again, this time complaining that the Court's "First Amended Scheduling Order does not permit the service of [] interrogatories," or any other "additional discovery." (D.I. 249, Def. May 31 Ltr. at 4.). Mirra then assailed Jordan's document requests as "vexatious," demanding that Judge McHugh "quash[]" them, and impose sanctions on Jordan for "fail[ing] to obey [the] scheduling [] order." (*Id.* at 1, 6, 8-9). Jordan moved the Court to compel Mirra to respond to her discovery requests. (D.I. 242, Pl. Ltr., May 23, 2018).

EMERY CELLI BRINCKERHOFF & ABADY LLP

The Hon. Lawrence F. Stengel
Nov. 20, 2018
Page 3

**June 13, 2018:** Judge McHugh once again reiterated that discovery is ongoing. In an Order, he stated that "the Scheduling Order does not bar Plaintiff's interrogatories, nor does it bar Plaintiff from making additional document requests." (D.I. 257, Order, Jun. 13, 2018, at 1). Judge McHugh further ordered that "Defendant must respond to both." (*Id.*) The Court then granted Jordan's motion compelling Mirra to produce all of the documents requested by Jordan "pertaining to assets and liabilities that were omitted from the Separation and Distribution Schedules ('SDA Schedules'), <u>regardless of whether the companies</u> with which these assets and liabilities were at one point associated <u>were listed</u> [by Defendant] on the SDA Schedules, or [whether those companies] were otherwise dissolved." (Id.) (emphasis added). The only documents Mirra did not have to produce, ruled Judge McHugh, were those that "pertain[ed] to assets and liabilities that were listed in the SDA Schedules," including the "value of those listed assets and liabilities." (Id. at 1-2). In other words, if Mirra listed an asset – like a bank account – he did not have to provide further documents about the value of that already listed bank account. But companies are not "assets." In this regard, the Court's Order was plain, even if Mirra listed a company on the SDA Schedules, he still had to produce all of the documents Jordan requested about the unlisted assets or liabilities that company had. And even where a company had been dissolved before the SDA, Judge McHugh ruled that Mirra still had to produce the documents about their unlisted assets and liabilities. Last, the Court denied Mirra's motion for sanctions as "unwarranted" finding Jordan had engaged in no "abuse of the discovery process." (*Id.* at 2).

**July 16, 2018:** After the June 13 Order compelling Mirra's document production and interrogatory responses, Jordan tried to confirm a date for Mirra's production, given that discovery was set to close in two months (on September 30). (D.I. 261, Pl. Ltr., Jul. 9, 2018). Despite the clear wording of the June 13 Order, in a letter to the Court, Mirra announced his intention to set his own temporal boundaries for his discovery – "2007 to 2009" – the period of time Mirra deemed "reasonable." (D.I. 262, Def. Jul. 16, 2018 Ltr. at 5). Mirra further insisted he intended only to produce those "documents reflecting entity formation, dissolution and ownership," demanding that Jordan "can explain how a broader scope of production as to any of those entities is relevant to her [] claim." (*Id.*). Jordan objected. (D.I. 267, Pl. Ltr., Jul. 20, 2018).

**July 25, 2018:** To this improper refusal by Mirra to abide by the Court's Orders, Judge McHugh issued his most pointed Order yet, flatly rejecting Mirra's attempt to "narrow the scope of his productions to 'accounting and financial documents concerning . . . a three-year period from 2007 to 2009.'" (D.I. 259, Order, Jul. 25, 2018 at 1). Judge McHugh ordered Mirra must "comply with Plaintiff's Requests for Production with the only modifications being those outlined in my June 13, 2018 Clarification Order [], none of which are temporal," ordering Mirra "complete his document production no later than August 6, 2018." (*Id.*). But Mirra did not comply with this Order either.

EMERY CELLI BRINCKERHOFF & ABADY LLP

The Hon. Lawrence F. Stengel
Nov. 20, 2018
Page 4

**August 6, 2018 - September 20, 2018:**  Mirra produced a small fraction of the documents Jordan had requested.[2] For example, Mirra produced less than 14% of the tax returns Jordan asked for,[3] and for the company general ledgers, Mirra produced even less, yielding only 8% of those.  (*See* Appendix II summarizing Mirra's unproduced tax returns; *see also* Appendix III summarizing Mirra's unproduced general ledgers). And even as the Court's Order had clearly compelled Mirra to respond to Jordan's requests for production as written, Mirra refused to confirm whether or not he possessed the documents he had not produced. (*See* Def. Sept. 11 Ltr. at 2, Ex. B). And where Jordan's RFPs (and Delaware's Default Standard for Discovery Rule 5(d)) required Mirra produce the companies' accounting records in their native Peachtree accounting software database, Mirra did not, insisting they were "purged" years earlier, or otherwise were "not readily accessible." (*See* Def. Sept. 13 Ltr. at 3; Def. Ex. H; *see also* D.I. 286, Sept. 17, 2018 at 2-3; Def. Ltr., Oct. 20, 2015, Ex. C).  But Mirra's production reveals that just before producing his accounting records to Jordan, Mirra exported a substantial number of them out of their native Peachtree format – to other formats – making it impossible to access the metadata. Having gone to the trouble of exporting his records out of their native Peachtree files, Mirra's claims that they are "not readily accessible" or "purged" were demonstrably false. (*See* Def. Sept. 13 Ltr. at 3; Def. Ex. H; *see also* D.I. 286, Sept. 17, 2018 at 2-3; Def. Ltr., Oct. 20, 2015, Ex. C).

**September 19, 2018:** Jordan sent her letter regarding Mirra's discovery failures.

**October 3, 2018:** Recognizing the "close analysis" the remaining discovery issues required, Judge McHugh referred these matters to you. (D.I. 299, Order, Oct. 3, 2018).

**November 6, 2018:** Now Mirra mocks the discovery process even further, propping up faux discovery disputes of his own. This is what makes Mirra's Nov. 6 discovery complaints so highly ironic and sham. It is Mirra, and Mirra alone, that has the information and documents at issue in this case. That is why Jordan sued him for breach of warranty; that is why she has pressed Mirra to comply with his discovery obligations.  Almost by definition, Jordan does not have the relevant documents and information; she only has the minimal amount Mirra has previously produced.

---

[2] Mirra also agreed that he would revise his interrogatory responses and respond to Plaintiff's second RFPs by no later than September 30, 2018, but did not. (*See* Def. Sept. 13 Ltr. at 2; Def. Ex. H; *see also* D.I. 286, Sept. 17, 2018 at 2-3).

[3] Jordan's document request instructed that if Mirra did not have the tax returns, he submit to the IRS Form 4506 to obtain them. (*See* Pl. RFPs at 12-13, 18, Req. No. 1.1 and at *passim*, Ex. A). Mirra must either (1) obtain the tax returns from his tax preparer (Morris J. Cohen & Co, P.C.); (2) obtain them from the IRS by submitting Form 4506; or (3) produce to Jordan signed copies of Form 4506 so that Jordan can obtain them from the IRS herself (with Mirra reimbursing Jordan for all fees associated with her having to obtain the tax returns from the IRS).

EMERY CELLI BRINCKERHOFF & ABADY LLP

The Hon. Lawrence F. Stengel
Nov. 20, 2018
Page 5

## **Mirra's Meritless Discovery Complaints**

In this context, Mirra's discovery complaints are neither legitimate nor even serious. They are nothing more than a transparent and easily exposed effort to try to shift attention away from his own deep discovery failures, delays, and obstruction.

It is against this real-world litigation background, and for the reasons given below, that Mirra's Nov. 6 three categories of discovery complaints should be considered—and rejected.

I.    Jordan's Interrogatory Responses and Objections Are Proper

Mirra's request for an order compelling further interrogatory responses from Jordan should be denied because: (1) he impermissibly seeks information from Jordan to which Mirra has greater access in his own business records, and (2) he makes objections that are premature and require conclusions or opinions not the proper scope of interrogatories.

The fundamental flaw and Catch-22 in this part of Mirra's request is that he is seeking information in the documents the he will not give to Jordan. Mirra complains that Jordan's interrogatory responses insufficiently give back to him the same information – to the extent they contain *any* information – in his own disorganized and woefully incomplete records. As we have explained in our Sept. 19 letter, Mirra has made that information impossible for Jordan to obtain from them. Mirra knows he has the information he seeks from Jordan in his own native files, which give him an easily searchable database to find the information in a fraction of the time it would take Jordan to cobble it together from the heap of disheveled and partial records Mirra has given her.

Courts hold that when a defendant himself possesses the records that contain the information his interrogatories seek, "the Rules expressly contemplate that interrogatories may be answered by reference to documents produced," and the interrogated party "is not obligated to list all of the[] documents and to inform Defendant[] as to the facts that may be gleaned" from his own records. *See Principal Life Ins. Co. v. DeRose*, 2010 WL 11549913, at *5 (M.D. Pa. Jan. 11, 2010). Jordan's interrogatory responses properly listed the bates range of Mirra's documents produced that contain the information he is seeking, to the extent she received it at all. (*See* Pl. Sept. 21, 2018 Interrogatory Responses at 9, 16, Def. Ex. B).

Where, as here, "the matter inquired of be only found in records or documents" that are readily available to Defendant, courts find "no reason would seem to exist to cast the burden of effort or expense upon the interrogated party" to ferret out that information from Defendant's records. *See Pappas v. Loew's, Inc.*, 13 F.R.D. 471, 473 n. 3 (M.D. Pa. 1953), *citing Cinema Amusements, Inc. v. Loew's Inc.*, D.C.Del.1947, 7 F.R.D. 318, at page 321, 322. And, "[i]t is also obvious that one party should not be allowed to require another to make investigation, research or compilation of data or statistics for him which he might equally as well make for himself." *Id.* citing *Byers Theatres, Inc. v. Murphy*, D.C.Va.1940, 1 F.R.D. 286, at page 289; *Klein v. Leader*

The Hon. Lawrence F. Stengel
Nov. 20, 2018
Page 6

*Elec. Corp.*, D.C.Ill.1948, 81 F.Supp. 624, at page 625. That is exactly what Mirra impermissibly is trying to do here.

For much the same reason, Mirra's complaint that his "contention interrogatories" are not answered has no legal basis. Where interrogatories "concern information that is equally available to Defendant[], as it is to Plaintiff[]," the "interrogator[ies] [are] plainly overbroad," and court's find "no basis to compel [the] Plaintiff to respond more fully." *Principal Life Ins. Co.*, 2010 WL 11549913, at *4-5; *see also Sergi v. Sterling Drug, Inc.*, 1988 WL 127720, at *1 n.3 (E.D. Pa. Nov. 29, 1988)(Plaintiff "is justified in objecting to interrogatories" since "these interrogatories seek information 'equally available to both parties,' [she] cannot be compelled to answer them under F.R.C.P. Rule 33.").

In any event, Mirra's interrogatories are premature. In a case like this one, where the "scope of discovery" is extensive and "complex," the interrogated party "need not respond to the portions of interrogatories [] that ask that [the interrogated party] 'state all facts and identify all evidence' regarding the listed subjects until the close of discovery." *Dalmatia Imp. Grp., Inc. v. Foodmatch, Inc.*, 2016 WL 5721161, at *2 (E.D. Pa. Oct. 3, 2016).[4] It would be "inappropriate to compel" Jordan "to answer such interrogatories until the close of fact discovery or even later." *Principal Life Ins. Co.* 2010 WL 11549913 at *4; *see also Dalmatia Imp. Grp., Inc.,* 2016 WL 5721161 at *2. All the more so where, as here, Mirra's interrogatories have asked Jordan to identify the value of assets and companies, which are "requests for" Jordan's "investigation, compilation, research and calculations, the result of which would not be a fact but a conclusion, and would impose on [] plaintiff undue expenditure of time and money." *See Pers. Audio, LLC v. Google LLC*, 2018 WL 4502002, at *1 (D. Del. Sept. 20, 2018); *see also Wolf v. United Air Lines*, 9 F.R.D. 271, 272 (M.D. Pa. 1949); Def. Aug. 22, 2018 Interrogatories at 4; Ex. D.

Mirra's interrogatories are also impermissible because they "call[] upon" Jordan before Mirra has produced the documents she has requested, "to investigate and assemble information, and then under oath to state conclusions based on such information where it is obvious that the information obtained might not be complete or accurate." *Wolf,* 9 F.R.D. at 272-273.[5] Since Mirra has not given Jordan the books and records he alone has to establish the facts to state a correct answer, his interrogatories "requir[e] the expression of opinion or call[] for conclusions" in a manner courts hold "objectionable." (*Id.*).

---

[4] *See, e.g.,* Mirra's Contention Interrogatory No. 1 at Ex. D, asking Jordan to "[i]dentify each cash or investment account, real estate holding, private company, and any other asset not listed on Schedule 2.1.1 ('Recognized Joint Assets') of the SDA that You contend should have been listed on Schedule 2.1.1, and identify its value as of the Effective Date."

[5] *See, e.g.* Def. Interrogatory No. 1 at Ex. D, asking Jordan to "identify" the "value" of "each cash or investment account, real estate holding, private company, and any other asset not listed on Schedule 2.1.1 ('Recognized Joint Assets') of the SDA," and "identify whether shares in the compan[ies]" that Mirra didn't list in the SDA "were held by Mirra, Jordan or both as of the [SDA] Effective Date."

EMERY CELLI BRINCKERHOFF & ABADY LLP

The Hon. Lawrence F. Stengel
Nov. 20, 2018
Page 7

Mirra's complaint about Jordan's interrogatory objections as "boilerplate" is, to say the least, odd. Jordan used the same interrogatory objections as Mirra. Jordan did so in an attempt to avoid controversy over those objections, but to no avail. If Jordan's objections are "boilerplate," so are Mirra's—the model they came from.

II.     Jordan Never Reneged on Her Agreement to be a 30(b)(6) Witness<br>Regarding Her Emails

Like Mirra's complaints about Jordan's interrogatory responses, his 30(b)(6) issue is manufactured out of whole cloth and raised now by Mirra simply to take the focus off his own serious spoliation problems.

The parties agreed how to resolve Mirra's questions about several of Jordan's inaccessible email accounts three years ago. In the RICO case, the parties (including Mirra and Jordan) stipulated that Jordan would testify at her deposition as a 30(b)(6) witness about the email accounts she couldn't access. As Mirra's counsel explained at a December 7, 2015 hearing, when asked by the Court:

> THE COURT: Okay. So I take it the issue of the [Jordan] emails has been
>                  worked out?

> MS. BESKIN: It has, Your Honor. The resolution that we came to was that the
>                 Plaintiffs have agreed to prepare Ms. Jordan who they represented
>                 as the person most knowledgeable of preservation of emails to
>                 testify at her deposition along the lines of a 30(b)(6) witness.

(*See* Dec. 7, 2015 Hearing Tr. at 104:3-23, Def. Ex. C). Nothing has changed since then.

Contrary to Mirra's bald and unsupported assertion, Jordan has never reneged on her agreement to be a 30(b)(6) deposition witness regarding her email accounts, a matter already resolved before the Court. She reaffirms that agreement, which resolves that concocted and phony issue. The relief requested by Mirra should be denied as moot.

But Mirra's raising this non-issue discloses his not-so-hidden agenda. After Mirra's counsel wrote me on Sept. 13, 2018 raising this issue anew, I explained after researching the extensive record that I was "aware" of the long "history" of this issue being resolved. But I pointed out to Mirra's counsel that I viewed their "raising this old issue as an effort to distract from attorney Troilo's possible manual deletion of his SDA emails." That is what this prong of Mirra's Nov. 6 letter is really all about, that is the subtext.

EMERY CELLI BRINCKERHOFF & ABADY LLP

The Hon. Lawrence F. Stengel
Nov. 20, 2018
Page 8

Troilo is a lawyer who represented both Mirra and Jordan and continues to work as Mirra's in-house counsel and employee now.[6] Judge McHugh has ruled that even if the parties "were represented by separate counsel in the negotiation of the SDA," Troilo was still "representing the parties with respect to certain joint assets" and "entit[ies] in which Plaintiff Jordan [still] had an ownership interest," regardless of "whether it was permissible" for him to do so given the parties had adverse interests. That is why Judge McHugh further ordered that the "privilege[d] [] communications and documents" generated by Troilo also applies to Plaintiff. As the fiduciary hub for both Jordan and Mirra at the SDA negotiation, Troilo generated the draft agreements and transmitted the key financial schedules in this case that reflected the parties' assets and liabilities, sending them to and from the parties' respective outside attorneys, accountants, and tax professionals.

Despite Troilo's key role at the SDA negotiation, the number of his email communications produced by Mirra in this litigation when compared to Jordan's production markedly differ. Jordan has produced over 500 emails with her outside attorneys at the time of the SDA negotiation – even waiving her attorney-client privilege to lay out her evidence.  In vivid and inexplicable contrast, Mirra produced only 17 Troilo emails in the same crucial SDA timeframe, claiming the rest were destroyed.

Our Sept. 19, 2018 letter discusses those missing Troilo emails. In discovery in the RICO case, Mirra's counsel wrote an extraordinary letter disclosing the spoliation issue for the first time. In that letter, Mirra's counsel announced that Troilo's email correspondence "during the period [of the SDA negotiation in] February 2008 and March 2008 is no longer in the [] Defendants' possession, custody or control. . . .These emails were lost or deleted from Mr. Troilo's email account. . . .We are unable to confirm whether the emails were automatically deleted or manually deleted prior to that time." (Def. Ltr., Oct. 14, 2015, Ex. G).

Our Sept. 19 letter seeks proof of what happened to those Troilo emails. We therefore requested the Court to order that a third-party vendor image Mirra's in-house attorney Troilo's email accounts and electronic devices (as well as in-house accountant Tropiano's, whom Troilo cc'ed), to find out whether the emails exist, and if not, how they came to be deleted.

Faced with his own serious and unexplained spoliation problem as set forth in our Sept. 19 letter, Mirra apparently thought it would be a good tactic to try to offset the harm and embarrassment by resurrecting the already resolved non-issue of Jordan's role as a 30(b)(6) witness. Since we raised an issue of possible spoliation by Mirra, Mirra tried to go shot for shot. It did not work.

---

[6] *See* Oct. 9, 2018 Troilo Affidavit, swearing that he is currently "Corporate Counsel for RAM Capital Group, LLC," at ¶ 1, Ex. E; *see also* Nov. 18, 2015 Troilo deposition testimony (in the RICO case) ███████████████████████████████████████████ ███████████████████████████████████████████████████ at 10-11, Ex. F.

E MERY C ELLI B RINCKERHOFF & A BADY LLP

The Hon. Lawrence F. Stengel
Nov. 20, 2018
Page 9

### III.   Jordan's Document Production

Equally without basis, Mirra alleges—speculates and imagines would be more like it—that Jordan had "insufficient[ly] collect[ed], review[ed] and produc[ed] [her] documents" in this case.  This is not true. The only support Mirra cites for this charge is Jordan's testimony in 2014—before her RICO document production—mentioning "boxes of documents" containing financial records in her New York home. But those documents were included among her 88,000-page production in the RICO case. For the RICO case, Jordan conducted a diligent review of all sources for the documents requested – and produced them.

While the RICO case was pending, this action was stayed. No further discovery took place in this case until February 2018. The nature of the issues in this case gave Jordan no opportunity to discover any new documents about Mirra's privately held companies or their assets. Mirra has always maintained the books and records of the parties' companies and their private investments, and continued to do so since Jordan's RICO production.

When Jordan received Mirra's document requests in this case, she and her attorneys conducted a similar thorough search and review of Jordan's records, as in the RICO case. Because of her meticulous and complete search and production of documents in the first action, she had little to produce here. That is why the only documents produced now are those reflecting Jordan's attorneys' searches updating themselves about the standing and other publicly available information about the companies.

Jordan has no new documents in response to Mirra's request regarding her warranty claim because he is the only one that has them. The key to the warranty claim is contained in Mirra's financial books and records and those of the private companies that Mirra has so far refused to produce. Jordan's review for responsive documents was appropriate, and her production is complete.

### Conclusion

Mirra has no genuine discovery complaints against Jordan. He has fabricated issues to try to counter-balance Jordan's withering and compelling description of Mirra's discovery transgressions. Mirra's requests for relief should be denied.

Respectfully yours,

*/s/ Daniel Kornstein*

Daniel J. Kornstein
*Attorney for Plaintiff*

EMERY CELLI BRINCKERHOFF & ABADY LLP

The Hon. Lawrence F. Stengel
Nov. 20, 2018
Page 10

      cc:    Kenneth J. Nachbar, Esq.
             Thomas Will, Esq.
             Robert Raskopf, Esq.
             Julia Beskin, Esq.
             Elihu Ezekiel "Zeke" Allinson III, Esq.

# EXHIBIT B

**quinn emanuel** trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York 10010-1601 | TEL (212) 849-7000 FAX (212) 849-7100

WRITER'S DIRECT DIAL NO.
**(212) 849-7482**

WRITER'S EMAIL ADDRESS
**juliabeskin@quinnemanuel.com**

November 6, 2018

**VIA EMAIL**

The Honorable Lawrence F. Stengel
Saxton & Stump
280 Granite Run Drive
Suite 300
Lancaster, PA 17601

Re:   *Gigi Jordan v. Raymond A. Mirra, Jr.*, No. 1:14-cv-01485 (D. Del.)

Dear Special Master Stengel:

I write on behalf of Defendant Raymond A. Mirra, Jr. to raise three deficiencies in Plaintiff Gigi Jordan's discovery responses and document production in this action: (1) Ms. Jordan's refusal to provide substantive responses to any of Mr. Mirra's Interrogatories; (2) Ms. Jordan's spoliation of emails, and refusal to honor her agreement to sit as a Rule 30(b)(6) witness on related document preservation issues; and (3) Ms. Jordan's failure to produce any non-public documents in response to Mr. Mirra's First Set of Requests for Production, and failure to conduct any review whatsoever to identify responsive documents.  The parties have met and conferred on each of these issues, but are at an impasse, and therefore Mr. Mirra seeks the Court's intervention.

This Action, and the related action, *The Hawk Mountain LLC, et al. v. Raymond A. Mirra, Jr., et al.*, C.A. No. 13-02083-SLR-SRF (D. Del.) (the "RICO Action"), arise out of the Separation and Distribution Agreement ("SDA") that Ms. Jordan and Mr. Mirra entered into on March 13, 2008, which ended their highly lucrative business partnership.  *See* Ex. A (SDA).  The SDA identified and separated Mr. Mirra and Ms. Jordan's joint assets and liabilities, and resulted in Ms. Jordan walking away with nearly $50 million in cash and other assets.  The Court has already held that the majority of the claims in this Action and the RICO Action are barred by the Mutual General Release Agreement (the "Release") signed on the same date as the SDA.  *See* D.I. 202 at 1 ("[T]he Mutual General Release Document …, if accepted as valid, bars all claims except Plaintiff Gigi Jordan's breach of warranty claim [] and her claim for declaratory relief"), and 3-4; *see also* D.I. 199 (Report and Recommendation of Magistrate Judge Fallon).  Ms. Jordan's remaining claim is one for breach of warranties regarding the schedules of assets and liabilities to the SDA (the "SDA Schedules").  Before Ms. Jordan's other claims were dismissed, the parties engaged in extensive

**quinn emanuel urquhart & sullivan, llp**

LOS ANGELES | NEW YORK | SAN FRANCISCO | SILICON VALLEY | CHICAGO | WASHINGTON, DC | HOUSTON | SEATTLE | BOSTON | SALT LAKE CITY
LONDON | TOKYO | MANNHEIM | HAMBURG | PARIS | MUNICH | SYDNEY | HONG KONG | BRUSSELS | ZURICH | SHANGHAI | PERTH | STUTTGART

discovery during the course of the RICO Action, all of which applies equally in this Action.  Over the last several months the parties have been engaged in written discovery and document production to fill any remaining gaps in the factual record pertaining to the breach of warranties claim.  Ms. Jordan now refuses to provide Mr. Mirra with the discovery necessary to defend against her remaining claim.

### 1. Ms. Jordan's Failure to Respond to Mr. Mirra's First Set of Interrogatories

Mr. Mirra served seven interrogatories on Ms. Jordan on August 22, 2018.  Ms. Jordan's response to each interrogatory is wholly deficient, and therefore Mr. Mirra requests an order compelling Ms. Jordan to provide substantive responses to each of Mr. Mirra's interrogatories.

*First*, in response to Interrogatory Nos. 1 and 5, Ms. Jordan improperly points en masse to nearly 300,000 pages of Mr. Mirra's and various third parties' document productions, citing Rule 33(d).  *See* Ex. B (Plaintiff Gigi Jordan's Responses and Objections to Defendant's First Set of Interrogatories), Response Nos. 1 & 5.  Interrogatory Nos. 1 and 5 seek necessary information regarding the scope of assets and liabilities Ms. Jordan is alleging were omitted from the SDA Schedules—namely, what are they?  These Interrogatories were necessitated by Ms. Jordan's continually moving the goal posts in her own discovery requests, adding new allegations of purportedly omitted assets not identified in her complaint.  Yet, by pointing haphazardly to a mass of documents, Ms. Jordan fails to actually identify a single asset or liability that she alleges should have been listed on the SDA Schedules but was not.

In responding as she has, Ms. Jordan abuses Rule 33(d), which permits a party to answer an interrogatory by "specifying the records that must be reviewed, ***in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could***." Fed. R. Civ. P. 33(d) (emphasis added).  Delaware courts have consistently held that interrogatory responses citing to several thousand pages of produced documents, like Ms. Jordan's, are inadequate.  *See, e.g.*, *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 2005 WL 8136574, at *1–2 (D. Del. Oct. 11, 2005) (ordering narrative answer to interrogatory where responding party cited Rule 33(d) and pointed to 6,000 pages of documents); *Novanta Corp. v. Iradion Laser, Inc.*, 2016 WL 4987110, at *8 (D. Del. Sept. 16, 2016) (ordering responding party to supplement its response to interrogatory by "***identifying with particularity*** the documents to which it refers") (emphasis added).  Here, Ms. Jordan's Responses to Interrogatory Nos. 1 and 5 are even more inappropriate than the responses at issue in *Power Integrations* and *Novanta Corp.* because she points to nearly 300,000 pages without any detail, and because responding to these Interrogatories requires identifying specific companies and assets by name—information that is not readily susceptible to a Rule 33(d) response.  Ms. Jordan should be compelled to provide detailed responses to these Interrogatories and, specifically, should be required to provide a list of the companies, assets, and/or liabilities that she alleges should have been but were not disclosed in the SDA Schedules.

*Second*, Ms. Jordan failed to provide substantive responses to Interrogatory Nos. 2 and 6, which ask her to describe the basis for her contention that each asset and/or liability she identified in response to Interrogatory Nos. 1 and 5 should have been included on the SDA Schedules.  In her Response to Interrogatory No. 2, which requests that Ms. Jordan "describe in detail the basis

for [her] contention that the cash or investment account, real estate holding, private company, or other asset was an 'asset' as of the Effective Date [of the SDA], and that [Ms. Jordan] held a joint interest in [each such] asset as of the Effective Date [of the SDA]," Ms. Jordan cites only to deposition testimony of Mr. Mirra regarding the parties' overall 50/50 arrangement for their holding of assets. *See* Ex. B, Response No. 2. Ms. Jordan provides no information regarding why any particular account, real estate holding, private company, or other asset constituted an "asset" as defined in the SDA, and provides no asset-specific information whatsoever regarding her contentions as to joint ownership. *Id.* Ms. Jordan's Response to Interrogatory No. 6, which seeks the same type of information relating to liabilities Ms. Jordan contends should have been listed on the SDA Schedules, is even less complete. In it, Ms. Jordan responds only that she "contends all 'liabilities' should have been listed on the SDA Schedules," but fails to provide any information pertaining to any particular liability. *See id.*, Response No. 6.

These evasive answers improperly choose to address only the portion of each interrogatory that Ms. Jordan feels might support her claims, rather than providing the full scope of information requested. *See, e.g.*, *XPRT Ventures, LLC v. eBay, Inc.*, 2011 WL 13142146, at *4 (D. Del. Nov. 30, 2011) (holding that a party "may not pick-and-choose which portions of the discovery request that it likes, and then claim that the response is complete" because such a response "fall[s] short of the standard set forth in Federal Rule 33(b)"). Nor can Ms. Jordan stand on her vague objection that the interrogatories are premature as an excuse for her failure to answer them at this time. *See In re Wilmington Tr. Sec. Litig.*, 2017 WL 2457456, at *2-3 (D. Del. June 6, 2017 (requiring plaintiff to provide full responses before the close of fact discovery where "production [was] almost complete and the responses would contribute meaningfully to the progress of the case," and stating that "the revelation of addition pertinent information in discovery … may be addressed through subsequent supplementation of the responses in accordance with the Federal Rules."). Here, where the parties began discovery three and one-half years ago, have produced hundreds of thousands of pages of documents, and conducted twenty-three depositions, Ms. Jordan cannot plausibly argue that she is unaware of the specific companies or assets that she alleges support her claim for breach of warranties. Accordingly, Ms. Jordan should be compelled to answer Interrogatory Nos. 2 and 6 in full, in conjunction with amending her responses to Interrogatory Nos. 1 and 5.

*Third*, Ms. Jordan refuses to provide any substantive response whatsoever to Interrogatory Nos. 3, 4, and 7. These interrogatories seek information regarding Ms. Jordan's knowledge of any omitted assets and liabilities she claims to have only learned about during discovery in this action. Thus, Ms. Jordan's responses are highly relevant to Mr. Mirra's defense that Ms. Jordan was fully aware of these entities before she executed the SDA. If that is the case, then Ms. Jordan could not have relied upon the representations and warranties in the SDA, and Mr. Mirra therefore is not bound by them. *See Kelly v. McKesson HBOC, Inc.*, 2002 WL 88939, at *8-9 (Del. Super. 2002); *Middleby Corp. v. Hussman Corp.*, 1992 WL 220922, at *6 (N.D. Ill. 1992) (discussing Delaware law). These interrogatories also seek information relevant to whether Ms. Jordan was aware at the time of the SDA, or is now aware, that companies she alleges were omitted from the SDA Schedules were non-operative and/or valueless at the time of the SDA, which will narrow the remaining issues in dispute prior to summary judgment and a potential trial. However, instead of providing substantive responses, Ms. Jordan lodges a series of irrelevant boilerplate objections to each of these Interrogatories. *See* Ex. B, Response Nos 3, 4 & 7. Ms. Jordan's failure to

3

substantively respond to Interrogatory Nos. 3, 4, and 7 is a transparent attempt to avoid discovery that would potentially undermine the basis for her breach of warranties claim; she should be compelled to substantively respond to each of these Interrogatories in full.

Mr. Mirra asks Your Honor to compel Ms. Jordan to provide amended responses to each of Mr. Mirra's seven interrogatories by no later than December 15, 2018.

### 2. Ms. Jordan's Failure to Preserve Her Emails

Mr. Mirra has reason to believe that Ms. Jordan spoliated highly relevant discovery by failing to make any effort to collect or preserve documents from at least two of her personal email accounts for nearly two years after initiating this action.[1]  In order to obtain sworn testimony clarifying and memorializing certain prior representations of Ms. Jordan's counsel regarding Ms. Jordan's spoliation of her emails, Mr. Mirra requests an order compelling Ms. Jordan to sit as a 30(b)(6) witness on topics concerning efforts to preserve and collect relevant documents from Ms. Jordan's email accounts, as Ms. Jordan agreed to do in 2015 when her deposition in this Action was originally scheduled.  *See* Ex. C (Dec. 7, 2015 Hr'g Tr. at 104:3-23).

In August 2015, while the parties were engaged in discovery in the RICO Action, Ms. Jordan's prior counsel made the following representations, which support sanctions against Ms. Jordan for spoliation if true:

- Ms. Jordan no longer has access to the Gmail Account or the Holy Light Account, both of which she used in 2008 during the negotiation of the SDA and, as a result, Ms. Jordan never collected any documents from the Gmail Account or the Holy Light Account.  *See* Ex. D (Sept. 1, 2015 Ltr. from J. Beskin to A. Brenner summarizing Aug. 26, 2015 meet and confer).

- Despite filing her initial complaint in this Action on March 9, 2012, Ms. Jordan made no effort to collect or preserve documents or emails stored in the Gmail Account or the Holy Light Account until 2014—and she only attempted to access such documents after these accounts were subpoenaed in Ms. Jordan's criminal action for killing her eight-year old son.  *See id*.

- As of 2015, there were no relevant emails in Ms. Jordan's primary email account, gjordan50@aol.com (the "AOL Account"), as a result of an automatic deletion function that Ms. Jordan failed to disable.  *See id*.

Ms. Jordan's failure to preserve relevant emails from her email accounts raises serious spoliation concerns.  It is blackletter law that "[a] party who has reason to anticipate litigation has an affirmative duty to preserve evidence which might be relevant in the lawsuit."  *In re Weschler*,

---

[1] These email accounts are gigijordan015@gmail.com (the "Gmail Account") and holylight@live.com (the "Holy Light Account").  Mr. Mirra also discovered an additional email account used by Ms. Jordan, jdjuliedavis@gmail.com (the "Julia Davis Account"), from which Ms. Jordan never produced documents.

121 F. Supp. 2d 404, 415 (D. Del. 2000); *see also In re Intel Corp.*, 258 F.R.D. 280, 282 n.5 (D. Del. 2008) ("[A] party is not permitted to exploit the routine operation of an information system to thwart discovery obligations by allowing that operation to continue in order to destroy specific stored information that [the party] is required to preserve."). In order to obtain sworn testimony to support a potential spoliation or sanctions motion, Mr. Mirra and the RAM Defendants served a deposition notice in 2015 for "the person or persons most knowledgeable regarding efforts to preserve and collect relevant documents from Jordan's email accounts." *See* Ex. E (deposition notice). However, Ms. Jordan and her fellow plaintiffs refused to provide a witness for deposition.

Accordingly, Mr. Mirra and the RAM Defendants moved to compel the deposition. *See* Ex. F (RICO Action, D.I. 335), Section 4. In response to this motion to compel, Ms. Jordan's counsel represented to the Court that, because none of Ms. Jordan's attorneys had tried to preserve the email accounts prior to 2014, Ms. Jordan was "the solitary witness who might reasonably be questioned regarding the existence of her various email accounts, and what steps were taken after 2011 to preserve or perpetuate access to those accounts." Ex.G (RICO Action, D.I. 343), Section 3. On December 7, 2015, the day this and other issues were scheduled for oral argument, Ms. Jordan agreed to sit for deposition as a Rule 30(b)(6) witness on issues related to the preservation of her emails. *See* Ex. C at 104:3-23. The parties represented the nature of this agreement to the Court during their December 7, 2015 discovery dispute conference, thereby avoiding the need for oral argument on the issue. *See id*.

However, before Ms. Jordan was deposed, the Court issued an order dismissing the RICO Action in its entirety (*see* RICO Action, D.I. 457, 472), and staying discovery in this Action pending resolution of motion to dismiss briefing (D.I. 166, So Ordered on July 11, 2016). Thus, although Mr. Mirra has not yet had an opportunity to depose Ms. Jordan according to the terms of the parties' agreement, Ms. Jordan's potential spoliation remains an open issue that is relevant to her remaining claim for breach of warranties, and her agreement to sit as a 30(b)(6) witness on these issues should be treated as continuing.

When Mr. Mirra recently requested that Ms. Jordan confirm she would sit as a 30(b)(6) witness on these topics at her upcoming deposition, Ms. Jordan refused. Reneging on the parties' agreement, Ms. Jordan claimed to "view [Mr. Mirra's] raising this old issue as an effort to distract from attorney Troilo's possible manual deletion of his SDA emails." *See* Ex. H (Sept. 13, 2018 Ltr. from N. Hoy to D. Kornstein summarizing Sept. 12, 2018 meet and confer), Section II; Ex. I (Sept. 17, 2018 Reply Ltr. from D. Kornstein to N. Hoy). However, Ms. Jordan's potential spoliation of her emails and related failure to produce electronic documents that may bear on dispositive issues in this litigation requires—at the very least—further explanation. Depending on the nature of the testimony obtained, Mr. Mirra reserves his right to request that the Court draw an adverse inference regarding Ms. Jordan's awareness of the entities allegedly omitted from the SDA Schedules prior to the execution of the SDA. *See, e.g.*, *N.V.E., Inc. v. Palmeroni*, 2011 WL 4407428, at *7 (D.N.J. Sept. 21, 2011) (drawing adverse inference where party "was aware that litigation was imminent … yet did nothing to back-up" its email accounts, "[n]o litigation hold was ever issued," and the party "did not have a document retention policy in place").

For these reasons, Mr. Mirra requests that Your Honor issue an order requiring Ms. Jordan to provide Rule 30(b)(6) testimony at her upcoming deposition regarding her failure to preserve or

collect documents stored in these email accounts, and her potential spoliation of highly relevant evidence.[2]

### 3. Ms. Jordan's Refusal to Review or Produce Any Documents

On August 1, 2018, Mr. Mirra served fifteen requests for production on Ms. Jordan (the "New RFPs"). *See* Ex. J (Defendant Raymond A. Mirra, Jr.'s First Request for the Production of Documents). Based on Ms. Jordan's failure to produce a single non-public document responsive to the New RFPs, and based on information provided by Ms. Jordan's counsel during the parties' meet and confer on this issue, Mr. Mirra understands that Ms. Jordan has not performed *any* review to identify or produce documents responsive to the New RFPs. Mr. Mirra therefore requests an order compelling Ms. Jordan to perform a review of documents in her possession, custody or control which have not yet been produced in this litigation, and to produce all documents responsive to the New RFPs.

The New RFPs seek documents related to (1) the existence, ownership, and value of certain entities and assets Ms. Jordan alleges were omitted from the SDA Schedules (*see id.*, Request Nos. 1-7, 13, & 15), and (2) Ms. Jordan's knowledge concerning these entities and assets prior to the execution of the SDA (*see id.*, Request Nos. 8-12, 14). Despite serving Responses to all fifteen Requests stating that Ms. Jordan would "produce any responsive documents ... that have not been previously produced in the RICO Action,"[3] Ms. Jordan failed to produce a single non-public document responsive to any of the New RFPs. Instead, Ms. Jordan produced only eighty-one public documents, such as state corporation filings, "reflecting Plaintiff's attorneys' searches to ascertain information about the standing of the companies with various secretaries of state." Ex. I at 1. But even this sparse production shows that Ms. Jordan is pursuing claims and seeking discovery into entities that she and her attorneys know did not exist as of the effective date of the SDA,[4] and therefore could not support her claim for breach of warranties. Nonetheless, Ms. Jordan has informed us that her production is complete.

Ms. Jordan's failure to produce *any* non-public responsive documents raises serious questions regarding the sufficiency of her collection, review and production of documents. Ms. Jordan has long maintained, including during testimony in her criminal trial, that she possessed boxes of documents stored at her Upper West Side brownstone relating to her and Mr. Mirra's finances and businesses. *See* Ex. O (Tr. at 2703:10-2705:12 , *People v. Jordan*, Ind. No. 621-2010, Oct. 9, 2014) (referring to Ms. Jordan's review of financial statements and documents stored at her Brownstone related to her financial holdings with Mr. Mirra). Ms. Jordan also produced,

---

[2] In the alternative, in lieu of a 30(b)(6) deposition, Mr. Mirra requests an order requiring Ms. Jordan to provide an affidavit swearing to the same representation made off the record by her counsel in 2015, and supplementing that information with additional detail.

[3] *See* Ex. K (Plaintiff's Response to Defendant Mirra's First Request for Documents), Response Nos. 1-15.

[4] *See, e.g.*, Ex. L (JORDAN00000034) (showing that Hometech Therapies (PA), Inc. was not formed until December 16, 2009); Ex. M (JORDAN00000038) (showing that AAA Equipment Rental LLC was dissolved in April 2006); and Ex. N (JORDAN00000001) (showing that Ashland Pharmacy, Inc. was dissolved in December 2005).

during the course of discovery in the RICO Action, documents on an RFP-by-RFP basis (*see, e.g.,* Ex. P (REQ071_0001208) (document produced in response to RICO Action, RFP No. 71); Ex. Q (REQ040_0000001 (document produced in response to RICO Action, RFP No. 40)), indicating that Ms. Jordan's attorneys reviewed a collection of electronically-stored documents for responsiveness to the individual RFPs served by Defendants in the RICO Action and produced only a subset of those documents. Further, certain of the entities Ms. Jordan now alleges were improperly omitted from the SDA Schedules (and for which Mr. Mirra requested responsive document production) were not previously in issue because they were not mentioned in the complaints in the RICO Action or this Action. Thus, there is no reason to believe Ms. Jordan's attorneys would have searched for any documents in possession regarding these newly-named entities.

As a result, during a meet and confer on September 12, 2018, counsel for Mr. Mirra asked counsel for Ms. Jordan to supply the following information regarding Ms. Jordan's document review process: (1) what steps did Ms. Jordan undertake to review documents for responsiveness to Mr. Mirra's New RFPs; (2) did Ms. Jordan review all documents in her possession that were *not* produced in the RICO Action; and (3) did Ms. Jordan review any electronic or non-public hard copy documents for responsiveness. *See* Ex. H at 4-5. Ms. Jordan's counsel could not answer any of the questions posed—nor provide any information regarding Ms. Jordan's review of documents. *See id.* Mr. Mirra then raised these questions again in a letter summarizing the parties' September 12 meet and confer. *See id.* Ms. Jordan responded by refusing to provide answers to Mr. Mirra's questions, or to provide any information regarding her collection and review process. *See* Ex. I. Instead, Ms. Jordan provided only the purported "explanation" that the entities at issue had not been disclosed to Ms. Jordan before Mr. Mirra's document productions—a fact easily proven false by the parties' productions to date (*see, e.g.*, Ex. Q (May 31, 2004 handwritten balance sheet provided to Ms. Jordan by Mr. Mirra, identifying Retrodyne Corporation and Logic Medical Solutions, Inc., among other purportedly "non-disclosed" companies). In sum, Ms. Jordan's sparse production and the responses of her counsel strongly suggest that she has performed no review for documents responsive to the New RFPs. Because the New RFPs seek a different set of documents that those sought by Defendants in the RICO Action, Ms. Jordan's reliance on her RICO Action production is clearly insufficient.[5]

Mr. Mirra is entitled to discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." *See* Fed. R. Civ. P. 26(b)(1). Here, the status as of March 12, 2008 of each company Ms. Jordan alleges was held jointly, had value at the time of the SDA, and was not included on the SDA Schedules is directly relevant. So too is Ms. Jordan's knowledge regarding the status of each of these companies prior to the execution of the SDA. Given Ms. Jordan's facially deficient review and production efforts, Mr. Mirra requests that Your Honor issue an order compelling Ms. Jordan to conduct an appropriate review and produce all documents in her possession that are responsive to the New RFPs, but were not produced in the RICO Action.

---

[5] Ms. Jordan also cannot plausibly claim undue burden associated with a review unique to this Action, as she demanded that Mr. Mirra perform a far broader, more extensive, and more costly review of his own. Mr. Mirra ultimately did so and produced nearly 10,000 new documents.

Respectfully,

*/s/* Julia Beskin

Julia Beskin

# EXHIBIT C

Exhibit C to Plaintiff's March 13, 2019 Objections

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| GIGI JORDAN | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 1:14-cv-01485-GAM |
| | ) | |
| RAYMOND A. MIRRA, JR., | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## PLANTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

**PLEASE TAKE NOTICE** that pursuant to Rules 26 and 34 of the Federal Rules

of Civil Procedure, the Local Civil Rules of the United States District Court for the District of

Delaware ("Local Civil Rules"), and the Court's Default Standard for Discovery, including

Discovery of Electronically Stored Information ("Default Standard"), Plaintiff, Gigi Jordan

("Jordan"), hereby demands the Defendant, Raymond A. Mirra, Jr. ("Mirra") respond to this

Plaintiff's First Request for Production of Documents ("Request") and produce the documents

and electronically stored information requested herein within thirty (30) days of service of

these requests at the offices of Emery Celli Brinckerhoff & Abady LLP, 600 Fifth Avenue, 10th Fl.,

New York, New York 10020.

The documents requested for discovery and inspection are to be produced according to

the definitions and instructions herein.

of Florida, Inc. ("Indago HealthCare FL"); Indago HealthCare, Inc. ("Indago HealthCare"); Ledmir, LLC ("Ledmir"); Logic Medical Solutions, Inc. ("Logic Medical"); Neurology Therapeutics, Inc. ("Neurology Therapeutics"); Parallex, LLC ("Parallex"); Physician Oncology Network, Inc. ("PONI"); Practice Made Perfect, Inc. ("PMP"); Pridecare, Inc. ("Pridecare"); Primavera, Inc. ("Primavera"); PRN Healthcare Services, Inc. ("PRN Healthcare"); RAM Business Holdings, LLC ("RAM Business"); RAM Capital Group, LLC ("RAM Capital"); RAM Capital II, LLC ("RAM Capital II"); RAM Consultants, LLC ("RAM Consultants"); RAM Developers, Inc. ("RAM Developers"); RAM Enterprises Holding Company, Inc. "RAM Enterprises"; RAM Equity Holdings, LLC ("RAM Equity"); RAM Investment Management, Inc. ("RAM Investment"); RAM Realty Holdings, LLC ("RAM Realty"); Retrodyne Corporation ("Retrodyne"); Stat Business Group, LLC ("Stat Business"); Stone Ridge Enterprises, LLC ("Stone Ridge"); Sven LLC ("Sven"); U.S. Neurology Corporation ("U.S Neurology"); Valley Creek Estate, Inc. ("Valley Creek"); VasGene Therapeutics, Inc. ("VasGene"); Versatile Care Solutions Inc., ("Versatile"); and West Highland Company, LLC ("West Highland").

12. **"Financial Institutions"** shall mean an Entity who deals with monetary transactions, who lends money, who holds and manages securities for investment purposes, and who facilitates the buying and selling of financial securities between buyer and seller. Financial Institutions shall include but is not limited to commercial banks, brokerage firms, investment banks, saving and loan associations, insurance companies, and trust funds.

13. "**Metadata**" shall refer to the information about information or data about data, and includes, without limitation: (i) information embedded in or associated with a Native File Format that is not ordinarily viewable or printable from the application that generated, edited,

or modified such native file which describes the characteristics, origins, usage, and/or validity of

the electronic file and/or (ii) information generated automatically by the operation of a

computer or other information technology system when a native file is created, modified,

transmitted, deleted, or otherwise manipulated by a user of such a system.

14.     "**Native File Format**" shall refer to the format of ESI in which it was generated

and/or used by the producing party in the usual course of its business and its regularly

conducted activities. Native File Format shall also refer to the default file format for which the

application was designed to work.

15.     "**Organizational Formalities**" shall mean but is not limited to articles of

incorporation; articles of merger; bylaws; corporate books; stock certificates, minutes of all

meetings of officers, directors, managers, members, board members, and shareholders and all

determinations and/or resolutions; appointment of officers, directors, managers, members,

and board members; operating agreements, certificate of determination, non-disclosure

agreements, shareholder agreements and amendments thereto; business plans; membership

interest statements; statements of information; annual reports; corporate filings; U.C.C. filings;

Dissolution Documents; and organizational charts.

16.     "**Ownership Interest**" shall mean the possession of stock, equity in the capital,

or any interest in revenue of an entity.

17.     "**Person**" shall refer to natural persons, agencies, departments, firms,

partnerships, associations, joint ventures, corporations, proprietorships, or any other business

entities and any management, business, or governmental organizations, or any other group of

natural persons.

lawyer (whether inside or outside) that serves or served as your counsel, representatives, independent contractors, advisors, attorneys, relatives, friends, and any other person or public or private entity that has actual physical possession thereof.

3.      As the term "possession" relates to e-mail, the term includes, but is not limited to, e-mails contained in Your electronic e-mail directories, including but not limited to: (a) "deleted" e-mails which have not been permanently deleted, including all subdirectories irrespective of the title of such subsidiaries; (b) "sent" emails, including all subdirectories irrespective of the title of such subdirectories; and (c) "received" e-mail, including all subdirectories irrespective of the title such subdirectories.

4.      As the term "possession" relates to websites and social media platforms, the term includes but is not limited to electronic content that is posted either publicly or privately on websites and social media platforms (such as Facebook, Instagram, Twitter, Snapchat, and Whatsapp) in Your possession, custody, or control.

5.      To the extent these Requests require You to produce Tax Returns, You shall produce Tax Returns that are complete and signed as submitted to the Internal Revenue Service ("IRS") and any other taxing authority. If a complete and signed Tax Return is not in Your possession, custody, or control, You shall submit a request to the IRS (Form 4506) and to any other taxing authority to obtain a complete and signed Tax Return.

6.      To the extent these Requests require You to produce spreadsheets and Excel files in their Native File Format, You shall remove all filters that obscure data from view, result in shortened descriptions, truncated data, and batched activity rather than in detail by transaction.

4.     All hard copy documents shall be produced as single-page TIFF images with accompanying document-level OCR and Concordance and Opticon load files with the following Metadata fields: BegBates, EndBates, Page Count, and Custodian (as provided in Appendix A).

5.     ESI shall be produced as single-page TIFF images except:

(a)     Excel files, spreadsheets, and tables shall be produced in its Native File Format with the native file name by the BegBates;

(b)     Media files, Images, and Sound Recordings shall be produced in its Native File Format with the native file name by the BegBates;

(c)     Peachtree/Sage 50 and Quickbooks accounting data files shall be produced in its Native File Format with the native file name by the BegBates.

6.     You shall provide extracted text/OCR data at document level and Concordance and Opticon load files with the Metadata fields provided in Appendix A, where applicable.

7.     Native files for all ESI documents shall be maintained in their Native File Format, and such files shall be produced upon the request of the receiving party.

8.     Selection of documents from the files and other sources and the numbering of such documents shall be performed in such a manner as to ensure that the source of each document may be determined.

9.     File folders with tabs or labels or directories of files identifying documents must be produced intact with such documents.

10.     Documents attached to each other shall not be separated.

11.     A document with handwritten, typewritten or other recorded notes, editing marks, etc., is not and shall not be deemed to be identical to one without such modifications, additions, or deletions.

**V. DOCUMENT REQUESTS - GENERAL**

Each Request for Production below requires an affirmative response by checking one of the four columns A to D (see General Instructions at Paragraphs 10 through 13).

Column A - Producing
Column B - Producing for part of the time period
Column C - Lost, destroyed, or unable to locate after reasonable search
Column D - Document exists, but is not produced under a claim of privilege

**PRODUCE ALL DOCUMENTS REQUESTED FOR THE TIME PERIOD INDICATED BELOW:**

| **REQUEST FOR PRODUCTION NO. 62:** - Related to Your Counterclaims' assertion of "damages," "attorney fees," and "costs," produce all Documents, including: | **TIME PERIOD(S)** | **RESPONSE** A | B | C | D |
|---|---|---|---|---|---|
| 62.1 | All Documents Related to letters of engagement, retention agreements, and vendor contracts | All | | | | |
| 62.2 | All Documents Related to Your bills, invoices, statements, and timesheets documenting the "attorney fees," "costs,"and all other "damages" asserted; and | All | | | | |
| 62.3 | All Documents Related to Your payment of the "attorney fees," "costs,"and all other "damages" asserted. | All | | | | |

| **REQUEST FOR PRODUCTION NO. 63:** | **TIME PERIOD(S)** | **RESPONSE** A | B | C | D |
|---|---|---|---|---|---|
| 63.1 | Produce all Documents upon which You intend to rely in the depositions of Mirra, Jordan, Brian Donnelly, Mark Petersen, Lara Gillman, Benjamin Elliott, and all other depositions of other Persons You contemplate deposing in this case. | All | | | | |

| **REQUEST FOR PRODUCTION NO. 64:** | **TIME PERIOD(S)** | **RESPONSE** A | B | C | D |
|---|---|---|---|---|---|
| 64.1 | Produce all Documents You relied (or intend to rely) on in response to the interrogatories propounded upon You by Plaintiff. | All | | | | |

| **REQUEST FOR PRODUCTION NO. 65:** | **TIME PERIOD(S)** | **RESPONSE** A | B | C | D |
|---|---|---|---|---|---|
| 65.1 | Produce all Documents on which You used, considered, and relied upon in preparing Your Answer and Counterclaims dated January 12, 2018. | All | | | | |

| **REQUEST FOR PRODUCTION NO. 66:** | **TIME PERIOD(S)** | **RESPONSE** A | B | C | D |
|---|---|---|---|---|---|
| 66.1 | For all entities referenced in the SAC (at ¶213), produce all Documents used, considered, relied upon, and underlying Your Answer's assertion that each of those entities were either "dissolved," "inactive," or " had no value" at the SDA (Answer at ¶213). | All | | | | |

| **REQUEST FOR PRODUCTION NO. 67:** | **TIME PERIOD(S)** | **RESPONSE** A | B | C | D |
|---|---|---|---|---|---|
| 67.1 | Produce all Documents used, considered, relied upon, and underlying Your Answer's assertion that Jordan received "approximately $46.6 million in cash and other assets" at the SDA. (Counterclaims at ¶16) | All | | | | |

| **REQUEST FOR PRODUCTION NO. 68:** | **TIME PERIOD(S)** | **RESPONSE** A | B | C | D |
|---|---|---|---|---|---|
| 68.1 | Produce all Documents Related to attorney Joseph A. Troilo Jr.'s, (Troilo) employment and engagement as counsel to Mirra and Jordan, and as corporate counsel to all Jordan/Mirra Companies, including his employment and consulting agreements, letters of engagement, and all Documents memorializing Troilo's Remuneration, including W2s, W9s, 1099s, and payroll stubs | All | | | | |
| 68.2 | Produced all Documents used, considered, relied upon, and underlying Your Answer's assertion that Troilo "never purported to represent Jordan in the [SDA] transaction." (Counterclaims at ¶15). | All | | | | |

| **REQUEST FOR PRODUCTION NO. 69:** | **TIME PERIOD(S)** | **RESPONSE** A | B | C | D |
|---|---|---|---|---|---|
| 69.1 | To the extent not already Produced in the RICO discovery and in response to Plaintiff's Request for Production 1 to 61, produce all Documents that memorialize Jordan's Ownership Interest, including her standing as a beneficiary, officer, authorized signatory, and her liability Related to any Debt Instrument, from January 1, 2002 through the date of your Answer, January 12, 2018. | Jan 1, 2002 to January 12, 2018 | | | | |

| **REQUEST FOR PRODUCTION NO. 70:** | **TIME PERIOD(S)** | **RESPONSE** A | B | C | D |
|---|---|---|---|---|---|
| 70.1 | All Documents Related to the "Schedule 'A' Jordan Property Schedule['s]" report of "$3,600,000" in her "Gruntal Securities Account" (Account No.728-019946), and all other dispositions of those funds. (REQ058_0001000). | All | | | | |

## APPENDIX A

| FIELD | DESCRIPTION |
|---|---|
| BegBates | Page ID of first page in a document. |
| EndBates | Page ID of last page in a document. |
| BegAttach | BegBates of parent record. |
| EndAttach | Page ID of last page in a document family. |
| From | Author of the e-mail message. |
| To | Main recipient(s) of the e-mail message. |
| CC | Recipient(s) of "Carbon Copies" of the e-mail message. |
| BCC | Recipient(s) of "Blind Carbon Copies" of the e-mail message. |
| DateSent | Sent date of an e-mail message. |
| TimeSent | Time the e-mail message was sent. |
| Email_Subject | Subject of the e-mail message. |
| Author | Author field value pulled from metadata of the electronic file. |
| Title | Title filed value extracted from the metadata of the electronic file. |
| Custodian | Textual value of the custodian. |
| DateCreated | Creation date of the electronic file. |
| TimeCreated | Creation time of the electronic file. |
| FileDescription | File extension or other description of the e-mail//electronic file type. |
| Filename | Original filename of the electronic file. Contains subject of e-mail message for e-mail records. |
| Filename | Size of native file, in bytes. |
| Filesize | Size of native file, in bytes. |
| MD5Hash | MD5 hash-128-bit output. |
| Attach | Semi-colon delimited string of attachments in the e-mail. |
| DateLastMod | Date the electronic file was last modified. |
| TimeLastMod | Time the electronic file was last modified. |
| PgCount | Number of pages in a document. |
| NativeLink | Logical file path to the file produced in native format. |
| FilePath | Logical file path that shows where original file was stored. |

# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

- - -

GIGI JORDAN,                    : CIVIL NO. 14-1485
                               :
          Plaintiff   :
                               :
                               :
                               :
                               :
                               :
     v.                        :
                               :
                               :
                               :
                               :
                               :
RAYMOND A. MIRRA, JR.,    : Philadelphia, Pennsylvania
                               : January 11, 2019
          Defendant   : 10:01 a.m.

- - -

TRANSCRIPT OF DISCOVERY DISPUTE HEARING
BEFORE THE HONORABLE LAWRENCE F. STENGEL
SPECIAL MASTER

- - -

APPEARANCES:

For the Plaintiff:   DANIEL J. KORNSTEIN, ESQUIRE
                     Emery Celli Brinckerhoff & Abady
                     600 Fifth Avenue
                     10th Floor
                     New York, NY 10020


For the Defendant:   JULIA BESKIN, ESQUIRE
                     DONALD REINHARD, ESQUIRE
                     Quinn Emanuel
                     51 Madison Avenue
                     22nd Floor
                     New York, NY 10010

TK Transcribers
9 Dogwood Avenue
Glassboro, NJ 08028
609-440-2177

71

1    MS. BESKIN:  Yes, there was a large

2    document production in the RICO case and -- so

3    there's -- let me just -- let me just preface --

4    THE COURT:  Sure, go ahead.

5    MS. BESKIN:  -- my presentation by noting

6    in our letter, we raise three discovery deficiencies

7    by Ms. Jordan, and I'm going to spend most of my time

8    talking about the first issue, which is her deficient

9    interrogatory responses.  The other two issues that

10   we raised are, number one, her failure to produce any

11   non-public document in this action, and number two,

12   what we understood to be Mr. Kornstein's refusal to

13   confirm that Ms. Jordan will sit for a 30(b)(6)-style

14   deposition --

15   THE COURT:  Right.

16   MS. BESKIN:  -- regarding her efforts or

17   lack there of to collect or preserve documents.

18   Now, those two issues I believe Mr.

19   Kornstein has attempted to moot them --

20   THE COURT:  Right.

21   MS. BESKIN:  -- in his responsive letter,

22   but I will have a few points that I would like to

23   make on them.  But if it's okay with Your Honor, I

24   think I'll start with the issue that's not been

25   mooted, which is the interrogatory responses.

88

1          MS. BESKIN:  That's correct.  But I don't

2     think -- the parties have agreed that we will -- we

3     will take her before the close of fact discovery.

4          THE COURT:  Okay.  Okay.

5          MS. BESKIN:  And then the last issue, Your

6     Honor, that --

7          THE COURT:  Go ahead.

8          MS. BESKIN:  -- I wanted to -- that we

9     raised in our letter that I do want to just discuss

10    briefly is we noted in our letter that Ms. Jordan has

11    not produced a single document in this case that --

12    other than a few documents that are publicly

13    available.  And Mr. Kornstein really wouldn't provide

14    us any information to explain well, how could that

15    possibly be?  In his letter to the Court, he makes a

16    representation that they did, in fact, undertake I

17    think he calls it a thorough and complete review of

18    documents, additional documents, and none were

19    located.  I have no reason to doubt Mr. Kornstein's

20    representation, but I will note that I think it's

21    rather ironic that Mr. Kornstein has spent much  of

22    today asking the Court to order him what I would

23    characterize as extraordinary relief.  He wants to

24    send a third party in because he doesn't think that

25    we've complied with our obligations.  He wants us to

1

2

3

4

5

6                         CERTIFICATION

7

8          I, Michael Keating, do hereby certify that

9   the foregoing is a true and correct transcript from the

10  electronic sound recordings of the proceedings in the

11  above-captioned matter.

12

13

14

15  _____          _____

16  Date                      Michael Keating

17

18

19

20

21

22

23

24

25

# EXHIBIT E

**quinn emanuel** trial lawyers | los angeles

51 Madison Avenue, 22nd Floor, New York, New York 10010-1601 | TEL (212) 849-7000 FAX (212) 849-7100

WRITER'S DIRECT DIAL NO.
**(212) 849-7042**

WRITER'S EMAIL ADDRESS
**nicholashoy@quinnemanuel.com**

September 13, 2018

**VIA E-MAIL**

Daniel J. Kornstein
Emery Celli Brinckerhoff & Abady LLP
600 Fifth Avenue, 22nd Floor
New York, NY 10020

Re:     *Gigi Jordan v. Raymond A. Mirra, Jr.*, No. 1:14-cv-01485

Dear Dan:

      I write further to our recent correspondence regarding Ms. Jordan's stricken September 5 letter to the Court (the "Discovery Letter"), and to summarize certain details of our meet and confer of September 12.  As you know, on September 7, in striking the Discovery Letter, the Court ordered the parties to "meet and confer in good faith to settle the issues raised by [Ms. Jordan]." *See* Dkt. 284.  During our call yesterday, on each issue, I articulated Mr. Mirra's position and either committed to do what Mr. Jordan had requested or attempted to identify reasonable grounds for compromise between the parties in order to settle the dispute without Court intervention.  By contrast, on each issue, you requested that Mr. Mirra simply concede to the demands in Ms. Jordan's Discovery Letter.  You further stated that unless Mr. Mirra conceded in full, Ms. Jordan would file a follow-up motion with the Court requesting the same relief as she did before.

      As I said on the call, this approach to the meet and confer process does not demonstrate good faith and does not adhere to the Court's directive.  We ask that you provide your availability for a meet and confer on which you will be prepared to actually attempt to settle the outstanding issues in good faith as directed by the Court.

## I.     Issues Raised in Ms. Jordan's Discovery Letter

      *First*, during our meet and confer yesterday, we discussed Ms. Jordan's request for an order permitting her to serve new requests for production of documents relating to an unnamed list of assets, and compelling Mr. Mirra to produce documents in response to those not-yet-served requests.  As I explained, in light of the September 30 fact discovery deadline, Ms. Jordan is no longer permitted to serve *any* additional RFPs under the Scheduling Order in this action.  As I also

**quinn emanuel urquhart & sullivan, llp**

LOS ANGELES | NEW YORK | SAN FRANCISCO | SILICON VALLEY | CHICAGO | WASHINGTON, DC | HOUSTON | SEATTLE
LONDON | TOKYO | MANNHEIM | HAMBURG | PARIS | MUNICH | SYDNEY | HONG KONG | BRUSSELS | ZURICH | SHANGHAI | PERTH | STUTTGART

Daniel J. Kornstein, Esq.
September 13, 2018

explained, Mr. Mirra needed to know the identity of the additional assets to determine whether he
could agree to your request.  Thus, after Ms. Jordan filed her Discovery Letter, I requested twice
in writing and again on our call that you identify them.  You refused without providing a
justification.

Late yesterday afternoon, you finally served Ms. Jordan's new, belated RFPs (the "New
RFPs").  The New RFPs seek documents concerning twelve newly-identified entities not
mentioned in the Complaint or in any of Ms. Jordan's prior pleadings.  As a result, we are still
investigating whether Mr. Mirra or Ms. Jordan held any ownership interest in each of the newly-
identified entities at any time prior to the execution of the SDA.  However, in an effort to resolve
this dispute, Mr. Mirra will agree to produce documents responsive to the New RFPs under the
terms of the Court's prior rulings to the extent that either Mr. Mirra or Ms. Jordan held an
ownership interest in the entity at any time prior to the execution of the SDA, provided that (i) Ms.
Jordan agrees that she may not serve any additional RFPs, and (ii) Ms. Jordan agrees (consistent
with the scope of Mr. Mirra's prior RFPs) to produce documents in her possession, custody, or
control concerning the newly-identified entities.  Mr. Mirra will produce any such responsive
documents on or before September 30 (provided that Ms. Jordan agrees to do the same).  In the
event that the parties cannot reach an agreement, Mr. Mirra expressly reserves his right to object
to the New RFPs in their entirety, including on the basis that they are untimely.

*Second*, we discussed Ms. Jordan's request that Mr. Mirra amend his interrogatory
responses in light of the Court's rulings regarding the scope of document discovery in this action.
We agreed to do so.  We will serve amended responses by September 30, as you have requested.

*Third*, we discussed Ms. Jordan's request in her Discovery Letter that the Court order Mr.
Mirra to produce all of what Ms. Jordan referred to as "73 Defendant privilege-logged Troilo
communications that fall within what the Court ordered that Jordan is entitled to."  *See* Discovery
Letter at 5.  On this issue, we agreed to produce approximately 30-35 of the documents Ms. Jordan
identified in her request to the Court that had been inadvertently omitted from our prior production.
We produced these documents yesterday.

The remaining "privilege-logged Troilo communications" are documents in which Mr.
Troilo and other counsel provided legal advice to Mr. Mirra in connection with the SDA.  On the
call, you explained Ms. Jordan's view that these documents were nevertheless subject to disclosure
because they referred to purported joint assets of the parties.  We explained that Ms. Jordan's
interpretation of the Court's June 13 Order was clearly incorrect, as it would render meaningless
the Court's carve-out for privileged SDA communications.  Specifically, the Court ordered that
while Mr. Mirra may not assert a privilege where Mr. Troilo represented *both* Mr. Mirra and Ms.
Jordan jointly or "represented Mirra *and* an entity in which Plaintiff Jordan had an ownership
interest," Mr. Mirra may "assert a privilege where Mr. Troilo represented him … and *only* him …
individually, in connection with a specific matter."  Dkt. 257 at 1-2 (emphasis added).  The Court
further clarified that "both parties have repeatedly acknowledged that [Ms. Jordan] and [Mr. Mirra]

Daniel J. Kornstein, Esq.
September 13, 2018

were represented by *separate counsel in the negotiation of the SDA*, even though Troilo was at the same time representing the parties with respect to certain joint assets." *Id.* (emphasis added). Given the clear language in the Court's Order permitting Mr. Mirra to assert privilege over SDA-related communications, and that any communication concerning the SDA would almost certainly refer to the parties' joint assets (which were being divided in the separation), we asked whether you believe there are any SDA-related communications that Mr. Mirra may still assert privilege over if Ms. Jordan's interpretation applied. You conceded that Ms. Jordan's interpretation does not leave room for *any* such privilege, thereby eliminating the Court's express carve-out, but informed us that Ms. Jordan nevertheless intended to seek reconsideration of the Court's ruling.

*Fourth*, we discussed Ms. Jordan's request for an "order permitting a neutral third party vendor to image and forensically analyze" Mr. Troilo's "email files, downloads, and hard drives." Discovery Letter at 7. You provided no relevant precedent or reasoned basis for this request. As you know, Ms. Jordan had the opportunity to, and did, question Mr. Troilo regarding these issues during his deposition in the RICO Action in 2015. *See* Troilo Dep. Tr. at 200:7-203:21. Mr. Troilo explained at his deposition, as we have in correspondence, that the relevant e-mails were lost or deleted years before this litigation was commenced, at least prior to November 2009. Given that the basis for Ms. Jordan's purported concern—that certain of Mr. Troilo's e-mails were deleted or discarded *years before* any litigation was ever filed—is a reality in many litigations (especially those seeking documents more than a decade old), I asked you to identify what, if any, unique circumstances justify such an intrusion into the private devices of a non-party to this litigation. You provided none. Nor were you able to identify the devices that you believed should be forensically examined.

Nevertheless, in an effort to resolve this issue, I asked whether there is *any* form of relief that Ms. Jordan might consider acceptable other than the requested third-party, forensic investigation. However, you stated that Ms. Jordan would not agree to *any* relief other than the forensic examination requested in the stricken Discovery Letter. We continue to be willing to discuss alternatives to a third-party forensic investigation.

*Fifth*, we discussed Ms. Jordan's additional request for an order permitting third-party, forensic analysis of the Peachtree accounting software used by certain of Mr. Mirra's business entities. Here, I explained to you that Mr. Mirra has produced, consistent with his obligations under the Federal Rules and the District of Delaware Default Standard for Electronic Discovery, all available responsive documents in their native, Microsoft Excel format. Please confirm that this issue is now resolved.

*Finally*, during our call, we discussed Ms. Jordan's request that the Court order Mr. Mirra to produce documents regarding "the pre-merger Biomed companies," Discovery Letter at 1, which includes solely subsidiaries of, and assets and liabilities held by, Biomed America. This request runs counter to the Court's June 13 Order denying Ms. Jordan's request to compel production of "documents pertaining to assets and liabilities that were listed on the SDA

Daniel J. Kornstein, Esq.
September 13, 2018

Schedules, including documents as to the value of those assets and liabilities," which "extend[ed] to Requests pertaining to Biomed America" because "such requests are not relevant to the warranties that are the focus of [Ms. Jordan's] remaining claim." Dkt. 257 at 1. Given that Ms. Jordan's Discovery Letter directly contradicts the Court's prior order, we explained that Ms. Jordan's purported request for "clarification" on this issue appears to actually be a motion for reconsideration. Mr. Mirra intends to oppose that motion for reconsideration if Ms. Jordan raises it again.[1]

## II.    Ms. Jordan's Document Review Process and Spoliation Issues

During our call, we also discussed what efforts Ms. Jordan has undertaken to review documents for responsiveness to Mr. Mirra's fifteen RFPs in this action. Specifically, despite representing that she would produce "*any* responsive documents … that have not been previously produced in the RICO Action" in response to all fifteen of Mr. Mirra's requests, Ms. Jordan did not produce a single electronic document, such as an e-mail, nor a single non-public document. Because this threadbare production raised serious concerns regarding the efforts Ms. Jordan undertook to search for and review documents, if any, we asked you the following basic questions (among others): (1) what steps did Ms. Jordan undertake to review documents for responsiveness to Mr. Mirra's New RFPs; (2) did Ms. Jordan review all documents in her possession that were *not* produced in the RICO Action; and (3) did Ms. Jordan review any electronic or non-public hard copy documents for responsiveness? You were unable to provide answers to any of these questions on our call. However, you agreed to confer with your colleagues and provide answers to our questions promptly. Please do so by no later than tomorrow, September 14.

In connection with Ms. Jordan's failure to produce any electronic documents in response to Mr. Mirra's RFPs, we also discussed our concerns regarding the spoliation of evidence from e-mail accounts that Ms. Jordan was actively using during the time period in which the SDA was negotiated and executed, including e-mail accounts Ms. Jordan used to communicate with her attorneys at Farella Braun. You told us that you were not aware of this issue. As we explained, during the course of discovery in the RICO Action, Ms. Jordan's prior counsel informed us that Ms. Jordan claimed she could not access e-mails or any other electronic documents stored in several e-mail accounts that she used in 2008 while the parties were negotiating the SDA. Ms. Jordan's counsel further informed us that Ms. Jordan made no effort to preserve or obtain the documents stored in these accounts until after they were subpoenaed in Ms. Jordan's criminal action in 2014—*two years after Ms. Jordan filed the instant litigation*. The parties agreed that Ms. Jordan would be prepared at her deposition to testify along the lines of a 30(b)(6) witness as the

---

[1]  In an effort to understand the basis for Ms. Jordan's discovery requests relating to the Biomed America assets and subsidiaries, we asked (twice in writing, and again on the call) that you provide information or identify documents to support the dollar values presented in Table 2 of Ms. Jordan's Discovery Letter. However, you refused to provide any such information without providing a justification.

4

Daniel J. Kornstein, Esq.
September 13, 2018

person most knowledgeable regarding efforts to preserve and collect relevant documents from her e-mail accounts, as well as Ms. Jordan's inability to obtain *any* documents from multiple e-mail accounts she used during the time period of the SDA.

During our call yesterday, I asked whether Ms. Jordan still claimed to be unable to access her e-mails and other electronic documents. You said that because you were not yet familiar with this issue, you would need to investigate it in order to get up to speed. Please let us know whether there has been any change in Ms. Jordan's ability to access her electronic documents as soon as possible. In the meantime, please confirm that Ms. Jordan will be prepared to testify as a 30(b)(6) witness as previously stipulated by the parties.

### III.    Extension of Deadlines to Complete the Depositions of Ms. Jordan and Mr. Mirra

During yesterday's call, we also discussed amending the Scheduling Order to permit the parties to take the depositions of Ms. Jordan and Mr. Mirra in October, as the parties previously agreed. Given that the parties are no longer entitled to serve new discovery requests (unless the parties reach an agreement on the New RFPs as proposed by Mr. Mirra above), and that Mr. Mirra has agreed to produce any additional responsive documents (as detailed above) by September 30, there is no basis for a broader extension of the deadline for fact discovery. I have included for your review a revised Proposed Third Amended Scheduling Order. Please let us know Ms. Jordan's position on this proposal.

We trust that our efforts on the meet and confer and in this letter have resolved many of the issues Ms. Jordan previously put before the Court in her Discovery Letter, and that Ms. Jordan will abide by the Court's September 7 directive to further narrow any outstanding disputes. To that end, we are available to meet and confer regarding any outstanding issues. Mr. Mirra reserves all of his rights.

Sincerely,

*/s/ Nicholas Hoy*

Nicholas Hoy

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

GIGI JORDAN,

                  Plaintiff,

          -against-

RAYMOND A. MIRRA, JR.,

                  Defendant.

C.A. No. 14-01485-GAM

**AFFIDAVIT**

STATE OF NEW YORK    )
                            )    ss.:
COUNTY OF NASSAU    )

       Mark S. Warshavsky, CPA/ABV/CFF, CVA, CBA ASA CFE, MAFF, DABFA, MBA, being duly sworn, deposes and says:

       1.     I am the partner-in-charge of the Business Valuation & Litigation Services Group with the firm Gettry Marcus, CPA, P.C. I was retained by plaintiff's counsel at Emery, Celli, Brinckerhoff & Abady LLP, as a forensic accountant and business valuation expert in conjunction with this action. I submit this affidavit in support of certain of plaintiff's Objections to the February 27, 2019 Report and Recommendation of the Special Master.

       2.     My assignment, in part, is to assist the plaintiff in identifying the entities, assets, liabilities, and any other value omitted from the Separation and Distribution Agreement dated March 12, 2008 ("SDA"), and to assist in quantifying damages related to such omissions.

       3.     My business experience is concentrated in the areas of forensic accounting, business valuations, fraud investigations, bankruptcy, damage calculations, and litigation services associated with a wide array of legal claims.

4.      I am a Certified Public Accountant, Certified Valuation Analyst, Certified Fraud Examiner, Master Analyst in Financial Forensics, along with other related designations. My education history includes: i) Masters in Business Administration, specialization in taxation, from St. John's University; ii) Masters in Business Administration, specialization in finance, from Long Island University, C.W. Post Campus; and iii) Bachelor of Science, Accounting, from the University of Bridgeport.

5.      I am a past Chairman of the Business Valuation Committee for the New York State Society of Certified Public Accountants. I have been retained by law firms, financial institutions, insurance companies, Trustees, businesses, and individuals, and, additionally, I have been approved to accept appointments as an accountant or business appraiser by a receiver or guardian in several counties of New York State, pursuant to New York State Part 36 of the Rules of the Chief Judge.

6.      I have lectured nationally to various forensic accounting and business valuation professional organizations, the legal community, as well as state CPA societies. I was a founding member of the Forensic Accounting Academy, sponsored by the National Association of Certified Valuators and Analysts, where I was a contributing author providing course materials and instruction for a 40 hour continuing professional education course on forensic accounting. Additionally, I was a contributing author for a business valuation course sponsored by the National Association of Certified Valuators and Analysts.

7.      I have authored articles on various forensic accounting and business valuation topics for nationally peer reviewed publications, and was a contributing author of the book *Financial Forensics Body of Knowledge*, published by John Wiley & Sons, Inc.

8.      I have been a court appointed and an agreed upon neutral expert, as well as an agreed upon arbitrator. I have been retained on matters in Federal and State Courts, and arbitration proceedings. My curriculum vitae is attached hereto as Exhibit A.

## I. INTRODUCTION

9.      I have reviewed the incomplete financial and accounting discovery documents produced in this action – including the general ledgers, income tax returns, bank statements, balance sheets, and income statements, relevant to determining which entities, assets, liabilities, and other values were omitted from the SDA. I understand the discovery Special Master appointed by the Court has recommended that the Court order plaintiff, Ms. Jordan, to amend her interrogatory responses to "explicitly identify" such entities, assets, liabilities, and other values within sixty days of endorsement of the Court by order.

10.     However, in order to conduct a proper analysis to identify the entities, assets, liabilities, and any other values omitted from the SDA, and the damages plaintiff incurred as a result, complete and detailed financial documents, and the information they contain, including general ledgers, income tax returns, bank statements, balance sheets, and income statements are required, that are now substantially incomplete as produced by the defendant.

11.     The general ledgers, income tax returns, bank statements, balance sheets, and income statements are interdependent sources of financial information, and are necessary in this forensic accounting assignment to verify the completeness and classification of assets, liabilities, and other values before plaintiff can identify them.[1]

12.     The document production by the defendant is deficient in that: i) most of the

_____

[1] Externally prepared financial statements are also an integral source of financial information that should be made available to the plaintiff.

requested financial documents have not been produced; and ii) the financial documents that have been produced are substantially incomplete due to the omission of transactions that materially affect the assets and liabilities of the various entities.

13.     Thus, the necessary information contained in the financial documents required to identify the entities, assets, liabilities, and other values omitted from the SDA have not been produced by the defendant.

## II. ISSUES PREVENTING THE PLAINTIFF FROM COMPLYING WITH THE RECOMMENDED ORDER TO AMEND HER INTERROGATORY RESPONSES

### The Plaintiff Does Not Possess the Necessary Information

14.     The plaintiff does not possess the necessary information to identify the entities, assets, liabilities, and other values omitted from the SDA, or to conduct a valuation of these items, because the defendant has not produced sufficient documentation to enable her to do so.

15.     Lacking these vital documents makes it impossible for the plaintiff to accurately identify which entities, assets, liabilities, and other values were omitted from the SDA, or which other entities (and their assets and liabilities) may exist that would be revealed in the large number of missing financial documents. Thus, the recommendation that the plaintiff amend her interrogatory responses to "explicitly identify the entities, assets, liabilities, and other values" that were omitted from the SDA is impossible to accomplish with the financial records that have been produced so far, which do not include complete general ledgers for most of the entities which the plaintiff and defendant owned. Moreover, the financial documents produced by the defendant contain a small fraction of the entities' income tax returns, bank statements, and other

basic accounting records required.[2]

### The Required Basic Accounting and Tax Records Should be Provided

16.     The basic documents required to determine which entities, assets, liabilities, and other values were omitted from the SDA include the complete general ledgers, income tax returns, bank statements, balance sheets, and income statements.   These documents contain financial information that is interrelated, making each document necessary to trace and verify transactions each record contains.

### Complete General Ledgers Should Be Produced

17.     Complete general ledgers provide a detailed record of all transactions that occurred within an entity's accounting period.   Those transactions listed on a general ledger should be verified by supporting documents, such as bank statements. To date, my analysis of the defendant's general ledgers provided reflect that defendant has produced only a small fraction of the general ledgers needed.

18.     In instances where the defendant has produced the general ledgers, they reveal missing transactions that cannot be accounted for. For example, the ending account balances within a general ledger should agree with the opening balances in the subsequent year, but I have found instances where they do not. In the general ledgers defendant produced, year-end balances reflect large discrepancies when compared to the opening balances in the following year. Those discrepancies indicate that data fields within the general ledgers are missing, hidden from view, or otherwise manipulated such that the transactions accounting for the large discrepant amounts

---

[2] For the purposes of identifying the assets and liabilities in this litigation, complete general ledgers should be provided, which includes every transaction within each fiscal year, or if transactions are summarized (batch posted) on the general ledger from subsidiary schedules (e.g., a separate accounting system to track sales), such subsidiary schedules/ledgers should also be provided with detail for each individual transaction.

cannot be identified. This could indicate that certain transactions were entered subsequent to the export of the general ledgers to non-native files. Defendant's production of his general ledgers in their native Peachtree/Sage 50 accounting files would disclose the nature of these discrepancies and disposition of the funds otherwise unaccounted for. (See paragraphs 25-26).

## Income Tax Returns Should Be Produced

19.     An entity's income tax return memorializes the amounts and classification of the assets, liabilities, income, owner distributions, and owner contributions, as well ownership percentage, for a given tax year. The income tax return is filed with the Internal Revenue Service, and is signed by a responsible officer under penalty of perjury.

20.     The representations of the assets, liabilities, income, owner distributions, and owner contributions for each entity by the defendant, in the income tax returns, provides a mechanism in which other financial information, such as information from general ledgers, can be compared.

21.     The income tax returns are important in verifying information provided from other sources, and are necessary to determine the classification of certain items. To date, my analysis of the defendant's tax returns provided reflect that defendant has produced only a small fraction of the tax returns needed.

## Bank Statements Should Be Produced

22.     Bank statements are a vital third-party source of information that are important in verifying transactions on the general ledgers and in tracing disbursements and receipts to and from various entities or persons. To date, my analysis of the defendant's bank statements provided reflect that defendant has produced only a small fraction of the bank statements needed.

**Balance Sheets Should Be Produced**

23.     Balance sheets present a listing of assets, liabilities, and equity. To date, my analysis of the defendant's balance sheets provided reflect that defendant has produced only a small fraction of the balance sheets needed.

**Income Statements Should Be Produced**

24.     Income statements present the balances of revenue and expense accounts, by classification, that occurred within an entity's accounting period.  To date, my analysis of the defendant's income statements provided reflect that defendant has produced only a small fraction of the income statements needed.

**Defendant's Accounting Records Contain Missing Transactions That Cannot Be Traced Because He Has Not Produced the Native ESI Files**

25.     Besides the fact that the vast majority of the key accounting records are not produced, even those records the defendant has produced are both incomplete and inconsistent from one record to the next, evidencing missing transactions. For example, ███████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████ ██████████████████████████

███████████████████████████████

26.     Additionally, ██████████████████████████████████████████

████████████████████████████████████████████████████████████

---

[3] Bates number RAM000054622, page 119 (Account ID 99000). See Exhibit B.
[4] Bates number RAM000043192. See Exhibit C.

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████[7]

27.     These large, missing transactions (and others like them) support the necessity for plaintiff to obtain defendant's native Peachtree/Sage 50 accounting files, which would unmask the disposition of these large missing transactions and other similar missing transactions.

**Peachtree/Sage 50 Files Are the Appropriate Medium of Production**

28.     Peachtree/Sage 50 files are the appropriate medium to receive defendant's electronic accounting information. Defendant's financial documents show that Peachtree/Sage 50 accounting files are the manner in which the books and records were kept in the usual course of business (i.e., as a Peachtree/Sage 50 file or Peachtree/Sage 50 .ptb backup file). If defendant's accounting records were produced in their native Peachtree/Sage 50 file form, the missing transactions, among other items, would be disclosed, including the date the transactions were initially entered, and when such transactions were subsequently altered or deleted. Defendant's production of his accounting records in native Peachtree/Sage 50 files would also provide plaintiff with access to all of the missing general ledgers, balance sheets, and income statements for the periods not produced by defendant to date.

29.     In addition, access to defendant's native Peachtree/Sage 50 files would afford plaintiff the ability to summarize information in reasonably usable reports that allow her accountants to view the underlying transactions of each company's accounts.

---

[5] Bates number RAM000054622, page 19 (Account ID 10500). See Exhibit B.
[6] Bates number RAM000043192, page 1 (Account ID 10500). See Exhibit C.
[7] I have observed additional examples of such inconsistencies.

### Assertions Made by the Defendant Regarding the Purging of Data

30.     The defendant has asserted that his Peachtree/Sage 50 data is "purged" every twenty or twenty four months; therefore, the data is not "readily accessible" for production.[8] This argument is disingenuous because: i) Peachtree/Sage 50 will not allow purging of data in the Peachtree/Sage 50 files until a Peachtree/Sage 50 .ptb backup file is created. Accordingly, defendant has access to those Peachtree/Sage 50 back-up files such that they can be readily produced; and ii) defendant's production shows the export of certain of his native Peachtree/Sage 50 files to non-native TIFF format just before he produced them in the litigation, confirming that he has them in native Peachtree/Sage 50 file format. (See paragraph 35).

31.     The Peachtree/Sage 50 "Purge Wizard" feature within Peachtree/Sage 50's software instructs that: "[b]efore Peachtree purges your data, you must create at least one backup file of your company's information."[9] Accordingly, the software requires the Peachtree/Sage 50 user to create a ".ptb" backup file, which will not allow a user to purge data until after a backup file has been created.

32.     Defendant has not asserted at any time that he does not have the Peachtree/Sage 50 backup files.

33.     In light of the mandatory backup files Peachtree/Sage 50 requires, defendant's representation that the files requested have been "purged", as if purging means that he no longer has these Peachtree/Sage 50 files (as a backup file), is misleading.

34.     Further, any assertion that defendant does not have native Peachtree/Sage 50 files is belied by the fact that certain of his general ledgers produced show by the timestamps on the

---

[8] See the defendant's letter dated November 6, 2018, page 6.
[9] The Sage 50 Purge Wizard contains identical language, except that "Peachtree" is replaced by "Sage 50."

documents, that defendant exported some general ledgers to non-native TIFF files several days before he produced them in the litigation.

35.     For example, a 2006 RAM Capital Group LLC general ledger was exported out of its native Peachtree/Sage 50 file format to (non-native) TIFF format on October 19, 2015, two days before the general ledger was produced to plaintiff.[10] Defendant's export of his 2006 general ledger from the native Peachtree/Sage 50 file to non-native TIFF is evidence that even if defendant purged his Peachtree/Sage 50 files, he maintains the Peachtree/Sage 50 underlying transactional data or backup files.

36.     There is no "legitimate business consideration" for defendant's export of his Peachtree/Sage 50 files to non-native TIFF (or Excel) files, just days before production in the litigation and nine years after the accounting period for which they were generated.

### The Production of Defendant's Native Peachtree/Sage 50 Files is Not an Onerous Burden on the Defendant

37.     The production of Peachtree/Sage 50 backup files is not a time or resource intensive process. Minimal steps are required to create a copy of the files. In fact, the process of copying the Peachtree/Sage 50 backup files is much simpler than exporting various individual reports from Peachtree/Sage 50 to non-native files like TIFF, as defendant has done, obscuring crucial data by that process.

38.     Furthermore, Peachtree/Sage 50 files can be extracted, specifically identifying the relevant entities, without providing information regarding other entities. Accordingly, defendant's assertions that neutral third-party vendor imaging of his Peachtree/Sage 50 files

---

[10] Bates number RAM000039676. See Exhibit D.

would yield proprietary information about other entities not at issue in this case is misleading.[11]

### The Accounting Records Produced in Non-Native TIFF/PDF Files or Excel is Unreasonably Burdensome to Plaintiff

39.     All of defendant's general ledgers show that they are maintained in Peachtree/Sage 50 file format. Yet, more than half of the general ledgers produced by the defendant are in non-native TIFF/PDF files, and the rest are exported to non-native Excel files. The defendant has incorrectly stated that the plaintiff can "upload the Excel data to the Peachtree software that they have to use it as well."[12] This statement misses the point. The reason for needing the Peachtree/Sage 50 files is to enable plaintiff to locate and trace the large number of missing transactions and missing accounting records contained in the native Peachtree/Sage 50 files.

40.     For plaintiff to convert the general ledgers' information defendant produced in TIFF/PDF formats will also require plaintiff to manually re-enter thousands of transactions. There is a significant amount of data in this case, and it unnecessarily burdensome for the plaintiff to have to recompile this data in attempts to reconstruct the information that is already contained within defendant's Peachtree/Sage 50 files.  This would require (at least) hundreds of hours by plaintiff's accountants to recreate the existing Peachtree/Sage 50 files defendant possesses.

41.     Even undertaking that onerous burden, the recreated records would still only render incomplete data in a somewhat more useable form. Conversely, the production of all defendant's Peachtree/Sage 50 files should take, at most, several hours for him to complete.

42.     Plaintiff requires defendant's native Peachtree/Sage 50 accounting files to identify

---

[11] See January 11, 2019 Hearing transcript, pages 59-60.
[12] Jan. 11, 2019 Hearing Transcript at 55:4-6.

11

the entities' assets and liabilities not listed in the SDA. Neutral third-party vendor imaging would efficiently locate and extract the relevant files in a timely and cost effective manner.[13]

43.     If the Court denies plaintiff access to defendant's native Peachtree/Sage 50 accounting records, as they are ordinarily maintained, it is reasonable to expect that, at the least, defendant's complete general ledgers for each entity must be produced in Excel or CSV format. Those records should be extracted by a neutral third-party vendor, who can assure that all of the relevant data fields within each general ledger are intact. Additionally, a complete record of the "Audit Trail Report" within Peachtree for each entity, for the relevant period, should be extracted in Excel or CSV format. The chart of accounts for each entity should also be extracted by a neutral third-party vendor to ensure that the plaintiff has reasonable knowledge regarding the maintenance of the books and records for the entities.

**Identification of the Assets and Liabilities Omitted From the SDA Are Appropriately the Subject of an Expert Report, Not Interrogatory Responses**

44.     The Special Master's Report recommends that plaintiff be required to amend her interrogatory responses to "explicitly identify the entities, assets, liabilities, and any other value …omitted from the SDA," or be precluded from entering that later discovered evidence of assets and liabilities at trial ("absent leave of court").

45.     Identifying which entities, assets, liabilities, and other values were omitted from the SDA requires a complex forensic analysis, which includes tracing transactions through the various interrelated financial and accounting records for the numerous entities defendant established, and analyzing individual journal entries to determine whether a transaction was recorded in the proper account based on corroborating financial information contained in those

---

[13] The use of a neutral third-party vendor to extract the Peachtree/Sage 50 data will ensure that the data extracted is complete, and will also preserve the integrity of the information.

financial and accounting records.

46.    The valuation of entities, assets, and liabilities is a complicated process involving the utilization of various approaches, analyzing financial and other factors, and applying the appropriate adjustments to comply with applicable standards.  This complex assignment could only be undertaken by an individual who is certified to perform these types of valuations.

47.    For example, if an entity is valued under the income approach, various analyses may have to be performed, such as to determine the entity's normalized cash flow and an appropriate discount rate.

48.    If an entity is valued under the asset approach, various analyses may have to be performed, such as valuations of the underlying assets and liabilities. This approach typically begins with a balance sheet and restates the assets and liabilities, including those that are unrecorded, to a fair market value.

49.    Regardless of the approach utilized to value the entities, assets, liabilities, and other values omitted from the SDA, such analysis is required in the context of sufficient information not provided to date. Accordingly sufficient information to provide a complete identification of the entities, assets, liabilities, and other values omitted from the SDA has not been made available to the plaintiff, and cannot be conducted at this time.

### III. <u>CONCLUSION</u>

50.    In order to identify which entities, assets, liabilities, and any other values were omitted from the SDA, the necessary financial information[14] must first be made available to the plaintiff. Only then can a complex financial analysis be conducted, such that plaintiff will be able

---

[14] Including, but not limited to, complete general ledgers, income tax returns, bank statements, balance sheets, and income statements for each entity.

to accurately identify and describe those omitted entities, assets, liabilities, and other values.

51.     The native Peachtree/Sage 50 files contain information that is necessary for the plaintiff to identify which entities, assets, and liabilities were omitted from the SDA, and the value of each omission. If native Peachtree/Sage 50 files are not produced, the plaintiff will need, at a minimum, complete general ledgers and audit trail reports from Peachtree/Sage 50 in Excel or CSV format, as well as a chart of accounts from Peachtree/Sage 50 and income tax returns for each entity for the relevant periods to accurately determine which entities' assets and liabilities were excluded from the SDA and the value of any such omission.

52.     Upon receiving those financial documents, the determination of which entities, assets, liabilities, and other values were omitted from the SDA is appropriately the subject of a future expert report or affidavit.


_____
Mark S. Warshavsky

Sworn to before me this
13ᵗʰ day of March, 2019.

_____
Notary Public

THERESA A. LEONE
NOTARY PUBLIC, STATE OF NEW YORK
No. 01LE6090210
QUALIFIED IN SUFFOLK COUNTY
MY COMMISSION EXPIRES APRIL 7, 20 19

14

# EXHIBIT A

# Mark S. Warshavsky Curriculum Vitae

GETTRY**MARCUS**  ALWAYS LOOKING DEEPER.™                    **CURRICULUM VITAE**

## Mark S. Warshavsky
CPA/ABV/CFF, CVA, CBA, ASA, CFE, MAFF, DABFA, MBA
*Partner-in-Charge, Business Valuation & Litigation Services Group*
**T.** 516.364.3390 x121 | **E.** mwarshavsky@gettrymarcus.com

Mark Warshavsky is the Practice Leader of the Firm's Consulting Group, and Partner-In-Charge of the Business Valuation & Litigation Services Group at Gettry Marcus CPA, P.C. As a consultant to law firms, businesses, financial institutions, insurance companies, Receivers, Trustees and individuals, Mr. Warshavsky provides services in varied areas of forensic accounting and business valuation, including complex commercial litigation assignments. His experience includes the following types of engagements: lost profits and commercial damage modeling; shareholder/partner disputes; contract disputes; marital dissolutions; forensic accounting investigations; business bankruptcy, and gift and estate tax filings.

Mr. Warshavsky lectures to the business valuation and forensic accounting community, attorneys, individuals, and has taught college-level accounting and finance courses. He is frequently requested to testify as an expert witness because of his knowledge, experience and reputation as a business valuator and forensic accountant. Mr. Warshavsky serves as an Arbitrator/Mediator for the American Arbitration Association's (AAA) National Roster of Arbitrators.  In addition, he has been selected as a court appointed neutral expert, agreed upon neutral expert and arbitrator in several counties of New York State. Mr. Warshavsky is approved to accept appointments as an accountant or business appraiser by a receiver or guardian for the counties of Nassau, Suffolk, New York, Kings, Queens and Westchester, pursuant to NYS Part 36 of the Rules of the Chief Judge.  He is a New York State Licensed Private Investigator.

## LICENSES AND CERTIFICATIONS

**Certified Public Accountant (CPA)**
New York State

**Accredited in Business Valuation (ABV)**
The American Institute of Certified Public Accountants

**Accredited Senior Appraiser (ASA)**
American Society of Appraisers

**Certified Fraud Examiner (CFE)**
Association of Certified Fraud Examiners

**Certified Business Appraiser (CBA)**
The Institute of Business Appraisers, Inc.

**Certified Valuation Analyst (CVA)**
National Association of Certified Valuators and Analysts

**Certified in Financial Forensics (CFF)**
The American Institute of Certified Public Accountants

**Diplomat of the American Board of Forensic Accounting (DABFA)**
The American College of Forensic Examiners Institute

**Master Analyst in Financial Forensics (MAFF)**
National Association of Certified Valuators and Analysts

**Private Investigator**
Licensed by the New York State Department of State

GETTRYMARCUS ▌▌▌ ALWAYS LOOKING DEEPER.™

**Mark S. Warshavsky**
CURRICULUM VITAE

## LICENSES AND CERTIFICATIONS - CONTINUED

**Advanced Business Valuation Certificate of Education Achievement**
The American Institute of Certified Public Accountants

**Business Valuation Certificate of Educational Achievement**
The American Institute of Certified Public Accountants

## PROFESSIONAL

**Gettry Marcus CPA, P.C.**
- Practice Leader, Consulting Group, 2013 - present
- Partner-In-Charge, Business Valuation & Litigation Services Group, 2001 – present
- Member, Executive Committee, 2005 – present

**Ambrico, Warshavsky & Company, CPA, P.C.**
- Partner-In-Charge, Business Valuation & Litigation Services Group, 1990 – 2001

Employed in the private sector and with public accounting firms, including Coopers & Lybrand (n/k/a PricewaterhouseCoopers), 1972 – 1990

## SPECIAL APPOINTMENTS

- Arbitrator/Mediator – American Arbitration Association National Roster of Arbitrators.

- NYS Part 36 of the Rules of the Chief Judge – Approved to accept appointments as an accountant or business appraiser by a Receiver or Guardian for the following counties: Nassau, Suffolk, New York, Kings, Queens and Westchester.

## FACULTY AND COMMITTEE APPOINTMENTS

**National Association of Certified Valuators and Analysts (NACVA)**
- *National Training Development Team*, 2005 – 2011
- *National Valuation Exam and Grading Committee*, 2004 – present

**New York State Society of Certified Public Accountants (NYSSCPA)**
Statewide
Business Valuation Committee
- *Chairman*, 2008 – 2010
- *Vice Chairman*, 2006 – 2008
- *Annual Business Valuation Conference Chairman*, 2007 – 2008
- *Member*, 2005 – present

Litigation Services Committee
- *Member*, 2005 – 2007

Nassau County Chapter (Consisting of over 5,000 members)
Chapter Leadership Positions
- *President*, 2009 – 2010
- *President* - Elect, 2008 – 2009
- *Vice President,* 2007 – 2008
- *Treasurer*, 2006 – 2007
- *Executive Board Member*, 2004 – 2006

GETTRYMARCUS   ALWAYS LOOKING DEEPER.™

**Mark S. Warshavsky**
CURRICULUM VITAE

## FACULTY AND COMMITTEE APPOINTMENTS - CONTINUED

Litigation Services Committee
- *Chairman,* 2001 – 2003, 2005
- *Member*, 1990 – Present

**National Litigation Consultants' Review**
Member – Editorial Advisory Board
Peer review articles submitted for publication

**The CPA Journal**
Ad Hoc reviewer
Technical peer reviewer of articles submitted for publication related to business valuation, forensic accounting and litigation services topics

**Financial Valuation and Litigation Expert**
Member – Panel of Experts

**The Value Examiner Magazine**
Past member – Editorial Advisory Board
Peer review articles submitted for publication

**Adelphi University**
School of Business Administration Advisory Board, 2003 – 2007

**State University of New York at Farmingdale**
Adjunct Professor, 1976 – 1978

**Interboro Institute**
Adjunct Professor, 1979 – 1980

**American Heart Association**
Board of Directors, Long Island, New York Region, 2000-2006

**Advancement for Commerce, Industry and Technology**
Board of Directors, 2002 – 2006

**Association of Certified Fraud Examiners**
Newsletter Editor, Long Island, New York Chapter, 2000

**Long Island University, C.W. Post Campus**
Professional Experience & Placement Business Advisory Board, 1992 – 1996

## BOOK CONTRIBUTIONS

*Financial Forensics Body of Knowledge*
Darrell D. Dorrell, Gregory A. Gadawski
*Wiley; 1st edition / March, 2012*
Contributing Author

GETTRYMARCUS   ALWAYS LOOKING DEEPER.™                    **Mark S. Warshavsky**
                                                          **CURRICULUM VITAE**

## JOURNALS AND PUBLICATIONS

*"The Art of Interpreting Body Language - Deciphering Clues Through Physical Movements"*
        Financial Valuation and Litigation Expert, December 2018 /January 2019

*"Forensic Statement Analysis – The Art and Science of Analyzing Words"*
        Financial Valuation and Litigation Expert, April/May 2017

*"Business Valuation Considerations in Ownership Buy-Sell Agreements"*
        Financial Valuation and Litigation Expert, August/September 2015

*"Using the People to Find the Money"*
        Financial Valuation and Litigation Expert, December 2013/January 2014

*"Why Attorneys Use Forensic Accountants in Litigation Cases"*
        Financial Fraud Law Report, October 2013

*"The Role of Forensic Accountant in Litigation Cases"*
        The CPA Journal, June 2013

*"The Forensic Accountant's Role in Litigation"*
        AccountingToday.com, April 2013

*"Applying the Net Worth Method For Proving Unreported Income"*
        National Litigation Consultants' Review, Volume 3-2012

*"Analyzing Earnings Quality as a Financial Forensic Tool"*
        Financial Valuation and Litigation Expert, October/November, 2012

*"Anatomy of a Fraud Investigation" Product/Book Review*
        National Litigation Consultants' Review, October/November, 2010

*"Applying Benford's Law in Financial Forensic Investigations"*
        National Litigation Consultants' Review, October/November, 2010

*"The Expert's Use of Self-Defense on Cross-Examination"*
        National Litigation Consultants' Review, June/July, 2010

*"Deploying Genogram and Timeline Analysis – Powerful Forensic Accounting Tools"*
        National Litigation Consultants' Review, March, 2010

*"Reducing the Potential for Fraud in Your School District"*
        School Business Affairs, February, 2005

*"The Challenge of Valuing Intangible Assets"*
        Nassau Lawyer, November, 2004

*"Estate Planning for Business Owners"*
        The CPA Journal, September, 2003

*"Valuation of a Business, The Importance of Revenue Ruling 59-60"*
        NYSSCPA, Nassau County Chapter Newsletter, January, 2001

*"Standards of Value in Appraising a Business"*
        NYSSCPA, Nassau County Chapter Newsletter, January, 2000

*"The Role of the CPA Litigation Consultant"*
        NYSSCPA, Nassau County Chapter Newsletter, November, 1998

GETTRYMARCUS ▌▌▌ ALWAYS LOOKING DEEPER.™                    **Mark S. Warshavsky**
                                                            **CURRICULUM VITAE**

## COURSE MATERIALS DEVELOPED - ACCREDITATION CURRICULUM

*"What Your Clients 'Think' You Know About Forensic Accounting"*

Forensic Accounting Academy, National Association of Certified Valuators and Analysts, 2007

- Contributing author in developing a forty (40) hour course designed for accounting professionals. The course provided a comprehensive forensic accounting methodology that can be used as a guide to refine participants' forensic accounting skills.

*"Business Valuation Fundamentals for the CPA"*

National Association of Certified Valuators and Analysts, 2005

- Contributing author in developing a sixteen (16) hour course designed to teach participants how to value a business enterprise from inception to the end of the process.

## LECTURES AND SPEAKING ENGAGEMENTS

*"Forensic Accounting – The Art & Science of Analyzing Numbers, Words and Body Language*
Long Island Chapter of the Institute of Management Accountants
Plainview, New York, July 2017

*"The Use of Forensic Accounting – Bringing Peace of Mind in Trust & Estate Disputes"*
Estate Planning Council of Nassau County
Jericho, New York, January 2017

*"Forensic Accounting Tools & Techniques"*
Forensic & Litigation Services Conference
Pennsylvania Institute of CPAs
King of Prussia, Pennsylvania, November 2016

*"Forensic Accounting Methodology"*
Forensic & Litigation Services Conference
Pennsylvania Institute of CPAs
King of Prussia, Pennsylvania, November 2016

*"The Financial Planner's Guide to Understanding the Business Valuation Process"*
AXA Advisors LLC
Woodbury, New York, October 2015

*"The Financial Expert's Role in Analyzing and Calculating Lost Profits"*
National Arbitration and Mediation, CLE Webinar
New York, New York, September 2015

*"Forensic Tools & Techniques"*
Forensic Valuation Conference
The Maryland Association of Certified Public Accountants
Baltimore, Maryland, April 2015

*"Forensic Tools & Techniques"*
Society of Professional Investigators
New York, New York, April 2015

*"Business Valuations & Forensic Accounting in Litigation Matters"*
Bridge-the-Gap: Corporate & Litigation
The New York City Bar Association
New York, New York, January 2015

GETTRYMARCUS   ALWAYS LOOKING DEEPER.™

**Mark S. Warshavsky**
**CURRICULUM VITAE**

## LECTURES AND SPEAKING ENGAGEMENTS - CONTINUED

*"Forensic Tools & Techniques"*
>Forensic Valuation Conference
>The Maryland Association of Certified Public Accountants
>Baltimore, Maryland, May 2014

*"The Financial Expert's Role in Analyzing and Calculating Lost Profits"*
>FCG University
>Financial Consulting Group
>Atlanta, Georgia, May 2014

*"The Litigator's Guide to Defending Business Valuation and Buy-Sell Provisions"*
>Nassau County Bar Association, Commercial Litigation and Federal Courts Committees
>Mineola, New York, March 2014

*"Drafting Business Valuation and Buy-Sell Provisions"*
>New York State Bar Association – LLC Program
>Melville, New York, November 2013

*"The Use of Forensic Tools in Real Estate Litigation Engagements"*
>New York State Society of Certified Public Accountants, Nassau County Chapter
>Real Estate Committee
>Jericho, New York, September 2013

*"Occupational Fraud and Abuse – Crime in the Workplace"*
>New York State Society of Certified Public Accountants, Nassau County Chapter
>CFO Committee
>Mineola, New York, May 2013

*"The Use of Forensic Tools in Divorce Engagements"*
>AICPA Forensic & Valuation Services Conference
>Orlando, Florida, November 2012

*"The Use of Financial Forensics in Business Valuations"*
>13th Annual Business Valuation, Fraud & Litigation Services Conference
>Virginia Society of Certified Public Accountants
>Richmond, Virginia, September 2012

*"Using Forensic Tools in Divorce Engagements"*
>FCG University
>Financial Consulting Group
>Atlanta, Georgia, May 2012

*"Financial Forensics: Tips, Tools and Techniques For The Valuation Practitioner"*
>National Association of Certified Valuators and Analysts, Connecticut Chapter
>North Haven, CT, January 2012

*"Using Forensic Tools in Divorce Engagements"*
>VPS STRAIGHTtalk Webinar Series
>December 2011

*"Business Valuation & Forensic Accounting – Tips, Tools, and Techniques for the Practicing Accountant"*
>Long Island Tax Practitioners Symposium
>Woodbury, New York, November 2011

GETTRY**MARCUS** ▌▌▌ ALWAYS LOOKING DEEPER.™                    **Mark S. Warshavsky**
                                                                  **CURRICULUM VITAE**

## LECTURES AND SPEAKING ENGAGEMENTS - CONTINUED

*"Financial Forensics in Valuations"*
> National Business Valuation Conference
> American Institute of Certified Public Accountants
> Las Vegas, Nevada, November 2011

*"Forensic Accounting: Fraud Techniques & Tools"*
> Annual Business Valuation, Forensic Investigation & Litigation Conference
> New Jersey Society of Certified Public Accountants
> Edison, New Jersey, September 2010

*"Damages: DCF – Equivalent or Business Valuation Delta – Which Approach Is 'Right' and
    How Do You Critique Opposition?"*
> Annual Business Valuation, Forensic Investigation & Litigation Conference
> New Jersey Society of Certified Public Accountants
> Edison, New Jersey, September 2010

*"Impeaching the Business Valuation Expert on Cross Examination"*
> The Theodore Roosevelt American Inn of Court
> Mineola, New York, March 2009

*"Forensic Accounting for VALF Practitioners: Tips, Tricks, Tools & Techniques"*
> A two hour national webinar qualifying for continuing professional education credit
> National Association of Certified Valuators and Analysts, Forensic Accounting Academy
> - January, February, August, November, 2009
> - December 2008

*"Introduction to Financial Forensics"*
> An eight hour course qualifying for continuing professional education credit
> National Association of Certified Valuators and Analysts, Consultants' Training Institute
> Chicago, Illinois, September 2009

*"What Your Clients 'Think' You Know About Forensic Accounting"*
> A one or two day course qualifying for continuing professional education credit
> National Association of Certified Valuators and Analysts, Consultants' Training Institute
> - Orlando, FL, July 2011
> - New York, NY, April 2011
> - New York, NY, May 2010
> - Chicago, IL, March 2010
> - Jersey City, NJ, November 2009
> - Milwaukee, WI, August 2009
> - Baltimore, MD, September 2008
> - Fort Lauderdale, FL, December 2007
> - Philadelphia, PA, October 2007
> - Phoenix, AZ, September 2007

*"Forensic Accounting for Valuation, Auditing, Litigation and Fraud Practitioners –
    Tips, Tricks, Tools and Techniques"*
> A four hour course qualifying for continuing professional education credit
> National Association of Certified Valuators and Analysts and
> Rhode Island State Society of Certified Public Accountants
> Providence, Rhode Island, September 2008

*"Business Valuation and Forensic Accounting – Tips, Tools & Techniques for the Global CPA"*
> A two hour course qualifying for continuing professional education credit
> Philippine Institute of Certified Public Accountants
> 2nd PICPA Global Convention
> New York City, New York, September 2007

GETTRYMARCUS   ALWAYS LOOKING DEEPER.™

**Mark S. Warshavsky**
CURRICULUM VITAE

## LECTURES AND SPEAKING ENGAGEMENTS - CONTINUED

*"Business Valuation Fundamentals for the CPA"*
An eight hour course qualifying for continuing professional education credit
National Association of Certified Valuators and Analysts, Consultants' Training Institute
- Providence, RI, October 2006
- Salt Lake City, UT, November 2005
- Las Vegas, NV, September 2005

State CPA society courses held in conjunction with:
National Association of Certified Valuators and Analysts, Consultants' Training Institute
- Arkansas Society of Certified Public Accountants – Little Rock, Arkansas, September 2006
- Georgia Society of Certified Public Accountants – Atlanta, Georgia, July 2006
- Wisconsin Society of Certified Public Accountants – Milwaukee, Wisconsin, December 2005

*"Fraud Prevention and Detection 101"* (Seminar)
New York State School Administrators, Montauk Summer Technology Conference
Montauk, New York, 2004

*"Start Your Dental Career Painlessly – Business, Tax And Valuation Aspects You Need to Consider"*
Graduating Class, School of Dentistry
New York University, New York City, 2004

*"What to Consider When Contemplating Divorce"*
Fox TV's Good Day New York – live interview
New York City, 2004

*"Financial Statement Fraud"* (Seminar)
Joint meeting of the NYSSCPA, Nassau Chapter, Litigation Support Services Committee and
the Nassau County NYS Bar Association, Commercial Courts Committee
Long Island, New York, 2003

*"Occupational Fraud and Abuse – Crime in the Workplace"* (Seminar)
Nassau County Women's Bar Association, New York, 2005
The Institute of Management Accountants, Long Island, New York Chapter, January 2003
New York Institute of Technology, Business Management Department, March 2003
Various Business Community Groups and Attorneys

*"Tales from the Dark Side, Forensic Accounting – Financial Statement Fraud & Other Accounting Misdeeds"*
Turnaround Management Association
Long Island, New York Chapter, 2003

*"What the CPA Should Know When Reviewing a Business Valuation Report"*
Network of Accountants
Jericho, New York, 2001

## AWARDS AND RECOGNITION

Recipient of the 2017 *Thomas R. Porter Lifetime Achievement Award*
National Association of Certified Valuators and Analysts

Recipient of the 2013 *Max Block Distinguished Article Award* for Informed Comment
The CPA Journal

Finalist for the 2012 *Thomas R. Porter Lifetime Achievement Award*
National Association of Certified Valuators and Analysts

GETTRYMARCUS   ALWAYS LOOKING DEEPER.™

**Mark S. Warshavsky**
**CURRICULUM VITAE**

## AWARDS AND RECOGNITION - CONTINUED

Award of Excellence, Instructor of Exceptional Distinction or Great Distinction – Based upon participants' grading of instructor's performance, 2005, 2006, 2007, 2008, 2009, 2010, 2011
    National Association of Certified Valuators and Analysts

Who's Who in Forensic Accounting, 2004, 2007, 2010, 2014, 2015, 2016, 2017
    Long Island Business News

Annual Honoree, 16th Annual Corporate Golf Classic, 2004
    Annual Honoree, 16th Annual Corporate Golf Classic, 2004

## PROFESSIONAL ASSOCIATION MEMBERSHIPS

American Arbitration Association (AAA)

American Bar Association (ABA); Associate Member, Section of Litigation

American College of Forensic Examiners (ACFEI)

American Institute of Certified Public Accountants (AICPA)

American Society of Appraisers (ASA)

Associated Licensed Detectives of New York State (ALDONYS)

Association of Certified Fraud Examiners (ACFE)

Financial Consulting Group (FCG)

National Association of Certified Valuators and Analysts (NACVA)

New York State Society of Certified Public Accountants (NYSSCPA)

Society of Professional Investigators (SPI)

## EDUCATION

*Masters in Business Administration, Specialization in Taxation*
    St. John's University, 1981

*Masters in Business Administration, Specialization in Finance*
    Long Island University, C.W. Post Campus, 1974

*Bachelor of Science, Accounting*
    University of Bridgeport, 1972

**EXHIBIT B**

**Advanced Research Corporation 2007 General Ledger**

**RAM000054622**

**REDACTED IN FULL**

**REDACTED IN FULL**

**EXHIBIT C**

**Advanced Research Corporation 2008 General Ledger**

**RAM000043192**

**REDACTED IN FULL**

**REDACTED IN FULL**

**EXHIBIT D**

**RAM Capital Group, LLC 2006 General Ledger, Page 1**

**RAM000039676**

**REDACTED IN FULL**

## Other Documents

1:14-cv-01485-GAM Jordan v. Mirra

MEDIATION-CJB,SPECIALMASTER,VACANTJUDGESHIP-2017

### U.S. District Court

### District of Delaware

## Notice of Electronic Filing

The following transaction was entered by Allinson, Elihu on 3/13/2019 at 5:14 PM EDT and filed on 3/13/2019

**Case Name:**        Jordan v. Mirra
**Case Number:**      1:14-cv-01485-GAM
**Filer:**            Gigi Jordan
**Document Number:** 317

**Docket Text:**
**[SEALED] OBJECTIONS by Gigi Jordan to [316] Proposed Order *and Recommendations of the Special Master*. (Attachments: # (1) Appendix I - III, # (2) Exhibit A - E, # (3) Affidavit Expert Affidavit)(Allinson, Elihu)**

**1:14-cv-01485-GAM Notice has been electronically mailed to:**

Daniel J. Kornstein     dkornstein@ecbalaw.com, crenta@ecbalaw.com

Deborah k. Brown     deborahbrown@quinnemanuel.com

Donald Reinhard , II     donaldreinhard@quinnemanuel.com

Elihu Ezekiel Allinson , III     zallinson@sha-llc.com

Julia Beskin     juliabeskin@quinnemanuel.com

Kenneth J. Nachbar     knachbar@mnat.com, kdaley@mnat.com